## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOHN KELLEY et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-00283-O** |
| | § | |
| **ALEX M. AZAR II et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are Defendants' Motion to Dismiss First Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) (ECF No. 20), filed August 7, 2020; Plaintiffs' Response (ECF No. 24), filed September 12, 2020; and Defendants' Reply (ECF No. 32), filed October 5, 2020. Having considered the briefing, relevant facts, and applicable law, the Court finds that the Motion should be and is hereby **GRANTED in part** and **DENIED in part**. Specifically, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' statutory-interpretation claim and the Religious Objectors' challenges to the Contraceptive Mandate as res judicata. The Court **DENIES** all other requested relief.

## I.    BACKGROUND

### A.  Legal Backdrop

This case arises out of yet another dispute over the Patient Protection and Affordable Care Act ("ACA"). In 2010 through the ACA, Congress mandated that group health plans and health insurers "provide coverage for and shall not impose any cost sharing requirements for" a litany of preventive health services identified by committees operating under the authority of the Department of Health and Human Services ("HHS"). 42 U.S.C. § 300gg-13. Among those

requirements shielded from cost sharing are (1) "evidence-based items or services that have in effect a rating of 'A' or 'B' in the current recommendations of the United States Preventive Services Task Force [("PSTF")]"; (2) "immunizations that have in effect a recommendation from the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention [("ACIP")]"; (3) "with respect to infants, children, and adolescents, evidence-informed preventive care and screenings provided for in the comprehensive guidelines supported by the Health Resources and Services Administration [("HRSA")]"; and (4) "with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the [HRSA] . . . ." 42 U.S.C. § 300gg-13(a)(1)–(4) (collectively, the "Provisions").

Plaintiffs challenge the constitutionality[1] of "preventive-care coverage" required under section 300gg-13 because it is unwanted, unnecessary, and responsible for driving up the cost of available health insurance plans on the open market. See Am. Compl. 8–13, ECF No. 14.  Plaintiffs also specifically challenge two mandates issued by the committees since the ACA's enactment: (1) the familiar and oft-litigated Contraceptive Mandate, codified at 45 C.F.R. § 147.130(a)(1)(iv), 29 C.F.R. § 2590.715–2713(a)(1)(iv), and 26 C.F.R. § 54.9815–2713(a)(1)(iv); and (2) the PSTF's preexposure prophylaxis ("PrEP") drugs mandate (collectively, the "Mandates"). *See* U.S. Preventive Services Task Force, *Final Recommendation Statement: Prevention of Human Immunodeficiency Virus (HIV) Infection: Preexposure Prophylaxis* (June 11, 2019), https://bit.ly/2NyeXJM.

In 2018, John and Alison Kelley, two of the same Plaintiffs here, filed a class action suit against the same Defendants here, challenging the Contraceptive Mandate. *See* Compl., *DeOtte v.*

---

[1] Plaintiffs contend the provisions are unconstitutional because they violate the United States Constitution's Appointments and Vesting Clauses, nondelegation doctrine, and the Religious Freedom Restoration Act. *See* Am. Compl. 7–25, ECF No. 14.

*Azar*, 393 F. Supp. 3d 490 (N.D. Tex. 2019) (O'Connor, J.), No. 4:18-cv-825. In that case, this Court enjoined Defendants from enforcing the Contraceptive Mandate against the class of employers and individuals who, either at the time or in the future, object to the Contraceptive Mandate for sincere religious reasons. *See DeOtte*, 393 F. Supp. 3d at 513–15. The Court's judgment is on appeal, but the injunction remains in place. *See id.*, *appeal docketed*, Case No. 19-10754 (5th Cir. July 16, 2019). Practically, the injunction allows—but of course does not require—insurers to offer insurance plans that do not include contraception coverage for religious objectors.

### B. This Case

Plaintiffs are various individuals and entities who challenge the constitutionality of the ACA's Provisions and mandates issued pursuant to this grant of authority to the PSTF, ACIP, and HRSA. *See* Am. Compl. 7–25, ECF No. 14. Specifically, Plaintiffs Braidwood Management, Kelley Orthodontics, John Kelley, Joel Starnes, Zach Maxwell, and Ashley Maxwell (the "Religious-Objector Plaintiffs") all object to paying for health insurance plans that cover contraceptives, PrEP drugs, and other preventive-care services for religious reasons. *See id.* at 7–13. Plaintiffs Donovan Riddle, Karla Riddle, Joel Miller, and Gregory Scheideman (the "Free-Market Plaintiffs") object to paying for health insurance plans that include contraceptive coverage and other preventive-care coverage that they do not want and do not need. *See id.* at 9–11. Ultimately, all Plaintiffs express a desire to purchase on the open market insurance policies that meet their needs and are free from the requirements of the Provisions and their resulting mandates. *See id.* at 7–13.

Plaintiffs filed suit against the United States and Secretaries Azar, Mnuchin, and Scalia[2] seeking (1) an injunction to prevent their departments from enforcing the Mandates; (2) a

---

[2] Defendants should, at the appropriate time, file a notice indicating the names of the individuals who should be substituted as parties.

declaration that the Provisions are unconstitutional; and (3) a declaration that the PrEP Mandate violates the Religious Freedom Restoration Act ("RFRA"). *See* Am. Compl. 25–26, ECF No. 14. Plaintiffs challenge the Provisions and Mandates on five grounds. First, they claim the Provisions violate the Appointments Clause of the United States Constitution. *See id.* at 13–18. Next, they claim the Provisions violate the Nondelegation Doctrine. *See id.* at 18–20. They also argue that section 300gg-13(a)(1) violates the Vesting Clause of Article II of the United States Constitution. *See id.* at 20–22. Next, the Plaintiffs make a statutory interpretation argument that would render invalid the Mandates issued after the ACA's enactment. *See id.* at 22–24. Finally, Plaintiffs claim the PrEP Mandate violates the RFRA. *See id.* at 25.

Defendants moved to dismiss all of Plaintiffs' claims under Federal Rules of Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mot. 1, 9, ECF No. 20. Defendants challenge Plaintiffs' claims on standing, res judicata, limitations, and for failure to state claims upon which relief may be granted. *See id.* at 15–43. The Motion is now ripe for the Court's review. *See* Pls.' Resp., ECF No. 24; Defs.' Reply, ECF No. 32.

## II.   LEGAL STANDARD

### A.  Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court dismisses a case under Rule 12(b)(1) for lack of subject-matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers," *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citation omitted), so

4

"[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). In ruling on a 12(b)(1) motion, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (citation omitted). A court should "consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161 (citation omitted).

### B.  Rule 12(b)(6)

A defendant may file a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). Courts are not bound to accept legal

conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

"When a complaint fails to adequately state a claim, such deficiency should be 'exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435, 443 (W.D. Tex. 2013) (quoting *Twombly*, 550 U.S. at 558). Courts should, however, give the plaintiff at least one chance to amend a complaint before dismissing the action with prejudice. *Id.* (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

## III.   ANALYSIS

Defendants make several threshold challenges to Plaintiffs' claims. *See* Defs.' Mot. 15–27, ECF No. 20. The Court addresses each of these before analyzing Plaintiffs' claims under Rule 12(b)(6).

### A.  Jurisdiction and Affirmative Defenses

#### i.  Standing

The Constitution of the United States limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., art. III, § 2. A principal idea underlying Article III's case-or-controversy requirement is the doctrine of standing. *See Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). "Every party that comes before a federal court must establish that it has standing to pursue its claims." *Id.* "The doctrine of standing asks 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Id.* (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)).

6

The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Supreme Court has established that the "irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . traceable to the challenged action of the defendant . . . .'" *Id.* (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43, 96). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Defendants challenge Plaintiffs' standing on three piecemeal grounds: (1) Religious-Objector Plaintiffs' standing; (2) Free-Market Plaintiffs' standing; and (3) all Plaintiffs' standing to challenge anything besides the Contraceptive and PrEP Mandates. *See* Defs.' Mot. 15–22, ECF No. 20. The Court addresses each in turn.

### 1. Religious-Objector Plaintiffs and the Contraceptive Mandate

Defendants submit that the Religious-Objector Plaintiffs lack standing to challenge the Contraceptive Mandate for want of injury in fact, traceability, and redressability. *See* Defs.' Mot. 16, ECF No. 20. First, Defendants assert that these Plaintiffs cannot show an injury in fact, because, as Plaintiffs admit, Defendants are permanently enjoined from enforcing the Contraceptive Mandate against any religious objector under this Court's ruling in *DeOtte*. *See id.* Second,

7

Defendants argue that traceability cannot be shown because the alleged injury is the result of independent choices of what types of coverage and plans to provide by insurers who are not parties to this suit. *See id.* at 17. Third, Defendants argue that Plaintiffs cannot show that their claims are likely to be redressed by a favorable decision here because the *DeOtte* injunction has already freed insurers to offer health insurance without contraceptive coverage, though insurers have, nevertheless, declined to do so. *See id.* at 18–19.

Plaintiffs first concede "that Braidwood is no longer suffering an injury in fact from the continued enforcement of the Contraceptive Mandate." Pls.' Resp. 6, ECF No. 24. Plaintiffs argue that the rest of the Religious-Objector Plaintiffs have demonstrated injury, traceability, and redressability to bring their Contraceptive-Mandate claim. *See id.* at 6–12. Plaintiffs argue that, even though the Religious-Objector Plaintiffs are protected by the *DeOtte* injunction, they continue to suffer injury because few, if any, insurance companies are currently offering contraceptive-free policies. *See id.* at 7. The reason for this, Plaintiffs claim, is the continued application of the Contraceptive Mandate to policies available to the rest of consumers who do not hold similar religious objections. *See id.* In other words, the Contraceptive Mandate makes it financially unappealing for insurers to offer contraceptive-free policies, thus, reducing, if not eliminating, contraceptive-free health-insurance policies available on the market. *See id.* Plaintiffs also argue that this injury is directly traceable to Defendants' continued enforcement of the Contraceptive Mandate, as before the Contraceptive Mandate, contraceptive-free policies were available on the open market. *See id.* at 9–10. For this reason, Plaintiffs assert that a blanket injunction against enforcement of the Contraceptive Mandate is likely to redress the injury they allege. *See id.* at 11–12.

The Religious-Objector Plaintiffs have sufficiently alleged an injury to give them standing

in this case. "[A]llegations of injury that is merely conjectural or hypothetical do not suffice to confer standing;" however, at this stage, "allegations of injury are liberally construed." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citation omitted). As relevant here, government regulations that reduce the availability of goods or services in the marketplace can be sufficient to establish injury in fact for standing purposes. *See, e.g.*, *Orangeburg, South Carolina v. FERC*, 862 F.3d 1071, 1078 (D.C. Cir. 2017) (reduced availability of wholesale power); *Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1281, (D.C. Cir. 2012) (thimerosal-free vaccines); *Consumer Fed'n of Am. v. FCC*, 348 F.3d 1009, 1011–12 (D.C. Cir. 2003) (high-speed internet); *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 112–13 (D.C. Cir. 1990) (larger vehicles); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 793 F.2d 1322, 1332–34 (D.C. Cir. 1986) (fuel-efficient vehicles). In *Orangeburg*, that court made clear that "[t]he lost opportunity to purchase a desired product is a cognizable injury . . . ." 862 F.3d at 1078. The injury in fact here is Plaintiffs' inability or reduced ability to purchase health insurance free of contraception products that violate their sincere religious beliefs. This is sufficient for standing.

The Religious-Objector Plaintiffs have also sufficiently alleged that the injury is traceable to the Defendants and would be redressed by a favorable decision here. *See Lujan*, 504 U.S. at 560–61. Plaintiffs' ongoing injury is directly tied to Defendants' continued enforcement of the Contraceptive Mandate. This makes sense: the Contraceptive Mandate is not called the Contraceptive Suggestion precisely because not all insurers provided contraceptive coverage before the Mandate. Defendants' argument that any injury shown is attributable to the decisions

9

of independent insurers is of no moment because the Religious-Objector Plaintiffs need only show that Defendants' conduct caused *some portion* of the alleged injury. *See Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 n.8 (3d Cir. 1990). If the Contraceptive Mandate was enjoined altogether, Plaintiffs' plausibly allege that supply in the insurance market would return to its pre-ACA conditions to meet demand for policies that do not cover these products. Construing the pleadings in the light most favorable to Plaintiffs, as the Court must at this stage, *see Warth*, 422 U.S. at 501, the Religious-Objector Plaintiffs have sufficiently alleged injury, traceability, and redressability; therefore, they have standing to bring their claims.

Because the Religious-Objector Plaintiffs have standing to bring their claim, Defendants' Motion to Dismiss the Religious-Objector Plaintiffs' challenge to the Contraceptive Mandate for lack of standing is **DENIED**.

### 2. Free-Market Plaintiffs

Defendants submit that the Free-Market Plaintiffs lack standing to bring any of their claims because they only object to the Contraceptive Mandate and have not sufficiently alleged that they are harmed by any other Mandate. *See* Defs.' Mot. 19–21, ECF No. 20. Defendants maintain that the Free-Market Plaintiffs' "cost increase theory" is speculative and is not a redressable injury sufficient to confer standing. *See id.* at 8. Plaintiffs respond that, first, the Free-Market Plaintiffs object to all of the Mandates issued after March 23, 2010, including the Contraceptive Mandate. *See* Pls.' Resp. 12, ECF No. 24 (citing Am. Compl. 9–10, ECF No. 14). Beyond that, Plaintiffs contend that, while the basis for the objections is different, the Free-Market Plaintiffs are suffering the same injury as the Religious-Objector Plaintiffs: "The inability (or reduced ability) to purchase a desired product or service." *See* Pls.' Resp. 13, ECF No. 24. According to Plaintiffs, the inability to obtain insurance that excludes coverage of some or all of the government-mandated preventive

10

care is an injury akin to state restrictions on abortion access, which courts have regularly found sufficient for standing. *See id.* (citing *Roe v. Wade*, 410 U.S. 113, 124–25 (1973)). Additionally, they argue that their allegation of increased cost for health insurance must be accepted as true at the motion-to-dismiss stage. *See id.* at 13–14.

The Free-Market Plaintiffs have standing to bring suit. Similar to the Religious-Objector Plaintiffs, these Plaintiffs have alleged that it is impossible for them to purchase health insurance free of contraceptives and other products they do not want or need as a result of the Provisions. *See* Am. Compl. 9–11, ECF No. 14. While this is the same alleged injury as the Religious-Objectors, the reason for the harm is different: the Free-Market Plaintiffs object to paying higher prices for health insurance that provides coverage they do not wish to purchase. This type of economic injury involving compulsion to purchase a product or service is sufficient to show that the Free-Market Plaintiffs have suffered an injury in fact. *See Orangeburg*, 862 F.3d at 1077 ("Orangeburg suffered an injury-in-fact because it cannot purchase wholesale power *on its desired terms*."); *Texas v. United States*, 945 F.3d 355, 380 (5th Cir. 2019) ("In this context, being required to buy something that you otherwise would not want is clearly within the scope of what counts as a 'legally cognizable injury.' 'Economic injury' of this sort is 'a quintessential injury upon which to base standing.'" (quoting *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006)). The Free-Market Plaintiffs have sufficiently alleged injury, traceability, and redressability; therefore, they have standing to bring their claims.

Because the Free-Market Plaintiffs have standing to bring their claims, Defendants' Motion to Dismiss all of the Free-Market Plaintiffs' claims for lack of standing is **DENIED**.

### 3. All Plaintiffs' Challenges to the Mandates other than the Contraceptive Mandate and PrEP Mandate

Finally, Defendants argue that, even if the Court disagrees on the first two standing

arguments, Plaintiffs' alleged injuries, and thus standing, are limited to the Contraceptive Mandate and PrEP Mandate because no Plaintiff has articulated any injury resulting from any other Mandate. *See* Defs.' Mot. 21–22, ECF No. 20. Plaintiffs respond that they sufficiently allege injury from "other preventive-care coverage" that they do not want or need—for example, free STD testing—and that requiring insurers to include that coverage results in more expensive health insurance plans. *See* Pls. Resp 14–15, ECF No. 24 (citing Am. Compl. 7–13, ECF No. 14).

Because the Court concludes that the economic harm alleged is, alone, an injury sufficient to confer standing to challenge any Mandate issued pursuant to the Provisions, the Court rejects Defendants' argument. All Plaintiffs have sufficiently alleged injury, traceability, and redressability and, thus, have standing to bring their claims. Accordingly, Defendants' Motion to Dismiss Plaintiffs' challenges to the Mandates other than the Contraceptive Mandate and PrEP Mandate for lack of standing is **DENIED**.

### ii. Res Judicata

Defendants next argue that res judicata, or claim preclusion, bars the Religious-Objectors' challenges to the Contraceptive Mandate because this Court's injunction in *DeOtte* already precludes the Contraceptive Mandate from being applied to the Religious-Objector Plaintiffs. *See* Defs.' Mot. 22–25, ECF No. 20. Specifically, Defendants contend that the Religious-Objector Plaintiffs are, at a minimum, in privity with the *DeOtte* class members,[3] the judgment was rendered by a court of competent jurisdiction (this one), this first action concluded with a final judgment on the merits, and the same claim or cause of action is involved in both suits. *See id.* at 23. For these reasons, Defendants argue the elements of res judicata are met. *See id.* (citing *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000)).

---

[3] No party has indicated that any of the named Religious-Objector Plaintiffs in this case have opted out of the class established in *DeOtte* or are otherwise not protected by the injunction issued in that case.

Plaintiffs only dispute the fourth element of res judicata, arguing that this is not the same claim or cause of action asserted in *DeOtte*. *See* Pls.' Resp. 15, ECF No. 24. Plaintiffs contend that the Supreme Court's decision in *Whole Woman's Health v. Hellerstedt* forecloses Defendants' res judicata argument. *See id.* at 16. According to Plaintiffs, "*Hellerstedt* holds that res judicata applies only when the same parties seek to relitigate 'the very same claim.'" *See id.* (citing *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016). This is not "the very same claim," Plaintiffs argue, because, while the *DeOtte* class members challenged the agency rules, the Plaintiffs here are challenging the constitutionality of the Provisions themselves. *See* Pls.' Resp. 11, ECF No. 24. Even aside from *Hellerstedt*, Plaintiffs argue that their claims are not barred by res judicata because the current claims do not arise out of the "same nucleus of operative facts." *See id.* at 18–19. While the claims in *DeOtte* challenged only the behavior of executive-branch officials in enforcing the Contraceptive Mandate, these claims, it is argued, challenge the constitutionality of section 300gg-13(a)(4). *See id.* at 19.

Res judicata precludes relitigation of claims that have been fully adjudicated or claims that arise out of the same subject matter and could have been litigated in the prior action. *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983) (en banc). Claim preclusion has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (citation omitted). To determine whether these are the same claims, the Court considers whether they share a "common nucleus of operative facts" with the claims in the prior litigation. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004).

13

The Court holds that res judicata bars the Religious-Objector Plaintiffs' Contraceptive Mandate challenge here. The crux is whether the current claim is merely a different *theory* upon which to bring the same challenge as the one in *DeOtte* or a different *claim or cause of action* altogether. If the Religious-Objector Plaintiffs' are simply attempting to use a novel legal theory or seek a different remedy to relitigate the same facts, their claim must be barred. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 522 (5th Cir. 2016); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Res judicata operates to bar the Religious-Objector Plaintiffs' Contraceptive Mandate claim because it involves the same nucleus of operative facts and could have been brought in the original suit in *DeOtte*. *See* 393 F. Supp. 3d at 498–99. Despite Plaintiffs' claims to the contrary, the Religious-Objector Plaintiffs here (1) challenge the same statutory provision; and (2) allege the same injury as the *DeOtte* class.

Plaintiffs are incorrect that their challenge to the agency rulemaking in *DeOtte* is separate and distinct from their challenge to section 300gg-13(a)(4) here. *DeOtte* involved a challenge to the agency's implementation of the Contraceptive Mandate pursuant to section 300gg-13(a)(4). *See* 393 F. Supp. 3d at 501. Here, Plaintiffs challenge the constitutionality of the statute itself. *See* Am. Compl. 13–20, ECF No. 14. As lawyers love to say, this is a distinction without a difference. Regardless of the legal theory upon which the challenge rests, the Religious-Objector Plaintiffs here bring another challenge to the same requirement they claim has caused them injury: the Contraceptive Mandate. "It is black-letter law that res judicata . . . bars all claims that were or *could have been advanced* in support of the cause of action on the occasion of its former adjudication." *Nilsen*, 701 F.2d at 560. The *DeOtte* class members could have brought the present challenge to the constitutionality of section 300gg-13(a)(4) itself in that case. For this reason, the challenged provision here is neither "separate" nor "distinct" from the one brought in *DeOtte*.

14

Second, the alleged injury here is the same as the injury alleged in *DeOtte*. A different alleged harm is one indication the case may not arise out of the same nucleus of operative facts. *See Agrilectric Power Partners v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994). In *DeOtte*, the class members alleged harm from being forced to purchase insurance that violated their sincere religious beliefs by the inclusion of contraceptive coverage or else foregoing health insurance altogether. *See* 393 F. Supp. 3d at 498–99. The same is true here. The fact that the Religious-Objector Plaintiffs frame the injury as the continued operation of the Contraceptive Mandate on the rest of the market even after the *DeOtte* injunction does not change the actual injury alleged: the inability to find any insurer willing to offer contraceptive-free policies. *See* Am. Compl. 8, ECF No. 14. And the remedy the Religious-Objector Plaintiffs seek to cure this ongoing injury is an injunction barring enforcement of the Contraceptive Mandate. *See id.* As alleged, this injury is no different than the one suffered by and remedied for the *DeOtte* class, therefore, the Religious-Objector Plaintiffs could have brought their current claim there, and the current challenge to the Contraceptive Mandate arises out of the same nucleus of operative facts. *See Singh*, 428 F.3d at 571.

While Plaintiffs correctly note that the Supreme Court in *Hellerstedt* appeared to alter the traditional res judicata test for cases involving "important human values," the Court does not read that language to change the analysis here. *Hellerstedt*, 136 S. Ct. at 2305–06 (citing Restatement (Second) of Judgments §24, Comment f (1980)). The *Hellerstedt* Court held that res judicata did not bar that suit due to a change in facts that produced an undue burden on the plaintiffs which had not occurred at the time of the first suit. *Id.* at 2305–06, 2310–18. In so holding, the Supreme Court exclusively referenced cases where facial challenges to a statute were first unsuccessful, there was a change in the intervening facts, and then a subsequent, as-applied challenge to the same law

succeeded. *Id.* at 2305–06. ("When individuals claim that a particular statute will produce serious constitutionally relevant adverse consequences before they have occurred—and when the courts doubt their likely occurrence—the factual difference that those adverse consequences have in fact occurred can make all the difference."). Even acknowledging that the current case involves important human values, this is different from the situation here. In *DeOtte*, the class members were successful in enjoining enforcement of the Contraceptive Mandate against them. As noted above, the injury the Religious-Objector Plaintiffs claim here remains the same as the *DeOtte* class members: the unavailability of insurance plans that do not violate their sincere religious beliefs due to coverage that includes contraception. As my distinguished colleague in Amarillo notes in a similar case, the appropriate remedy, then, is for the Religious-Objectors to seek a modification to the *DeOtte* injunction. *See Leal v. Azar*, No. 2:20-cv-185-Z, 2020 WL 7672177, at *12 (N.D. Tex. Dec. 23, 2020) (Kacsmaryk, J.) (citing *LULAC v. City of Boerne*, 659 F.3d 421, 436 (5th Cir. 2011) and *United States v. Lawrence Cnty. Sch. Dist.*, 799 F.2d 1031, 1046 (5th Cir. 1986)).

For these reasons, res judicata bars the Religious-Objector Plaintiffs' challenge to the Contraceptive Mandate, and Defendants' Motion to Dismiss the Religious-Objector Plaintiffs' challenge to the Contraceptive Mandate is **GRANTED**.

### iii. Limitations

Defendants also contend that Plaintiffs' constitutional and statutory-interpretation claims are time-barred under 28 U.S.C. § 2401(a) and 28 U.S.C. § 1658(a). *See* Defs.' Mot. 25–27, ECF No. 20. The first provision bars any constitutional challenges against the United States after six years have passed since the right of action first accrues. *See id.* at 26. The second provides a four-year statute of limitations for "civil action[s] arising under an Act of Congress." *See id.* at 27 (quoting 28 U.S.C. § 1658(a)). Defendants assert that the right of action could "have accrued no

16

later than the date that the HRSA guidelines including the Contraceptive Mandate first took effect," which was eight years ago. *See id.* at 27.

Plaintiffs argue that these statutes of limitations are simply inapplicable to claims that seek prospective relief for ongoing constitutional and statutory violations. *See* Pls.' Resp. 19–21, ECF No. 24. According to Plaintiffs, Defendants cite no authority supporting their limitations argument. *See id.* at 20. Plaintiffs argue that their claims continually accrue so long as Defendants persist in enforcing unconstitutional statutes and *ultra vires* agency rules in a way that harms Plaintiffs. *See id.*

The Court holds that the statutes of limitations cited by Defendants do not serve to bar Plaintiffs' constitutional and statutory-interpretation claims here. "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Additionally, "a civil action arising under an Act of Congress . . . may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). "The accrual of a cause of action means the right to institute and maintain a suit . . . ." *In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997). The default rule is that a cause of action accrues at the time of a plaintiff's injury. *See Helton v. Clements*, 832 F.2d 332, 334–35 (5th Cir. 1987).

The limitations dispute boils down to when the right of action here accrued. Generally, when agency action is challenged, the "cause of action accrues when all statutorily required or permitted agency review has been exhausted." *Impro Prods., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983). However, when no formal review procedures exist, the cause of action accrues when the agency action occurs. *Id.* at 850–51; *see also Knox v. Davis*, 260 F.3d 1009, 1017 n.3 (9th Cir. 2001) (Schwarzer, J., dissenting) ("It surely would not be said that the statute of

17

limitations runs from the adoption of the regulation rather than from its application in particular cases."). When, as here, the challenged action is ongoing, the cause of action continues to accrue along with the allegedly unconstitutional conduct that gives rise to the plaintiff's injury and cannot be insulated by a statute of limitations. *See, e.g.*, *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 867 (5th Cir. 1993); *Kuhnle Brothers, Inc. v. Cnty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997); *cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968); *Brown v. Bd. of Educ.*, 347 U.S. 483, 495 (1954). Because Plaintiffs allege ongoing constitutional and statutory violations continuing to harm them, their claims are not time-barred.

Plaintiffs' constitutional and statutory-interpretation claims are not barred by the statutes of limitations. Accordingly, Defendants' Motion to Dismiss Plaintiffs constitutional and statutory-interpretation claims as time-barred is **DENIED**.

### B. Rule 12(b)(6) Analysis

#### i. Statutory-Interpretation Claim

Plaintiffs make a statutory-interpretation claim that, if correct, means the Court would not need to decide their constitutional claims. *See* Am. Compl. 22–24, ECF No. 14. Because reaching Plaintiffs' constitutional claims are dependent on resolution of their statutory-interpretation claim, the Court addresses it first. Defendants argue that Plaintiffs fail to state a claim upon which relief may be granted for their statutory-interpretation claim. *See* Defs.' Mot. 36–41, ECF No. 20. Defendants take issue with Plaintiffs' claim that the references to "current" standards and those "in effect" in the Provisions must, as a matter of statutory interpretation, be interpreted to refer to the recommendations that existed at the time of the ACA's passing. *See id.* at 36. Defendants first contend that, had Congress wanted those terms to be retrospective, it would have said so. *See id.*

18

at 37. Additionally, statutory terms used in the present tense also include the future tense under 1 U.S.C. § 1. *See id.* Defendants argue that this is confirmed by looking at the rest of section 300gg-13. *See id.* Section 300gg-13(a)(5), which immediately follows the challenged Provisions here, provides that "the current recommendations of the [PSTF] regarding breast cancer screening, mammography, and prevention shall be considered the most current other than those issued in or around November 2009." 42 U.S.C. § 300gg-13(a)(5). By specifically referencing the November 2009 recommendations, Congress was implying that the November 2009 recommendations would eventually not be the "current" recommendations once the PSTF issued new ones pursuant to section 300gg-13(a)(5). *See* Defs.' Mot. 37, ECF No. 20. Additionally, the text of the adjacent section 300gg-13(b) lays out timing rules on when future recommendations and guidelines can take effect under the first three Provisions (sections 300gg(a)(1)–(3). *See id.* at 38. Defendants argue that, to accept Plaintiffs' temporal interpretation would necessarily render other provisions of the ACA nonsensical. *See id.* at 39–40. Finally, Defendants argue that, even if the Court finds the text ambiguous, the agencies have permissibly interpreted them to incorporate later-enacted recommendations and are entitled to *Chevron* deference. *See id.* at 40–41.

In response, Plaintiffs agree that the most natural reading of the Provisions incorporates the agencies' *future* ratings, recommendations, and guidelines, not only those in place at the time of the ACA's enactment. *See* Pls.' Resp. 35–36, ECF No. 24. However, Plaintiffs contend that interpreting them this way presents serious constitutional problems for the Provisions, and the canon of constitutional avoidance "allows courts to adopt unnatural or unplausible interpretations of statutory language, so long as the contrary interpretation would present a serious constitutional question." *See id.* at 35. In Plaintiffs' view, all they need allege at this stage is (1) their proposed interpretation of the statute is possible; and (2) there are constitutional problems with the statute

serious enough to trigger the canon of constitutional avoidance. *See id.* at 35–36.

The Court holds that Plaintiffs fail to state a claim upon which relief may be granted for their statutory-interpretation challenge. Questions of statutory interpretation begin and end, as they must, with the text itself. *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013). If the plain meaning of the text is clear, the judge's job is finished. *In re Nowlin*, 576 F.3d 258, 261 (5th Cir. 2009). "Our starting point is the 'plain and common meaning of the statute's words [, and i]f a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning.'" *Dalfrey v. Boss Hoss Cycles, Inc.*, 456 F. App'x 329, 332 (5th Cir. 2011) (quoting *Texas v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)); *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019). Only if the text is ambiguous should courts consider rules of construction or other interpretive aids, such as the canon of constitutional avoidance.[4] *See Thomas v. Reeves*, 961 F.3d 800, 820 (5th Cir. 2020) (Willett, J., concurring). "A statute is ambiguous if it is susceptible of more than one *accepted* meaning." *United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 146 (5th Cir. 1996) (emphasis added). "We must read the statute as a whole, so as to give effect to each of its provisions without rendering any language superfluous." *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 397 (5th Cir. 2006), *cert. denied*, 549 U.S. 1205 (2007).

The text of the Provisions is not ambiguous when read in context. Section 300gg-13(a) provides,

> A group health plan and a health insurance issuer offering group or individual
> health insurance coverage shall, at a minimum provide coverage for and shall not
> impose any cost sharing requirements for—

---

[4] "Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems. But a court relying on that canon still must *interpret* the statute . . . ." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018).

(1) evidence-based items or services that **have in effect** a rating of "A" or "B" **in the current recommendations** of the United States Preventive Services Task Force;

(2) immunizations that **have in effect a recommendation** from the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention with respect to the individual involved; and

(3) with respect to infants, children, and adolescents, evidence-informed preventive care and screenings **provided for in the comprehensive guidelines** supported by the Health Resources and Services Administration.

(4) with respect to women, such additional preventive care and screenings not described in paragraph (1) **as provided for in comprehensive guidelines** supported by the Health Resources and Services Administration for purposes of this paragraph.

42 U.S.C. § 300gg-13(a) (emphasis added). Plaintiffs suggest that the temporal language emphasized above can be interpreted to mean only those recommendations and guidelines that were in effect at the time of the ACA's enactment. *See* Pls.' Resp. 35–36, ECF No. 24.

The Court disagrees. First, the United States Code provides that, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words used in the present tense include the future as well as the present." 1 U.S.C. § 1. With this in mind, unless the context indicates otherwise, the Provisions above must be read to require those preventive health services that "have [*or will have*] in effect" a rating or recommendation, 42 U.S.C. § 300gg-13(a)(1)–(2), and preventive care and screenings that "[are *or will be*] provided for" in comprehensive guidelines. 42 U.S.C. § 300gg-13(a)(3)–(4).

Second, "[t]he meaning of statutory language, plain or not, depends on context." *Collins v. Mnuchin*, 938 F.3d 553, 577 (5th Cir. 2019). The context here not only fails to "indicate otherwise," 1 U.S.C. § 1, it actually confirms Defendants' interpretation of the Provisions. The same section of the statute requires the HHS Secretary to "establish a minimum interval between

the date on which a recommendation described in subsection (a)(1) or (a)(2) or a guideline under subsection (a)(3) is issued and the plan year with respect to which the requirement described in subsection (a) is effective with respect to the service described in such recommendation or guideline." 42 U.S.C. § 300gg-13(b)(1). It then specifies that the minimum interval allowed is one year. *See* 42 U.S.C. § 300gg-13(b)(2). The only way section 300gg-13(b) makes any sense is if the guidelines and recommendations of section 300gg-13(a) are prospective and subject to change. Otherwise, Congress could have simply stated that no insurer be required to implement the guidelines and recommendations in place at the time of the ACA's enactment until one year later. Additionally, at the time of the ACA's enactment, the "comprehensive guidelines" described in section 300gg-13(a)(4) did not yet exist. *See* Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act, 75 Fed. Reg. 41726, 41728 ("The Department of HHS is developing these guidelines and expects to issue them no later than August 1, 2011."). Reading the Provisions as a whole reveals the statute's dictate is for insurers to cover those preventive-care services currently recommended *at the time of an insurer applying the mandate*, not those in place at the time of the statute's enactment.

The Plaintiffs' proposed interpretation is also not demanded by the Supreme Court's decision in *Carcieri v. Salazar*, in which the Supreme Court had to interpret a phrase in the Indian Reorganization Act that referred to "any recognized Indian tribe *now under Federal jurisdiction*." 555 U.S. 379, 395 (2009). There, the statutory language included a specific date that anchored the word "now" to the time of the statute's enactment. *See* 25 U.S.C. § 5129. Because of the statute's context, the Supreme Court held that the statute was unambiguous and referring only those Indian tribes under federal jurisdiction in 1934. *See Carcieri*, 555 U.S. at 395.

In context here, the statutory language refers to recommendations that, by the design of the Provisions and incorporation of the evolving standards issued by the PSTF, ACIP, and HRSA, would necessarily change in the future. As Justice Kavanaugh recently put it, "[P]roper statutory interpretation asks 'how a reasonable person, conversant with the relevant social and linguistic conventions, would read the text in context. This approach recognizes that the literal or dictionary definitions of words will often fail to account for settled nuances or background conventions that qualify the literal meaning of language and, in particular, of legal language.'" *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1825 (2020) (Kavanaugh, J., dissenting) (quoting John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2392–93 (2003)). Plaintiffs' interpretation represents a hyper-literal reading, as opposed to the ordinary, contextual reading of the statutory provisions here. While Plaintiffs lay out a grammatically *possible* construction of these phrases, this is not a *plausible* or *accepted* reading of these terms. *See Perry*, 102 F.3d at 146–47. Because the Court holds that Plaintiffs have failed to demonstrate a prima facie case that the Provisions are ambiguous, there is no cause to consider the application of the constitutional avoidance canon.[5]

The Court holds that Plaintiffs fail to state a claim upon which relief may be granted for their statutory-interpretation challenge. For these reasons, Defendants' Motion to Dismiss Plaintiffs' statutory-interpretation claim is **GRANTED**.

### ii.  Appointments-Clause Claim

Defendants next argue that Plaintiffs fail to state a claim upon which relief may be granted for violation of the Appointments Clause. *See* Defs.' Mot. 27–33, ECF No. 20. Defendants offer three reasons to support this argument: "(1) they have forfeited any such claim by failing to raise

---

[5] "This is a *substantive* canon of construction, like the rule of . . . constitutional avoidance (that statutory language should be given a saving construction). . . . As the Supreme Court has repeatedly made clear, most recently a few months ago, substantive canons of construction are not applied at the outset of textual inquiry." *Thomas*, 961 F.3d at 820 (citing *Shular v. United States*, 140 S. Ct. 779, 787 (2020)).

it before the agencies; (2) any putative defect in the appointments of the HRSA Administrator and the members of the ACIP has been resolved through ratification by an Officer of the United States; and (3) neither PSTF nor ACIP members must be appointed pursuant to the Appointments Clause." *See id.* at 27. First, Defendants contend Plaintiffs were required to first bring their Appointments Clause challenge to the Provisions in the many agency rulemakings implementing the provisions from 2010 to the present. *See id.* at 27–29. Defendants assert that Plaintiffs are challenging specific requirements made pursuant to the HRSA's guidelines and the PSTF's recommendations, not the enabling statute in the abstract. *See* Defs.' Reply, 11, ECF No. 32. Because Plaintiffs failed to raise those challenges with the agencies, Defendants argue Plaintiffs have forfeited this claim. *See* Defs.' Mot 28, ECF No. 20.

Second, Defendants argue that any defects in appointment were subsequently cured by the HHS Secretary's ratification through agency rulemaking. *See id.* at 29. This is because, according to Defendants, the repeated actions of multiple HHS Secretaries to promulgate regulations implementing the Provisions ratified the regulations, thus curing any defect in the appointment of the HRSA Administrator. *See id.* They argue the same is true for all recommendations made by the ACIP, as they were ratified by the Director of the Centers for Disease Control and Prevention. *See id.* at 30.

Third, Defendants argue that, under Fifth Circuit precedent, "members of the PSTF and members of ACIP are not 'Officers of the United States' requiring [Presidential] appointment," because they do not have a "continuing and formalized relationship of employment with the United States Government." *See id.* at 31–33 (citing *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 757 (5th Cir. 2001)). In the alternative, Defendants argue that "even if members of ACIP were federal officers, they are appointed by the Secretary of HHS, who as a department head has the

authority to appoint inferior officers" under 42 U.S.C. § 217a.  Defs.' Mot. 31 n.10, ECF No. 20.

Finally, Defendants present examples of other recommendations made by outside bodies that are incorporated by reference into federal law. *See* Defs.' Mot. 33, ECF No. 20. They argue that Plaintiffs' position is absurd, as it would allow Congress to constitutionally incorporate expert standards into federal law, but only if those outside bodies ("like state governments, foreign governments, [and] nongovernmental organizations") are not associated with the federal government in any way. *See* Defs.' Reply 15, ECF No. 32.

Plaintiffs reject each of Defendants' arguments. *See* Pls.' Resp. 21, ECF No. 24. First, Plaintiffs argue that they bring constitutional challenges to an Act of Congress, not a petition for review of an agency rulemaking or adjudication. *See id.* Plaintiffs contend that Defendants do "not cite a single case that enforces an agency-exhaustion requirement when a plaintiff sues to enjoin the continued enforcement of an allegedly unconstitutional statute." *See id.* at 22. Next, Plaintiffs argue that Defendants' ratification argument fails because neither the HHS Secretary nor any agency head is given authority to reject the recommendations of the PSTF, HRSA, and ACIP in implementing them. *See id.* at 22–23. Because the recommendations are mandatory, those committees are exercising "significant authority" in violation of the Appointments Clause. *See id.* at 23. Plaintiffs argue that this would be the case even if that power enabled them to dictate preventive care that private insurers must cover until an officer of the United States ratified it. *See id.*

Plaintiffs rebut Defendants' claims that the members of the PSTF and ACIP cannot qualify as "officers of the United States" because they lack a "a continuing and formalized relationship of employment with the United States government." *See id.* (quoting Defs.' Mot. 23, ECF No. 20). Plaintiffs submit that this argument of Defendants is not supported by Supreme Court case law,

and the Office of Legal Counsel has explicitly rejected it. *See id.* at 24 (citing *Officers of the United States Within the Meaning of the Appointments Clause*, 31 Op. Off. Legal Counsel 73, 78 (Apr. 16, 2007)). Plaintiffs acknowledge the Fifth Circuit's holding in *Riley* requiring employment with the United States Government to qualify as an officer for purposes of the Appointments Clause; however, Plaintiffs ask the Court to "hold that an individual has a 'formalized relationship of employment with the United States government' under *Riley* whenever he 'occupies a continuing position established by law'—regardless of whether he receives payment or emoluments for his work." Pls.' Resp. 26–27, ECF No. 24.

Finally, Plaintiffs address Defendants' brief alternative argument that, even if the ACIP members were officers of the United States, they are properly appointed inferior officers by the HHS Secretary under 42 U.S.C. § 217a. *See id.* at 29–30. First, Plaintiffs argue that the ACIP no longer qualifies as an advisory council under section § 217a, because the ACA made their recommendations mandatory. *See id.* at 29. Second, Plaintiffs argue that anyone "appointed pursuant to section 217a is, by definition, a non-officer of the United States who holds a purely 'advisory' role." *Id.* at 30. Third, Plaintiffs contend that the ACIP members cannot be inferior officers because their recommendations are conclusive and final. *See id.*

The Court holds that Plaintiffs have sufficiently pleaded their Appointments-Clause claim. "The Appointments Clause prescribes the exclusive means of appointing 'Officers.' Only the President, a court of law, or a head of department can do so." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (citing U.S. Const. art. II, § 2). The Supreme Court has determined that, to be an officer, one must occupy a "continuing position established by law" and exercise "significant authority pursuant to the laws of the United States." *See id.* (citing *United States v. Germaine*, 99 U.S. 508, 511 (1878); *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)). "[T]he constitutional definition of an

'officer' encompasses, at a minimum, a continuing and formalized relationship of employment with the United States Government." *Riley*, 252 F.3d at 757.

First, the Court rejects Defendants' waiver argument. While an Appointments-Clause challenge can be waived if a plaintiff does not first raise it at the administrative level, this is only true when a court is sitting in *review* of administrative proceedings below and, even then, is not absolute. *See Freytag v. Comm'r*, 501 U.S. 868, 878–79 (1991). By not challenging agency rulemaking or another administrative procedure, Plaintiffs have not waived their claim challenging the constitutionality of the PSTF, ACIP, and HRSA under the ACA.

Plaintiffs' Appointments-Clause claim turns on whether the members of the PSTF, ACIP, and HRSA are "officers" of the federal government. Because these members were not appointed by the President and confirmed by the senate, if the authority conveyed to them under the Provisions makes them officers of the federal government, then that grant of authority is unconstitutional. *Lucia*, 138 S. Ct. at 2051. Plaintiffs have stated a plausible claim that the binding nature of the recommendations issued by the PSTF, ACIP, and HRSA convert them from purely advisory committees into officers exercising "significant authority pursuant to the laws of the United States." *Buckley*, 424 U.S. at 126. In drawing comparisons of these panels to the American National Standards Institute and recommendations made pursuant to the Provisions to criminal offenses incorporated into federal statutes, Defendants fail to demonstrate how those comparisons are analogous in the context of an Appointments-Clause challenge, which is a separation-of-powers issue. None of the examples cited by Defendants present the same kinds of lateral, separation-of-powers concerns among the co-equal branches of government that Plaintiffs have pleaded in this case.

Likewise, Defendants' ratification argument does not defeat Plaintiffs' Appointments-

Clause claim at this stage. Defendants assert that any possible Appointments-Clause problem with the Contraceptive Mandate has been subsequently ratified by HHS Secretaries through promulgation of agency rules, and any problem with the ACIP recommendations has been subsequently ratified by the CDC Directors. *See* Defs.' Mot. 29–30, ECF No. 20. "Ratification occurs when a principal sanctions the prior actions of its purported agent." *Doolin Sec. Sav. Bank, F.S.B. v. Off. of Thrift Supervision*, 139 F.3d 203, 212 (D.C. Cir. 1998) (citing *Restatement (Second) of Agency* § 82 (1958)), *superseded by statute on other grounds*, Federal Vacancies Reform Act of 1998, Pub. L. No. 105-277, 112 Stat. 2681 (1998) (codified at 5 U.S.C. §§ 3345 to 3349d). In this context, courts have recognized that "ratification can remedy a defect arising from the decision of an improperly appointed official." *Jooce v. FDA*, 981 F.3d 26, 28 (D.C. Cir. 2020). But Defendants' ratification argument begs the question. If the recommendations of the committees are no longer advisory under the Provisions, a principal is not able to "sanction" the prior actions, as all discretion has been removed from the agency or department head and placed with the committee members.

Finally, Defendants argue that, if the members of the ACIP are officers, they are inferior officers properly appointed by the HHS Secretary pursuant to the Appointments Clause[6] and 42 U.S.C. § 217a. *See* Defs.' Mot. 31 n.10, ECF No. 20. While section 217a vests the HHS Secretary with the authority to "appoint such advisory councils or committees . . . as he deems desirable . . . for the purpose of advising him in connection with any of his functions," the crux of Plaintiffs' Appointments-Clause claim is that the ACIP ceased to function in an advisory capacity the moment the Provisions gave the ACIP's recommendations the binding force of law. *See* Am. Compl. 14, ECF No. 14. Because the Court holds that Plaintiffs have adequately alleged that the

---

[6] "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2.

recommendations of the ACIP are no longer advisory, Defendants' inferior-officer argument does not merit dismissal of this portion of Plaintiffs' claim.

Because Plaintiffs have sufficiently pleaded their Appointments-Clause claim, Defendants' Motion to Dismiss Plaintiffs' Appointments-Clause claim is **DENIED**.

### iii.  Vesting-Clause Claim

For similar reasons to their Appointments-Clause argument, Defendants argue that Plaintiffs fail to state a claim upon which relief may be granted for violation of the Vesting Clause in the grant of authority to the PSTF. *See* Defs.' Mot. 33–34, ECF No. 20. According to Defendants, the PSTF's recommendations are not exercises of executive or legislative power, as Plaintiffs contend. *See id.* Rather, they are merely evolving, "evidence-based" scientific standards that Congress chose to incorporate into the ACA. *See id.* at 34.

Plaintiffs respond that, contrary to Defendants' claims, the PSTF is a federal government entity whose recommendations are made legally binding under the ACA. *See* Pls.' Resp. 31, ECF No. 24. Plaintiffs argue that, under the Vesting Clause, Congress is not allowed to create independent entities and then empower them to make legally binding decisions independent of Executive control. *See id.* As an alternative to their argument that the PSTF is unlawfully exercising legislative power, *see infra and supra*, Plaintiffs argue that section 299b-4 impermissibly insulates the PSTF from the President's direction, removal, and control if the PSTF is exercising executive power under the ACA. *See* Am. Compl. 20–22, ECF No. 14.[7]

The Court holds that Plaintiffs have sufficiently pleaded their Vesting-Clause claim.

---

[7] Federal Rule of Civil Procedure 8(d)(2) allows for alternative pleading. *See* Fed. R. Civ. P. 8(d)(2). Plaintiffs' nondelegation-doctrine claim with regard to the PSTF specifically is related to and mutually exclusive with their Vesting-Clause claim. If the PSTF's powers are legislative in nature, Plaintiffs argue a violation of the nondelegation doctrine. Should it be shown, instead, that the exercise of authority the PSTF enjoys under the ACA is executive in nature, Plaintiffs argue this violates Article II's Vesting Clause. *See* Am. Compl. 20–22, ECF No. 14.

Article II of the United States Constitution vests "[t]he executive Power . . . in a President of the United States of America" and commands that he "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.*, § 3. Pursuant to this fundamental principle of the separation of powers, Congress may not create independent agencies wielding substantial executive power that are insulated from all Presidential control. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 140 S. Ct. 2183, 2199 (2020). The statute establishing the PSTF provides that "[a]ll members of the [PSTF] convened under this subsection, and any recommendations made by such members, shall be independent and, to the extent practicable, *not subject to political pressure*." 42 U.S.C. § 299b-4(a)(6) (emphasis added).

There is no question that, under the ACA, the PSTF exercises a significant degree of authority. The Provisions state that insurers must cover all "evidence-based items or services" recommended by the PSTF without any cost-sharing requirements. *See* 42 U.S.C. § 300gg-13(a)(1). The only questions that remain to be answered are (1) whether the power conveyed to the PSTF is legislative or executive in nature; and (2) if executive, whether the PSTF's recommendations are truly advisory under the Provisions. In their Amended Complaint, Plaintiffs state a plausible Vesting-Clause claim that asks the Court to resolve these two questions. Defendants' conclusory argument that the PSTF's recommendations are not exercises of legislative or executive power are, without more, insufficient to merit dismissal of this claim under Rule 12(b)(6).

Plaintiffs have sufficiently pleaded their Vesting-Clause claim; therefore, Defendants' Motion to Dismiss Plaintiffs' Vesting-Clause claim is **DENIED**.

### iv.  Nondelegation-Doctrine Claim

Next, Defendants argue that Plaintiffs fail to state a claim upon which relief may be granted

for violation of the Nondelegation Doctrine. *See* Defs.' Mot. 34–36, ECF No. 20. First, they contend that the recommendations of the PSTF, ACIP, and HRSA are not rules under the Administrative Procedure Act. *See id.* at 34. Second, Defendants argue that the ACA lays out "a sufficient intelligible principle to guide any decision making and limit discretion." *Id.* According to Defendants, each of the Provisions clearly delineate the criteria that govern what recommendations and guidelines are incorporated into the statute. *See id.* at 35. Those criteria are sufficient to serve as an intelligible principle to satisfy nondelegation principles. *Id.* at 36. Defendants argue this is true notwithstanding the Supreme Court's acknowledgment in *Little Sisters of the Poor* that the HRSA has a great deal of discretion in executing its tasks under the Provisions. *See id.* Defendants assert that current Supreme Court and Fifth Circuit precedents permit the same type of extremely broad discretion within very general guidelines that is included in the Provisions. *See* Defs.' Reply 17, ECF No. 32.

Plaintiffs argue that the Provisions provide nothing to guide the discretion of the PSTF, ACIP, or HRSA. *See* Pls.' Resp. 32, ECF No. 24. Contrary to Defendants' claims, Plaintiffs argue that agencies are not allowed to establish their own criteria, such as which items or services receive "A" or "B" grades in section § 300gg-13(a)(1), in lieu of Congress articulating an intelligible principle. Plaintiffs also argue that Defendants confuse the limitations placed upon the PSTF, ACIP, and HRSA in the Provisions with an intelligible principle guiding the agencies in deciding which preventive care services must be covered. *See id.* at 33. In effect, Plaintiffs argue, this leaves the committees with absolute discretion in making these decisions that have the force and effect of law. *See id.* Finally, Plaintiffs argue that the Supreme Court in *Little Sisters of the Poor* expressed their discomfort with the lack of guidance contained in section 300gg-13(a)(4) and indicated that "they will continue policing the boundary between permissible and impermissible

31

delegations of lawmaking power." *See id.* at 34.

The Court holds that Plaintiffs have sufficiently pleaded their Nondelegation-Doctrine claim. Article I of the United States Constitution vests "all legislative Powers" in Congress. *See* U.S. Const. art. I, § 1. The "text permits no delegation of those powers, and so we repeatedly have said that when *Congress* confers decisionmaking authority upon agencies Congress must 'lay down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform.'" *Whitman v. Am. Trucking Assns.*, 531 U. S. 457, 472 (2001) (quoting *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)) (internal citation omitted). "[A] nondelegation inquiry always begins (and often almost ends) with statutory interpretation. The constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion. So the answer requires construing the challenged statute to figure out what task it delegates and what instructions it provides." *Gundy v. United States*, S. Ct. 2116, 2123 (plurality opinion). The intelligible principle test requires Congress to clearly delineate (1) the general policy, (2) the public agency which is to apply it, and (3) the boundaries of this delegated authority. *See Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 444 (5th Cir. 2020) (citing *Mistretta v. United States*, 488 U.S. 361, 373 (1989)).

In looking to the statute, Plaintiffs insist that the text provides no instructions or limitations on the committees in determining what preventive health services are included in their recommendations and guidelines. *See* Pls.' Resp. 32, ECF No. 24. At least with respect to one of the Provisions, the Supreme Court has indicated their own concern in this regard. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2380 (2020) ("But [section 300gg-13(a)(4)] is completely silent as to *what* those 'comprehensive guidelines' must contain, or how HRSA must go about creating them."). Defendants contend that the limitations in the statute

32

concerning "evidenced-based" and "evidence-informed" preventive health services, immunizations specific to the individual involved, and care and screenings specific to women are sufficient restrictions on the committees' exercises of discretion. *See* Defs.' Mot. 35, ECF No. 20. Defendants may yet prove to be correct at a later stage in this case. But Plaintiffs have stated a plausible challenge that these self-regulating criteria are insufficient as an intelligible principle under nondelegation principles.

Because Plaintiffs have sufficiently pleaded their nondelegation-doctrine claim, Defendants' Motion to Dismiss Plaintiffs' nondelegation-doctrine claim is **DENIED**.

### v.   RFRA Claim

Finally, Defendants argue that Plaintiffs fail to state a claim upon which relief may be granted for violation of the RFRA. *See* Defs.' Mot. 42–43, ECF No. 20. Defendants submit that, in challenging the PrEP Mandate, the Religious-Objector Plaintiffs fail to allege they have any sincerely held religious belief actually burdened by the government. *See id.* at 42. And while Dr. Hotze, Plaintiff Braidwood Management's principal, has religious objections to homosexuality, he is not being compelled to engage in any such activity. *See id.* Defendants argue that there is no allegation in the pleadings that purchasing insurance coverage for medication to prevent an infectious disease like HIV violates a sincerely held religious belief. *See id.* at 42–43.

Plaintiffs argue that, contrary to Defendants' contention, the Amended Complaint clearly lays out that compulsion to purchase insurance that covers PrEP drugs violates the Religious-Objector Plaintiffs' sincerely held religious beliefs. *See* Pls.' Resp. 36–37, ECF No. 24 (citing Am. Compl. 8, 11–12, ECF No. 14). These allegations, Plaintiffs argue, make clear that they are asserting a complicity-based objection to the coverage of PrEP drugs, because they do not wish to subsidize drugs that encourage or facilitate behavior that violates their sincerely held religious

beliefs. *See* Pls.' Resp. 37, ECF No. 24.

Plaintiffs' have sufficiently pleaded their RFRA claim. The RFRA states the "Government shall not substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1. But the Government "may substantially burden a person's exercise of religion . . . if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* "The threshold inquiry . . . is whether the challenged governmental action substantially burdens the exercise of religion." *Diaz v. Collins*, 114 F.3d 69, 71 (5th Cir. 1997) (citation omitted). The religious objector bears the burden of proving a substantial burden, and if that burden is met, "it is then up to the government to demonstrate that the compelling interest test is satisfied." *Id.* at 71–72 (citations omitted).

In their Amended Complaint, Plaintiffs allege the following:

Mr. Kelley, Mr. Starnes, Mr. Maxwell, and Ms. Maxwell also object to contraceptive coverage and the coverage of PrEP drugs on religious grounds. Each of these plaintiffs is a Christian, and they are unwilling to purchase health insurance that subsidizes abortifacient contraception or PrEP drugs that encourage and facilitate homosexual behavior.

Am. Compl. 8, ECF No. 14. Regarding Braidwood Management and Dr. Hotze, Plaintiffs likewise state that "Dr. Hotze is therefore unwilling to allow Braidwood's self-insured plan to cover PrEP drugs such as Truvada and Descovy because these drugs facilitate or encourage homosexual behavior, which is contrary to Dr. Hotze's sincere religious beliefs." *Id.* at 12. These portions of the pleading allege that Defendants substantially burden these Plaintiffs' exercise of religion in enforcement of the PrEP Mandate. It is not clear to the Court what greater particularity Defendants would have Plaintiffs include in their live Complaint; regardless, the Court will not require any. Plaintiffs have sufficiently pleaded a plausible violation of the RFRA.

Defendants appear to suggest that compelled financial support for an activity that violates one's sincere religious beliefs—without being forced to engage in the activity—is insufficient to state a RFRA claim. *See* Defs.' Mot. 42, ECF No. 20 ("But while 'homosexual behavior' may be contrary to Dr. Hotze's sincere religious beliefs, Dr. Hotze is not being compelled to engage in any such activity, and Braidwood nowhere alleges that providing or purchasing insurance coverage for [PrEP drugs] . . . is contrary to his or Braidwood's sincere religious beliefs."). The Court rejects this argument out of hand. The Supreme Court has held that compelling the purchase of insurance that includes medications that violate one's sincerely held religious beliefs can be a violation of the RFRA. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725–26 (2014). Certainly, then, at the motion-to-dismiss stage, the Religious-Objector Plaintiffs' pleading of the same complicity-based objection to the Mandates here is sufficient to state a RFRA claim upon which relief may be granted.

Because Plaintiffs have sufficiently pleaded their RFRA claim, Defendants' Motion to Dismiss Plaintiffs' RFRA claim is **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 20) is **GRANTED in part** and **DENIED in part**. Specifically, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' statutory-interpretation claim and the Religious-Objector Plaintiffs' Contraceptive Mandate claim. Those claims are hereby **dismissed with prejudice**.[8] All other requested relief in Defendants' Motion to Dismiss is **DENIED**.

---

[8] Courts usually provide a litigant leave to amend to cure pleading deficiencies. *See Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). Leave to amend should be given in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996). Plaintiffs have already amended their Complaint once, and the Court holds that leave to amend their claims would be futile. Accordingly, the Plaintiffs' statutory-

**SO ORDERED** on this **25th day** of **February 2021**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

interpretation claim and the Religious-Objector Plaintiffs' Contraceptive Mandate claim are dismissed with prejudice.