```
 1                IN THE UNITED STATES DISTRICT COURT

 2              FOR THE NORTHERN DISTRICT OF TEXAS

 3                      FORT WORTH DIVISION

 4

 5   BRAIDWOOD MANAGEMENT, et  )
     al.,                      )
 6                             )
          Plaintiffs,          ) CASE NO. 4:20-cv-00283-O
 7                             )
     VS.                       ) FORT WORTH, TEXAS
 8                             )
     XAVIER BECERRA, et al.,   )
 9                             )
          Defendant.           ) JULY 26, 2022
10

11
                         VOLUME 1 of 1
12               TRANSCRIPT OF MOTION HEARING
             BEFORE THE HONORABLE REED C. O'CONNOR
13            UNITED STATES DISTRICT COURT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:  JONATHAN MITCHELL
                         111 Congress Avenue, Suite 400
17                       Austin, Texas 78701
                         Telephone:  512.686.3940
18

19                       H. DUSTIN FILLMORE, III
                         The Fillmore Law Firm, LLP
20                       201 Main Street, Suite 801
                         Fort Worth, Texas 76102
21                       Telephone:  817.332.2351

22

23   FOR THE DEFENDANTS: CHRISTOPHER M. LYNCH
                         UNITED STATES DEPARTMENT OF JUSTICE
                         CIVIL DIVISION
24                       1100 L. Street, NW
                         Washington, D.C. 20005
25                       Telephone:  202.353.4537
```

```
FOR THE DEFENDANTS: BRIAN WALTERS STOLTZ
                    UNITED STATES DEPARTMENT OF JUSTICE
                    1100 Commerce Street, Third Floor
                    Dallas, Texas  75242
                    Telephone:  214.659.8626
```

I N D E X

PROCEEDINGS                                           PAGE

Statements By Counsel

    By Mr. Mitchell.........................04, 72

    By Mr. Lynch...........................29

Questions by the Court......................12, 76

Reporter's Certificate.......................81

Word Index..................................82

1                    P R O C E E D I N G S

2                      JULY 26, 2022

3                          oOo

4          THE COURT:  Okay.  Please be seated.

5          We will turn then and start instead with Case

6    No. 4:20-283, John Kelley and others vs. Xavier Becerra and

7    others.

8          Counsel for the plaintiffs, both of you are here.

9          Counsel for the defendants are here.

10         So, Mr. Mitchell, why don't you come to the podium

11   and let me let you make a presentation on why you believe

12   you have standing, and then why you believe your motion

13   should be granted.

14         MR. MITCHELL:  Thank you.  Thank you, your Honor,

15   and may it please the Court.

16         With the Court's permission, I would like to begin

17   with the issues of Article III standing.  There are many

18   issues that have been raised.  And if the Court wishes, I

19   may stop, if I could, after standing to allow my opposing

20   counsel to respond.

21         THE COURT:  Great.

22         MR. MITCHELL:  Before we proceed on the merits, if

23   the Court's okay with that?

24         THE COURT:  That's acceptable to me, if it's

25   acceptable to your colleagues.

1              MR. LYNCH:  Yes.

2              MR. MITCHELL:  Thank you.

3         So the government is, as your Honor knows,

4     vigorously contesting our clients' standing to bring this

5     lawsuit, as they have done since the outset of this

6     litigation.

7         Most of the arguments that the government is

8     making with respect to our clients' standing are arguments

9     that this Court need not reach, and in our respectful

10    submission, should not reach.

11        That is because only one plaintiff needs to

12    demonstrate Article III standing under the Supreme Court's

13    precedent if each of the plaintiffs in the case is

14    requesting the same relief from the Court.

15        And Braidwood Management, Incorporated, has, by

16    far, the easiest case for standing.  It is seeking the same

17    relief as the other plaintiffs.  And we believe, if the

18    Court agrees with our position, that Braidwood Management

19    has standing, it's not necessary to inquire whether each of

20    the additional plaintiffs would have standing in a case

21    where Braidwood Management was not a co-plaintiff to the

22    case.

23        Braidwood Management clearly has standing because

24    the preventive care mandates have commandeered its

25    self-insured plan, and it requires Braidwood Management to

1    change the content of its own plan to provide coverage that

2    it does not want to provide and to do so with no

3    cost-sharing arrangements.

4          Braidwood has no ability under this regime to

5    decide to impose co-payments for any of the preventive care

6    that these agencies have purported to require.  It cannot

7    allow any of those expenses to count toward an employee's

8    annual deductible.

9          It has lost control over the self-insured plan

10   that it had prior to the imposition of these preventive care

11   mandates.

12         So our argument will proceed in a syllogism, if I

13   could explain this to the Court.  The major premise of our

14   syllogism is that only one plaintiff needs standing if all

15   the plaintiffs are seeking the same relief.

16         The minor premise of our argument is Braidwood has

17   standing.  And the conclusion that follows is that all of

18   the plaintiffs therefore have Article III standing to bring

19   the claims.

20         So the government must defeat either the major

21   premise or the minor premise of the syllogism to defeat our

22   case for Article III standing.  And the government does

23   contest both the major premise and minor premise.

24         Let me begin, if I could, with the major premise:

25   Only one plaintiff needs standing.  The government claims

1    that the one-plaintiff rule doesn't apply to this case.

2              And their argument proceeds as follows:  They

3    claim that Braidwood Management would not be entitled in the

4    end to what they describe as a universal injunction.

5              Their position is, if Braidwood prevails, it

6    should get the declaratory and injunctive relief that is

7    limited to Braidwood and that does not extend beyond

8    Braidwood to other plaintiffs in the case.

9              It makes the same claim with respect to our other

10   plaintiffs.  So its view is we're not actually seeking the

11   same relief.  Braidwood is seeking relief for Braidwood.

12   Mr. Kelley is seeking relief for Mr. Kelley and so on.

13             But that's not the proper inquiry of the

14   Article III standing phase.  In considering whether a

15   plaintiff has shown redressability under the Article III

16   test for standing, a court must assume that the plaintiff

17   will ultimately succeed on the merits and assume the

18   plaintiff will seek and obtain the relief he is requesting,

19   regardless of whether the plaintiff is ultimately entitled

20   to the relief.

21             The entitlement to the relief goes to the merits;

22   it doesn't go to standing.  And the Supreme Court has said

23   time and time again that a court is to ask whether the

24   requested relief, not the relief to which it's ultimately

25   entitled, but whether the requested relief will redress the

1    plaintiff's alleged injuries.

2            If I could quote recently from the Supreme Court's

3    Ted Cruz for Senate case.  This is the Supreme Court's most

4    recent pronouncement on Article III standing.

5            The Court writes:  "For standing purposes, we

6    accept as valid the merits of appellee's legal claims."

7            Quoting again from the Supreme Court in Steel Co.,

8    "There must be redressability, a likelihood that the

9    requested relief will redress the alleged injury."

10           So for the standing analysis, the Court should

11   assume that the plaintiffs will obtain the relief they

12   request.  Even if the Court ultimately disagrees with our

13   merits argument and concludes we're not entitled to the

14   scope of this relief, the Court still has to assume we will

15   get that relief and ask, will that relief redress the

16   alleged injury?

17           So going back to the one-plaintiff rule.

18   Braidwood Management, Incorporated, just like Mr. Kelley,

19   just like all the other individual plaintiffs in the case,

20   all of them are requesting the same relief from this Court:

21   a declaratory judgment that pronounces the preventive

22   mandates unconstitutional because of the appointments clause

23   problems and because of the RFRA problems with respect to

24   the prEP and other mandates, and injunctive relief that

25   would restrain the defendants from enforcing them in any

1    situation.

2          That's the requested relief.  All the plaintiffs

3    are requesting the same relief.  Therefore, the

4    one-plaintiff rule applies.  And the Court just asks:  Does

5    one plaintiff have standing?  And if the answer to that

6    question is yes, the other plaintiffs can come along for the

7    ride.

8          Let me shift to the minor premise of the argument.

9    Braidwood has standing.  Now, this is an easy case with

10   respect to Braidwood.  I think the other plaintiffs present

11   closer questions, although we believe they have standing as

12   well under the purchaser doctrine.

13         Let's just focus on Braidwood for a moment because

14   we only need to show standing for one.  These preventive

15   care mandates are commandeering the self-insured plan that

16   Braidwood Management incorporates, administers, and provides

17   to its employees.

18         It requires Braidwood to change the contents of

19   that plan.  It requires Braidwood to alter the plan to say

20   these services will now be covered with no co-pays.  Even

21   though, before the mandates, Braidwood did not cover this

22   stuff.

23         That inflicts injury in fact, regardless of

24   whether there is an ultimate financial harm to Braidwood.

25   The government is suggesting Braidwood doesn't have standing

1  to challenge the prEP mandate, because they say it's not

2  likely that any of its employees would ever seek

3  reimbursement for those expenditures.

4        That may very well be true, but there are two

5  responses to that.  Number one, Braidwood is challenging far

6  more than just a prEP mandate.  Braidwood is asking this

7  Court to restrain the defendants from enforcing any of the

8  preventive care mandates because they violate the

9  appointments clause.

10        As I understand the government's reply brief, and

11  the government should correct me if I'm wrong, they don't

12  appear to be challenging Braidwood's standing to present an

13  appointments clause claim.  They focus only on this issue of

14  the prEP drugs.

15        So it appears, and the government, again, they

16  should tell the Court if I'm mischaracterizing their

17  argument, but it appears they're questioning Braidwood's

18  standing only with respect to the RFRA claim and not with

19  respect to the appointments clause claim.

20        But there's a second point as well.  Even if the

21  government is right to suggest that Braidwood's employees

22  are unlikely to wind up requiring Braidwood to pay for prEP

23  drugs, there's still injury in fact, because Braidwood has

24  to change the contents of its plan.

25        Even if there's never an ultimate financial harm

 1    to Braidwood, Braidwood has to make changes to its plan.

 2    And that's enough for standing, because all one needs for

 3    standing is an identifiable trifle.

 4              THE COURT:  Identifiable what?

 5              MR. MITCHELL:  Trifle.  That's from the Supreme

 6    Court's opinion in SCRAP, 1973.  It appears in the footnote.

 7              An identifiable trifle is enough for standing to

 8    take Braidwood out of the realm of mere ideological injury

 9    and into a situation where Braidwood actually has been

10    affected by the contraceptive mandate.

11              And the fact that it has to change the plan gives

12    it standing, even if the government's right to suggest with

13    respect to prEP drugs, they will never really have to pay

14    anything out because they don't have employees who will ever

15    claim that benefit.  All we need is the identifiable trifle

16    and we have that here with respect to Braidwood.

17              So let me return, if I could, to the syllogism.

18    The major premise of the argument:  The one-plaintiff rule

19    applies.  The minor premise of the argument:  Braidwood has

20    standing.

21              If the Court accepts the major premise and the

22    minor premise, the conclusion that follows, as a matter of

23    logic, is that every one of the plaintiffs has Article III

24    standing to seek the same relief that Braidwood is

25    requesting.

 1                Namely, a declaration from this Court that the

 2    preventive care mandates are unlawful and an injunction that

 3    restrains the defendants from enforcing them.  So that's my

 4    presentation on standing.  I will yield to Mr. Lynch, unless

 5    you have any questions?

 6                THE COURT:  So just let me, just before we turn it

 7    over.

 8                MR. MITCHELL:  Yes.

 9                THE COURT:  Their argument is that Braidwood --

10    well, let me back up.

11                Braidwood is self-insured.  Can you tell me what

12    that means?

13                MR. MITCHELL:  Self-insured means that they are

14    ultimately paying the money out for the health benefits,

15    rather than have an insurer hold the risk for them.

16                THE COURT:  And does that mean that Braidwood acts

17    as an insurance company?

18                MR. MITCHELL:  Essentially, it does, with respect

19    to its own employees.

20                So what they do is they retain a third-party

21    administrator to actually administer the plan, but Braidwood

22    decides the contents of the plan, and says this is what we

23    cover; this is what we don't.  These are the co-pays; these

24    are the deductibles.  They make all the decisions themselves

25    as the company, because they are the ultimate insurer.

1          Now, they had the prerogative prior to the

2   Affordable Care Act to decide the scope of coverage with

3   respect to preventive care.  They no longer have that

4   prerogative and that affects injury in fact.

5          THE COURT:  A little bit more on the

6   self-insurance issue.  If you are self-insured, you are

7   acting as an insurance company and that means you have to

8   comply with the mandates that the federal government has put

9   into play?

10          MR. MITCHELL:  That's correct.  You have to

11   provide all the preventive care that has been dictated by

12   these relevant entities: HRSA, ACIP, and the Task Force, and

13   you have to provide it at zero marginal cost to the patient.

14   No co-pays can be imposed and it can't count for your annual

15   deductible.

16          THE COURT:  I see.

17          MR. MITCHELL:  So, again, we think that's an easy

18   case for standing.

19          Your Honor, to be clear, we're not conceding in

20   any way that our remaining plaintiffs would lack standing in

21   the absence of Braidwood.  We acknowledge they present

22   closer cases.

23          The purchaser standing doctrine, which is

24   well-developed in the D.C. Circuit, the government's right

25   to point out that the Fifth Circuit hasn't adopted that.

1              Now, they haven't rejected it either.  We think

2    it's a sound theory of standing, but this is a much more

3    solid basis for standing, to rely on Braidwood.

4              We just don't think it's necessary for the Court

5    to get into these very interesting, but somewhat more

6    complicated questions with respect to the other plaintiffs.

7              THE COURT:  I will ask you something about the

8    purchaser standing in just a minute, but as it relates to

9    the Braidwood self-insurance standing, you referenced the

10   Little Sisters of the Poor case and the abortifacients and

11   how Hobby Lobby did not have to show that someone was making

12   a claim for those particular drugs that they objected to,

13   but the government says that, statistically speaking, that

14   someone, given the number of employees that Hobby Lobby had,

15   someone was going to make a claim on that policy for those

16   drugs.

17             MR. MITCHELL:  Right.

18             THE COURT:  That would require the insurance

19   company to pay, Hobby Lobby to pay for that to be done.  And

20   that that statistical exercise isn't at play here?

21             MR. MITCHELL:  Right.

22             THE COURT:  You would agree with that?

23             MR. MITCHELL:  I think that's a fair point by the

24   government with respect to the empirical claim they're

25   making, which is it's far more likely in a company like

1    Hobby Lobby, which has a very large number of employees, I

2    think tens of thousands, and contraception which is much

3    more commonly used than prEP drugs.  It's obviously far more

4    likely that Hobby Lobby would ultimately pay out for

5    contraception that it found objectionable.

6         But that said, the Hobby Lobby decision doesn't

7    discuss Article III standing at all.  So I want to be

8    careful not to lean too heavily on that.  I think it also

9    undercuts the government's argument as well.

10         We don't have a ruling from the Supreme Court on

11    whether Hobby Lobby had standing or why Hobby Lobby had

12    standing.  It doesn't appear to me from reading the Court's

13    opinion that this point by the government should make a

14    difference because Justice Alito emphasized that a

15    complicity-based objection has to be accepted by the Court

16    as long as it's sincere.

17         It doesn't really matter whether the

18    complicity-based objection is rooted in fact or reality.

19    For example, Hobby Lobby claimed that certain contraceptives

20    that the FDA approved acted as abortifacients.  There are

21    many medical experts who disagree with that as a scientific

22    matter, but none of that was relevant in Hobby Lobby.

23         The mere fact that Hobby Lobby held the belief

24    that this would make it complicit in the provision of

25    abortifacient contraceptive had to be accepted, as long as

```
1    it was sincere.  That's the question I think for the Court

2    to ask here:  Is the belief of our plaintiffs sincere?

3          No one's questioning the sincerity of our

4    plaintiffs' -- of our clients' complicity-based objections.

5    They may be questioning the empirical claims that our

6    clients are making.  And they may very well be right to call

7    those into question.  Maybe Dr. Hotze won't be paying out

8    actual money from Braidwood for these prEP drugs.

9          But if he believes that the mere provision of

10   coverage makes him complicit in something that violates his

11   religious beliefs, and he has claimed that in his affidavit,

12   and that is sincere, that's enough to show a substantial

13   burden under this exercise.

14         And therefore, that's enough to show injury in

15   fact because a substantial burden under RFRA is, by

16   definition, enough to show Article III injury.

17         So again, I want to be careful with my reliance on

18   Hobby Lobby.  Hobby Lobby did not discuss standing, but

19   Hobby Lobby did discuss the meaning of substantial burden,

20   and a substantial burden is per se injury in fact under the

21   Article III standing test.

22         THE COURT:  Okay.  If I can just get back to the

23   argument that they're making about Braidwood having no

24   standing because they're not likely to have to pay any money

25   for prEP drugs.
```

```
1              And so, as an empirical matter, that may bear out,

2    in your view.  But you're saying this earlier Supreme Court

3    case has said, for standing purposes, any trifle?

4              MR. MITCHELL:  That's right.

5              THE COURT:  And what would the Supreme Court

6    define trifle to be?

7              MR. MITCHELL:  I think they would define it as

8    something that goes beyond a mere ideological grievance.  So

9    it has to be something that goes beyond the psychological

10   harm that's incurred by the observation of conduct with

11   which one disagrees.

12             It has to go something beyond this offends my

13   belief system.  It has to be something that affects you in a

14   tangible and concrete way, even if it's very small.

15             So the fact that Dr. Hotze and Braidwood have to

16   go in and tinker with their plan in response to these

17   mandates from the government, that's enough to show

18   standing.  I realize that's a minor injury.  You just have

19   to change some words on a piece of paper, but you still have

20   to do something.

21             And the fact that they had to do that act is

22   enough to take them out of the role of what I would just

23   describe as a mere ideological grievance and into the realm

24   of where you actually have an injury in fact under the

25   Supreme Court's test.
```

1          So we have identifiable trifle.  I realize it may

2    just be a trifle.  They may not be paying out gobs of money

3    for the prEP drugs or even have the right to say that, but

4    they still have injury in fact, even if it's not financial

5    injury.

6          THE COURT:  Okay.  And then, just on the purchaser

7    standing.  In their latest reply -- their last reply brief,

8    they cite the litigation in the D.C. Circuit involving the

9    AmTrak tickets and the arbitration clause.

10          And the government writes, it's not a quote, but

11    they write in their brief that it appears that the D.C.

12    Circuit is scaling back and limiting the purchaser standing

13    doctrine to some degree.  What's your take on that?

14          MR. MITCHELL:  Yeah, it was hard for me to see

15    from the D.C. Circuit's opinion where exactly they're trying

16    to draw the line here.  I may be misquoting, but they're

17    talking about the essential attributes of the product, as

18    opposed to something that's nonessential, like an

19    arbitration clause.

20          Even if we were to assume that we can indulge that

21    assumption for a moment, my plaintiffs are being deprived of

22    the ability to buy health insurance unless they engage in

23    conduct that, in their view, makes them complicit in conduct

24    that violates their sincere religious beliefs.

25          If the purchaser standing doctrine is to be

 1     accepted, it would at least have to include that, given the

 2     existence of federal RFRA.  The federal law has recognized

 3     this, not simply as an injury in fact, but as a violation of

 4     federal law to have something that imposes on any person an

 5     obligation to engage in conduct that violates his religious

 6     belief, or in this situation, excluding them from the health

 7     insurance market entirely, unless they're willing to buy in

 8     and pool their money with others who are engaged in conduct

 9     that is contrary to their sincere religious beliefs.

10           Again, no one is questioning the sincerity of a

11     client's complicity objections.  That's the crucial point.

12     Hobby Lobby says if complicity-based objections are sincere,

13     they have to be accepted by a court, regardless of whether

14     the Court agrees with them empirically or factually.

15           So it's true of all religions.  Many people hold

16     religious beliefs that nonbelievers would think are

17     delusional, but the court can't come in and say, "Your

18     religious beliefs are factually wrong.  Therefore, you

19     aren't substantially burdened in your exercise of religion."

20           THE COURT:  Staying with the purchaser standing

21     doctrine for a moment then, would you address for me, for

22     the non-Braidwood plaintiffs, or I guess, Braidwood might be

23     in there as well, the idea that there's no traceability for

24     those plaintiffs under the purchaser standing doctrine.

25           In other words, there's no -- you provided no

1    evidence that either insurance companies will offer plans

2    that meet these objections, and then the argument that

3    there's no evidence that you're paying more for policies for

4    your nonreligious plaintiffs.

5              MR. MITCHELL:  Yeah, I think your Honor is right

6    to point out that we haven't proven beyond a preponderance

7    of the evidence that premiums would go up in the absence of

8    preventive care mandates.

9              There are reasons to think that premiums might be

10   affected -- I'm sorry, the premiums would go down in the

11   absence of the preventive care mandates.

12             The empirical evidence is inconclusive on this

13   point, which is why we didn't rely on it.  We did rely on it

14   at the pleading stage, but at summary judgment we actually

15   mete out evidence.  There wasn't enough out there, in my

16   judgment, to argue to the Court that we could show, by a

17   preponderance of the evidence, that the premiums would go

18   down if the requested relief were granted.

19             It's just not clear.  Some people think the

20   premiums would go down, but it's largely speculative.  And

21   really, I don't think there's any way to know until the

22   judgment that we are requesting would go into effect, and we

23   would have to see what happens in response to that.

24             With respect to traceability, we don't have to

25   prove in fact that these products would be offered with

1    respect to the requested relief.  We just have to show that

2    it's traceable.  Not but-for causation.  Just that the

3    injury is traceable to the defendant's conduct.

4              And the fact that before the Affordable Care Act

5    there were health insurance policies available that excluded

6    contraception and they excluded prEP drugs and they excluded

7    other things that are being required and covered by the

8    Affordable Care Act is, in our view, more than enough to

9    show traceability.

10             Because we know before the Affordable Care Act

11   there at least were some insurance companies that weren't

12   covering this.  That's why the Affordable Care Act came in,

13   to mandate the coverage of preventive care by everyone.  So

14   that's enough to show traceability on that theory.

15             Now, again, with respect to the premiums and

16   whether those would fluctuate and go up or down, we didn't

17   introduce evidence of that because we didn't think we could

18   prove that by a preponderance of the evidence.  There just

19   wasn't solid proof, one way or the other, on what the effect

20   on premiums would be.

21             That's why we're principally relying on

22   Braidwood's standing, because we think that's the easier way

23   to establish standing.  Again, we still think we can get

24   there with the other individual plaintiffs.  We still think

25   we can get there with the other individual plaintiffs, but

1    it's a somewhat tougher row to hoe.

2            THE COURT:  I guess the reason I'm asking this

3    question is it appears that post the DeOtte case, that

4    there's not been a market, I guess, for insurance companies

5    to offer these plans that would satisfy religious

6    objections, at least in these preventive care mandates.

7            So, even if you get -- and I think that's part of

8    their argument, that is, even if you get a result separate

9    on the side of the religious plaintiffs, it's not going to

10   achieve the result you want.

11           MR. MITCHELL:  I don't -- I'm sorry?

12           THE COURT:  So what you're seeking from me won't

13   satisfy these standing elements, I don't know if you read

14   the mask mandate case that came out last night from the

15   Fifth Circuit, a 2-to-1 decision that talked about standing

16   analysis when the effect would be on the third party.

17           Did you happen to read that?

18           MR. MITCHELL:  I haven't had a chance to read it.

19   I'm sorry, your Honor.

20           THE COURT:  Well, take a look at that when you get

21   a chance, but I do wonder about that.  You got a judgment in

22   DeOtte and it certified a class there of religious objectors

23   to these mandates.

24           It appears -- and I don't know if you dispute

25   that -- but it appears there's not been a market for

1    insurance companies to go and make these changes that would

2    be permitted presumably post DeOtte.  So what's your take on

3    that?

4            MR. MITCHELL:  I don't think it's fair, your

5    Honor, with all respect, to rely on DeOtte against Azar to

6    undercut our case here, because the remedy we asked for and

7    received in DeOtte was quite narrow.

8            It was only for religious objectors.  We were

9    asking the Court to allow insurers to provide

10   contraceptive-free coverage, but only to religious

11   objectors.

12           And that is such a small, narrow slice of the

13   market that it's unsurprising that insurance companies

14   haven't responded to that in the way that I think the DeOtte

15   plaintiffs had hoped.

16           Here, we're seeking much broader.  We're asking

17   the Court to enjoin the enforcement of the mandate across

18   the board.  Because, under the appointments clause claim

19   that we're making, the entire contraceptive mandate is

20   improper, invalid, and unconstitutional because none of

21   these officers were constitutionally appointed.

22           That would have a dramatic effect on the health

23   insurance market.  And prior to the contraceptive mandate,

24   only half of the health insurance plans offered it at the

25   time -- I know it's not in the record so I probably

1    shouldn't be blurting that out -- with respect to the

2    traceability point, the proper line of inquiry is how did

3    the world exist prior, before the Affordable Care Act?

4          It was possible to obtain contraceptive-free

5    health insurance before the contraceptive mandate.  That's

6    why they imposed the contraceptive mandate.  If all the

7    insurance companies were offering this on their own, there

8    would be no need for a contraceptive mandate.

9          So that injury is traceable to the government's

10   action because it's taken away on the market something that

11   used to be available.

12         Now, your Honor's question, I think, is what would

13   happen if the Court were to enjoin the enforcement of the

14   mandate?  Would contraceptive-free health insurance come

15   back into effect?

16         And again, the test is, is it likely, as opposed

17   to merely speculative, right, that the injury would be

18   redressed by relief from the Court.  It's certainly likely,

19   because so many people just do not need contraceptive

20   coverage.

21         People who are over the age of 45 don't need

22   contraceptive coverage.  People who aren't engaged in

23   behavior that requires contraception don't need

24   contraceptive coverage.  That's a majority of the

25   population.

1          Again, we've seen this before.  We saw what the

2     market looked like before the Affordable Care Act, and

3     that's enough to just meet the rather minimal burden that we

4     have to show that it's likely that the injury would be

5     redressed.

6          But again, going back to Braidwood.  With

7     Braidwood, it's as clear as can be.  The injury is obvious,

8     the traceability is unquestioned, and the redressability.

9     They don't have to change their plan, but that's the injury.

10    That's easily redressed by the relief we are requesting from

11    the Court.

12         So these are all, I think, very nuanced and

13    somewhat interesting questions with respect to the other

14    plaintiffs, but Braidwood's indisputable standing makes

15    this, in our view, a rather easy case, once the Court

16    acknowledges that the one-plaintiff rule kicks in.

17         Again, I understand it's a point we disagree with

18    the government on, but as long as the Court can accept the

19    major premise and minor premise, the syllogism I mentioned

20    at the outset, all these other issues, even though they are

21    very interesting, they just don't need to be resolved

22    because they introduce, in our view, just needless

23    complications in the case.

24         THE COURT:  Where is DeOtte, by the way?  Do you

25    know?

1          MR. MITCHELL:  Oh, yes, your Honor.

2          THE COURT:  I'm just curious now.

3          MR. MITCHELL:  It's an important question to ask.

4   The Fifth Circuit panel reversed the Court's judgment in

5   January.  I think the Court is aware of that.

6          THE COURT:  Right.

7          MR. MITCHELL:  We petitioned for en banc rehearing

8   at the end of January.  We still don't have a ruling from

9   the court.

10          THE COURT:  I see.

11          MR. MITCHELL:  So the mandate hasn't issued.

12          THE COURT:  Right.

13          MR. MITCHELL:  I was waiting for the mandate to

14   issue to provide an update to the Court, because that would

15   obviously affect the Court's res judicata holding.  As of

16   today, the Court's res judicata holding is still sound

17   because the DeOtte judgment is still in effect.

18          THE COURT:  Right.

19          MR. MITCHELL:  Because we petitioned for a

20   rehearing en banc, that delays the issuance of the mandate.

21   We will let the Court know, though, as soon as the mandate

22   issues or if they grant the hearing en banc, which would

23   further delay it.

24          THE COURT:  Exactly.  So if they do not grant a

25   rehearing en banc and they issue the mandate reversing the

1    case, then I would need to reconsider the res judicata

2    issue?

3            MR. MITCHELL:  I believe so, yes.

4            THE COURT:  And what is the effect of your amended

5    complaint, taking out those other details in there?

6            What is the effect of that?

7            And does that affect standing in any way?

8            MR. MITCHELL:  I do think having read the

9    government's reply brief that -- and I did not at the time

10    believe we had prejudiced them in any way with what we had

11    done -- but they have claimed in their reply relief that

12    they would have wanted to seek discovery from our plaintiffs

13    about the sincere religious objections to the other non-prEP

14    drugs and noncontraception issues.

15            So I do agree with the government at this point

16    because they have a certain prejudice that the Court should

17    not breach our RFRA claims outside the prEP mandate and the

18    contraceptive mandate.

19            Claims do evolve throughout a case.  I hope we

20    didn't cause needless complications with some of the

21    shifting that we did throughout the litigation, but

22    sometimes clients -- claims will evolve as the case

23    proceeds.

24            And sometimes claims are removed and sometimes, in

25    this case, an attempt was made to bring those back to life.

1     But given that the government has claimed prejudice from

2     their inability to take discovery, we would agree and

3     respectfully withdraw the RFRA claims that do not extend

4     beyond -- I'm sorry -- we would withdraw the RFRA claims

5     that extend beyond prEP drugs and the contraceptive

6     mandates, which the Court has ruled on with respect to

7     res judicata.  But given the possible complication with

8     DeOtte, that may come back to life if the mandate issues in

9     the Fifth Circuit.

10            THE COURT:  Okay.  Just the last question here.

11    You cite this Duke Law Review, one good plaintiff --

12            MR. MITCHELL:  Yes.

13            THE COURT:  -- is enough or not enough?

14            MR. MITCHELL:  Not enough.

15            THE COURT:  Yeah.

16            MR. MITCHELL:  Obviously, I don't agree with the

17    thesis of the article.

18            THE COURT:  Yeah.

19            MR. MITCHELL:  But I was citing the article for

20    the appendix that it has at the very end, which lists the

21    impressive array of authority behind the one-good-plaintiff

22    rule, even though the author was criticizing it.

23            THE COURT:  Right.

24            MR. MITCHELL:  So while I acknowledge his

25    criticism, it is an academic law review article that does

```
1    not have binding authority.

2            What is binding are the cases that were cited in

3    his appendix, and that's what we're primarily relying on,

4    notwithstanding his criticism of the rule, but it is clearly

5    the law that the Supreme Court endorsed in Little Sisters.

6            THE COURT:  Yeah.

7            MR. MITCHELL:  I don't think we can do any better

8    than that in terms of showing the current related ruling,

9    despite some objectors that exist in the academy.

10           THE COURT:  Okay.  Very good then.  So you want to

11   turn it over to your colleague and then come back to the

12   merits?

13           MR. MITCHELL:  Yes, please.  Thank you.

14           MR. LYNCH:  Thank you, your Honor.

15           THE COURT:  Thank you.  Yes.

16           MR. LYNCH:  The ultimate point on standing is that

17   it's a summary judgment and the plaintiffs must demonstrate

18   with evidence an actual or imminent injury caused by the

19   conduct complained of and it's redressable by the Court;

20   it's their burden.

21           And plaintiffs, at this point, have no evidence

22   beyond declarations that what they object to -- or that they

23   object to some of the coverage.  That's it.

24           You know, three of the plaintiffs, Kelley -- John

25   Kelley, Kelley Orthodontics, and Joel Starnes don't
```

1    participate in the health insurance market at all for

2    reasons unrelated to this lawsuit.  So they don't have

3    standing.

4              Two other plaintiffs, Zach and Ashley Maxwell,

5    have failed to establish that their injury was caused by

6    defendant's actions or redressable by the Court because they

7    have no idea, they say, whether their health plans would

8    include the objected-to coverage, even absent the challenged

9    requirements.

10             And as your Honor pointed out, both the Fifth

11   Circuit and the Supreme Court say that more of a showing is

12   required when the standing depends on the actions of third

13   parties not before the courts, like insurance companies,

14   rather than less than here.

15             And here, the plaintiffs have made no showing that

16   they would be able to obtain their desired insurance without

17   these coverage requirements.

18             And indeed, it wouldn't be redressable anyway,

19   because as plaintiffs concede, their appointments clause

20   claims do not reach the guidelines as they were before the

21   Affordable Care Act was implemented.

22             So if, for example, there was an HPV coverage

23   recommendation in effect, and I believe it's 2007, but

24   before the Affordable Care Act was passed.  And so,

25   essentially, there's no appointments clause issue because

1    Congress recognized, when passing the Affordable Care Act,

2    that those guidelines would be covered and in effect even

3    under plaintiffs' theory.

4            Any plaintiffs, to the extent that they have an

5    objection that is not grounded in their religious beliefs

6    but is grounded purely in the economics or just having

7    coverage that they don't want or need, for whatever

8    nonreligious reason, your Honor was right to point out that

9    we referenced the Weissman decision in the D.C. Circuit.

10           And what that decision makes clear is that, under

11   this purchaser standing doctrine that plaintiffs rely on, a

12   plaintiff may have standing if the government action

13   rendered a consumer's desired product, as defined by its

14   core features, not readily available and whether it rendered

15   the product unreasonably priced.

16           My friend conceded just now that they can't show

17   that health insurance was rendered unreasonably priced by

18   the actions they challenge.  And it is, I think, certain

19   that health insurance, as defined by its core features, is

20   still available.  Their allegation is that they can get

21   health insurance that covers more than they want, rather

22   than less.

23           So health insurance is still available to them.

24   It's just a question of the exact, you know, peripheral

25   features in the product that, you know, they will get health

1    insurance with things that they don't want to use, as well

2    as things that they do.  So I don't think, to the extent

3    they have nonreligious objections, any plaintiff has

4    standing, given Weissman.

5            The last issue, since my friend relies on

6    Braidwood specifically, because Braidwood is self-insured,

7    that means it doesn't pool risk with other insurers, and it

8    can't claim to be supporting payment for prEP for

9    individuals who are not Braidwood employees or their

10   insureds -- their covered insureds.

11           And when the -- the complicity argument that

12   Braidwood makes, their allegation is that, by covering

13   certain services, they are facilitating acts by people --

14   other people that they disagree with.

15           But if no one ever claims these insurance

16   benefits, if no employee or their insured says -- their

17   dependent says, you know, we need prEP drugs, then Braidwood

18   is not facilitating any acts, by their own theory.

19           You know, to have complicity based on certain

20   acts, somebody who's linked to Braidwood has to be engaging

21   in those acts.  And Braidwood has not made any showing

22   whatsoever that that's likely to happen or going to happen.

23           PrEP at the time of the requirement was used by

24   less than one-tenth of a percent of the American people.

25   Braidwood has 70 employees.

1          Mr. Mitchell was right to note that the Hobby

2    Lobby case that he talks about is not a standing case.  So

3    it doesn't -- that was never disputed whether people would

4    be -- whether Hobby Lobby could make a showing that their

5    employees would use those drugs -- use the drugs in question

6    there, because I think it was a given that somebody would,

7    given the number of employees, but that showing is not made

8    here by Braidwood.

9          And I think that the standing question really

10   comes down to have they provided evidence that they will

11   actually, in the way that they have said, that their

12   complicity that they object to, will that actually be

13   implicated by that?  And I think they can't show it.  They

14   haven't shown it.  So I will rest there.

15          THE COURT:  Would an insurance company, Aetna,

16   would Aetna be able to challenge this mandate?

17          In other words, would Aetna be able to come in and

18   say, we offered all these policies before the ACA or before

19   the mandates came into place, we would like to continue to

20   offer some of those policies, we think the appointments

21   clause and the vesting clause and the delegation doctrine

22   are bad here, would they have standing, an insurance

23   company?

24          MR. LYNCH:  They might.  It would certainly depend

25   on what injury they were specifically claiming.  The issue

1    here is really about what plaintiffs have shown with their

2    evidence on summary judgment and met that burden.

3           I think it would be possible that an insurance

4    company could, depending on the claimed injury, conceivably

5    meet that burden.

6           THE COURT:  What would they have to show?

7           So if they came to you and they said, before all

8    these mandates went into place, we offered these policies

9    and we made good money on these policies, and we would like

10   to continue to offer these policies to anyone who might want

11   to purchase them, what else would they have to show to you?

12          MR. LYNCH:  I think they would have to show that

13   in some way the failure to be able to offer these policies

14   has hurt their business.  I mean, I think that their injury

15   would likely be an economic one.

16          And presumably Aetna could show, based on their

17   internal accounting, and that would be, I think, the path

18   that they would take.  But again, without having the claims

19   that they have made and specific allegations, what they

20   would do and what they have to do is hard for me to say.

21   It's speculation.

22          THE COURT:  And what is your take on

23   Mr. Mitchell's argument that the Supreme Court has said even

24   a trifle is sufficient injury for standing purposes?

25          Let me just ask you this.  Set injury aside.  For

1    Braidwood and for Braidwood's self-insurance argument, if

2    they have an injury, if they have an injury, do you agree

3    that redressability and traceability would be met by them?

4              MR. LYNCH:  I think that's likely correct, your

5    Honor.

6              THE COURT:  Okay.  And so, it sounds like

7    Mr. Mitchell is making the argument that the federal

8    government has made Braidwood make these changes, and that

9    this footnote in this opinion in 1973 says that is a

10   sufficient injury.  It's something more than a mere trifle.

11             What's your take on that?

12             MR. LYNCH:  I think here they've alleged and

13   claimed and put into evidence what they claim their injury

14   is.  And their claim is that it's because of a religious

15   objection to being complicit in behaviors that the Braidwood

16   principal, Dr. Hotze, doesn't agree with.

17             That's been their argument.  That's what Dr. Hotze

18   says in his declaration.  He's not claiming that he's

19   injured by changing his plan.  This is new as of today.

20             The declaration says, "I'm complicit by supporting

21   behaviors that I don't agree with" and to actually support

22   those behaviors, yes, they have some evidence that he's

23   supporting those behaviors that someone is going to take

24   advantage of this.

25             They just haven't showed any evidence that any

1    employee or prospective employee intends to avail themselves

2    of these services at all.

3            THE COURT:  Do you understand their self-insurance

4    process?  I don't.  I'm asking you.

5            MR. LYNCH:  Vaguely, your Honor.

6            THE COURT:  And so, my question to you is, if they

7    have an employee that might utilize prEP drugs, would

8    Braidwood be notified of that, or would their third-party

9    claims administrator simply pay it because it is covered

10   under their policy?

11           MR. LYNCH:  So that, I don't know for sure, your

12   Honor.  I would have to defer to counsel and Braidwood about

13   that.

14           THE COURT:  Okay.  And what is your take on

15   counsel's argument that, so long as all of the plaintiffs

16   are seeking the same relief, then standing exists?

17           What is your take on that and the cases that they

18   cite and the arguments -- of course, the Law Review article

19   criticizes this article, but it does list --

20           MR. LYNCH:  Right.

21           THE COURT:  -- as counsel suggested, lists, you

22   know, an impressive list of cases that say this.

23           MR. LYNCH:  Yeah.  So I think that I would put it

24   differently than Mr. Mitchell did.  If one plaintiff has

25   standing, your Honor can reach the merits of any claim that

1       that plaintiff has.

2               That doesn't mean that the other plaintiffs have

3       standing or, you know, if -- specifically with the RFRA

4       claim, where the relief would be an individual exception to

5       some rule.  If a plaintiff doesn't have standing, they can't

6       obtain relief.

7               The constitutional claims are different, in that

8       your Honor could reach the merits of the constitutional

9       claim if one plaintiff has standing and, you know, enjoin

10      coverage or enjoin the rule.  But it's not that every

11      plaintiff has standing; it's plaintiff and injury-specific,

12      claims-specific.

13              THE COURT:  Okay.  All right.  Thank you.

14              MR. LYNCH:  Thank you.

15              THE COURT:  Do you want to reply and then move to

16      the substance?

17              MR. MITCHELL:  Your Honor, I can reply if you have

18      questions.  But if not, I think I'm content to move on to

19      the merits, if that works for you?

20              THE COURT:  Very good.

21              MR. MITCHELL:  And your Honor, I will begin with

22      the appointments clause, if I could.  That's where I will

23      spend the bulk of my time.

24              The fundamental constitutional problem with the

25      preventive care coverage regime is that it empowers

1    individuals who have not been appointed in conformity with

2    the Constitution to unilaterally decree that preventive care

3    all private insurers must cover.

4            This indisputably qualifies as an exercise of

5    "Significant authority pursuant to the laws of the United

6    States."  And it therefore requires that these individuals

7    be appointed in conformity with the appointments clause as

8    officers of the United States.

9            The government has offered many ways in its

10   briefing to mitigate or obviate these appointments clause

11   problems, but none of them hold water at the end of the day.

12           I would like to go through the arguments, if I

13   could, one by one that the government has offered.  And let

14   me begin with their, what I will call, ratification

15   argument.

16           And this is the idea that Secretary Becerra has

17   taken care of any appointments clause problems that might

18   have existed in the initial promulgation of these preventive

19   care mandates because he issued a memo in January of 2022

20   that purports to ratify the previous edicts that have been

21   issued by ACIP, HRSA, and the Task Force.

22           Now, this doesn't fix the problem for two reasons.

23   Number one, the Secretary just has no authority under the

24   statute or any other source of law that we've been able to

25   find to ratify or reject the preventive care mandates that

1    have been imposed by the Task Force or by ACIP or HRSA.

2              Section 300gg-13(a)(4), one through four, compels

3    the Secretary to implement their decisions whether he

4    approves of them or not.

5              And that's what distinguishes this case from

6    Guedes against ATF, the D.C. Circuit case the government

7    relies on heavily throughout their brief.

8              Because the Attorney General's authority to ratify

9    in that case was "Unquestioned."  That is not the situation

10   here.

11             The statute vests the authority to determine the

12   scope of preventive care coverage with the Task Force and

13   with ACIP and with HRSA.  It does not authorize the

14   Secretary of Health and Human Services to review or in any

15   way countermand their decisions.

16             Now, the government tries to rely on a statute

17   codified at 42 U.S.C., Section 202.  They claim that the

18   statute somehow authorizes the Secretary to override the

19   decision to make up HRSA and the Task Force.  But I would

20   like to read the statute to the Court.  I don't know whether

21   your Honor has it in front of you?

22             THE COURT:  I don't.

23             MR. MITCHELL:  I did not bring a hard copy

24   with me.

25             But here's what it says, "The Public Health

1    Service and the Department of Health and Human Services

2    shall be administered by the Assistant Secretary for Health

3    under the supervision and direction of the Secretary."

4         So I will read this again.  "The Public Health

5    Service and the Department of Health and Human Services

6    shall be administered by the Assistant Secretary for Health

7    under the supervision and direction of the Secretary."

8         Now, what this statute says is that the Public

9    Health Service, which includes ACIP and HRSA -- it does not

10   include Preventive Services Task Force.  The Public Health

11   Service is administered by the Assistant Secretary for

12   Health, and that the Assistant Secretary for Health is, in

13   turn, supervised and directed by the Secretary for Health

14   and Human Services.

15        It does not say that the Secretary supervises and

16   directs the Public Health Service itself.  The Secretary

17   supervises and directs the Assistant Secretary for Health

18   who, in turn, administers -- it doesn't say rules over or

19   vetoes or countermands -- administers the Public Health

20   Service.

21        So the Assistant Secretary for Health is just an

22   administrator.  It's not a ruling official that can

23   countermand decisions of the Affordable Care Act,

24   specifically and exclusively vests in ACIP, HRSA, and the

25   Task Force.

1          And how can the Secretary's ratification argument

2     be squared with the text of 42 U.S.C., Section 299b-4, which

3     says, and I've quoted this before in our briefing, "All

4     members of the Task Force convened under this subsection and

5     any recommendations made by such members shall be

6     independent, and to the extent practicable, not subject to

7     political pressure."

8          This is clearly a regime that is designed to

9     insulate the decisions of the Preventive Services Task Force

10    from political interference and giving the Secretary the

11    power to override or veto the Task Force recommendations at

12    will is incompatible with the political independence secured

13    by Section 299b-4.  The Task Force is not part of HHS.  The

14    Secretary has no authority to overrule its decisions.

15         The second and more serious problem, though, with

16    the government's ratification argument is that it would

17    still violate the appointments clause for ACIP and HRSA and

18    the Task Force to impose preventive care mandates on their

19    own, even if those decisions can later be reversed or

20    countermanded by the Secretary.

21         And here's why.  They're still given the power to

22    impose preventive care mandates, which will remain in effect

23    until the Secretary gets around to weighing in on the

24    question.  That is still significant authority pursuant to

25    the laws of the United States.

1    On top of that, the Secretary cannot, even on the

2    government's view -- and the government should correct me if

3    I'm mischaracterizing their position -- but the Secretary

4    cannot override a decision not to impose a preventive care

5    mandate by ACIP, HRSA, or the Task Force.

6    Their assent is a necessary condition for a

7    preventive care mandate to be imposed even on the

8    government's ratification theory.

9    If they don't propose or recommend something, the

10   Secretary can't impose it on his own initiative.  So they

11   still wield significant authority under the laws of the

12   United States because they can impose the preventive care

13   mandate before the Secretary weighs in.

14   And secondly, they still have this vetogate power.

15   If they don't approve a recommendation, the recommendation

16   cannot take effect, even if the Secretary or the President

17   or someone higher up on the food chain wants it.

18   So coming or going, they are exercising and

19   wielding significant authority pursuant to the laws of the

20   United States and they must be appointed as officers.  Even

21   if we accept this ratification idea, which I certainly don't

22   accept, but even if this Court were to indulge the

23   possibility of ratification by the Secretary, it doesn't

24   cure the appointments clause problem.

25   The government does not have a good answer to this

1    point in its reply brief.  You still need to be an officer

2    of the United States, even when you are temporarily imposing

3    preventive care mandates that might later be reversed by the

4    Secretary.

5          And you still have to be an officer of the United

6    States when your approval is a necessary condition for a

7    preventive care mandate to go into effect.

8          Now, this is unquestionably significant authority

9    pursuant to the laws of the United States.  And Lucia proves

10   as much, because it holds that administrative law judges are

11   officers of the United States, even though the decisions of

12   an administrative law judge can be reviewed and reversed by

13   an agency on appeal.  So that's the issue with respect to

14   ratification.

15         The second big point the government makes is this

16   question about, what's the remedy?  So if one assumes there

17   is an appointments clause problem, what should the remedy

18   be?

19         And the government claims that we are seeking an

20   improper remedy.  They're claiming the Court should enjoin

21   the defendants from enforcing the preventive care mandates

22   because they were issued by individuals who were not

23   appointed consistent with Article II.

24         The government says that's not the proper remedy.

25   What the Court should instead do is issue some type of

1    ruling, and I'm not sure how this would take effect, but the

2    Court should somehow decree that the Secretary of Health and

3    Human Services can countermand the decisions of ACIP, HRSA,

4    and the Task Force, thereby curing the so-called

5    appointments problem.

6           Well, let's start with the first and what I think

7    is the most serious problem in this proposal, and this is

8    the point I've already made, a regime in which the Secretary

9    of Health and Human Services ratifies or countermands the

10   recommendations of ACIP, HRSA, and the Task Force, still

11   violates the appointments clause for the reasons I've said

12   previously.

13          Number one, ACIP, HRSA, and the Task Force are

14   still wielding significant authority pursuant to the laws of

15   the United States because their recommendations take effect

16   without the Secretary's approval, even if the Secretary can

17   later decide to ratify or reverse the decision.

18          Number two, the approval of the ACIP, HRSA, and

19   the Task Force is necessary for a preventive care mandate to

20   take effect, even under this regime imposed by the

21   government.

22          So they're still wielding significant authority

23   pursuant to the laws of the United States and that clearly

24   follows from the Supreme Court's holding in Lucia, because

25   the administrative law judges were still held to be officers

1   who had to be appointed consistent with Article II, even

2   though their decisions were reviewed and possibly

3   reversed -- subject to reversal by some superior who was

4   higher up in the food chain.

5          The government relies heavily on Arthrex from the

6   Supreme Court's decision two terms ago.  The situation in

7   Arthrex was very different, because the Court's remedy in

8   that case made every decision by the administrative patent

9   judges reviewable by the director of the Patent and

10  Trademark Office, and that's regardless of which direction

11  the decision took.  All right?

12         In this case, there is no way for a principal

13  officer to override a decision not to enact or recommend new

14  coverage mandates.

15         What the government is describing in this regime

16  in which ACIP, HRSA, and the Task Force make

17  recommendations, those recommendations can be reversed later

18  by the Secretary, but the nonrecommendations can't.

19         They're not proposing a regime where the Secretary

20  gets to come in and say, we're going to impose this

21  preventive care mandate against the wishes of HRSA or

22  against the wishes of ACIP or against the wishes of the U.S.

23  Preventive Services Task Force.

24         There's another big difference in this case in

25  Arthrex.  There was no dispute in Arthrex that the

1    administrative patent judges were improperly appointed as

2    inferior officers in a manner consistent with Article II.

3              That's not the situation here, because there is no

4    statute that vests the appointment of the ACIP members or

5    the HRSA members or the U.S. Preventive Services Task Force

6    Services members in the President alone or in the courts of

7    law or in the heads of department.

8              For an inferior officer to be appointed consistent

9    with the Constitution, Congress must, by law, vest that

10   appointment in the President alone or the courts or the

11   heads of department.  There has to be a statute.  And the

12   government hasn't pointed to one yet that can qualify under

13   Article II.

14             Here's the second problem with the government's

15   proposed remedy.  Courts do not have the power to invent new

16   statutory powers as part of a judicial remedy.  They can't

17   rewrite a statute.  They have to award declaratory or

18   injunctive relief between the named litigants.

19             There are currently preventive care mandates in

20   effect.  My clients are claiming that these mandates are

21   unlawful because they were imposed by individuals who are

22   not appointed as officers of the United States.

23             If the Court agrees with us, the only permissible

24   remedy is to restrain the defendants from enforcing them

25   until Congress changes the statute to fix the appointments

1    clause problem.

2           The Court can't make the decision for Congress

3    about how the appointments clause problem can be fixed.  The

4    Court's job is to give relief to my clients that will

5    address their injuries, and then allow the political

6    branches to decide how to respond.

7           The Court does not have the prerogative to give

8    new powers on agency officials that Congress has not

9    confirmed.

10          The third problem is a remedy that's issued by

11   this Court has to redress the injuries that the plaintiffs

12   are alleging.  Otherwise, it's an advisory opinion.  The

13   Arthrex-like remedy that the government proposes does not do

14   that.

15          My clients are alleging injury in fact from the

16   imposition and enforcement of the preventive care mandates.

17   The government's proposed remedy will leave that injury in

18   place.

19          And if the Court were to issue that remedy after

20   finding the violation of the appointments clause, it would

21   be issuing an advisory opinion because it would not be

22   ruling on the Constitution in a way that redresses an injury

23   that the plaintiffs have asserted.

24          My clients would still remain subject to the

25   preventive care mandates.  The injuries they alleged would

 1    still be in effect.  And the Court would not have addressed

 2    the injury in any way, shape, or form.  So Article III, in

 3    our view, prevents that remedy that the government is

 4    proposing.

 5            The third big issue the government raises in its

 6    brief, it claims there was never an appointments clause

 7    problem in the first place and suggests that all of the

 8    relevant players were appointed in a manner consistent with

 9    Article II: the members of ACIP, the administrator of HRSA,

10    and the members of the Task Force.

11            So I'll go through each of those three entities

12    one by one, with the Court's permission.  Let's start with

13    ACIP.  The government relies on the fact that the CDC

14    director is constitutionally appointed, which he is, and it

15    then relies on the fact that ACIP advises the CDC director.

16            This argument would have worked before the

17    enactment of the Affordable Care Act when ACIP was truly an

18    advisory committee.

19            It doesn't work when the Affordable Care Act gives

20    ACIP power to dictate the immunizations that private

21    insurers must cover.  The members of ACIP have become

22    principal officers once President Obama signed the

23    Affordable Care Act into law, because Section 300gg-13(a)(2)

24    requires that the recommendations -- so-called

25    recommendations -- take effect without subjecting their work

1    to the direction or supervision of a principal officer.

2              But even if we accept the government's claim that

3    the CDC director can ratify and override and countermand the

4    ACIP recommendations, the ACIP members still qualify as

5    principal officers because an ACIP recommendation, as we

6    said before, is necessary for any immunization coverage

7    requirement to take effect.

8              There's no statute anywhere that we can find that

9    allows a principal officer to override an ACIP refusal to

10   recommend a vaccine or an immunization.

11             And then finally, even if the members of ACIP

12   somehow were named inferior officers rather than principal

13   officers, their appointments remain unconstitutional because

14   the government has not identified an act of Congress that

15   vests those appointments in the President alone or in the

16   courts of law or in the heads of department.

17             The government tries to rely on 42 U.S.C.,

18   Section 217a, but this statute does not work because it

19   authorizes the Secretary to make appointments to "such

20   advisory councils or committees for the purpose of advising

21   him in connection with any of his functions."

22             ACIP can't be considered an advisory committee

23   anymore because it's been given powers by the Affordable

24   Care Act to give its so-called recommendations binding

25   force.  That's not advice.  That is an edict.  That is an

1    exercise of actual government power.

2            So 217a will not salvage the appointments clause

3    problem.  It will not qualify as an act of Congress that

4    vests the appointment of these ACIP members in the Secretary

5    alone because, again, it only allows the Secretary to

6    appoint advisory committees, which ACIP was prior to 2010,

7    but no longer is.

8            On HRSA, the administrator of HRSA is a principal

9    officer for the exact same reasons, right?  It's empowered

10   by the Affordable Care Act to unilaterally determine the

11   preventive care that private insurers must cover.

12           And these preventive care recommendations are not,

13   under the text of the statute, subject to the direction or

14   supervision of the Secretary or any other principal officer.

15           Now, again, the government tries to respond by

16   arguing that the Secretary really does have power to

17   countermand HRSA's decision making.  So if HRSA recommends

18   contraception coverage, the government claims that the

19   Secretary can override that.

20           Even though it's not explicit in 300gg-13(a)(4),

21   the government claims that that is implicit based on

22   background principles of administrative law and other

23   statutory provisions.

24           Again, even if one were to assume that, and again,

25   we don't assume that, the plaintiffs, but even if the Court

1     were to assume that for the sake of argument, the director

2     of HRSA is still a principal officer because, number one,

3     the recommendations of HRSA still take effect before the

4     Secretary gets around to deciding whether to ratify it.

5             And number two, the recommendation of HRSA is

6     still a necessary condition for a preventive care mandate to

7     take effect.  For there to be a contraceptive mandate, the

8     director of HRSA must go along with it.

9             If there's no recommendation from HRSA, there's no

10    authority vested in any other person in the government to

11    impose the contraceptive mandate against the wishes of the

12    HRSA administrator.

13            That is the power held of a principal officer.

14    It's not subject to review or override.  Even if one accepts

15    the government view that the recommendations can be

16    overridden, the nonrecommendations can't.  So same problems

17    with ACIP.

18            Now, moving on to the Task Force.  Here's where

19    the government, in our view, really runs into problems with

20    the U.S. Preventive Services Task Force.  Here's the Task

21    Force officer of the United States under Lucia, number one,

22    it must "occupy a continuing position established by law;

23    two, it must exercise significant authority pursuant to the

24    laws of the United States."

25            The U.S. Preventive Services Task Force, the

1  members clearly occupy a continuing position established by

2  law.  Just look at the statute, 42 U.S.C., Section 299b-4

3  (a)(1).  It says, "The director shall convene an independent

4  preventive services task force to be composed of individuals

5  with the appropriate expertise."

6          All right.  So there's a statute that requires

7  that a task force be established, and that its members be

8  populated by experts, and that it be convened by the

9  director of ACIP.

10         So there is a statute that establishes this

11  position.  It's established by law, continuing position

12  established by law.

13         And then the statute goes on to describe the

14  duties of the task force, the agency's role in supporting

15  the work of the task force, independence from political

16  pressure.

17         And then, of course, the provision in the

18  Affordable Care Act that gives the task force the power to

19  determine the preventive care that all private insurers must

20  cover.

21         So the only remaining question is whether that's

22  significant authority pursuant to the laws of the United

23  States.  And if that's not significant authority pursuant to

24  the laws of the United States, it's hard to imagine what

25  could be.

1          This is an entity that can, by unilateral decree,

2     tell every private insurer, both the self-insured plans and

3     the plans offered by insurance companies, what they must

4     cover at no cost to the beneficiary, without co-pay or

5     deductible.

6          And again, even if we assume the possibility of a

7     veto power in the Secretary, there's still significant

8     authority wielded by the Task Force.

9          It's almost like the relationship between the

10    Congress and President, which is how I understand the

11    government's ratification argument.

12         The Task Force makes recommendations.  The

13    Secretary can override the recommendation in an act akin to

14    a presidential veto, but the Task Force still has to make

15    the recommendation before it can take effect.

16         There's still significant authority vested in that

17    Task Force, even if there is this later ratification by the

18    Secretary.  And again, the nonrecommendations can never be

19    reviewed because there's no statute that empowers the

20    Secretary or the President or anybody else to impose a

21    preventive care mandate absent a recommendation from the

22    U.S. Preventive Services Task Force.

23         So again, that's our presentation on the

24    appointments clause.  Your Honor, if I could just briefly

25    address nondelegation and RFRA?

1            With nondelegation, we have seen from the Supreme

2    Court some hints, perhaps one could say trying to read the

3    tea leaves, with some interest in possibly revising the

4    nondelegation doctrine.

5            The government is suggesting that it really should

6    be the Supreme Court's prerogative if they want to breathe

7    new life into the doctrine to do so, given the language that

8    we saw in Little Sisters of the Poor.

9            The government may very well be right, there has

10   been, at least from 1935, no decisions from the Supreme

11   Court that have declared a federal statute unconstitutional

12   for failing to provide an intelligible principle.  I don't

13   see any intelligible principle in the statute whatsoever.

14           So unless the Court is willing to acknowledge that

15   there simply is no nondelegation doctrine or that everything

16   qualifies as an intelligible principle, it's hard for us to

17   understand what the intelligible doctrine would be, because

18   there's nothing in the statute that purports to direct the

19   Task Force or HRSA or ACIP in their discretion.  It just

20   seems to be trusting these entities to exercise their

21   discretion the way that will be consistent with the public

22   interest.

23           Courts have been very aggressive in reading in

24   intelligible principles in the statutes.  That may be the

25   approach the Court might want to use here.

1          But I think the acid test would be, what would be

2     an unlawful use of this delegating power?

3          The statute defines the boundaries of the power by

4     saying, it has to be preventive care, or in some cases,

5     (a)(4) preventive care for women.  And in (a)(2), it has

6     immunizations or vaccines.  That defines the boundaries of

7     the delegated power, but there's nothing that actually says

8     how that delegated power should be exercised within those

9     boundaries.  That's what an intelligible principle is.  It's

10    something that tells the agency, how do you use your

11    discretion.

12         So again, it may be proper to leave this to the

13    Supreme Court to let them decide whether they want to start

14    reviving the nondelegation doctrine in any way, shape, or

15    form.

16         But the judicial test in the nondelegation is

17    leading to statutory enactments like this, where Congress

18    doesn't even try to tell the agency what it should do, not

19    even a statement regulating the public interest, or do so

20    according to sound health policy, not even in bromides and

21    platitudes.

22         So again, courts may try to read that into the

23    statute; some courts have done so.  But maybe it's up to the

24    justices to ultimately take the first step here.

25         On RFRA, I just want to return to the point I made

 1    earlier about standing.  The court has to accept

 2    complicity-based objections, as long as they're sincere.

 3            The government in their brief is attacking some of

 4    the factual assertions that our clients are making with

 5    respect to their alleged complicity and conduct that

 6    violates their religious belief, but that's not the role of

 7    the Court.

 8            If the client says that this makes me complicit --

 9    I'm sorry.  If the plaintiff says, this makes me complicit

10    in conduct that violates my religious belief, the question

11    for the Court to resolve is only whether that complicity

12    objection is sincere.

13            It's possible for a complicity-based objection to

14    be so delusional that it might lead the Court to question

15    the sincerity of the objection, but the government is not

16    making that claim.  I don't think that's a plausible way to

17    characterize what our clients are asserting.

18            Dr. Hotze believes that providing this coverage

19    makes him complicit in conduct that violates his religious

20    belief.  The Court has to accept that, unless he thinks

21    Dr. Hotze is lying.

22            He's presented a sworn affidavit that explains his

23    complicity-based objections in detail.  That affidavit is

24    unrebutted.

25            Again, the government is not questioning the

1    sincerity.  They're just questioning factually whether his

2    beliefs are correct.

3         Just like in Hobby Lobby, that's not the role of

4    the Court.  It's not for the Court to say, Hobby Lobby, you

5    think this is an abortifacient but you're wrong to think

6    that.

7         The question for the Court is, is Hobby Lobby

8    sincere in thinking that this actually is an abortifacient,

9    and is Hobby Lobby sincere in believing that this complicity

10   in abortifacient contraception is contrary to its religious

11   beliefs.  Nothing more than that.  And then a substantial

12   burden is established.

13        And then from there, we believe the RFRA argument

14   just flows naturally from Hobby Lobby, because there's

15   obviously a less restrictive means of providing this

16   universal coverage that the government is trying to obtain

17   by commandeering Braidwood Management's health plan to

18   provide the coverage.  For example, the government could

19   provide it just like they did provide it in Hobby Lobby.

20        So if you have questions?

21        THE COURT:  Just in terms of the appointments

22   clause arguments and your colleague's response to that,

23   their argument seems to me is that there is a well-accepted

24   general understanding of the structure of government and the

25   structure of these agencies.

 1              And their argument, and they cited a Supreme Court

 2    case that says that Congress will specifically change that

 3    structure -- if they change that structure, it will

 4    specifically do so.

 5              And that these provisions (a)(1) through (4),

 6    whichever ones apply, don't specifically change that

 7    structure.

 8              And so, that background understanding of the

 9    structure of government and the structure of agencies should

10    be read into the statutes.

11              MR. MITCHELL:  Yeah.  Even if they're right to say

12    that, and I don't think they are, but even if they were

13    right, you still have to deal with the problem of Lucia.

14              Because, in Lucia, the administrative law judge

15    was subject to review by his superiors.  He was still

16    considered an officer of the United States.  He still had to

17    be someone who was deemed -- he still had to be appointed

18    consistent with the requirements of Article II.  Now, that

19    was an inferior officer, not a principal officer.

20              The second problem that they have to confront is

21    that they are acting as principal officers because, under

22    the statute, they still have to recommend coverage of

23    preventive care before a mandate of preventive care can take

24    effect.

25              So even if one were to accept the idea that the

1    Secretary can veto their recommendations, I don't see how

2    the government can get around the problem that their

3    recommendation is still a necessary condition for the

4    preventive care coverage mandate to take effect.

5         I also don't know how they can get around the

6    problem that the recommendation itself allows the mandate to

7    take effect even before the Secretary has weighed in on it.

8         So we can indulge the assumption perhaps, so the

9    secretary can overrule a recommendation or ratify it 10

10   years later, as Secretary Becerra has done, but that doesn't

11   in any way, in our view, cure the appointments clause

12   problem, because they are still wielding significant

13   authority pursuant to the laws of the United States.

14        And they are wielding that authority without

15   supervision, because the recommendation takes effect

16   immediately, without approval from one of their superiors.

17        And there's just no way, under the statute, for a

18   mandate to take effect if they don't sign off on it.  So

19   they essentially are acting as a veto here.  And they have

20   to be appointed officers for that to happen.

21        THE COURT:  In their footnote, they cite an

22   example of the CDC director imposing a recommendation

23   related to COVID that the FDA recommended should be imposed

24   in the way she wanted it imposed.

25        What's the difference?

1          Is it statutory language between the two?

2          MR. MITCHELL:  They did mention it, I think -- is

3  this the example of the COVID booster shot that ACIP

4  recommended and the CDC nixed?  Is that what it was?

5          THE COURT:  Right.  It's either that or it's the

6  reverse.

7          MR. MITCHELL:  Okay.  Right.  So could I respond

8  to that situation first, if I could?

9          THE COURT:  Yes.

10          MR. MITCHELL:  So ACIP recommends a booster shot

11  or something to that effect, the CDC director vetoes it.

12  The question then would be, is that consistent with the

13  statute, because the statute seems to say what ACIP says

14  goes, right?

15          So it's not clear to me the CDC director has that

16  authority.  But even if one were to assume the CDC director

17  had it, ACIP is still exercising significant authority

18  pursuant to the laws of the United States.

19          Because even though its recommendation didn't take

20  effect in that particular situation it has in other

21  situations.  And its recommendation is still needed under

22  the statute for any preventive care mandate to take effect

23  under the Affordable Care Act.

24          Now, there may be other sources of authority for

25  these mandates to be imposed, but under the Affordable Care

1   Act, as written, ACIP has to make the recommendation before

2   private insurance is required to cover it as a vaccine with

3   no co-pays.

4          THE COURT:  Okay.  Okay.  Very good.  Anything

5   else?

6          MR. MITCHELL:  Nothing further, your Honor.  Thank

7   you.

8          MR. LYNCH:  So we will start with the appointments

9   clause, your Honor.  The premises of plaintiffs' argument is

10  that the preventive services provision, that's unreviewable

11  authority outside the regular structure of HHS in these

12  entities, but there's no language in the statute that says

13  that.

14         The other statutes, 42 U.S.C., 202, which my

15  colleague just mentioned, the reorganization plan which we

16  cite in our brief which was adopted by Congress, all of

17  these things and the principles of administrative law set

18  out how HHS works.

19         If the Secretary has authority over the whole

20  department, flowing down, they can direct and supervise the

21  administrator of the Public Health Service.  The CDC and

22  HRSA specifically are in the Public Health Service.

23         And as he acknowledges, the CDC director and the

24  HRSA administrator are officers of the United States that

25  are properly appointed.

1           The HRSA administrator sets out the guidelines or

2     accepts the guidelines.  The CDC director accepts the ACIP

3     recommendations for them to take effect as the statute

4     requires coverage if the recommendations are in effect.

5           So inferior officers of the United States, who are

6     properly appointed with respect to clearly the HRSA

7     administrator and the CDC director, are the people who are

8     calling the shots for provisions in subsections, what is it,

9     (a)(2) through (a)(4).

10          I don't think there's any reasonable question

11    about that.  The Secretary has the authority to directly

12    supervise them in turn.  So the Secretary's ratification, if

13    it were even needed, ends the appointments clause claim on

14    the merits.  That's what the Guedes and other decisions say

15    from the D.C. Circuit that we talk about.

16          The Fifth Circuit in Willy vs. Administrative

17    Review Board made clear the Secretary has ample authority to

18    appoint inferior officers and delegate final decision-making

19    authority to them under 5 U.S.C., Section 301 in a

20    reorganization that is identical to the one that governs

21    Public Health Service here.

22          So the plaintiffs talk about sort of what happens

23    after, if the Secretary chooses not to ratify.  That's

24    really not the point here.  The recommendations and

25    guidelines would be properly in effect if the Secretary

1    didn't choose to ratify, but the Secretary has the authority

2    to do so and that ends the claim.

3            He doesn't point to any authority for the claim

4    that the administrative process can't start with

5    nonofficers.  I don't see why it couldn't.  They make

6    recommendations.  They're accepted.  They are discussed

7    internally.  They're rejected.  That's how the

8    administrative process routinely goes.

9            As far as the present Preventive Services Task

10   Force goes, it's a little more complicated.  As my colleague

11   noted, the Task Force itself is outside of HHS.  They're a

12   nongovernment body.

13           I think the easiest -- they're volunteers.

14   They're volunteer doctors.  I think the easiest path for the

15   Court to resolve this is that Section 42, U.S. Code

16   299b-4(a)(6) provides that recommendations made by the

17   members of the PSTF shall be independent, and to the extent

18   practicable, not subject to political pressure, which the

19   Secretary can -- it admits that there's some aspect of

20   political participation that can be involved.  It's just, to

21   the extent practicable, they're not to be subject to

22   political pressure.

23           So here, the Secretary, by ratifying their

24   guidelines and recommendation, I don't think it runs afoul

25   of that requirement.  It's not imposing new obligations or

1   pressure on them.  Then this is not a case where the

2   question is, well, did the Secretary impose an improper

3   degree of pressure?  That would be another case.

4          But even, regardless of whether the -- the

5   Secretary's ratification is sort of the easiest path, and if

6   your Honor believes you need to sever the independence prong

7   of that statute in order to allow the PSTF to be directed

8   and supervised more properly by the agency, that's another

9   way to get there.

10          But regardless, PSTF members aren't federal

11   officers under the binding law of this circuit, the Supreme

12   Court precedent, or the OLC opinion that plaintiffs have

13   cited in their brief.

14          The Fifth Circuit in Riley sitting en banc

15   requires a formalized relationship of employment with the

16   United States government for an individual to be an officer

17   of the United States.

18          PSTF members undisputedly do not satisfy this

19   criterion.  They're not employees.  They're volunteer

20   doctors.  The OLC memo says that federal office involves

21   necessarily the power to legislate, to execute the law, or

22   to hear and determine judicially submitted questions.

23          I think, as we noted in pages 43 and 44 of our

24   opening brief all the cases cited where any court -- by

25   either party -- where any court weighs in on what is an

1    officer basically has a reasoning that is consistent with

2    the Fifth Circuit's employment or the OLC memos legislate,

3    execute judicial power.

4            The PSTF doesn't do that.  All they do is make

5    recommendations about what is a medically acceptable

6    standard of care.  They are specifically limited by statute

7    to review any scientific evidence related to the

8    effectiveness, appropriateness, and cost-effectiveness of

9    clinical preventive services for the purpose of developing

10   recommendations for the healthcare community.

11           And then Congress has decided -- Congress, who has

12   the authority to regulate the insurance markets, has said

13   they have adopted these regulations -- or these

14   recommendations as binding on insurance companies.

15           PSTF is not charged in any way with making

16   decisions about insurance or thinking about insurance.

17   Their job is just to make these medical recommendations.

18   And that's, you know, set forth in the statute that governs

19   their actions.

20           Let's see.  As far as sort of the timing of the

21   Secretary's ratification.  You know, at this point, the

22   Secretary has ratified every single currently-in-effect

23   recommendation under this provision.

24           So the plaintiffs don't have standing to raise

25   what would happen in a future case if the Secretary decides

1    not to ratify.  That's just not before the Court right now.

2              On the vesting clause, which my colleague didn't

3    mention, it's largely the same as governing the PSTF, but

4    there's one specific claim that he makes in his briefing,

5    and the cases that he relies on are about the insulation

6    from removal of different entities.

7              And there's no protection from removal that

8    applies to PSTF members.  He doesn't point to one.  So that

9    premise is wrong, and those cases don't apply to the PSTF.

10             On nondelegation, the plaintiffs' nondelegation

11   claim is precluded squarely by the Fifth Circuit's decision

12   in Big Time Vapes.  There, they write, "Delegations are

13   constitutional, so long as Congress lays down, by

14   legislative act, an intelligible principle to which the

15   person or body authorized to exercise the authority is

16   directed to conform."

17             And specifically, when talking about what the

18   intelligible principle is, they say, excuse me, "It is

19   constitutionally sufficient if Congress clearly delineates

20   the general policy, the public agency which is to apply it,

21   and the boundaries of delegated authority."

22             And this language is particularly important --

23   that's at pincite 441 in the Big Time Vapes case -- because

24   my colleague here has suggested that setting boundaries is

25   different than setting forth an intelligible principle.

```
 1    That's not what the Fifth Circuit says.  The boundaries are

 2    the intelligible principle.  There's no distinction.

 3            We go through it in our brief, all the various

 4    ways in which the statute does set forth boundaries.  They

 5    talk about who is making these decisions.

 6            The PSTF in particular as I mentioned is not just

 7    subject to the boundaries in this provision, the preventive

 8    services provision, but also is subject to the limitations

 9    in 482 U.S.C. 299b-4(a)(1) which says, as I mentioned

10    earlier, they are limited to a review of scientific evidence

11    related to the effectiveness, appropriateness, and

12    cost-effectiveness of clinical preventive services.

13            The ACIP can only recommend immunizations that

14    have in effect a current recommendation with respect to the

15    individual involved.  And, of course, the CDC director, as I

16    said earlier, has to sign off.  So -- but ultimately, Big

17    Time Vapes precludes their claim here.

18            As far as the RFRA claim goes, I'm happy to rest

19    on the briefs, given my colleague's representation that

20    they're limiting their claim to the prEP mandate.

21            THE COURT:  Is either the director of the CDC or

22    the Secretary of HHS, would they be able to reject ACIP

23    recommendations before they take effect?

24            Your colleague, in his briefing papers and here

25    today, points out that the time difference means that they
```

1    are officers.

2            MR. LYNCH:  Right.  So, by law, the ACIP

3    recommendations do not take effect until the CDC director

4    says they do.  The CDC director's concurrence is what gives

5    them effect.  Otherwise, they are advisory recommendations

6    from a federal advisory council.

7            THE COURT:  Okay.  And so, is there a difference

8    then in recommendations and the mandate?

9            MR. LYNCH:  So the recommendations that are

10   accepted by the HRSA administrator and the CDC director,

11   that's when the coverage requirements take effect.  That's

12   when they become coverage requirements.  Otherwise, they're

13   just recommendations or guidelines.

14           THE COURT:  So there is a difference?

15           MR. LYNCH:  Yes.

16           THE COURT:  That is, ACIP, HRSA, they will make

17   recommendations.  They're not in effect.  Insurance

18   companies do not have to comply with them?

19           MR. LYNCH:  Correct.

20           They take effect when the HRSA administrator

21   agrees to support HRSA and the CDC director agrees to accept

22   the basic recommendations.

23           THE COURT:  And so, on the HRSA then, when the

24   administrator agrees, that's when the mandate will flow to

25   the private sector?

 1              MR. LYNCH:  Correct.

 2              THE COURT:  And even absent the Secretary

 3     accepting them, ratifying them, taking any action, vis-a-vis

 4     the recommendation?

 5              MR. LYNCH:  Right.  They're inferior officers who

 6     can make that decision.  You know, they are subject to the

 7     direction and supervision of the Secretary.  The Secretary

 8     could stop them presumably, but --

 9              THE COURT:  So could the Secretary, if the HRSA

10     administrator says, I agree and support and recommend, could

11     the Secretary intervene and say, do not allow your authority

12     to take effect and mandate to the private sector?

13              MR. LYNCH:  So for certain the Secretary could

14     remove those officers before they take that step.  I am not

15     100 percent certain whether the Secretary could, if they

16     say, accept the recommendation, somehow stop it in

17     mid-course.

18              I would want to consult with HHS on that, and I

19     could respond in a notice in a few days, if your Honor

20     wishes.

21              THE COURT:  Okay.  Fine.

22              Because I do think that's an important issue that

23     the plaintiffs are putting forth.  Of course, all of them

24     are.  But they're saying, notwithstanding your arguments,

25     there could be a time period in which the HRSA administrator

 1   or the ACIP people could make recommendations, support

 2   policies that would go into effect before the Secretary

 3   could get around to acting on it, and that affects the

 4   status of that, whether they're officers -- principal

 5   officers or not.

 6           MR. LYNCH:  But to be clear, your Honor, of

 7   course, here, since the Secretary has now accepted all of

 8   them that's not an issue at the moment.

 9           THE COURT:  Right.  But doesn't their argument go

10   to the fact of the evidence of or the details relating to

11   what their status is, vis-a-vis the appointments clause of

12   the Constitution, right?

13           In other words, he's coming in and saying he

14   ratified it.  And so, therefore, there's no problem.  But

15   they're also saying, this is evidence of the fact that they

16   must be appointed pursuant to the appointments clause.

17           MR. LYNCH:  I understand the point, your Honor,

18   and I will get back to you on that issue.

19           THE COURT:  And they also cite in their briefing

20   the language from the Little Sisters of the Poor where the

21   majority opinion talks about this sweeping, this very broad

22   authority granted to the HRSA.

23           And so, doesn't that lend additional support to

24   their argument that they need to be appointed consistent

25   with the appointments clause?

 1            MR. LYNCH:  So I don't believe that the Little

 2    Sisters decision helps their argument at all.  Little

 3    Sisters affirms regulations in which the department directs

 4    HRSA to exempt certain parties from any guideline.

 5            The department can only do that if they have

 6    authority to stop those guidelines.  You know, if my

 7    friend's argument is correct, then the regulations that

 8    Little Sisters upheld would be invalid because the

 9    department would have no authority to tell HRSA what to do

10    about these things.  That's not what happened in Little

11    Sisters.

12            THE COURT:  As it relates to the Task Force, you

13    mentioned that they are volunteers, and then you cite to the

14    Fifth Circuit's analysis in Riley vs. St. Luke's that

15    there's got to be some kind of continuing and formalized

16    relationship of employment.  And then, of course, you talk

17    about the OLC opinion.

18            But as it relates to the language in that case, it

19    talks about the relationship of employment, does that

20    necessarily mean paid?  That they have to be paid?

21            MR. LYNCH:  I think it definitely does it's

22    following up on Supreme Court decisions that go back a

23    century that make clear that it's about emolument and

24    payment to get that appointment relationship.  We cite those

25    in our brief.

1              THE COURT:  And so, if you have an intern, an

2    unpaid intern working for you for a year or for a summer or

3    something, would they then not be considered employed or in

4    an employment relationship?

5              MR. LYNCH:  From the perspective of the

6    appointments clause, I think so, yes.

7              THE COURT:  Okay.  Okay.  Anything else?

8              MR. LYNCH:  That's it for me.  Thank you, your

9    Honor.

10             MR. MITCHELL:  Thank you, your Honor.

11             Just a few points briefly in response to what

12   Mr. Lynch has said.

13             He does rely on the statute governing the Public

14   Health Service, but it's important to bear in mind, the U.S.

15   Preventive Services Task Force is not part of the Public

16   Health Service.  Only ACIP and HRSA are included in that.

17   So that argument can only work for the two of the three

18   relevant entities.

19             Second, I agree with Mr. Lynch, there's nothing

20   wrong with having a nonofficer make recommendations to an

21   inferior or principal officer, but these are not

22   recommendations.

23             I know the statute calls them recommendations, but

24   that's not what they are.  They take effect as law, as

25   binding legal obligations once they are "Recommended" by the

1    relevant entity.

2            So I understand that is the term that appears in

3    the Affordable Care Act, but it's somewhat Orwellian to say

4    that these are recommendations in the way that a law clerk

5    might recommend something to the judge for whom he works.

6    This is something that takes effect without approval from

7    any superior in the government.

8            Mr. Lynch relies on Riley against St. Luke's

9    Episcopal Hospital, which I did not address in my opening

10   remarks.  It's a binding precedent of the Fifth Circuit so

11   it has to be taken very seriously.

12           The opinion from Judge Smith does say that an

13   officer must, in his words, "Have a continuing and

14   formalized relationship of employment with the United States

15   government."

16           But this does not require paid employment.

17   There's nothing in the opinion that says that.  And the

18   opinion from the Office of Legal Counsel in 2007

19   emphatically rejects the idea that paid employment is

20   necessary to be an officer of the United States.

21           So it would not be prudent, in our view, to

22   interpret the Riley opinion in a manner that contradicts the

23   views of the Office of Legal Counsel.

24           It's certainly not necessary to interpret the word

25   "employment" to require paid employment.  A person can

1    employ another individual without paying them.  You can

2    employ a thing without paying it.

3           If one looks at the statute in the U.S. Preventive

4    Services Task Force, this is a statute that creates the

5    entity, the U.S. Preventive Services Task Force.  This was a

6    statute passed by Congress in 1984 that defines its role,

7    creates it, sets forth how it will be convened, describes

8    its membership.

9           So there is employment with the federal

10   government, even if its members aren't being paid by the

11   federal government for those services.

12          THE COURT:  Is that why you think it's different

13   than the stand ANSI or the state statutes that federal laws

14   and regulations incorporate?

15          The difference here is --

16          MR. MITCHELL:  That's right.

17          THE COURT:  -- the federal government creates

18   this?

19          MR. MITCHELL:  That's exactly right.  This is a

20   creation of a federal statute, as opposed to these other

21   entities that exist independent of the federal government.

22   They weren't created by it.  The states, likewise, they were

23   just state government entities.

24          So there is an employment relationship here,

25   because this Task Force exists because of the federal

1    statute that brought it into being.

2              And then, finally, Mr. Lynch relies on the

3    statutory language that says, "To the extent practicable,

4    the task force shall be insulated from political pressure,"

5    and the citation is 42 U.S.C. 299b-4(a)(6).  To the extent

6    practicable.

7              Now, the word "practicable" means that you should

8    do whatever is necessary to ensure political independence

9    without resorting to ridiculous or cost-prohibitive

10   measures.

11             It does not mean that the statutory requirement

12   can be ignored simply because there might be an appointments

13   clause problem created by its interaction with other

14   provisions of the U.S. Code.  So I don't think that's a

15   tenable construction of that phrase, "to the extent

16   practicable."

17             What that requirement is, is to take all means

18   that are necessary and reasonable to insulate and protect

19   the members of the Task Force from any type of political

20   influences with respect to their so-called recommendations.

21             And they were recommendations before 2010.  But to

22   call them recommendations after 2010, again, that's a

23   misnomer once the Affordable Care Act was signed into law.

24             So that's all I have, your Honor.  Unless you have

25   further questions?

1            THE COURT:  Just in terms of the removal of the

2   Task Force officers --

3            MR. MITCHELL:  Yes.

4            THE COURT:  -- is it your belief they can or

5   cannot be removed by the Secretary or President?

6            MR. MITCHELL:  Under the statute, they can't be,

7   because they have to be protected from political pressure.

8            Now, under the vesting clause, they should be

9   removable at-will if they're exercising authority under the

10  laws of the United States.  Because, in our view, the

11  Constitution does not provide for independent entities to

12  make these types of decisions without presidential

13  oversight.  So this is the line of case of Myers, Humphrey's

14  Executor.

15           The recent decision from the Supreme Court,

16  especially the Seila law from 2020, really seems to treat

17  Humphrey's Executor almost as a one-off, and Morrison

18  against Olson.

19           The rule seems to be, from the current membership

20  on the Supreme Court, that people who wield power either in

21  the executive or the administrative branches should be

22  subject to presidential removal, unless you're in the

23  Humphrey's Executor box or the Morrison box, and neither of

24  those applies here.

25           So we do believe, given what Article II -- given

1     the way it's currently being interpreted by the Supreme

2     Court, there is a serious vesting clause problem with this

3     statutory regime where they can't be removed.

4                 THE COURT:  Thank you.

5                 MR. MITCHELL:  Thank you, your Honor.

6                 THE COURT:  Would you address the removal power?

7                 Who has the removal power over the members of the

8     Task Force?

9                 MR. LYNCH:  Both the Secretary and the HRQ

10    director.  The statute says that the director of the agency

11    for, I believe it's Healthcare Research and Quality, HRQ,

12    convenes the Task Force and can remove its members.  There's

13    no limitation on that.

14                THE COURT:  Okay.  And can the Secretary override

15    a nonrecommendation from either ACIP or HRSA or the Task

16    Force?

17                And I don't know if overrides is the right word,

18    but if they do not recommend or they do not support,

19    whichever provision applies, is the Secretary empowered then

20    to step in and say, "I, Secretary Becerra, mandate now that

21    private insurance must cover this, notwithstanding ACIP's

22    decision, HRSA's decision, the Task Force's decision."

23                MR. LYNCH:  Let me confirm 100 percent with HHS on

24    this, but the example I can think of is actually the COVID

25    vaccine we were talking about, the CDC director saying, when

```
 1    ACIP made the recommendation that the COVID vaccine only be

 2    available to a subset of -- the booster shot only be

 3    available to a subset of the population.  The CDC director

 4    authorized it to be available to a larger group.  So that is

 5    going beyond what they recommend, but I would want to

 6    double-check.

 7              THE COURT:  Okay.  All right.  Yeah, why don't you

 8    do that.

 9              MR. LYNCH:  Thank you, your Honor.

10              THE COURT:  And just so I'm clear here,

11    Mr. Mitchell, the relief you are seeking is an injunction or

12    declaration and that that applies to the plaintiffs in this

13    lawsuit?

14              You are not seeking a nationwide injunction or

15    universal injunction, whatever it's called?

16              MR. MITCHELL:  We are requesting that, your Honor.

17              THE COURT:  Okay.

18              MR. MITCHELL:  Perhaps this has not been briefed,

19    and I didn't want to get too far ahead of myself by

20    addressing the scope before the Court had ruled on our

21    motion for summary judgment.  Perhaps it might be

22    appropriate to brief --

23              THE COURT:  I see.

24              MR. MITCHELL:  -- if the Court rules on the merits

25    of our claims, what the scope of the declaratory injunctive
```

1    relief should be.

2          We did not bring this to a class action.  So there

3    has not been a class certified.  There would be questions

4    with respect to the individual plaintiffs.

5          Sometimes, under Fifth Circuit precedent, it is

6    permissible to extend relief beyond the named plaintiffs,

7    even in the absence of a certified class if that is

8    necessary to give the plaintiffs relief needed to address

9    their injuries.

10          We believe, with respect to our individual

11    plaintiffs, they would need universal relief in order to

12    enable them to obtain on the market the type of health

13    insurance they want.  So that would be our request.  But

14    again, that hasn't been briefed yet.

15          THE COURT:  All right.

16          MR. MITCHELL:  So it might be advisable to request

17    briefing.

18          THE COURT:  Okay.  Then I will work through the

19    merits before --

20          MR. MITCHELL:  Yes.

21          THE COURT:  -- and we will see if we need to

22    address that.

23          MR. MITCHELL:  There was a lot to address in the

24    summary judgment motion, and I didn't want to overburden the

25    Court by getting into the specifics.

1              THE COURT:  Anything else?

2              MR. MITCHELL:  Nothing further, your Honor.

3              MR. LYNCH:  No.  Thank you, your Honor.

4              THE COURT:  Okay.  Thank you all for being here.

5         We are in recess.

6              You're free to go.  I had another case before you

7    all.

8         (The proceedings concluded at 10:41 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

1

2

3

4      I, ZOIE WILLIAMS, RMR, RDR, FCRR, certify that

5  the foregoing is a true and correct transcript from

6  the record of proceedings in the foregoing entitled

7  matter to the best of my ability to hear.

8      Further, due to the COVID-19 pandemic, some

9  participants are wearing masks, and/or appeared via

10  videoconferencing, so proceedings were transcribed to the

11  best of my ability.

12      I further certify that the transcript fees format

13  comply with those prescribed by the Court and the Judicial

14  Conference of the United States.

15      Signed this 22th day of September, 2022.

16

17                        ___/s/ Zoie Williams_____
                          Zoie Williams, RMR, RDR, FCRR
18                          Official Court Reporter
                          Northern District of Texas
19                           Fort Worth Division

20  Business Address:    501 W. 10th Street, Room 532
                          Fort Worth, Texas 76102
21                        zwilliams.rmr@gmail.com
                          817.850.6630
22

23

24

25

MR. LYNCH: [30] 5/1
29/14 29/16 33/24 34/12
35/4 35/12 36/5 36/11
36/20 36/23 37/14 61/8
68/2 68/9 68/15 68/19
69/1 69/5 69/13 70/6
70/17 71/1 71/21 72/5
72/8 77/9 77/23 78/9
80/3
MR. MITCHELL: [55]
4/14 4/22 5/2 11/5 12/8
12/13 12/18 13/10 13/17
14/17 14/21 14/23 17/4
17/7 18/14 20/5 22/11
22/18 23/4 26/1 26/3 26/7
26/11 26/13 26/19 27/3
27/8 28/12 28/14 28/16
28/19 28/24 29/7 29/13
37/17 37/21 39/23 58/11
60/2 60/7 60/10 61/6
72/10 74/16 74/19 76/3
76/6 77/5 78/16 78/18
78/24 79/16 79/20 79/23
80/2
THE COURT: [81] 4/4
4/21 4/24 11/4 12/6 12/9
12/16 13/5 13/16 14/7
14/18 14/22 16/22 17/5
18/6 19/20 22/2 22/12
22/20 25/24 26/2 26/6
26/10 26/12 26/18 26/24
27/4 28/10 28/13 28/15
28/18 28/23 29/6 29/10
29/15 33/15 34/6 34/22
35/6 36/3 36/6 36/14
36/21 37/13 37/15 37/20
39/22 57/21 59/21 60/5
60/9 61/4 67/21 68/7
68/14 68/16 68/23 69/2
69/9 69/21 70/9 70/19
71/12 72/1 72/7 74/12

74/17 76/1 76/4 77/4 77/6
77/14 78/7 78/10 78/17
78/23 79/15 79/18 79/21
80/1 80/4

**/**

**/s [1]** 81/17

**1**

**10 [1]** 59/9
**100 [2]** 69/15 77/23
**10:41 a.m [1]** 80/8
**10th [1]** 81/20
**1100 [2]** 1/24 2/3
**111 [1]** 1/16
**13 [3]** 39/2 48/23 50/20
**19 [1]** 81/8
**1935 [1]** 54/10
**1973 [2]** 11/6 35/9
**1984 [1]** 74/6

**2**

**20005 [1]** 1/24
**2007 [2]** 30/23 73/18
**201 [1]** 1/20
**2010 [3]** 50/6 75/21
 75/22
**202 [2]** 39/17 61/14
**202.353.4537 [1]** 1/25
**2020 [1]** 76/16
**2022 [4]** 1/9 4/2 38/19
 81/15
**214.659.8626 [1]** 2/4
**217a [2]** 49/18 50/2
**22th [1]** 81/15
**26 [2]** 1/9 4/2
**283 [1]** 4/6
**299b-4 [6]** 41/2 41/13
 52/2 63/16 67/9 75/5

**3**

**300gg-13 [3]** 39/2 48/23
 50/20
**301 [1]** 62/19

**4**

**400 [1]** 1/16
**42 [7]** 39/17 41/2 49/17
 52/2 61/14 63/15 75/5
**43 [1]** 64/23
**44 [1]** 64/23
**441 [1]** 66/23
**45 [1]** 24/21
**482 [1]** 67/9
**4:20-cv-00283-O [1]** 1/6

**5**

**501 [1]** 81/20
**512.686.3940 [1]** 1/17
**532 [1]** 81/20

**7**

**70 [1]** 32/25
**72 [1]** 3/5
**75242 [1]** 2/3
**76 [1]** 3/7
**76102 [2]** 1/20 81/20
**78701 [1]** 1/17

**8**

**801 [1]** 1/20
**817.332.2351 [1]** 1/21
**817.850.6630 [1]** 81/21

**A**

**a.m [1]** 80/8
**ability [4]** 6/4 18/22 81/7
 81/11
**able [6]** 30/16 33/16 33/17
 34/13 38/24 67/22
**abortifacient [4]** 15/25
 57/5 57/8 57/10
**abortifacients [2]** 14/10
 15/20
**about [27]** 14/7 16/23
 18/17 22/15 22/21 27/13
 33/2 34/1 36/12 43/16
 47/3 56/1 62/11 62/15

**A**

**about…** **[13]** 62/22 65/5 65/16 65/16 66/5 66/17 67/5 70/21 71/10 71/17 71/19 71/23 77/25

**absence** **[4]** 13/21 20/7 20/11 79/7

**absent** **[3]** 30/8 53/21 69/2

**ACA** **[1]** 33/18

**academic** **[1]** 28/25

**academy** **[1]** 29/9

**accept** **[10]** 8/6 25/18 42/21 42/22 49/2 56/1 56/20 58/25 68/21 69/16

**acceptable** **[3]** 4/24 4/25 65/5

**accepted** **[8]** 15/15 15/25 19/1 19/13 57/23 63/6 68/10 70/7

**accepting** **[1]** 69/3

**accepts** **[4]** 11/21 51/14 62/2 62/2

**according** **[1]** 55/20

**accounting** **[1]** 34/17

**achieve** **[1]** 22/10

**acid** **[1]** 55/1

**ACIP** **[46]** 13/12 38/21 39/1 39/13 40/9 40/24 41/17 42/5 44/3 44/10 44/13 44/18 45/16 45/22 46/4 48/9 48/13 48/15 48/17 48/20 48/21 49/4 49/4 49/5 49/9 49/11 49/22 50/4 50/6 51/17 52/9 54/19 60/3 60/10 60/13 60/17 61/1 62/2 67/13 67/22 68/2 68/16 70/1 72/16 77/15 78/1

**ACIP's** **[1]** 77/21

**acknowledge** **[3]** 13/21 28/24 54/14

**acknowledges** **[2]** 25/16 61/23

**across** **[1]** 23/17

**act** **[26]** 13/2 17/21 21/4 21/8 21/10 21/12 24/3 25/2 30/21 30/24 31/1 40/23 48/17 48/19 48/23 49/14 49/24 50/3 50/10 52/18 53/13 60/23 61/1 66/14 73/3 75/23

**acted** **[1]** 15/20

**acting** **[4]** 13/7 58/21 59/19 70/3

**action** **[4]** 24/10 31/12 69/3 79/2

**actions** **[4]** 30/6 30/12 31/18 65/19

**acts** **[5]** 12/16 32/13 32/18 32/20 32/21

**actual** **[3]** 16/8 29/18 50/1

**actually** **[11]** 7/10 11/9 12/21 17/24 20/14 33/11 33/12 35/21 55/7 57/8 77/24

**additional** **[2]** 5/20 70/23

**address** **[9]** 19/21 47/5 53/25 73/9 77/6 79/8 79/22 79/23 81/20

**addressed** **[1]** 48/1

**addressing** **[1]** 78/20

**administer** **[1]** 12/21

**administered** **[3]** 40/2 40/6 40/11

**administers** **[3]** 9/16 40/18 40/19

**administrative** **[12]** 43/10 43/12 44/25 45/8 46/1 50/22 58/14 61/17 62/16 63/4 63/8 76/21

**administrator** **[15]** 12/21 36/9 40/22 48/9 50/8 51/12 61/21 61/24 62/1

**acknowledges** 62/7 68/10 68/20 68/24 69/16 69/25

**admits** **[1]** 63/19

**adopted** **[3]** 13/25 61/16 65/13

**advantage** **[1]** 35/24

**advice** **[1]** 49/25

**advisable** **[1]** 79/16

**advises** **[1]** 48/15

**advising** **[1]** 49/20

**advisory** **[8]** 47/12 47/21 48/18 49/20 49/22 50/6 68/5 68/6

**Aetna** **[4]** 33/15 33/16 33/17 34/16

**affect** **[2]** 26/15 27/7

**affected** **[2]** 11/10 20/10

**affects** **[3]** 13/4 17/13 70/3

**affidavit** **[3]** 16/11 56/22 56/23

**affirms** **[1]** 71/3

**Affordable** **[21]** 13/2 21/4 21/8 21/10 21/12 24/3 25/2 30/21 30/24 31/1 40/23 48/17 48/19 48/23 49/23 50/10 52/18 60/23 60/25 73/3 75/23

**afoul** **[1]** 63/24

**after** **[4]** 4/19 47/19 62/23 75/22

**again** **[26]** 7/23 8/7 10/15 13/17 16/17 19/10 21/15 21/23 24/16 25/1 25/6 25/17 34/18 40/4 50/5 50/15 50/24 50/24 53/6 53/18 53/23 55/12 55/22 56/25 75/22 79/14

**against** **[8]** 23/5 39/6 45/21 45/22 45/22 51/11 73/8 76/18

**age** **[1]** 24/21

**A**

**agencies [3]** 6/6 57/25 58/9

**agency [7]** 43/13 47/8 55/10 55/18 64/8 66/20 77/10

**agency's [1]** 52/14

**aggressive [1]** 54/23

**ago [1]** 45/6

**agree [9]** 14/22 27/15 28/2 28/16 35/2 35/16 35/21 69/10 72/19

**agrees [6]** 5/18 19/14 46/23 68/21 68/21 68/24

**ahead [1]** 78/19

**akin [1]** 53/13

**al [2]** 1/5 1/8

**Alito [1]** 15/14

**all [40]** 6/14 6/17 8/19 8/20 9/2 11/2 11/15 12/24 13/11 15/7 19/15 23/5 24/6 25/12 25/20 30/1 33/18 34/7 36/2 36/15 37/13 38/3 41/3 45/11 48/7 52/6 52/19 61/16 64/24 65/4 67/3 69/23 70/7 71/2 75/17 75/24 78/7 79/1 80/4 80/7

**allegation [2]** 31/20 32/12

**allegations [1]** 34/19

**alleged [6]** 8/1 8/9 8/16 35/12 47/25 56/5

**alleging [2]** 47/12 47/15

**allow [6]** 4/19 6/7 23/9 47/5 64/7 69/11

**allows [3]** 49/9 50/5 59/6

**almost [2]** 53/9 76/17

**alone [4]** 46/6 46/10 49/15 50/5

**along [2]** 9/6 51/8

**already [1]** 44/8

**also [5]** 15/8 59/5 67/8

**after [1]** 9/19

**although [1]** 9/11

**am [1]** 69/14

**amended [1]** 27/4

**American [1]** 32/24

**ample [1]** 62/17

**AmTrak [1]** 18/9

**analysis [3]** 8/10 22/16 71/14

**annual [2]** 6/8 13/14

**another [5]** 45/24 64/3 64/8 74/1 80/6

**ANSI [1]** 74/13

**answer [2]** 9/5 42/25

**any [44]** 6/5 6/7 8/25 10/2 10/7 12/5 13/20 16/24 17/3 19/4 20/21 27/7 27/10 29/7 31/4 32/3 32/18 32/21 35/25 35/25 36/25 38/17 38/24 39/14 41/5 48/2 49/6 49/21 50/14 51/10 54/13 55/14 59/11 60/22 62/10 63/3 64/24 64/25 65/7 65/15 69/3 71/4 73/7 75/19

**anybody [1]** 53/20

**anymore [1]** 49/23

**anyone [1]** 34/10

**anything [4]** 11/14 61/4 72/7 80/1

**anyway [1]** 30/18

**anywhere [1]** 49/8

**appeal [1]** 43/13

**appear [2]** 10/12 15/12

**appeared [1]** 81/9

**appears [8]** 10/15 10/17 11/6 18/11 22/3 22/24 22/25 73/2

**appellee's [1]** 8/6

**appendix [2]** 28/20 29/3

**applies [6]** 9/4 11/19 66/8

70/15 70/19

76/24 77/19 78/12 57/16 58/6 66/9 66/20

**apply [4]** 7/9 58/6

**appoint [2]** 50/6 62/18

**appointed [17]** 23/21 38/1 38/7 42/20 43/23 45/1 46/1 46/8 46/22 48/8 48/14 58/17 59/20 61/25 62/6 70/16 70/24

**appointment [4]** 46/4 46/10 50/4 71/24

**appointments [35]** 8/22 10/9 10/13 10/19 23/18 30/19 30/25 33/20 37/22 38/7 38/10 38/17 41/17 42/24 43/17 44/5 44/11 46/25 47/3 47/20 48/6 49/13 49/15 49/19 50/2 53/24 57/21 59/11 61/8 62/13 70/11 70/16 70/25 72/6 75/12

**approach [1]** 54/25

**appropriate [2]** 52/5 78/22

**appropriateness [2]** 65/8 67/11

**approval [5]** 43/6 44/16 44/18 59/16 73/6

**approve [1]** 42/15

**approved [1]** 15/20

**approves [1]** 39/4

**arbitration [2]** 18/9 18/19

**are [89]**

**aren't [4]** 19/19 24/22 64/10 74/10

**argue [1]** 20/16

**arguing [1]** 50/16

**argument [34]** 6/12 6/16 7/2 8/13 9/8 10/17 11/18 11/19 12/9 15/9 16/23 20/2 22/8 32/11 34/23 35/1 35/7 35/17 36/15 38/15

**A**

**argument…** **[14]** 41/1
41/16 48/16 51/1 53/11
57/13 57/23 58/1 61/9
70/9 70/24 71/2 71/7
72/17
**arguments** **[6]** 5/7 5/8
36/18 38/12 57/22 69/24
**around** **[5]** 41/23 51/4
59/2 59/5 70/3
**arrangements** **[1]** 6/3
**array** **[1]** 28/21
**Arthrex** **[5]** 45/5 45/7
45/25 45/25 47/13
**Arthrex-like** **[1]** 47/13
**article** **[24]** 4/17 5/12 6/18
6/22 7/14 7/15 8/4 11/23
15/7 16/16 16/21 28/17
28/19 28/25 36/18 36/19
43/23 45/1 46/2 46/13
48/2 48/9 58/18 76/25
**Article III** **[1]** 7/14
**as** **[87]**
**Ashley** **[1]** 30/4
**aside** **[1]** 34/25
**ask** **[6]** 7/23 8/15 14/7
16/2 26/3 34/25
**asked** **[1]** 23/6
**asking** **[5]** 10/6 22/2 23/9
23/16 36/4
**asks** **[1]** 9/4
**aspect** **[1]** 63/19
**assent** **[1]** 42/6
**asserted** **[1]** 47/23
**asserting** **[1]** 56/17
**assertions** **[1]** 56/4
**Assistant** **[6]** 40/2 40/6
40/11 40/12 40/17 40/21
**assume** **[10]** 7/16 7/17 8/11
8/14 18/20 50/24 50/25
51/1 53/6 60/16
**assumes** **[1]** 43/16

**assumption** **[2]** 18/21 59/8
**at** **[32]** 13/13 14/26 15/20
19/1 20/14 20/14 21/11
22/6 22/20 23/24 25/20
26/8 27/9 27/15 28/20
29/21 30/1 32/23 36/2
38/11 39/17 41/11 52/2
53/4 54/10 65/21 66/23
70/8 71/2 74/3 76/9 80/8
**at-will** **[1]** 76/9
**ATF** **[1]** 39/6
**attacking** **[1]** 56/3
**attempt** **[1]** 27/25
**Attorney** **[1]** 39/8
**attributes** **[1]** 18/17
**Austin** **[1]** 1/17
**author** **[1]** 28/22
**authority** **[39]** 28/21 29/1
38/5 38/23 39/8 39/11
41/14 41/24 42/11 42/19
43/8 44/14 44/22 51/10
51/23 52/22 52/23 53/8
53/16 59/13 59/14 60/16
60/17 60/24 61/11 61/19
62/11 62/17 62/19 63/1
63/3 65/12 66/15 66/21
69/11 70/22 71/6 71/9
76/9
**authorize** **[1]** 39/13
**authorized** **[2]** 66/15 78/4
**authorizes** **[2]** 39/18 49/19
**avail** **[1]** 36/1
**available** **[8]** 21/5 24/11
31/14 31/20 31/23 78/2
78/3 78/4
**Avenue** **[1]** 1/16
**award** **[1]** 46/17
**aware** **[1]** 26/5
**away** **[1]** 24/10
**Azar** **[1]** 23/5

**B**

**back** **[11]** 8/17 12/10 16/22

18/12 24/15 25/6 27/25
29/8 71/20 78/1 78/22
**background** **[2]** 50/22 58/8
**bad** **[1]** 33/22
**banc** **[5]** 26/7 26/20 26/22
26/25 64/14
**based** **[10]** 15/15 15/18
16/4 19/12 32/19 34/16
50/21 56/2 56/13 56/23
**basic** **[1]** 68/22
**basically** **[1]** 65/1
**basis** **[1]** 14/3
**be** **[143]**
**bear** **[2]** 17/1 72/14
**because** **[69]** 5/11 5/23
8/22 8/23 9/13 10/1 10/8
10/23 11/2 11/14 12/25
15/14 16/15 16/24 21/10
21/17 21/22 23/6 23/18
23/20 24/10 24/19 25/22
26/14 26/17 26/19 27/16
30/6 30/19 30/25 32/6
33/6 35/14 36/9 38/19
39/8 42/12 43/10 43/22
44/15 44/24 45/7 46/3
46/21 47/21 48/23 49/5
49/13 49/18 49/23 50/5
51/2 53/19 54/17 57/14
58/14 58/21 59/12 59/15
60/13 60/19 66/23 69/22
71/8 74/25 74/25 75/12
76/7 76/10
**BECERRA** **[5]** 1/8 4/6
38/16 59/10 77/20
**become** **[2]** 48/21 68/12
**been** **[16]** 4/18 11/9 13/11
22/4 22/25 35/17 38/1
38/20 38/24 39/1 49/23
54/10 54/23 78/18 79/3
79/14
**before** **[33]** 1/12 4/22 9/21
12/6 21/4 21/10 24/3 24/5

**B**

**before...** **[25]**  25/1 25/2 30/13 30/20 30/24 33/18 33/18 34/7 41/3 42/13 48/16 49/6 51/3 53/15 58/23 59/7 61/1 66/1 67/23 69/14 70/2 75/21 78/20 79/19 80/6

**begin [4]**  4/16 6/24 37/21 38/14

**behavior [1]**  24/23

**behaviors [4]**  35/15 35/21 35/22 35/23

**behind [1]**  28/21

**being [7]**  18/21 21/7 35/15 74/10 75/1 77/1 80/4

**belief [8]**  15/23 16/2 17/13 19/6 56/6 56/10 56/20 76/4

**beliefs [8]**  16/11 18/24 19/9 19/16 19/18 31/5 57/2 57/11

**believe [12]**  4/11 4/12 5/17 9/11 27/3 27/10 30/23 57/13 71/1 76/25 77/11 79/10

**believes [3]**  16/9 56/18 64/6

**believing [1]**  57/9

**beneficiary [1]**  53/4

**benefit [1]**  11/15

**benefits [2]**  12/14 32/16

**best [2]**  81/7 81/11

**better [1]**  29/7

**between [3]**  46/18 53/9 60/1

**beyond [10]**  7/7 17/8 17/9 17/12 20/6 28/4 28/5 29/22 78/5 79/6

**big [6]**  43/15 45/24 48/5 66/12 66/23 67/16

**binding [7]**  29/1 29/2

73/10

**bit [1]**  13/5

**blurting [1]**  24/1

**board [2]**  23/18 62/17

**body [2]**  63/12 66/15

**booster [3]**  60/3 60/10 78/2

**both [5]**  4/8 6/23 30/10 53/2 77/9

**boundaries [8]**  55/3 55/6 55/9 66/21 66/24 67/1 67/4 67/7

**box [2]**  76/23 76/23

**BRAIDWOOD [64]**  1/5 5/15 5/18 5/21 5/23 5/25 6/4 6/16 7/3 7/5 7/7 7/8 7/11 7/11 8/18 9/9 9/10 9/13 9/16 9/18 9/19 9/21 9/24 9/25 10/5 10/6 10/22 10/23 11/1 11/1 11/8 11/9 11/16 11/19 11/24 12/9 12/11 12/16 12/21 13/21 14/3 14/9 16/8 16/23 17/15 19/22 19/22 25/6 25/7 32/6 32/6 32/9 32/12 32/17 32/20 32/21 32/25 33/8 35/1 35/8 35/15 36/8 36/12 57/17

**Braidwood's [6]**  10/12 10/17 10/21 21/22 25/14 35/1

**branches [2]**  47/6 76/21

**breach [1]**  27/17

**breathe [1]**  54/6

**BRIAN [1]**  2/2

**brief [14]**  10/10 18/7 18/11 27/9 39/7 43/1 48/6 56/3 61/16 64/13 64/24 67/3 71/25 78/22

**briefed [2]**  78/18 79/14

**briefing [6]**  38/10 41/3

66/4 67/24 70/19 79/17

**briefly [2]**  53/24 72/11

**briefs [1]**  67/19

**bring [5]**  5/4 6/18 27/25 39/23 79/2

**broad [1]**  70/21

**broader [1]**  23/16

**bromides [1]**  55/20

**brought [1]**  75/1

**bulk [1]**  37/23

**burden [9]**  16/13 16/15 16/19 16/20 25/3 29/20 34/2 34/5 57/12

**burdened [1]**  19/19

**business [2]**  34/14 81/20

**but [92]**

**but-for [1]**  21/2

**buy [2]**  18/22 19/7

**C**

**call [3]**  16/6 38/14 75/22

**called [5]**  44/4 48/24 49/24 75/20 78/15

**calling [1]**  62/8

**calls [1]**  72/23

**came [4]**  21/12 22/14 33/19 34/7

**can [51]**  9/6 12/11 13/14 16/22 18/20 21/23 21/25 25/7 25/18 29/7 31/20 36/25 37/17 40/22 41/1 41/19 42/12 43/12 44/3 44/16 45/17 46/12 47/3 49/3 49/8 50/19 51/15 53/1 53/13 53/15 53/18 58/23 59/1 59/2 59/5 59/8 59/9 61/20 63/19 63/20 67/13 69/6 71/5 72/17 73/25 74/1 75/12 76/4 77/12 77/14 77/24

**can't [15]**  13/14 19/17 31/16 32/8 33/13 37/5 42/10 45/18 46/16 47/2

**C**

**can't...** [5]  49/22 51/16
63/4 76/6 77/3
**cannot** [5]  6/6 42/1 42/4
42/16 76/5
**care** [64]  5/24 6/5 6/10
9/15 10/8 12/2 13/2 13/3
13/11 20/8 20/11 21/4 21/8
21/10 21/12 21/13 22/6
24/3 25/2 30/21 30/24
31/1 37/25 38/2 38/17
38/19 38/25 39/12 40/23
41/18 41/22 42/4 42/7
42/12 43/3 43/7 43/21
44/19 45/21 46/19 47/16
47/25 48/17 48/19 48/23
49/24 50/10 50/11 50/12
51/6 52/18 52/19 53/21
55/4 55/5 58/23 58/23
59/4 60/22 60/23 60/25
65/6 73/3 75/23
**careful** [2]  15/8 16/17
**case** [40]  1/6 4/5 5/13
5/16 5/20 5/22 6/22 7/1
7/8 8/3 8/19 9/9 13/18
14/10 17/3 22/3 22/14
23/6 25/15 25/23 27/1
27/19 27/22 27/25 33/2
33/2 39/5 39/6 39/9 45/8
45/12 45/24 58/2 64/1
64/3 65/25 66/23 71/18
76/13 80/6
**cases** [8]  13/22 29/2
36/17 36/22 55/4 64/24
66/5 66/9
**causation** [1]  21/2
**cause** [1]  27/20
**caused** [2]  29/18 30/5
**CDC** [20]  48/13 48/15
49/3 59/22 60/4 60/11
60/15 60/16 61/21 61/23
62/2 62/7 67/15 67/21

68/3 68/4 68/10 68/21
77/25 78/3
**century** [1]  71/23
**certain** [8]  15/19 27/16
31/18 32/13 32/19 69/13
69/15 71/4
**certainly** [4]  24/18 33/24
42/21 73/24
**CERTIFICATE** [1]  81/2
Certificate...................
.....81 [1]  3/8
**certified** [3]  22/22 79/3
79/7
**certify** [2]  81/4 81/12
**chain** [2]  42/17 45/4
**challenge** [3]  10/1 31/18
33/16
**challenged** [1]  30/8
**challenging** [2]  10/5 10/12
**chance** [2]  22/18 22/21
**change** [9]  6/1 9/18 10/24
11/11 17/19 25/9 58/2 58/3
58/6
**changes** [4]  11/1 23/1 35/8
46/25
**changing** [1]  35/19
**characterize** [1]  56/17
**charged** [1]  65/15
**check** [1]  78/6
**choose** [1]  63/1
**chooses** [1]  62/23
**CHRISTOPHER** [1]  1/22
**circuit** [17]  13/24 13/25
18/8 18/12 22/15 26/4
28/9 30/11 31/9 39/6
62/15 62/16 64/11 64/14
67/1 73/10 79/5
**Circuit's** [4]  18/15 65/2
66/11 71/14
**citation** [1]  75/5
**cite** [8]  18/8 28/11 36/18
59/21 61/16 70/19 71/13

71/24
**cited** [4]  29/2 58/1 64/13
64/24
**citing** [1]  28/19
**CIVIL** [1]  1/23
**claim** [27]  7/3 7/9 10/13
10/18 10/19 11/15 14/12
14/15 14/24 23/18 32/8
35/13 35/14 36/25 37/4
37/9 39/17 49/2 56/16
62/13 63/2 63/3 66/4
66/11 67/17 67/18 67/20
**claimed** [6]  15/19 16/11
27/11 28/1 34/4 35/13
**claiming** [4]  33/25 35/18
43/20 46/20
**claims** [21]  6/19 6/25 8/6
16/5 27/17 27/19 27/22
27/24 28/3 28/4 30/20
32/15 34/18 36/9 37/7
37/12 43/19 48/6 50/18
50/21 78/25
**claims-specific** [1]  37/12
**class** [4]  22/22 79/2 79/3
79/7
**clause** [37]  8/22 10/9
10/13 10/19 18/9 18/19
23/18 30/19 30/25 33/21
33/21 37/22 38/7 38/10
38/17 41/17 42/24 43/17
44/11 47/1 47/3 47/20
48/6 50/2 53/24 57/22
59/11 61/9 62/13 66/2
70/11 70/16 70/25 72/6
75/13 76/8 77/2
**clear** [9]  13/19 20/19 25/7
31/10 60/15 62/17 70/6
71/23 78/10
**clearly** [7]  5/23 29/4 41/8
44/23 52/1 62/6 66/19
**clerk** [1]  73/4
**client** [1]  56/8

**C**

client's [1] 19/11
clients [8] 16/6 27/22 46/20 47/4 47/15 47/24 56/4 56/17
clients' [3] 5/4 5/8 16/4
clinical [2] 65/9 67/12
closer [2] 9/11 13/22
co [8] 5/21 6/5 8/7 9/20 12/23 13/14 53/4 61/3
co-pay [1] 53/4
co-payments [1] 6/5
co-pays [4] 9/20 12/23 13/14 61/3
co-plaintiff [1] 5/21
Code [2] 63/15 75/14
codified [1] 39/17
colleague [6] 29/11 61/15 63/10 66/2 66/24 67/24
colleague's [2] 57/22 67/19
colleagues [1] 4/25
come [8] 4/10 9/6 19/17 24/14 28/8 29/11 33/17 45/20
comes [1] 33/10
coming [2] 42/18 70/13
commandeered [1] 5/24
commandeering [2] 9/15 57/17
Commerce [1] 2/3
committee [2] 48/18 49/22
committees [2] 49/20 50/6
commonly [1] 15/3
community [1] 65/10
companies [10] 20/1 21/11 22/4 23/1 23/13 24/7 30/13 53/3 65/14 68/18
company [8] 12/17 12/25 13/7 14/19 14/25 33/15 33/23 34/4
compels [1] 39/2

complained [1] 29/19
complaint [1] 27/22
complicated [2] 14/6 63/10
complication [1] 28/7
complications [2] 25/23 27/20
complicit [8] 15/24 16/10 18/23 35/15 35/20 56/8 56/9 56/19
complicity [14] 15/15 15/18 16/4 19/11 19/12 32/11 32/19 33/12 56/2 56/5 56/11 56/13 56/23 57/9
complicity-based [7] 15/15 15/18 16/4 19/12 56/2 56/13 56/23
comply [3] 13/8 68/18 81/13
composed [1] 52/4
concede [1] 30/19
conceded [1] 31/16
conceding [1] 13/19
conceivably [1] 34/4
concluded [1] 80/8
concludes [1] 8/13
conclusion [2] 6/17 11/22
concrete [1] 17/14
concurrence [1] 68/4
condition [4] 42/6 43/6 51/6 59/3
conduct [10] 17/10 18/23 18/23 19/5 19/8 21/3 29/19 56/5 56/10 56/19
Conference [1] 81/14
confirm [1] 77/23
confirmed [1] 47/9
conform [1] 66/16
conformity [2] 38/1 38/7
confront [1] 58/20
Congress [17] 1/16 31/1 46/9 46/25 47/2 47/8 49/14 50/3 53/10 55/17

58/2 61/16 65/11 65/11 66/13 66/19 74/6
connection [1] 49/21
considered [3] 49/22 58/16 72/3
considering [1] 7/14
consistent [10] 43/23 45/1 46/2 46/8 48/8 54/21 58/18 60/12 65/1 70/24
Constitution [5] 38/2 46/9 47/22 70/12 76/11
constitutional [4] 37/7 37/8 37/24 66/13
constitutionally [3] 23/21 48/14 66/19
construction [1] 75/15
consult [1] 69/18
consumer's [1] 31/13
content [2] 6/1 37/18
contents [3] 9/18 10/24 12/22
contest [1] 6/23
contesting [1] 5/4
continue [2] 33/19 34/10
continuing [5] 51/22 52/1 52/11 71/15 73/13
contraception [6] 15/2 15/5 21/6 24/23 50/18 57/10
contraceptive [17] 11/10 15/25 23/10 23/19 23/23 24/4 24/5 24/6 24/8 24/14 24/19 24/22 24/24 27/18 28/5 51/7 51/11
contraceptive-free [3] 23/10 24/4 24/14
contraceptives [1] 15/19
contradicts [1] 73/22
contrary [2] 19/9 57/10
control [1] 6/9
convene [1] 52/3
convened [3] 41/4 52/8

**C**

convened... [1] 74/7
convenes [1] 77/12
copy [1] 39/23
core [2] 31/14 31/19
correct [9] 10/11 13/10
35/4 42/2 57/2 68/19 69/1
71/7 81/5
cost [6] 6/3 13/13 53/4
65/8 67/12 75/9
cost-effectiveness [2]
65/8 67/12
cost-prohibitive [1] 75/9
cost-sharing [1] 6/3
could [28] 4/19 6/13 6/24
8/2 11/17 20/16 21/17 33/4
34/4 34/16 37/8 37/22
38/13 52/25 53/24 54/2
57/18 60/7 60/8 69/8
69/9 69/10 69/13 69/15
69/19 69/25 70/1 70/3
couldn't [1] 63/5
council [1] 68/6
councils [1] 49/20
counsel [8] 3/4 4/8 4/9
4/20 36/12 36/21 73/18
73/23
counsel's [1] 36/15
count [2] 6/7 13/14
countermand [5] 39/15
40/23 44/3 49/3 50/17
countermanded [1] 41/20
countermands [2] 40/19
44/9
course [7] 36/18 52/17
67/15 69/17 69/23 70/7
71/16
court [90]
Court's [17] 4/16 4/23
5/12 8/2 8/3 11/6 15/12
17/25 26/4 26/15 26/16
44/24 45/6 45/7 47/4

48/12 54/6
Court... [1] 3/7
12 [1] 3/7
courts [8] 30/13 46/6
46/10 46/15 49/16 54/23
55/22 55/23
cover [9] 9/21 12/23 38/3
48/21 50/11 52/20 53/4
61/2 77/21
coverage [27] 6/1 13/2
16/10 21/13 23/10 24/20
24/22 24/24 29/23 30/8
30/17 30/22 31/7 37/10
37/25 39/12 45/14 49/6
50/18 56/18 57/16 57/18
58/22 59/4 62/4 68/11
68/12
covered [5] 9/20 21/7 31/2
32/10 36/9
covering [2] 21/12 32/12
covers [1] 31/21
COVID [5] 59/23 60/3
77/24 78/1 81/8
COVID-19 [1] 81/8
created [2] 74/22 75/13
creates [3] 74/4 74/7
74/17
creation [1] 74/20
criterion [1] 64/19
criticism [2] 28/25 29/4
criticizes [1] 36/19
criticizing [1] 28/22
crucial [1] 19/11
Cruz [1] 8/3
cure [2] 42/24 59/11
curing [1] 44/4
curious [1] 26/2
current [3] 29/8 67/14
76/19
currently [3] 46/19 65/22
77/1
currently-in-effect [1]

65/22
cv [1] 1/6

**D**

D.C [8] 1/24 13/24 18/8
18/11 18/15 31/9 39/6
62/15
Dallas [1] 2/3
day [2] 38/11 81/15
days [1] 69/19
deal [1] 58/13
decide [5] 6/5 13/2 44/17
47/6 55/13
decided [1] 65/11
decides [2] 12/22 65/25
deciding [1] 51/4
decision [21] 15/6 22/15
31/9 31/10 39/19 42/4
44/17 45/6 45/8 45/11
45/13 47/2 50/17 62/18
66/11 69/6 71/2 76/15
77/22 77/22 77/22
decision-making [1] 62/18
decisions [16] 12/24 39/3
39/15 40/23 41/9 41/14
41/19 43/11 44/3 45/2
54/10 62/14 65/16 67/5
71/22 76/12
declaration [4] 12/1 35/18
35/20 78/12
declarations [1] 29/22
declaratory [4] 7/6 8/21
46/17 78/25
declared [1] 54/11
decree [3] 38/2 44/2 53/1
deductible [3] 6/8 13/15
53/5
deductibles [1] 12/24
deemed [1] 58/17
defeat [2] 6/20 6/21
Defendant [1] 1/9
defendant's [2] 21/3 30/6
defendants [8] 1/22 2/2

**D**

**defendants...** [6] 4/9 8/25 10/7 12/3 43/21 46/24
**defer** [1] 36/12
**define** [2] 17/6 17/7
**defined** [2] 31/13 31/19
**defines** [3] 55/3 55/6 74/6
**definitely** [1] 71/21
**definition** [1] 16/16
**degree** [2] 18/13 64/3
**delay** [1] 26/23
**delays** [1] 26/20
**delegate** [1] 62/18
**delegated** [3] 55/7 55/8 66/21
**delegating** [1] 55/2
**delegation** [1] 33/21
**Delegations** [1] 66/12
**delineates** [1] 66/19
**delusional** [2] 19/17 56/14
**demonstrate** [2] 5/12 29/17
**DeOtte** [9] 22/3 22/22 23/2 23/5 23/7 23/14 25/24 26/17 28/8
**department** [11] 1/23 2/2 40/1 40/5 46/7 46/11 49/16 61/20 71/3 71/5 71/9
**depend** [1] 33/24
**dependent** [1] 32/17
**depending** [1] 34/4
**depends** [1] 30/12
**deprived** [1] 18/21
**describe** [3] 7/4 17/23 52/13
**describes** [1] 74/7
**describing** [1] 45/15
**designed** [1] 41/8
**desired** [2] 30/16 31/13
**despite** [1] 29/9

**detail** [1] 56/23
**details** [2] 27/5 70/10
**determine** [4] 39/11 50/10 52/19 64/22
**developed** [1] 13/24
**developing** [1] 65/9
**dictate** [1] 48/20
**dictated** [1] 13/11
**did** [16] 9/21 14/11 16/18 16/19 20/13 22/17 24/2 27/9 27/21 36/24 39/23 57/19 60/2 64/2 73/9 79/2
**didn't** [9] 20/13 21/16 21/17 27/20 60/19 63/1 66/2 78/19 79/24
**difference** [7] 15/14 45/24 59/25 67/25 68/7 68/14 74/15
**different** [5] 37/7 45/7 66/6 66/25 74/12
**differently** [1] 36/24
**direct** [2] 54/18 61/20
**directed** [3] 40/13 64/7 66/16
**direction** [6] 40/3 40/7 45/10 49/1 50/13 69/7
**directly** [1] 62/11
**director** [24] 45/9 48/14 48/15 49/3 51/1 51/8 52/3 52/9 59/22 60/11 60/15 60/16 61/23 62/2 62/7 67/15 67/21 68/3 68/10 68/21 77/10 77/10 77/25 78/3
**director's** [1] 68/4
**directs** [3] 40/16 40/17 71/3
**disagree** [3] 15/21 25/17 32/14
**disagrees** [2] 8/12 17/11
**discovery** [2] 27/12 28/2

**discretion** [3] 54/19 54/21 55/11
**discuss** [3] 15/7 16/18 16/19
**discussed** [1] 63/6
**dispute** [2] 22/24 45/25
**disputed** [1] 33/3
**distinction** [1] 67/2
**distinguishes** [1] 39/5
**DISTRICT** [4] 1/1 1/2 1/13 81/18
**DIVISION** [3] 1/3 1/23 81/19
**do** [44] 6/2 12/20 17/20 17/21 22/21 24/19 25/24 26/24 27/8 27/15 27/19 28/3 29/7 30/20 32/2 34/20 34/20 35/2 36/3 37/15 43/25 46/15 47/13 54/7 55/10 55/18 55/19 58/4 63/2 64/18 65/4 65/4 68/3 68/4 68/18 69/11 69/22 71/5 71/9 75/8 76/25 77/18 77/18 78/8
**doctors** [2] 63/14 64/20
**doctrine** [13] 9/12 13/23 18/13 18/25 19/21 19/24 31/11 33/21 54/4 54/7 54/15 54/17 55/14
**does** [25] 6/2 6/22 7/7 9/4 12/16 12/18 27/7 28/25 36/19 39/13 40/9 40/15 42/25 47/7 47/13 49/18 50/16 67/4 71/19 71/21 72/13 73/12 73/16 75/11 76/11
**doesn't** [22] 7/1 7/22 9/25 15/6 15/12 15/17 32/7 33/3 35/16 37/2 37/5 38/22 40/18 42/23 48/19 55/18 59/10 63/3

# D

**doesn't... [4]** 65/4 66/8 70/9 70/23

**don't [49]** 4/10 10/11 11/14 12/23 14/4 15/10 20/21 20/24 22/11 22/13 22/24 23/4 24/21 24/23 25/9 25/21 26/8 28/16 29/7 29/25 30/2 31/7 32/1 32/2 35/21 36/4 36/11 39/20 39/22 42/9 42/15 42/21 50/25 54/12 56/16 58/6 58/12 59/1 59/5 59/18 62/10 63/5 63/24 65/24 66/9 71/1 75/14 77/17 78/7

**done [5]** 5/5 14/19 27/11 55/23 59/10

**double [1]** 78/6

**double-check [1]** 78/6

**down [7]** 20/10 20/18 20/20 21/16 33/10 61/20 66/13

**Dr [1]** 16/7

**Dr. [5]** 17/15 35/16 35/17 56/18 56/21

**Dr. Hotze [5]** 17/15 35/16 35/17 56/18 56/21

**dramatic [1]** 23/22

**draw [1]** 18/16

**drugs [16]** 10/14 10/23 11/13 14/12 14/16 15/3 16/8 16/25 18/3 21/6 27/14 28/5 32/17 33/5 33/5 36/7

**due [1]** 81/8

**Duke [1]** 28/11

**DUSTIN [1]** 1/19

**duties [1]** 52/14

# E

**each [3]** 5/13 5/19 48/11

**earlier [4]** 17/2 56/1 67/10 67/16

**easier [1]** 21/22

**easiest [4]** 5/16 63/13 63/14 64/5

**easily [1]** 25/10

**easy [3]** 9/9 13/17 25/15

**economic [1]** 34/15

**economics [1]** 31/6

**edict [1]** 49/25

**edicts [1]** 38/20

**effect [46]** 20/22 21/19 22/16 23/22 24/15 26/17 27/4 27/6 30/23 31/2 41/22 42/16 43/7 44/1 44/15 44/20 46/20 48/1 48/25 49/7 51/3 51/7 53/15 58/24 59/4 59/7 59/15 59/18 60/11 60/20 60/22 62/3 62/4 62/25 65/22 67/14 67/23 68/3 68/5 68/11 68/17 68/20 69/12 70/2 72/24 73/6

**effectiveness [4]** 65/8 65/8 67/11 67/12

**either [8]** 6/20 14/1 20/1 60/5 64/25 67/21 76/20 77/15

**elements [1]** 22/13

**else [5]** 34/11 53/20 61/5 72/7 80/1

**emolument [1]** 71/23

**emphasized [1]** 15/14

**emphatically [1]** 73/19

**empirical [4]** 14/24 16/5 17/1 20/12

**empirically [1]** 19/14

**employ [2]** 74/1 74/2

**employed [1]** 72/3

**employee [4]** 32/16 36/1 36/1 36/7

**employee's [1]** 6/7

**employees [12]** 9/17 10/2 10/2 11/14 12/18 13/4 13/14 15/21 32/9 32/25 33/5 33/7 64/19

**employment [12]** 64/15 65/2 71/16 71/19 72/4 73/14 73/16 73/19 73/25 73/25 74/9 74/24

**empowered [2]** 50/9 77/19

**empowers [2]** 37/25 53/19

**en [5]** 26/7 26/20 26/22 26/25 64/14

**enable [1]** 79/12

**enact [1]** 45/13

**enactment [1]** 48/17

**enactments [1]** 55/17

**end [4]** 7/4 26/8 28/20 38/11

**endorsed [1]** 29/5

**ends [2]** 62/13 63/2

**enforcement [3]** 23/17 24/13 47/16

**enforcing [5]** 8/25 10/7 12/3 43/21 46/24

**engage [2]** 18/22 19/5

**engaged [2]** 19/8 24/22

**engaging [1]** 32/20

**enjoin [5]** 23/17 24/13 37/9 37/10 43/20

**enough [14]** 11/2 11/7 16/12 16/14 16/16 17/17 17/22 20/15 21/8 21/14 25/3 28/13 28/13 28/14

**ensure [1]** 75/8

**entire [1]** 23/19

**entirely [1]** 19/7

**entities [9]** 13/12 48/11 54/20 61/12 66/6 72/18 74/21 74/23 76/11

**entitled [5]** 7/3 7/19 7/25 8/13 81/6

**entitlement [1]** 7/21

**E**

**entity [3]** 53/1 73/1 74/5
**Episcopal [1]** 73/9
**especially [1]** 76/16
**essential [1]** 18/17
**essentially [3]** 12/18 30/25 59/19
**establish [2]** 21/23 30/5
**established [6]** 51/22 52/1 52/7 52/11 52/12 57/12
**establishes [1]** 52/10
**et [2]** 1/5 1/8
**even [49]** 8/12 9/20 10/20 10/25 11/12 17/14 18/3 18/4 18/20 22/7 22/8 25/20 28/22 30/8 31/2 34/23 41/19 42/1 42/7 42/16 42/20 42/22 43/2 43/11 44/16 44/20 45/1 49/2 49/11 50/20 50/24 50/25 51/14 53/6 53/17 55/18 55/19 55/20 58/11 58/12 58/25 59/7 60/16 60/19 62/13 64/4 69/2 74/10 79/7
**ever [3]** 10/2 11/14 32/15
**every [5]** 11/23 37/10 45/8 53/2 65/22
**everyone [1]** 21/13
**everything [1]** 54/15
**evidence [19]** 20/1 20/3 20/7 20/12 20/15 20/17 21/17 21/18 29/18 29/21 33/10 34/2 35/13 35/22 35/25 65/7 67/10 70/10 70/15
**evolve [2]** 27/19 27/22
**exact [2]** 31/24 50/9
**exactly [3]** 18/15 26/24 74/19
**example [6]** 15/19 30/22 57/18 59/22 60/3 77/24

**exception [1]** 37/4
**excluded [3]** 21/5 21/6 21/6
**excluding [1]** 19/6
**exclusively [1]** 40/24
**excuse [1]** 66/18
**execute [2]** 64/21 65/3
**executive [1]** 76/21
**Executor [3]** 76/14 76/17 76/23
**exempt [1]** 71/4
**exercise [8]** 14/20 16/13 19/19 38/4 50/1 51/23 54/20 66/15
**exercised [1]** 55/8
**exercising [3]** 42/18 60/17 76/9
**exist [3]** 24/3 29/9 74/21
**existed [1]** 38/18
**existence [1]** 19/2
**exists [2]** 36/16 74/25
**expenditures [1]** 10/3
**expenses [1]** 6/7
**expertise [1]** 52/5
**experts [2]** 15/21 52/8
**explain [1]** 6/13
**explains [1]** 56/22
**explicit [1]** 50/20
**extend [4]** 7/7 28/3 28/5 79/6
**extent [8]** 31/4 32/2 41/6 63/17 63/21 75/3 75/5 75/15

**F**

**facilitating [2]** 32/13 32/18
**fact [20]** 9/23 10/23 11/11 13/4 15/18 15/23 16/15 16/20 17/15 17/21 17/24 18/4 19/3 20/25 21/4 47/15 48/13 48/15 70/10 70/15

**factual [1]** 56/4
**factually [3]** 19/14 19/18 57/1
**failed [1]** 30/5
**failing [1]** 54/12
**failure [1]** 34/13
**fair [2]** 14/23 23/4
**far [8]** 5/16 10/5 14/25 15/3 63/9 65/20 67/18 78/19
**FCRR [2]** 81/4 81/17
**FDA [2]** 15/20 59/23
**features [3]** 31/14 31/19 31/25
**federal [16]** 13/8 19/2 19/2 19/4 35/7 54/11 64/10 64/20 68/6 74/9 74/11 74/13 74/17 74/20 74/21 74/25
**fees [1]** 81/12
**few [2]** 69/19 72/11
**Fifth [13]** 13/25 22/15 26/4 28/9 30/10 62/16 64/14 65/2 66/11 67/1 71/14 73/10 79/5
**FILLMORE [2]** 1/19 1/19
**final [1]** 62/18
**finally [2]** 49/11 75/2
**financial [3]** 9/24 10/25 18/4
**find [2]** 38/25 49/8
**finding [1]** 47/20
**Fine [1]** 69/21
**Firm [1]** 1/19
**first [4]** 44/6 48/7 55/24 60/8
**fix [2]** 38/22 46/25
**fixed [1]** 47/3
**Floor [1]** 2/3
**flow [1]** 68/24
**flowing [1]** 61/20
**flows [1]** 57/14

# F

**fluctuate [1]** 21/16
**focus [2]** 9/13 10/13
**following [1]** 71/22
**follows [4]** 6/17 7/2 11/22
44/24
**food [2]** 42/17 45/4
**footnote [3]** 11/6 35/9
59/21
**force [50]** 13/12 38/21
39/1 39/12 39/19 40/10
40/25 41/4 41/9 41/11
41/13 41/18 42/5 44/4
44/10 44/13 44/19 45/16
45/23 46/5 48/10 49/25
51/18 51/20 51/21 51/25
52/4 52/7 52/14 52/15
52/18 53/8 53/12 53/14
53/17 53/22 54/19 63/10
63/11 71/12 72/15 74/4
74/5 74/25 75/4 75/19
76/2 77/8 77/12 77/16
**Force's [1]** 77/22
**foregoing [2]** 81/5 81/6
**form [2]** 48/2 55/15
**formalized [3]** 64/15 71/15
73/14
**format [1]** 81/12
**FORT [5]** 1/3 1/7 1/20
81/19 81/20
**forth [5]** 65/18 66/25
67/4 69/23 74/7
**found [1]** 15/5
**four [1]** 39/2
**free [4]** 23/10 24/4 24/14
80/6
**friend [2]** 31/16 32/5
**friend's [1]** 71/7
**front [1]** 39/21
**functions [1]** 49/21
**fundamental [1]** 37/24
**further [6]** 26/23 61/6

75/25 80/2 81/8 81/12
**future [1]** 65/25

# G

**general [2]** 57/24 66/20
**General's [1]** 39/8
**get [18]** 7/6 8/15 14/5
16/22 21/23 21/25 22/7
22/8 22/20 31/20 31/25
59/2 59/5 64/9 70/3
70/18 71/24 78/19
**gets [3]** 41/23 45/20 51/4
**getting [1]** 79/25
**give [4]** 47/4 47/7 49/24
79/8
**given [13]** 14/14 19/1 28/1
28/7 32/4 33/6 33/7 41/21
49/23 54/7 67/19 76/25
76/25
**gives [4]** 11/11 48/19 52/18
68/4
**giving [1]** 41/10
**gmail.com [1]** 81/21
**go [19]** 7/22 17/12 17/16
20/7 20/10 20/17 20/20
20/22 21/16 23/1 38/12
43/7 48/11 51/8 67/3 70/2
70/9 71/22 80/6
**gobs [1]** 18/2
**goes [8]** 7/21 17/8 17/9
52/13 60/14 63/8 63/10
67/18
**going [9]** 8/17 14/15 22/9
25/6 32/22 35/23 42/18
45/20 78/5
**good [7]** 28/11 28/21 29/10
34/9 37/20 42/25 61/4
**got [2]** 22/21 71/15
**governing [2]** 66/3 72/13
**government [64]** 5/3 5/7
6/20 6/22 6/25 9/25 10/11
10/15 10/21 13/8 14/13
14/24 15/13 17/17 18/10

25/18 27/15 28/1 31/12
35/8 38/9 38/13 39/6
39/16 42/2 42/25 43/15
43/19 43/24 44/21 45/5
45/15 46/12 47/13 48/3
48/5 48/13 49/14 49/17
50/1 50/15 50/18 50/21
51/10 51/15 51/19 54/5
54/9 56/3 56/15 56/25
57/16 57/18 57/24 58/9
59/2 64/16 73/7 73/15
74/10 74/11 74/17 74/21
74/23
**government's [13]** 10/10
11/12 13/24 15/9 24/9
27/9 41/16 42/2 42/8
46/14 47/17 49/2 53/11
**governs [2]** 62/20 65/18
**grant [2]** 26/22 26/24
**granted [3]** 4/13 20/18
70/22
**Great [1]** 4/21
**grievance [2]** 17/8 17/23
**grounded [2]** 31/5 31/6
**group [1]** 78/4
**Guedes [2]** 39/6 62/14
**guess [3]** 19/22 22/2 22/4
**guideline [1]** 71/4
**guidelines [8]** 30/20 31/2
62/1 62/2 62/25 63/24
68/13 71/6

# H

**had [17]** 6/10 13/1 14/14
15/11 15/11 15/25 17/21
22/18 23/15 27/10 27/10
45/1 58/16 58/17 60/17
78/20 80/6
**half [1]** 23/24
**happen [6]** 22/17 24/13
32/22 32/22 59/20 65/25
**happened [1]** 71/10
**happens [2]** 20/23 62/22

**H**

**happy [1]** 67/18

**hard [5]** 18/14 34/20 39/23 52/24 54/16

**harm [3]** 9/24 10/25 17/10

**has [78]** 5/15 5/19 5/23 6/4 6/9 6/16 7/15 7/22 8/14 9/9 10/23 11/1 11/9 11/11 11/19 11/23 13/8 13/11 15/1 15/15 16/11 17/3 17/9 17/12 17/13 19/2 28/1 28/6 28/20 32/3 32/20 32/21 32/25 34/14 34/23 35/8 36/24 37/1 37/9 37/11 38/9 38/13 38/16 38/23 39/21 41/14 46/11 47/8 47/11 49/14 53/14 54/9 55/4 55/5 56/1 56/20 59/7 59/10 60/15 60/20 61/1 61/19 62/11 62/17 63/1 65/1 65/11 65/11 65/12 65/22 66/24 67/16 70/7 72/12 73/11 77/7 78/18 79/3

**hasn't [4]** 13/25 26/11 46/12 79/14

**have [106]**

**haven't [6]** 14/1 20/6 22/18 23/14 33/14 35/25

**having [5]** 16/23 27/8 31/6 34/18 72/20

**he [19]** 7/18 16/9 16/11 33/2 38/19 39/3 48/14 56/20 58/15 58/16 58/17 61/23 63/3 66/4 66/5 66/8 70/13 72/13 73/5

**he's [5]** 35/18 35/18 35/22 56/22 70/13

**heads [3]** 46/7 46/11 49/16

**health [41]** 12/14 18/22 19/6 21/5 23/22 23/24

24/5 24/14 30/1 30/7 30/19 31/19 31/21 31/23 31/25 39/14 39/25 40/1 40/2 40/4 40/5 40/6 40/9 40/10 40/12 40/12 40/13 40/16 40/17 40/19 40/21 44/2 44/9 55/20 57/17 61/21 61/22 62/21 72/14 72/16 79/12

**healthcare [2]** 65/10 77/11

**hear [2]** 64/22 81/7

**hearing [2]** 1/12 26/22

**heavily [3]** 15/8 39/7 45/5

**held [3]** 15/23 44/25 51/13

**helps [1]** 71/2

**here [32]** 4/8 4/9 11/16 14/20 16/2 18/16 23/6 23/16 28/10 30/14 30/15 33/8 33/22 34/1 35/12 39/10 46/3 54/25 55/24 59/19 62/21 62/24 63/23 66/24 67/17 67/24 70/7 74/15 74/24 76/24 78/10 80/4

**here's [5]** 39/25 41/21 46/14 51/18 51/20

**HHS [7]** 41/13 61/11 61/18 63/11 67/22 69/18 77/23

**higher [2]** 42/17 45/4

**him [3]** 16/10 49/21 56/19

**hints [1]** 54/2

**his [17]** 16/10 16/11 19/5 28/24 29/3 29/4 35/18 35/19 42/10 49/21 56/19 56/22 57/1 58/15 66/4 67/24 73/13

**Hobby [23]** 14/11 14/14 14/19 15/1 15/4 15/6 15/11 15/11 15/19 15/22 15/23 16/18 16/18 16/19 19/12 33/1 33/4 57/3 57/4 57/7 57/9 57/14 57/19

**hoe [1]** 22/1

**Hold [3]** 12/25 19/15 38/11

**holding [3]** 26/15 26/16 44/24

**holds [1]** 43/10

**Honor [33]** 4/14 5/3 13/19 20/5 22/19 23/5 26/1 29/14 30/10 31/8 35/5 36/5 36/12 36/25 37/8 37/17 37/21 39/21 53/24 61/6 61/9 64/6 69/19 70/6 70/17 72/9 72/10 75/24 77/5 78/9 78/16 80/2 80/3

**Honor's [1]** 24/12

**HONORABLE [1]** 1/12

**hope [1]** 27/19

**hoped [1]** 23/15

**Hospital [1]** 73/9

**Hotze [6]** 16/7 17/15 35/16 35/17 56/18 56/21

**how [14]** 14/11 24/2 41/1 44/1 47/3 47/6 53/10 55/8 55/10 59/1 59/5 61/18 63/7 74/7

**HPV [1]** 30/22

**HRQ [2]** 77/9 77/11

**HRSA [43]** 13/12 38/21 39/1 39/13 39/19 40/9 40/24 41/17 42/5 44/3 44/10 44/13 44/18 45/16 45/21 46/5 48/9 50/8 50/8 50/17 51/2 51/3 51/5 51/8 51/9 51/12 54/19 61/22 61/24 62/1 62/6 68/10 68/16 68/20 68/21 68/23 69/9 69/25 70/22 71/4 71/9 72/16 77/15

**HRSA and [1]** 39/19

**HRSA specifically [1]** 61/22

**HRSA's [2]** 50/17 77/22

## H

**Human [6]** 39/14 40/1 40/5 40/14 44/3 44/9

**Humphrey's [3]** 76/13 76/17 76/23

**hurt [1]** 34/14

## I

**I'll [1]** 48/11

**I'm [16]** 10/11 10/16 20/10 22/2 22/11 22/19 26/2 28/4 35/20 36/4 37/18 42/3 44/1 56/9 67/18 78/10

**I've [3]** 41/3 44/8 44/11

**idea [6]** 19/23 30/7 38/16 42/21 58/25 73/19

**identical [1]** 62/20

**identifiable [5]** 11/3 11/4 11/7 11/15 18/1

**identified [1]** 49/14

**ideological [3]** 11/8 17/8 17/23

**if [110]**

**ignored [1]** 75/12

**II [7]** 43/23 45/1 46/2 46/13 48/9 58/18 76/25

**III [13]** 1/19 4/17 5/12 6/18 6/22 7/14 7/15 8/4 11/23 15/7 16/16 16/21 48/2

**imagine [1]** 52/24

**immediately [1]** 59/16

**imminent [1]** 29/18

**immunization [2]** 49/6 49/10

**immunizations [3]** 48/20 55/6 67/13

**implement [1]** 39/3

**implemented [1]** 30/21

**implicated [1]** 33/13

**implicit [1]** 50/21

**important [4]** 26/3 66/22 69/22 72/14

**impose [10]** 6/5 41/18 41/22 42/4 42/10 42/12 45/20 51/11 53/20 64/2

**imposed [9]** 13/14 24/6 39/14 42/7 44/20 46/21 59/23 59/24 60/25

**imposes [1]** 19/4

**imposing [3]** 43/2 59/22 63/25

**imposition [2]** 6/10 47/16

**impressive [2]** 28/21 36/22

**improper [3]** 23/20 43/20 64/2

**improperly [1]** 46/1

**in [254]**

**inability [1]** 28/2

**include [3]** 19/1 30/8 40/10

**included [1]** 72/16

**includes [1]** 40/9

**incompatible [1]** 41/12

**inconclusive [1]** 20/12

**incorporate [1]** 74/14

**Incorporated [2]** 5/15 8/18

**incorporates [1]** 9/16

**incurred [1]** 17/10

**indeed [1]** 30/18

**independence [4]** 41/12 52/15 64/6 75/8

**independent [5]** 41/6 52/3 63/17 74/21 76/11

**Index.........................
............82 [1]** 3/9

**indisputable [1]** 25/14

**indisputably [1]** 38/4

**individual [9]** 8/19 21/24 21/25 37/4 64/16 67/15 74/1 79/4 79/10

**individuals [6]** 32/9 38/1 38/6 43/22 46/21 52/4

**indulge [3]** 18/20 42/22

59/8

**inferior [2]** 40/12 40/8

**inflicts [1]** 9/23

**influences [1]** 75/20

**initial [1]** 38/18

**initiative [1]** 42/10

**injunction [5]** 7/4 12/2 78/11 78/14 78/15

**injunctive [4]** 7/6 8/24 46/18 78/25

**injured [1]** 35/19

**injuries [5]** 8/1 47/5 47/11 47/25 79/9

**injury [36]** 8/9 8/16 9/23 10/23 11/8 13/4 16/14 16/16 16/20 17/18 17/24 18/4 18/5 19/3 21/3 24/9 24/17 25/4 25/7 25/9 29/18 30/5 33/25 34/4 34/14 34/24 34/25 35/2 35/2 35/10 35/13 37/11 47/15 47/17 47/22 48/2

**injury-specific [1]** 37/11

**inquire [1]** 5/19

**inquiry [2]** 7/13 24/2

**instead [2]** 4/5 43/25

**insulate [2]** 41/9 75/18

**insulated [1]** 75/4

**insulation [1]** 66/5

**insurance [41]** 12/17 13/6 13/7 14/9 14/18 18/22 19/7 20/1 21/5 21/11 22/4 23/1 23/13 23/23 23/24 24/5 24/7 24/14 30/1 30/13 30/16 31/17 31/19 31/21 31/23 32/1 32/15 33/15 33/22 34/3 35/1 36/3 53/3 61/2 65/12 65/14 65/16 65/16 68/17 77/21 79/13

**I**

**insured [9]** 5/25 6/9 9/15 12/11 12/13 13/6 32/6 32/16 53/2

**insureds [2]** 32/10 32/10

**insurer [3]** 12/15 12/25 53/2

**insurers [6]** 23/9 32/7 38/3 48/21 50/11 52/19

**intelligible [10]** 54/12 54/13 54/16 54/17 54/24 55/9 66/14 66/18 66/25 67/2

**intends [1]** 36/1

**interaction [1]** 75/13

**interest [3]** 54/3 54/22 55/19

**interesting [3]** 14/5 25/13 25/21

**interference [1]** 41/10

**intern [2]** 72/1 72/2

**internal [1]** 34/17

**internally [1]** 63/7

**interpret [2]** 73/22 73/24

**interpreted [1]** 77/1

**intervene [1]** 69/11

**into [20]** 11/9 13/9 14/5 16/7 17/23 20/22 24/15 33/19 34/8 35/13 43/7 48/23 51/19 54/7 55/22 58/10 70/2 75/1 75/23 79/25

**introduce [2]** 21/17 25/22

**invalid [2]** 23/20 71/8

**invent [1]** 46/15

**involved [2]** 63/20 67/15

**involves [1]** 64/20

**involving [1]** 18/8

**is [236]**

**isn't [1]** 14/20

**issuance [1]** 26/20

**issue [15]** 10/13 13/6

26/14 26/25 27/2 30/25 31/18 35/18 43/13 43/25 47/19 48/5 69/22 70/8 70/18

**issued [5]** 26/11 38/19 38/21 43/22 47/10

**issues [6]** 4/17 4/18 25/20 26/22 27/14 28/8

**issuing [1]** 47/21

**it [149]**

**it's [68]** 4/24 5/19 7/24 10/1 14/2 14/4 14/25 15/3 15/16 17/14 18/4 18/10 19/15 20/19 20/20 21/2 22/1 22/9 23/4 23/13 23/25 24/10 24/18 25/4 25/7 25/17 26/3 29/17 29/19 29/20 30/23 31/24 34/21 35/10 35/14 37/10 37/11 40/22 47/12 49/23 50/9 50/20 51/14 52/11 52/24 53/9 54/16 55/9 55/23 56/13 57/4 60/5 60/5 60/15 63/10 63/20 63/25 66/3 71/21 71/23 72/14 73/3 73/10 73/24 74/12 77/1 77/11 78/15

**its [24]** 5/24 6/1 7/10 9/17 10/2 10/24 11/1 12/19 31/13 31/19 38/9 41/14 43/1 48/5 49/24 52/7 57/10 60/19 60/21 74/6 74/8 74/10 75/13 77/12

**itself [3]** 40/16 59/6 63/11

**J**

**January [3]** 26/5 26/8 38/19

**job [2]** 47/4 65/17

**Joel [1]** 29/25

**John [2]** 4/6 29/24

**JONATHAN [1]** 1/16

**judge [5]** 1/13 43/12 58/14

73/5 73/12

**judges [4]** 43/10 44/25 45/9 46/1

**judgment [11]** 8/21 20/14 20/16 20/22 22/21 26/4 26/17 29/17 34/2 78/21 79/24

**judicata [4]** 26/15 26/16 27/1 28/7

**judicial [4]** 46/16 55/16 65/3 81/13

**judicially [1]** 64/22

**JULY [2]** 1/9 4/2

**just [51]** 8/18 8/19 9/4 9/13 10/6 12/6 12/6 14/4 14/8 16/22 17/18 17/22 18/2 18/6 20/19 21/1 21/2 21/18 24/19 25/3 25/21 25/22 26/2 28/10 31/6 31/16 31/24 34/25 35/25 38/23 40/21 52/2 53/24 54/19 55/25 57/1 57/3 57/14 57/19 57/21 59/17 61/15 63/20 65/17 66/1 67/6 68/13 72/11 74/23 76/1 78/10

**JUSTICE [3]** 1/23 2/2 15/14

**justices [1]** 55/24

**K**

**Kelley [7]** 4/6 7/12 7/12 8/18 29/24 29/25 29/25

**kicks [1]** 25/16

**kind [1]** 71/15

**know [24]** 20/21 21/10 22/13 22/24 23/25 25/25 26/21 29/24 31/24 31/25 32/17 32/19 36/11 36/22 37/3 37/9 39/20 59/5 65/18 65/21 69/6 71/6 72/23 77/17

**knows [1]** 5/3

**L**

lack [1]  13/20

language [7]  54/7 60/1
61/12 66/22 70/20 71/18
75/3

large [1]  15/1

largely [2]  20/20 66/3

larger [1]  78/4

last [4]  18/7 22/14 28/10
32/5

later [6]  41/19 43/3 44/17
45/17 53/17 59/10

latest [1]  18/7

law [29]  1/19 19/2 19/4
28/11 28/25 29/5 36/18
38/24 43/10 43/12 44/25
46/7 46/9 48/23 49/16
50/22 51/22 52/2 52/11
52/12 58/14 61/17 64/11
64/21 68/2 72/24 73/4
75/23 76/16

laws [14]  38/5 41/25 42/11
42/19 43/9 44/14 44/23
51/24 52/22 52/24 59/13
60/18 74/13 76/10

lawsuit [3]  5/5 30/2 78/13

lays [1]  66/13

lead [1]  56/14

leading [1]  55/17

lean [1]  15/8

least [4]  19/1 21/11 22/6
54/10

leave [2]  47/17 55/12

leaves [1]  54/3

legal [4]  8/6 72/25 73/18
73/23

legislate [2]  64/21 65/2

legislative [1]  66/14

lend [1]  70/23

less [4]  30/14 31/22 32/24
57/15

let [12]  4/11 4/11 6/24 9/8
11/17 12/6 12/10 26/21
34/25 58/13 55/13 77/23

let's [4]  9/13 44/6 48/12
65/20

life [3]  27/25 28/8 54/7

like [17]  4/16 8/18 8/19
14/25 18/18 25/2 30/13
33/19 34/9 35/6 38/12
39/20 47/13 53/9 55/17
57/3 57/19

likelihood [1]  8/8

likely [10]  10/2 14/25 15/4
16/24 24/16 24/18 25/4
32/22 34/15 35/4

likewise [1]  74/22

limitation [1]  77/13

limitations [1]  67/8

limited [3]  7/7 65/6 67/10

limiting [2]  18/12 67/20

line [3]  18/16 24/2 76/13

linked [1]  32/20

list [2]  36/19 36/22

lists [2]  28/20 36/21

litigants [1]  46/18

litigation [3]  5/6 18/8
27/21

little [10]  13/5 14/10 29/5
54/8 63/10 70/20 71/1
71/2 71/8 71/10

LLP [1]  1/19

Lobby [23]  14/11 14/14
14/19 15/1 15/4 15/6 15/11
15/11 15/19 15/22 15/23
16/18 16/18 16/19 19/12
33/2 33/4 57/3 57/4 57/7
57/9 57/14 57/19

logic [1]  11/23

long [6]  15/16 15/25 25/18
36/15 56/2 66/13

longer [2]  13/3 50/7

look [2]  22/20 52/2

looked [1]  25/2

looks [1]  74/3

lost [1]  6/9

lot [1]  79/23

Lucia [5]  43/9 44/24 51/21
58/13 58/14

Luke's [2]  71/14 73/8

lying [1]  56/21

LYNCH [6]  1/22 12/4
72/12 72/19 73/8 75/2

Lynch..........................
....29 [1]  3/6

**M**

made [14]  27/25 30/15
32/21 33/7 34/9 34/19
35/8 41/5 44/8 45/8
55/25 62/17 63/16 78/1

Main [1]  1/20

major [7]  6/13 6/20 6/23
6/24 11/18 11/21 25/19

majority [2]  24/24 70/21

make [24]  4/11 11/1 12/24
14/15 15/13 15/24 23/1
33/4 35/8 39/19 45/16
47/2 49/19 53/14 61/1
63/5 65/4 65/17 68/16
69/6 70/1 71/23 72/20
76/12

makes [12]  7/9 16/10
18/23 25/14 31/10 32/12
43/15 53/12 56/8 56/9
56/19 66/4

making [13]  5/8 14/11
14/25 16/6 16/23 23/19
35/7 50/17 56/4 56/16
62/18 65/15 67/5

MANAGEMENT [9]  1/5
5/15 5/18 5/21 5/23 5/25
7/3 8/18 9/16

Management's [1]  57/17

mandate [41]  10/1 10/6
11/10 21/13 22/14 23/17
23/19 23/23 24/5 24/6

**M**

mandate... **[31]** 24/8
24/14 26/11 26/13 26/20
26/21 26/25 27/17 27/18
28/8 33/16 42/5 42/7
42/13 43/7 44/19 45/21
51/6 51/7 51/11 53/21
58/23 59/4 59/6 59/18
60/22 67/20 68/8 68/24
69/12 77/20
mandates **[29]**  5/24 6/11
8/22 8/24 9/15 9/21 10/8
12/2 13/8 17/17 20/8 20/11
22/6 22/23 28/6 33/19
34/8 38/19 38/25 41/18
41/22 43/3 43/21 45/14
46/19 46/20 47/16 47/25
60/25
manner **[3]**  46/2 48/8
73/22
many **[5]**  4/17 15/21 19/15
24/19 38/9
marginal **[1]**  13/13
market **[9]**  19/7 22/4
22/25 23/13 23/23 24/10
25/2 30/1 79/12
markets **[1]**  65/12
mask **[1]**  22/14
masks **[1]**  81/9
matter **[5]**  11/22 15/17
15/22 17/1 81/7
Maxwell **[1]**  30/4
may **[16]**  4/15 4/19 10/4
16/5 16/6 17/1 18/1 18/2
18/16 28/8 31/12 54/9
54/24 55/12 55/22 60/24
maybe **[2]**  16/7 55/23
me **[25]**  4/11 4/24 6/24
9/8 10/11 11/17 12/6 12/10
12/11 15/12 18/14 19/21
22/12 34/20 34/25 38/14
39/24 42/2 56/8 56/9

57/23 60/15 66/18 72/8
77/23
mean **[5]**  12/16 34/14 37/2
71/20 75/11
meaning **[1]**  16/19
means **[8]**  12/12 12/13 13/7
32/7 57/15 67/25 75/7
75/17
measures **[1]**  75/10
medical **[2]**  15/21 65/17
medically **[1]**  65/5
meet **[3]**  20/2 25/3 34/5
members **[21]**  41/4 41/5
46/4 46/5 46/6 48/9
48/10 48/21 49/4 49/11
50/4 52/1 52/7 63/17
64/10 64/18 66/8 74/10
75/19 77/7 77/12
membership **[2]**  74/8
76/19
memo **[2]**  38/19 64/20
memos **[1]**  65/2
mention **[2]**  60/2 66/3
mentioned **[5]**  25/19 61/15
67/6 67/9 71/13
mere **[6]**  11/8 15/23 16/9
17/8 17/23 35/10
merely **[1]**  24/17
merits **[12]**  4/22 7/17 7/21
8/6 8/13 29/12 36/25 37/8
37/19 62/14 78/24 79/19
met **[2]**  34/2 35/3
mete **[1]**  20/15
mid **[1]**  69/17
mid-course **[1]**  69/17
might **[13]**  19/22 20/9
33/24 34/10 36/7 38/17
43/3 54/25 56/14 73/5
75/12 78/21 79/16
mind **[1]**  72/14
minimal **[1]**  25/3
minor **[8]**  6/16 6/21 6/23

9/8 11/19 11/22 17/18
25/19
minute **[1]**  14/8
mischaracterizing **[2]**
10/16 42/3
misnomer **[1]**  75/23
misquoting **[1]**  18/16
MITCHELL **[6]**  1/16 4/10
33/1 35/7 36/24 78/11
Mitchell's **[1]**  34/23
Mitchell........................
.....04 **[1]**  3/5
mitigate **[1]**  38/10
moment **[4]**  9/13 18/21
19/21 70/8
money **[6]**  12/14 16/8
16/24 18/2 19/8 34/9
more **[16]**  10/6 13/5 14/2
14/5 14/25 15/3 15/3 20/3
21/8 30/11 31/21 35/10
41/15 57/11 63/10 64/8
Morrison **[2]**  76/17 76/23
most **[3]**  5/7 8/3 44/7
motion **[4]**  1/12 4/12 78/21
79/24
move **[2]**  37/15 37/18
moving **[1]**  51/18
Mr **[2]**  3/5 3/6
Mr. **[14]**  4/10 7/12 7/12
8/18 12/4 33/1 34/23 35/7
36/24 72/12 72/19 73/8
75/2 78/11
Mr. Kelley **[3]**  7/12 7/12
8/18
Mr. Lynch **[5]**  12/4 72/12
72/19 73/8 75/2
Mr. Mitchell **[5]**  4/10 33/1
35/7 36/24 78/11
Mr. Mitchell's **[1]**  34/23
much **[4]**  14/2 15/2 23/16
43/10
must **[17]**  6/20 7/16 8/8

## M

**must...** **[14]** 29/17 38/3 42/20 46/9 48/21 50/11 51/8 51/22 51/23 52/19 53/3 70/16 73/13 77/21
**my [24]** 4/19 12/3 16/17 17/12 18/21 20/15 31/16 32/5 36/6 37/23 46/20 47/4 47/15 47/24 56/10 61/14 63/10 66/2 66/24 67/19 71/6 73/9 81/7 81/11
**Myers [1]** 76/13
**myself [1]** 78/19

## N

**named [3]** 46/18 49/12 79/6
**Namely [1]** 12/1
**narrow [2]** 23/7 23/12
**nationwide [1]** 78/14
**naturally [1]** 57/14
**necessarily [2]** 64/21 71/20
**necessary [13]** 5/19 14/4 42/6 43/6 44/19 49/6 51/6 59/3 73/20 73/24 75/8 75/18 79/8
**need [16]** 5/9 9/14 11/15 24/8 24/19 24/21 24/23 25/21 27/1 31/7 32/17 43/1 64/6 70/24 79/11 79/21
**needed [3]** 60/21 62/13 79/8
**needless [2]** 25/22 27/20
**needs [4]** 5/11 6/14 6/25 11/2
**neither [1]** 76/23
**never [5]** 10/25 11/13 33/3 48/6 53/18
**new [6]** 35/19 45/13 46/15 47/8 54/7 63/25

**night [1]** 22/14
**nixed [1]** 60/4
**no [42]** 1/6 6/2 6/4 9/20 13/3 13/14 16/3 16/23 19/10 19/23 19/25 19/25 20/3 24/8 29/21 30/7 30/15 30/25 32/15 32/16 38/23 41/14 45/12 45/25 46/3 49/8 50/7 51/9 51/9 53/4 53/19 54/10 54/15 59/17 61/3 61/12 66/7 67/2 70/14 71/9 77/13 80/3
**No. [1]** 4/6
**No. 4:20-283 [1]** 4/6
**non [2]** 19/22 27/13
**non-Braidwood [1]** 19/22
**non-prEP [1]** 27/13
**nonbelievers [1]** 19/16
**noncontraception [1]** 27/14
**nondelegation [8]** 53/25 54/1 54/4 54/15 55/14 55/16 66/10 66/10
**none [3]** 15/22 23/20 38/11
**nonessential [1]** 18/18
**nongovernment [1]** 63/12
**nonofficer [1]** 72/20
**nonofficers [1]** 63/5
**nonrecommendation [1]** 77/15
**nonrecommendations [3]** 45/18 51/16 53/18
**nonreligious [3]** 20/4 31/8 32/3
**NORTHERN [2]** 1/2 81/18
**not [129]**
**note [1]** 33/1
**noted [2]** 63/11 64/23
**nothing [7]** 54/18 55/7 57/11 61/6 72/19 73/17 80/2

**notice [1]** 69/19
**notified [1]** 30/8
**notwithstanding [3]** 29/4 69/24 77/21
**now [21]** 9/9 9/20 13/1 14/1 21/15 24/12 26/2 31/16 38/22 39/16 40/8 43/8 50/15 51/18 58/18 60/24 66/1 70/7 75/7 76/8 77/20
**nuanced [1]** 25/12
**number [10]** 10/5 14/14 15/1 33/7 38/23 44/13 44/18 51/2 51/5 51/21
**NW [1]** 1/24

## O

**O'CONNOR [1]** 1/12
**Obama [1]** 48/22
**object [3]** 29/22 29/23 33/12
**objected [2]** 14/12 30/8
**objected-to [1]** 30/8
**objection [7]** 15/15 15/18 31/5 35/15 56/12 56/13 56/15
**objectionable [1]** 15/5
**objections [9]** 16/4 19/11 19/12 20/2 22/6 27/13 32/3 56/2 56/23
**objectors [4]** 22/22 23/8 23/11 29/9
**obligation [1]** 19/5
**obligations [2]** 63/25 72/25
**observation [1]** 17/10
**obtain [7]** 7/18 8/11 24/4 30/16 37/6 57/16 79/12
**obviate [1]** 38/10
**obvious [1]** 25/7
**obviously [4]** 15/3 26/15 28/16 57/15
**occupy [2]** 51/22 52/1

**O**

**off [3]** 59/18 67/16 76/17
**offends [1]** 17/12
**offer [5]** 20/1 22/5 33/20 34/10 34/13
**offered [7]** 20/25 23/24 33/18 34/8 38/9 38/13 53/3
**offering [1]** 24/7
**office [4]** 45/10 64/20 73/18 73/23
**officer [19]** 43/1 43/5 45/13 46/8 49/1 49/9 50/9 50/14 51/2 51/13 51/21 58/16 58/19 58/19 64/16 65/1 72/21 73/13 73/20
**officers [23]** 23/21 38/8 42/20 43/11 44/25 46/2 46/22 48/22 49/5 49/12 49/13 58/21 59/20 61/24 62/5 62/18 64/11 68/1 69/5 69/14 70/4 70/5 76/2
**official [2]** 40/22 81/18
**officials [1]** 47/8
**Oh [1]** 26/1
**okay [21]** 4/4 4/23 16/22 18/6 28/10 29/10 35/6 36/14 37/13 60/7 61/4 61/4 68/7 69/21 72/7 72/7 77/14 78/7 78/17 79/18 80/4
**OLC [4]** 64/12 64/20 65/2 71/17
**Olson [1]** 76/18
**on [96]**
**once [4]** 25/15 48/22 72/25 75/23
**one [45]** 5/11 6/14 6/25 7/1 8/17 9/4 9/5 9/14 10/5 11/2 11/18 11/23 17/11 19/10 21/19 25/16 28/11

28/21 32/15 32/24 34/15 36/24 37/9 38/13 38/13 38/23 39/2 43/16 44/13 46/12 48/12 48/12 50/24 51/2 51/14 51/21 54/2 58/25 59/16 60/16 62/20 66/4 66/8 74/3 76/17
**one's [1]** 16/3
**one-good-plaintiff [1]** 28/21
**one-off [1]** 76/17
**one-plaintiff [5]** 7/1 8/17 9/4 11/18 25/16
**one-tenth [1]** 32/24
**ones [1]** 58/6
**only [19]** 5/11 6/14 6/25 9/14 10/13 10/18 23/8 23/10 23/24 46/23 50/5 52/21 56/11 67/13 71/5 72/16 72/17 78/1 78/2
**oOo [1]** 4/3
**opening [2]** 64/24 73/9
**opinion [13]** 11/6 15/13 18/15 35/9 47/12 47/21 64/12 70/21 71/17 73/12 73/17 73/18 73/22
**opposed [3]** 18/18 24/16 74/20
**opposing [1]** 4/19
**or [103]**
**order [2]** 64/7 79/11
**Orthodontics [1]** 29/25
**Orwellian [1]** 73/3
**other [33]** 5/17 7/8 7/9 8/19 8/24 9/6 9/10 14/6 19/25 21/7 21/19 21/24 21/25 25/13 25/20 27/5 27/13 30/4 32/7 32/14 33/17 37/2 38/24 50/14 50/22 51/10 60/20 60/24 61/14 62/14 70/13 74/20 75/13

**others [3]** 4/6 4/7 19/8
**otherwise [3]** 27/12 68/5 68/12
**our [38]** 5/4 5/8 5/9 5/18 6/12 6/13 6/16 6/21 7/9 8/12 13/20 16/2 16/3 16/4 16/5 21/8 23/6 25/15 25/22 27/12 27/17 41/3 48/3 51/19 53/23 56/4 56/17 59/11 61/16 64/23 67/3 71/25 73/21 76/10 78/20 78/25 79/10 79/13
**out [20]** 11/8 11/14 12/14 13/25 15/4 16/7 17/1 17/22 18/2 20/6 20/15 20/15 22/14 24/1 27/5 30/10 31/8 61/18 62/1 67/25
**outset [2]** 5/5 25/20
**outside [3]** 27/17 61/11 63/11
**over [7]** 6/9 12/7 24/21 29/11 40/18 61/19 77/7
**overburden [1]** 79/24
**overridden [1]** 51/16
**override [10]** 39/18 41/11 42/4 45/13 49/3 49/9 50/19 51/14 53/13 77/14
**overrides [1]** 77/17
**overrule [2]** 41/14 59/9
**oversight [1]** 76/13
**own [6]** 6/1 12/19 24/7 32/18 41/19 42/10

---

**P**

**PAGE [1]** 3/3
**pages [1]** 64/23
**paid [6]** 71/20 71/20 73/16 73/19 73/25 74/10
**pandemic [1]** 81/8
**panel [1]** 26/4
**paper [1]** 17/19
**papers [1]** 67/24
**part [4]** 22/7 41/13 46/16

**P**

part... [1]  72/15
participants [1]  81/9
participate [1]  30/1
participation [1]  63/20
particular [3]  14/12 60/20
 67/6
particularly [1]  66/22
parties [2]  30/13 71/4
party [4]  12/20 22/16
 36/8 64/25
passed [2]  30/24 74/6
passing [1]  31/1
patent [3]  45/8 45/9 46/1
path [3]  34/17 63/14 64/5
patient [1]  13/13
pay [8]  10/22 11/13 14/19
 14/19 15/4 16/24 36/9
 53/4
paying [6]  12/14 16/7 18/2
 20/3 74/1 74/2
payment [2]  32/8 71/24
payments [1]  6/5
pays [4]  9/20 12/23 13/14
 61/3
people [12]  19/15 20/19
 24/19 24/21 24/22 32/13
 32/14 32/24 33/3 62/7
 70/1 76/20
per [1]  16/20
percent [3]  32/24 69/15
 77/23
perhaps [4]  54/2 59/8
 78/18 78/21
period [1]  69/25
peripheral [1]  31/24
permissible [2]  46/23 79/6
permission [2]  4/16 48/12
permitted [1]  23/2
person [4]  19/4 51/10
 66/15 73/25
perspective [1]  72/5

petitioned [2]  26/7 26/19
phase [1]  77/14
phrase [1]  75/15
piece [1]  17/19
pincite [1]  66/23
place [4]  33/19 34/8 47/18
 48/7
plaintiff [26]  1/16 5/11
 5/21 6/14 6/25 7/1 7/15
 7/16 7/18 7/19 8/17 9/4
 9/5 11/18 25/16 28/11
 28/21 31/12 32/3 36/24
 37/1 37/5 37/9 37/11
 37/11 56/9
plaintiff's [1]  8/1
plaintiffs [51]  1/6 4/8
 5/13 5/17 5/20 6/15 6/18
 7/8 7/10 8/11 8/19 9/2 9/6
 9/10 11/23 13/20 14/6 16/2
 18/21 19/22 19/24 20/4
 21/24 21/25 22/9 23/15
 25/14 27/12 29/17 29/21
 29/24 30/4 30/15 30/19
 31/4 31/11 34/1 36/15 37/2
 47/11 47/23 50/25 62/22
 64/12 65/24 69/23 78/12
 79/4 79/6 79/8 79/11
plaintiffs' [4]  16/4 31/3
 61/9 66/10
plan [16]  5/25 6/1 6/9
 9/15 9/19 9/19 10/24 11/1
 11/11 12/21 12/22 17/16
 25/9 35/19 57/17 61/15
plans [6]  20/1 22/5 23/24
 30/7 53/2 53/3
platitudes [1]  55/21
plausible [1]  56/16
play [2]  13/9 14/20
players [1]  48/8
pleading [1]  20/14
please [3]  4/4 4/15 29/13
podium [1]  4/10

point [22]  10/20 13/25
 14/21 15/13 19/11 20/6
 20/13 24/2 25/17 27/15
 29/16 29/21 31/8 43/1
 43/15 44/8 55/25 62/24
 63/3 65/21 66/8 70/17
pointed [2]  30/10 46/12
points [2]  67/25 72/11
policies [9]  20/3 21/5
 33/18 33/20 34/8 34/9
 34/10 34/13 70/2
policy [4]  14/15 36/10
 55/20 66/20
political [12]  41/7 41/10
 41/12 47/5 52/15 63/18
 63/20 63/22 75/4 75/8
 75/19 76/7
pool [2]  19/8 32/7
Poor [3]  14/10 54/8 70/20
populated [1]  52/8
population [2]  24/25 78/3
position [7]  5/18 7/5 42/3
 51/22 52/1 52/11 52/11
possibility [2]  42/23 53/6
possible [4]  24/4 28/7
 34/3 56/13
possibly [2]  45/2 54/3
post [2]  22/3 23/2
power [19]  41/11 41/21
 42/14 46/15 48/20 50/1
 50/16 51/13 52/18 53/7
 55/2 55/3 55/7 55/8
 64/21 65/3 76/20 77/6
 77/7
powers [3]  46/16 47/8
 49/23
practicable [7]  41/6 63/18
 63/21 75/3 75/6 75/7
 75/16
precedent [4]  5/13 64/12
 73/10 79/5
precluded [1]  66/11

P

**precludes [1]** 67/17
**prejudice [2]** 27/16 28/1
**prejudiced [1]** 27/10
**premise [15]** 6/13 6/16
6/21 6/21 6/23 6/23 6/24
9/8 11/18 11/19 11/21 11/22
25/19 25/19 66/9
**premises [1]** 61/9
**premiums [7]** 20/7 20/9
20/10 20/17 20/20 21/15
21/20
**prEP [19]** 8/24 10/1 10/6
10/14 10/22 11/13 15/3
16/8 16/25 18/3 21/6
27/13 27/17 28/5 32/8
32/17 32/23 36/7 67/20
**preponderance [3]** 20/6
20/17 21/18
**prerogative [4]** 13/1 13/4
47/7 54/6
**prescribed [1]** 81/13
**present [4]** 9/10 10/12
13/21 63/9
**presentation [3]** 4/11 12/4
53/23
**presented [1]** 56/22
**President [8]** 42/16 46/6
46/10 48/22 49/15 53/10
53/20 76/5
**presidential [3]** 53/14
76/12 76/22
**pressure [8]** 41/7 52/16
63/18 63/22 64/1 64/3
75/4 76/7
**presumably [3]** 23/2 34/16
69/8
**prevails [1]** 7/5
**preventive [58]** 5/24 6/5
6/10 8/21 9/14 10/8 12/2
13/3 13/11 20/8 20/11
21/13 22/6 37/25 38/2

38/18 38/25 39/12 40/10
41/5 41/18 41/22 42/4
42/7 42/12 43/3 43/7
43/21 44/19 45/21 45/23
46/5 46/19 47/16 47/25
50/11 50/12 51/6 51/20
51/25 52/4 52/19 53/21
53/22 55/4 55/5 58/23
58/23 59/4 60/22 61/10
63/9 65/9 67/7 67/12
72/15 74/3 74/5
**prevents [1]** 48/3
**previous [1]** 38/20
**previously [1]** 44/12
**priced [2]** 31/15 31/17
**primarily [1]** 29/3
**principal [15]** 35/16 45/12
48/22 49/1 49/5 49/9
49/12 50/8 50/14 51/2
51/13 58/19 58/21 70/4
72/21
**principally [1]** 21/21
**principle [8]** 54/12 54/13
54/16 55/9 66/14 66/18
66/25 67/2
**principles [3]** 50/22 54/24
61/17
**prior [5]** 6/10 13/1 23/23
24/3 50/6
**private [9]** 38/3 48/20
50/11 52/19 53/2 61/2
68/25 69/12 77/21
**probably [1]** 23/25
**problem [21]** 37/24 38/22
41/15 42/24 43/17 44/5
44/7 46/14 47/1 47/3
47/10 48/7 50/3 58/13
58/20 59/2 59/6 59/12
70/14 75/13 77/2
**problems [6]** 8/23 8/23
38/11 38/17 51/16 51/19
**proceed [2]** 4/22 6/12

**proceedings [4]** 3/3 80/8
81/6 81/10
**proceeds [2]** 7/2 27/23
**process [3]** 36/4 63/4
63/8
**product [4]** 18/17 31/13
31/15 31/25
**products [1]** 20/25
**prohibitive [1]** 75/9
**promulgation [1]** 38/18
**prong [1]** 64/6
**pronouncement [1]** 8/4
**pronounces [1]** 8/21
**proof [1]** 21/19
**proper [4]** 7/13 24/2
43/24 55/12
**properly [4]** 61/25 62/6
62/25 64/8
**proposal [1]** 44/7
**propose [1]** 42/9
**proposed [2]** 46/15 47/17
**proposes [1]** 47/13
**proposing [2]** 45/19 48/4
**prospective [1]** 36/1
**protect [1]** 75/18
**protected [1]** 76/7
**protection [1]** 66/7
**prove [2]** 20/25 21/18
**proven [1]** 20/6
**proves [1]** 43/9
**provide [11]** 6/1 6/2 13/11
13/13 23/9 26/14 54/12
57/18 57/19 57/19 76/11
**provided [2]** 19/25 33/10
**provides [2]** 9/16 63/16
**providing [2]** 56/18 57/15
**provision [8]** 15/24 16/9
52/17 61/10 65/23 67/7
67/8 77/19
**provisions [4]** 50/23 58/5
62/8 75/14
**prudent [1]** 73/21

**P**

**PSTF [10]** 63/17 64/7 64/10 64/18 65/4 65/15 66/3 66/8 66/9 67/6

**psychological [1]** 17/9

**public [14]** 39/25 40/4 40/8 40/10 40/16 40/19 54/21 55/19 61/21 61/22 62/21 66/20 72/13 72/15

**purchase [1]** 34/11

**purchaser [9]** 9/12 13/23 14/8 18/6 18/12 18/25 19/20 19/24 31/11

**purely [1]** 31/6

**purported [1]** 6/6

**purports [2]** 38/20 54/18

**purpose [2]** 49/20 65/9

**purposes [3]** 8/5 17/3 34/24

**pursuant [12]** 38/5 41/24 42/19 43/9 44/14 44/23 51/23 52/22 52/23 59/13 60/18 70/16

**put [3]** 13/8 35/13 36/23

**putting [1]** 69/23

**Q**

**qualifies [2]** 38/4 54/16

**qualify [3]** 46/12 49/4 50/3

**Quality [1]** 77/11

**question [20]** 9/6 16/1 16/7 22/3 24/12 26/3 28/10 31/24 33/5 33/9 36/6 41/24 43/16 52/21 56/10 56/14 57/7 60/12 62/10 64/2

**questioning [6]** 10/17 16/3 16/5 19/10 56/25 57/1

**questions [10]** 3/7 9/11 12/5 14/6 25/13 37/18 57/20 64/22 75/25 79/3

**quite [1]** 23/7

**quote [2]** 8/2 18/10

**quoted [1]** 41/3

**Quoting [1]** 8/7

**R**

**raise [1]** 65/24

**raised [1]** 4/18

**raises [1]** 48/5

**rather [6]** 12/15 25/3 25/15 30/14 31/21 49/12

**ratification [12]** 38/14 41/1 41/16 42/8 42/21 42/23 43/14 53/11 53/17 62/12 64/5 65/21

**ratified [2]** 65/22 70/14

**ratifies [1]** 44/9

**ratify [10]** 38/20 38/25 39/8 44/17 49/3 51/4 59/9 62/23 63/1 66/1

**ratifying [2]** 63/23 69/3

**RDR [2]** 81/4 81/17

**reach [5]** 5/9 5/10 30/20 36/25 37/8

**read [9]** 22/13 22/17 22/18 27/8 39/20 40/4 54/2 55/22 58/10

**readily [1]** 31/14

**reading [2]** 15/12 54/23

**reality [1]** 15/18

**realize [2]** 17/18 18/1

**really [10]** 11/13 15/17 20/21 33/9 34/1 50/16 51/19 54/5 62/24 76/16

**realm [2]** 11/8 17/23

**reason [2]** 22/2 31/8

**reasonable [2]** 62/10 75/18

**reasoning [1]** 65/1

**reasons [5]** 20/9 30/2 38/22 44/11 50/9

**received [1]** 23/7

**recent [2]** 8/4 76/15

**recently [1]** 8/2

**recess [1]** 80/5

**recognized [2]** 29/23 31/1

**recommend [9]** 42/9 45/13 49/10 58/22 67/13 69/10 73/5 77/18 78/5

**recommendation [23]** 30/23 42/15 42/15 49/5 51/5 51/9 53/13 53/15 53/21 59/3 59/6 59/9 59/15 59/22 60/19 60/21 61/1 63/24 65/23 67/14 69/4 69/16 78/1

**recommendations [40]** 41/5 41/11 44/10 44/15 45/17 45/17 48/24 48/25 49/4 49/24 50/12 51/3 51/15 53/12 59/1 62/3 62/4 62/24 63/6 63/16 65/5 65/10 65/14 65/17 67/23 68/3 68/5 68/8 68/9 68/13 68/17 68/22 70/1 72/20 72/22 72/23 73/4 75/20 75/21 75/22

**recommended [3]** 59/23 60/4 72/25

**recommends [2]** 50/17 60/10

**reconsider [1]** 27/1

**record [2]** 23/25 81/6

**redress [4]** 7/25 8/9 8/15 47/11

**redressability [4]** 7/15 8/8 25/8 35/3

**redressable [3]** 29/19 30/6 30/18

**redressed [3]** 24/18 25/5 25/10

**redresses [1]** 47/22

**REED [1]** 1/12

**referenced [2]** 14/9 31/9

**refusal [1]** 49/9

**regardless [6]** 7/19 9/23

**R**

**regardless...** **[4]** 19/13 45/10 64/4 64/10

**regime** **[8]** 6/4 37/25 41/8 44/8 44/20 45/15 45/19 77/3

**regular** **[1]** 61/11

**regulate** **[1]** 65/12

**regulating** **[1]** 55/19

**regulations** **[4]** 65/13 71/3 71/7 74/14

**rehearing** **[3]** 26/7 26/20 26/25

**reimbursement** **[1]** 10/3

**reject** **[2]** 38/25 67/22

**rejected** **[2]** 14/1 63/7

**rejects** **[1]** 73/19

**related** **[4]** 29/8 59/23 65/7 67/11

**relates** **[3]** 14/8 71/12 71/18

**relating** **[1]** 70/10

**relationship** **[8]** 53/9 64/15 71/16 71/19 71/24 72/4 73/14 74/24

**relevant** **[5]** 13/12 15/22 48/8 72/18 73/1

**reliance** **[1]** 16/17

**relief** **[38]** 5/14 5/17 6/15 7/6 7/11 7/11 7/12 7/18 7/20 7/21 7/24 7/24 7/25 8/9 8/11 8/14 8/15 8/15 8/20 8/24 9/2 9/3 11/24 20/18 21/1 24/18 25/10 27/11 36/16 37/4 37/6 46/18 47/4 78/11 79/1 79/6 79/8 79/11

**relies** **[8]** 32/5 39/7 45/5 48/13 48/15 66/5 73/8 75/2

**religion** **[1]** 19/19

**religions** **[1]** 19/15

**religious** **[18]** 16/11 18/24 19/5 19/9 19/12 19/18 20/5 22/9 22/22 23/8 23/10 27/13 31/5 35/14 56/6 56/10 56/19 57/10

**rely** **[8]** 14/3 20/13 20/13 23/5 31/11 39/16 49/17 72/13

**relying** **[2]** 21/21 29/3

**remain** **[3]** 41/22 47/24 49/13

**remaining** **[2]** 13/20 52/21

**remarks** **[1]** 73/10

**remedy** **[14]** 23/6 43/16 43/17 43/20 43/24 45/7 46/15 46/16 46/24 47/10 47/13 47/17 47/19 48/3

**removable** **[1]** 76/9

**removal** **[6]** 66/6 66/7 76/1 76/22 77/6 77/7

**remove** **[2]** 69/14 77/12

**removed** **[3]** 27/24 76/5 77/3

**rendered** **[3]** 31/13 31/14 31/17

**reorganization** **[2]** 61/15 62/20

**reply** **[8]** 10/10 18/7 18/7 27/9 27/11 37/15 37/17 43/1

**Reporter** **[1]** 81/18

**Reporter's** **[2]** 3/8 81/2

**representation** **[1]** 67/19

**request** **[3]** 8/12 79/13 79/16

**requested** **[6]** 7/24 7/25 8/9 9/2 20/18 21/1

**requesting** **[8]** 5/14 7/18 8/20 9/3 11/25 20/22 25/10 78/16

**require** **[4]** 6/6 14/18 73/16 73/25

**required** **[3]** 21/7 30/12

**requirement** **[5]** 32/23 49/7 63/25 75/11 75/17

**requirements** **[5]** 30/9 30/17 58/18 68/11 68/12

**requires** **[9]** 5/25 9/18 9/19 24/23 38/6 48/24 52/6 62/4 64/15

**requiring** **[1]** 10/22

**res** **[4]** 26/15 26/16 27/1 28/7

**res judicata** **[1]** 28/7

**Research** **[1]** 77/11

**resolve** **[2]** 56/11 63/15

**resolved** **[1]** 25/21

**resorting** **[1]** 75/9

**respect** **[26]** 5/8 7/9 8/23 9/10 10/18 10/19 11/13 11/16 12/18 13/3 14/6 14/24 20/24 21/1 21/15 23/5 24/1 25/13 28/6 43/13 56/5 62/6 67/14 75/20 79/4 79/10

**respectful** **[1]** 5/9

**respectfully** **[1]** 28/3

**respond** **[5]** 4/20 47/6 50/15 60/7 69/19

**responded** **[1]** 23/14

**response** **[4]** 17/16 20/23 57/22 72/11

**responses** **[1]** 10/5

**rest** **[2]** 33/14 67/18

**restrain** **[3]** 8/25 10/7 46/24

**restrains** **[1]** 12/3

**restrictive** **[1]** 57/15

**result** **[2]** 22/8 22/10

**retain** **[1]** 12/20

**return** **[2]** 11/17 55/25

**reversal** **[1]** 45/3

**reverse** **[2]** 44/17 60/6

# R

**reversed [6]** 26/4 41/19 43/3 43/12 45/3 45/17
**reversing [1]** 26/25
**review [9]** 28/11 28/25 36/18 39/14 51/14 58/15 62/17 65/7 67/10
**reviewable [1]** 45/9
**reviewed [3]** 43/12 45/2 53/19
**revising [1]** 54/3
**reviving [1]** 55/14
**rewrite [1]** 46/17
**RFRA [12]** 8/23 10/18 16/15 19/2 27/17 28/3 28/4 37/3 53/25 55/25 57/13 67/18
**ride [1]** 9/7
**ridiculous [1]** 75/9
**right [37]** 10/21 11/12 13/24 14/17 14/21 16/6 17/4 18/3 20/5 24/17 26/6 26/12 26/18 28/23 31/8 33/1 36/20 37/13 45/11 50/9 52/6 54/9 58/11 58/13 60/5 60/7 60/14 66/1 68/2 69/5 70/9 70/12 74/16 74/19 77/17 78/7 79/15
**Riley [4]** 64/14 71/14 73/8 73/22
**risk [2]** 12/15 32/7
**RMR [2]** 81/4 81/17
**role [5]** 17/22 52/14 56/6 57/3 74/6
**Room [1]** 81/20
**rooted [1]** 15/18
**routinely [1]** 63/8
**row [1]** 22/1
**rule [10]** 7/1 8/17 9/4 11/18 25/16 28/22 29/4 37/5 37/10 76/19

**ruled [2]** 28/6 78/20
**rules [2]** 40/18 78/24
**ruling [6]** 15/10 26/8 29/8 40/22 44/1 47/22
**runs [2]** 51/19 63/24

# S

**said [11]** 7/22 15/6 17/3 33/11 34/7 34/23 44/11 49/6 65/12 67/16 72/12
**sake [1]** 51/1
**salvage [1]** 50/2
**same [12]** 5/14 5/16 6/15 7/9 7/11 8/20 9/3 11/24 36/16 50/9 51/16 66/3
**satisfy [3]** 22/5 22/13 64/18
**saw [2]** 25/1 54/8
**say [23]** 9/19 10/1 18/3 19/17 30/7 30/11 33/18 34/20 36/22 40/15 40/18 45/20 54/2 57/4 58/11 60/13 62/14 66/18 69/11 69/16 73/3 73/12 77/20
**saying [6]** 17/2 55/4 69/24 70/13 70/15 77/25
**says [27]** 12/22 14/13 19/12 32/16 32/17 35/9 35/18 35/20 39/25 40/8 41/3 43/24 52/3 55/7 56/8 56/9 58/2 60/13 61/12 64/20 67/1 67/9 68/4 69/10 73/17 75/3 77/10
**scaling [1]** 18/12
**scientific [3]** 15/21 65/7 67/10
**scope [5]** 8/14 13/2 39/12 78/20 78/25
**SCRAP [1]** 11/6
**se [1]** 16/20
**seated [1]** 4/4
**second [6]** 10/20 41/15

43/15 46/14 58/20 72/19
**secondly [1]** 42/14
**secretary [73]** 38/16 38/23 39/3 39/14 39/18 40/2 40/3 40/6 40/7 40/11 40/12 40/13 40/15 40/16 40/17 40/21 41/10 41/14 41/20 41/23 42/1 42/3 42/10 42/13 42/16 42/23 43/4 44/2 44/8 44/16 45/18 45/19 49/19 50/4 50/5 50/14 50/16 50/19 51/4 53/7 53/13 53/18 53/20 59/1 59/7 59/9 59/10 61/19 62/11 62/17 62/23 62/25 63/1 63/19 63/23 64/2 65/22 65/25 67/22 69/2 69/7 69/7 69/9 69/11 69/13 69/15 70/2 70/7 76/5 77/9 77/14 77/19 77/20
**Secretary's [5]** 41/1 44/16 62/12 64/5 65/21
**Section [9]** 39/2 39/17 41/2 41/13 48/23 49/18 52/2 62/19 63/15
**Section 217a [1]** 49/18
**sector [2]** 68/25 69/12
**secured [1]** 41/12
**see [10]** 13/16 18/14 20/23 26/10 54/13 59/1 63/5 65/20 78/23 79/21
**seek [4]** 7/18 10/2 11/24 27/12
**seeking [11]** 5/16 6/15 7/10 7/11 7/12 22/12 23/16 36/16 43/19 78/11 78/14
**seems [5]** 54/20 57/23 60/13 76/16 76/19
**seen [2]** 25/1 54/1
**Seila [1]** 76/16
**self [12]** 5/25 6/9 9/15

**S**

self... **[9]** 12/11 12/13 13/6 13/6 14/9 32/6 35/1 36/3 53/2

self-insurance **[4]** 13/6 14/9 35/1 36/3

self-insured **[8]** 5/25 6/9 9/15 12/11 12/13 13/6 32/6 53/2

Senate **[1]** 8/3

separate **[1]** 22/8

September **[1]** 81/15

serious **[3]** 41/15 44/7 77/2

seriously **[1]** 73/11

Service **[11]** 40/1 40/5 40/9 40/11 40/16 40/20 61/21 61/22 62/21 72/14 72/16

services **[27]** 9/20 32/13 36/2 39/14 40/1 40/5 40/10 40/14 41/9 44/3 44/9 45/23 46/5 46/6 51/20 51/25 52/4 53/22 61/10 63/9 65/9 67/8 67/12 72/15 74/4 74/5 74/11

set **[4]** 34/25 61/17 65/18 67/4

sets **[2]** 62/1 74/7

setting **[2]** 66/24 66/25

sever **[1]** 64/6

shall **[6]** 40/2 40/6 41/5 52/3 63/17 75/4

shape **[2]** 48/2 55/14

sharing **[1]** 6/3

she **[1]** 59/24

shift **[1]** 9/8

shifting **[1]** 27/21

shot **[3]** 60/3 60/10 78/2

shots **[1]** 62/8

should **[22]** 4/13 5/10 7/6

8/10 10/11 10/16 15/13 27/16 42/2 43/17 43/20 43/25 44/2 54/5 55/8 55/18 58/9 59/23 75/7 76/8 76/21 79/1

shouldn't **[1]** 24/1

show **[17]** 9/14 14/11 16/12 16/14 16/16 17/17 20/16 21/1 21/9 21/14 25/4 31/16 33/13 34/6 34/11 34/12 34/16

showed **[1]** 35/25

showing **[6]** 29/8 30/11 30/15 32/21 33/4 33/7

shown **[3]** 7/15 33/14 34/1

side **[1]** 22/9

sign **[2]** 59/18 67/16

signed **[3]** 48/22 75/23 81/15

significant **[14]** 38/5 41/24 42/11 42/19 43/8 44/14 44/22 51/23 52/22 52/23 53/7 53/16 59/12 60/17

simply **[4]** 19/3 36/9 54/15 75/12

since **[3]** 5/5 32/5 70/7

sincere **[12]** 15/16 16/1 16/2 16/12 18/24 19/9 19/12 27/13 56/2 56/12 57/8 57/9

sincerity **[4]** 16/3 19/10 56/15 57/1

single **[1]** 65/22

Sisters **[8]** 14/10 29/5 54/8 70/20 71/2 71/3 71/8 71/11

sitting **[1]** 64/14

situation **[8]** 9/1 11/9 19/6 39/9 45/6 46/3 60/8 60/20

situations **[1]** 60/21

slice **[1]** 23/12

small **[2]** 17/14 23/12

Smith **[1]** 73/12

so **[124]**

so-called **[4]** 44/4 48/24 49/24 75/20

solid **[2]** 14/3 21/19

some **[21]** 17/19 18/13 20/19 21/11 27/20 29/9 29/23 33/20 34/13 35/22 37/5 43/25 45/3 54/2 54/3 55/4 55/23 56/3 63/19 71/15 81/8

somebody **[2]** 32/20 33/6

somehow **[4]** 39/18 44/2 49/12 69/16

someone **[6]** 14/11 14/14 14/15 35/23 42/17 58/17

something **[17]** 14/7 16/10 17/8 17/9 17/12 17/13 17/20 18/18 19/4 24/10 35/10 42/9 55/10 60/11 72/3 73/5 73/6

sometimes **[4]** 27/22 27/24 27/24 79/5

somewhat **[4]** 14/5 22/1 25/13 73/3

soon **[1]** 26/21

sorry **[5]** 20/10 22/11 22/19 28/4 56/9

sort **[3]** 62/22 64/5 65/20

sound **[3]** 14/2 26/16 55/20

sounds **[1]** 35/6

source **[1]** 38/24

sources **[1]** 60/24

speaking **[1]** 14/13

specific **[4]** 34/19 37/11 37/12 66/4

specifically **[10]** 32/6 33/25 37/3 40/24 58/2 58/4 58/6 61/22 65/6 66/17

**S**

Case 4:20-cv-00283-O   Document 95-1   Filed 08/24/22   Page 107 of 112   PageID 1909

specifics [1]  79/25
speculation [1]  34/21
speculative [2]  20/20
 24/17
spend [1]  37/23
squared [1]  41/2
squarely [1]  66/11
St [1]  71/14
St. [1]  73/8
St. Luke's [1]  73/8
stage [1]  20/14
stand [1]  74/13
standard [1]  65/6
standing [79]  4/12 4/17
 4/19 5/4 5/8 5/12 5/16
 5/19 5/20 5/23 6/14 6/17
 6/18 6/22 6/25 7/14 7/16
 7/22 8/4 8/5 8/10 9/5 9/9
 9/11 9/14 9/25 10/12 10/18
 11/2 11/3 11/7 11/12 11/20
 11/24 12/4 13/18 13/20
 13/23 14/2 14/3 14/8 14/9
 15/7 15/11 15/12 16/18
 16/21 16/24 17/3 17/18
 18/7 18/12 18/25 19/20
 19/24 21/22 21/23 22/13
 22/15 25/14 27/7 29/16
 30/3 30/12 31/11 31/12
 32/4 33/2 33/9 33/22
 34/24 36/16 36/25 37/3
 37/5 37/9 37/11 56/1
 65/24
Starnes [1]  29/25
start [6]  4/5 44/6 48/12
 55/13 61/8 63/4
state [2]  74/13 74/23
statement [1]  55/19
Statements [1]  3/4
states [32]  1/1 1/13 1/23
 2/2 38/6 38/8 41/25 42/12
 42/20 43/2 43/6 43/9

43/11 44/15 44/23 46/22
51/21 51/24 52/23 52/24
58/16 59/13 60/18 61/24
62/5 64/16 64/17 73/14
73/20 74/22 76/10 81/14
statistical [1]  14/20
statistically [1]  14/13
status [2]  70/4 70/11
statute [43]  38/24 39/11
 39/16 39/18 39/20 40/8
 46/4 46/11 46/17 46/25
 49/8 49/18 50/13 52/2
 52/6 52/10 52/13 53/19
 54/11 54/13 54/18 55/3
 55/23 58/22 59/17 60/13
 60/13 60/22 61/12 62/3
 64/7 65/6 65/18 67/4
 72/13 72/23 74/3 74/4
 74/6 74/20 75/1 76/6
 77/10
statutes [4]  54/24 58/10
 61/14 74/13
statutory [7]  46/16 50/23
 55/17 60/1 75/3 75/11
 77/3
Staying [1]  19/20
Steel [1]  8/7
step [3]  55/24 69/14
 77/20
still [40]  8/14 10/23 17/19
 18/4 21/23 21/24 26/8
 26/16 26/17 31/20 31/23
 41/17 41/21 41/24 42/11
 42/14 43/1 43/5 44/10
 44/14 44/22 44/25 47/24
 48/1 49/4 51/2 51/3 51/6
 53/7 53/14 53/16 58/13
 58/15 58/16 58/17 58/22
 59/3 59/12 60/17 60/21
STOLTZ [1]  2/2
stop [4]  4/19 69/8 69/16
 71/6

Street [4]  1/20 1/24 2/3
 81/20
structure [8]  57/24 57/25
 58/3 58/3 58/7 58/9 58/9
 61/11
stuff [1]  9/22
subject [12]  41/6 45/3
 47/24 50/13 51/14 58/15
 63/18 63/21 67/7 67/8
 69/6 76/22
subjecting [1]  48/25
submission [1]  5/10
submitted [1]  64/22
subsection [1]  41/4
subsections [1]  62/8
subset [2]  78/2 78/3
substance [1]  37/16
substantial [5]  16/12 16/15
 16/19 16/20 57/11
substantially [1]  19/19
succeed [1]  7/17
such [3]  23/12 41/5 49/19
sufficient [3]  34/24 35/10
 66/19
suggest [2]  10/21 11/12
suggested [2]  36/21 66/24
suggesting [2]  9/25 54/5
suggests [1]  48/7
Suite [2]  1/16 1/20
summary [5]  20/14 29/17
 34/2 78/21 79/24
summer [1]  72/2
superior [2]  45/3 73/7
superiors [2]  58/15 59/16
supervise [2]  61/20 62/12
supervised [2]  40/13 64/8
supervises [2]  40/15 40/17
supervision [6]  40/3 40/7
 49/1 50/14 59/15 69/7
support [6]  35/21 68/21
 69/10 70/1 70/23 77/18
supporting [4]  32/8 35/20

**S**

supporting... **[2]** 35/23 52/14

**Supreme [25]** 5/12 7/22 8/2 8/3 8/7 11/5 15/10 17/2 17/5 17/25 29/5 30/11 34/23 44/24 45/6 54/1 54/6 54/10 55/13 58/1 64/11 71/22 76/15 76/20 77/1

sure **[2]** 36/11 44/1

sweeping **[1]** 70/21

sworn **[1]** 56/22

syllogism **[5]** 6/12 6/14 6/21 11/17 25/19

system **[1]** 17/13

**T**

take **[37]** 11/8 17/22 18/13 22/20 23/2 28/2 34/18 34/22 35/11 35/23 36/14 36/17 42/16 44/1 44/15 44/20 48/25 49/7 51/3 51/7 53/15 55/24 58/23 59/4 59/7 59/18 60/19 60/22 62/3 67/23 68/3 68/11 68/20 69/12 69/14 72/24 75/17

taken **[3]** 24/10 38/17 73/11

takes **[2]** 59/15 73/6

taking **[2]** 27/5 69/3

talk **[4]** 62/15 62/22 67/5 71/16

talked **[1]** 22/15

talking **[3]** 18/17 66/17 77/25

talks **[3]** 33/2 70/21 71/19

tangible **[1]** 17/14

task **[50]** 13/12 38/21 39/1 39/12 39/19 40/10 40/25 41/4 41/9 41/11 41/13

41/18 42/5 44/4 44/10 44/13 44/19 45/16 45/23 46/5 48/10 51/18 51/20 51/20 51/25 52/4 52/7 52/14 52/15 52/18 53/8 53/12 53/14 53/17 53/22 54/19 63/9 63/11 71/12 72/15 74/4 74/5 74/25 75/4 75/19 76/2 77/8 77/12 77/15 77/22

tea **[1]** 54/3

Ted **[1]** 8/3

Telephone **[4]** 1/17 1/21 1/25 2/4

tell **[5]** 10/16 12/11 53/2 55/18 71/9

tells **[1]** 55/10

temporarily **[1]** 43/2

tenable **[1]** 75/15

tens **[1]** 15/2

tenth **[1]** 32/24

term **[1]** 73/2

terms **[4]** 29/8 45/6 57/21 76/1

test **[6]** 7/16 16/21 17/25 24/16 55/1 55/16

TEXAS **[7]** 1/2 1/7 1/17 1/20 2/3 81/18 81/20

text **[2]** 41/2 50/13

than **[16]** 10/6 12/15 15/3 21/8 29/8 30/14 30/14 31/21 31/22 32/24 35/10 36/24 49/12 57/11 66/25 74/13

Thank **[16]** 4/14 4/14 5/2 29/13 29/14 29/15 37/13 37/14 61/6 72/8 72/10 77/4 77/5 78/9 80/3 80/4

that **[478]**

that's **[71]** 4/24 7/13 9/2 11/2 11/5 12/3 13/10 13/17 14/23 16/1 16/12 16/14

17/4 17/10 17/17 17/18 18/13 19/11 21/12 21/14 21/21 21/22 22/7 24/5 24/24 25/3 25/9 25/10 29/3 29/23 32/22 35/4 35/17 35/17 37/22 39/5 43/13 43/24 45/10 46/3 47/10 49/25 52/21 52/23 53/23 55/9 56/6 56/16 57/3 61/10 62/14 62/23 63/7 64/8 65/18 66/1 66/23 67/1 68/11 68/11 68/24 69/22 70/8 71/10 72/8 72/24 74/16 74/19 75/14 75/22 75/24

their **[78]** 7/2 7/5 10/16 12/9 17/16 18/7 18/7 18/11 18/23 18/24 19/8 19/9 22/8 24/7 25/9 27/11 28/2 29/20 30/5 30/7 30/16 30/19 31/5 31/20 32/9 32/10 32/12 32/16 32/16 32/18 33/4 33/11 34/1 34/14 34/14 34/16 35/13 35/14 35/17 36/3 36/8 36/10 38/14 39/3 39/7 39/15 41/18 42/3 42/6 44/15 45/2 47/5 48/25 49/13 54/19 54/20 56/3 56/5 56/6 57/23 58/1 59/1 59/2 59/16 59/21 63/23 64/13 65/17 65/19 67/17 67/20 70/9 70/11 70/19 70/24 71/2 75/20 79/9

them **[31]** 8/20 8/25 12/3 12/15 17/22 18/23 19/6 19/14 27/10 31/23 34/11 35/3 38/11 39/4 46/24 55/13 62/3 62/12 62/19 64/1 68/5 68/18 69/3 69/3 69/8 69/23 70/8 72/23 74/1 75/22 79/12

**T**

**themselves [2]** 12/24 36/1

**then [30]** 4/5 4/12 18/6 19/21 20/2 27/1 29/10 29/11 32/17 36/16 37/15 47/5 48/15 49/11 52/13 52/17 57/11 57/13 60/12 64/1 65/11 68/8 68/23 71/7 71/13 71/16 72/3 75/2 77/19 79/18

**theory [5]** 14/2 21/14 31/3 32/18 42/8

**there [47]** 4/17 8/8 9/24 10/4 15/20 19/23 20/9 20/15 20/15 21/5 21/11 21/18 21/24 21/25 22/22 24/7 27/5 30/22 33/6 33/14 43/16 45/12 45/25 46/3 46/11 46/19 48/6 51/7 52/10 53/17 54/9 54/15 57/13 57/23 60/24 64/9 66/12 68/7 68/14 69/25 74/9 74/24 75/12 77/2 79/2 79/3 79/23

**there's [33]** 10/20 10/23 10/25 19/23 19/25 20/3 20/21 22/4 22/25 30/25 45/24 49/8 51/9 51/9 52/6 53/7 53/16 53/19 54/18 55/7 57/14 59/17 61/12 62/10 63/19 66/4 66/7 67/2 70/14 71/15 72/19 73/17 77/12

**thereby [1]** 44/4

**therefore [6]** 6/18 9/3 16/14 19/18 38/6 70/14

**these [51]** 6/6 6/10 9/14 9/20 12/23 12/23 13/12 14/5 16/8 17/16 20/2 20/25 22/5 22/6 22/13 22/23 23/1 23/21 25/12 25/20 30/17 32/15 33/18

34/8 34/8 34/9 34/10 34/13 55/6 56/2 58/6 38/10 38/18 46/20 50/4 50/12 54/20 57/25 58/5 60/25 61/11 61/17 65/13 65/13 65/17 67/5 71/10 72/21 73/4 74/20 76/12

**thesis [1]** 28/17

**they [166]**

**they're [30]** 10/17 14/24 16/23 16/24 18/15 18/16 19/7 41/21 43/20 44/22 45/19 56/2 57/1 58/11 63/6 63/7 63/11 63/13 63/14 63/21 64/19 64/19 67/20 68/12 68/17 69/5 69/24 70/4 70/15 76/9

**they've [1]** 35/12

**thing [1]** 74/2

**things [5]** 21/7 32/1 32/2 61/17 71/10

**think [58]** 9/10 13/17 14/1 14/4 14/23 15/2 15/8 16/1 17/7 19/16 20/5 20/9 20/19 20/21 21/17 21/22 21/23 21/24 22/7 23/4 23/14 24/12 25/12 26/5 27/8 29/7 31/18 32/2 33/6 33/9 33/13 33/20 34/3 34/12 34/14 34/17 35/4 35/12 36/23 37/18 44/6 55/1 56/16 57/5 57/5 58/12 60/2 62/10 63/13 63/14 63/24 64/23 69/22 71/21 72/6 74/12 75/14 77/24

**thinking [2]** 57/8 65/16

**thinks [1]** 56/20

**third [7]** 2/3 12/20 22/16 30/12 36/8 47/10 48/5

**third-party [2]** 12/20 36/8

**this [110]**

**those [27]** 6/7 10/3 14/12 14/15 16/7 19/24 21/16 27/5 27/25 31/2 32/21 33/5 33/20 35/22 35/23 41/19 45/17 48/11 49/15 55/8 66/9 69/14 71/6 71/24 74/11 76/24 81/13

**though [9]** 9/21 25/20 26/21 28/22 41/15 43/11 45/2 50/20 60/19

**thousands [1]** 15/2

**three [3]** 29/24 48/11 72/17

**through [7]** 38/12 39/2 48/11 58/5 62/9 67/3 79/18

**throughout [3]** 27/19 27/21 39/7

**tickets [1]** 18/9

**time [11]** 7/23 7/23 23/25 27/9 32/23 37/23 66/12 66/23 67/17 67/25 69/25

**timing [1]** 65/20

**tinker [1]** 17/16

**today [3]** 26/16 35/19 67/25

**too [2]** 15/8 78/19

**took [1]** 45/11

**top [1]** 42/1

**tougher [1]** 22/1

**toward [1]** 6/7

**traceability [7]** 19/23 20/24 21/9 21/14 24/2 25/8 35/3

**traceable [3]** 21/2 21/3 24/9

**Trademark [1]** 45/10

**transcribed [1]** 81/10

**transcript [3]** 1/12 81/5 81/12

**treat [1]** 76/16

**T**

**tries [3]** 39/16 49/17 50/15

**trifle [10]** 11/3 11/5 11/7 11/15 17/3 17/6 18/1 18/2 34/24 35/10

**true [3]** 10/4 19/15 81/5

**truly [1]** 48/17

**trusting [1]** 54/20

**try [2]** 55/18 55/22

**trying [3]** 18/15 54/2 57/16

**turn [6]** 4/5 12/6 29/11 40/13 40/18 62/12

**two [9]** 10/4 30/4 38/22 44/18 45/6 51/5 51/23 60/1 72/17

**type [3]** 43/25 75/19 79/12

**types [1]** 76/12

**U**

**U.S [10]** 45/22 46/5 51/20 51/25 53/22 63/15 72/14 74/3 74/5 75/14

**U.S.C [8]** 39/17 41/2 49/17 52/2 61/14 62/19 67/9 75/5

**ultimate [4]** 9/24 10/25 12/25 29/16

**ultimately [8]** 7/17 7/19 7/24 8/12 12/14 15/4 55/24 67/16

**unconstitutional [4]** 8/22 23/20 49/13 54/11

**under [34]** 5/12 6/4 7/15 9/12 16/13 16/15 16/20 17/24 19/24 23/18 31/3 31/10 36/10 38/23 40/3 40/7 41/4 42/11 44/20 46/12 50/13 51/21 58/21 59/17 60/21 60/23 60/25

62/19 64/11 65/23 76/6 76/8 76/9 79/5

**undercut [1]** 23/6

**undercuts [1]** 15/9

**understand [7]** 10/10 25/17 36/3 53/10 54/17 70/17 73/2

**understanding [2]** 57/24 58/8

**undisputedly [1]** 64/18

**unilateral [1]** 53/1

**unilaterally [2]** 38/2 50/10

**UNITED [31]** 1/1 1/13 1/23 2/2 38/5 38/8 41/25 42/12 42/20 43/2 43/5 43/9 43/11 44/15 44/23 46/22 51/21 51/24 52/22 52/24 58/16 59/13 60/18 61/24 62/5 64/16 64/17 73/14 73/20 76/10 81/14

**universal [4]** 7/4 57/16 78/15 79/11

**unlawful [3]** 12/2 46/21 55/2

**unless [7]** 12/4 18/22 19/7 54/14 56/20 75/24 76/22

**unlikely [1]** 10/22

**unpaid [1]** 72/2

**unquestionably [1]** 43/8

**unquestioned [2]** 25/8 39/9

**unreasonably [2]** 31/15 31/17

**unrebutted [1]** 56/24

**unrelated [1]** 30/2

**unreviewable [1]** 61/10

**unsurprising [1]** 23/13

**until [4]** 20/21 41/23 46/25 68/3

**up [9]** 10/22 12/10 20/7 21/16 39/19 42/17 45/4 55/23 71/22

**update [1]** 26/14

**upheld [1]** 79/8

**us [2]** 46/23 54/16

**use [6]** 32/1 33/5 33/5 54/25 55/2 55/10

**used [3]** 15/3 24/11 32/23

**utilize [1]** 36/7

**V**

**vaccine [4]** 49/10 61/2 77/25 78/1

**vaccines [1]** 55/6

**Vaguely [1]** 36/5

**valid [1]** 8/6

**Vapes [3]** 66/12 66/23 67/17

**various [1]** 67/3

**very [16]** 10/4 14/5 15/1 16/6 17/14 25/12 25/21 28/20 29/10 37/20 45/7 54/9 54/23 61/4 70/21 73/11

**vest [1]** 46/9

**vested [2]** 51/10 53/16

**vesting [4]** 33/21 66/2 76/8 77/2

**vests [5]** 39/11 40/24 46/4 49/15 50/4

**veto [5]** 41/11 53/7 53/14 59/1 59/19

**vetoes [2]** 40/19 60/11

**vetogate [1]** 42/14

**via [1]** 81/9

**videoconferencing [1]** 81/10

**view [13]** 7/10 17/2 18/23 21/8 25/15 25/22 42/2 48/3 51/15 51/19 59/11 73/21 76/10

**views [1]** 73/23

**vigorously [1]** 5/4

**violate [2]** 10/8 41/17

**violates [7]** 16/10 18/24

**V**

violates... **[5]** 19/5 44/11 56/6 56/10 56/19

violation **[2]** 19/3 47/20

vis **[4]** 69/3 69/3 70/11 70/11

VOLUME **[1]** 1/11

volunteer **[2]** 63/14 64/19

volunteers **[2]** 63/13 71/13

**W**

waiting **[1]** 26/13

WALTERS **[1]** 2/2

want **[19]** 6/2 15/7 16/17 22/10 29/10 31/7 31/21 32/1 34/10 37/15 54/6 54/25 55/13 55/25 69/18 78/5 78/19 79/13 79/24

wanted **[2]** 27/12 59/24

wants **[1]** 42/17

was **[39]** 5/21 14/11 14/15 15/22 16/1 18/14 23/7 23/8 24/4 26/13 27/25 28/19 28/22 30/5 30/21 30/22 30/24 31/8 31/17 32/23 33/1 33/3 33/6 39/9 45/3 45/7 45/25 48/6 48/17 50/6 58/15 58/15 58/17 58/19 60/4 61/16 74/5 75/23 79/23

Washington **[1]** 1/24

wasn't **[2]** 20/15 21/19

water **[1]** 38/11

way **[25]** 13/20 17/14 20/21 21/19 21/22 23/14 25/24 27/7 27/10 33/11 34/13 39/15 45/12 47/22 48/2 54/21 55/14 56/16 59/11 59/17 59/24 64/9 65/15 73/4 77/1

ways **[2]** 38/9 67/4

we **[88]**

we're **[9]** 7/10 8/13 13/19 21/21 23/16 23/16 23/19 29/3 45/20

we've **[2]** 25/1 38/24

wearing **[1]** 81/9

weighed **[1]** 59/7

weighing **[1]** 41/23

weighs **[2]** 42/13 64/25

Weissman **[2]** 31/9 32/4

well **[14]** 9/12 10/4 10/20 12/10 13/24 15/9 16/6 19/23 22/20 32/1 44/6 54/9 57/23 64/2

well-accepted **[1]** 57/23

well-developed **[1]** 13/24

went **[1]** 34/8

were **[31]** 18/20 20/18 21/5 21/11 23/8 23/21 24/7 24/13 29/2 30/20 33/25 42/22 43/22 43/22 44/25 45/2 46/1 46/21 47/19 48/8 49/12 50/24 51/1 58/12 58/25 60/16 62/13 74/22 75/21 77/25 81/10

weren't **[2]** 21/11 74/22

what **[66]** 7/4 11/4 12/11 12/20 12/22 12/23 17/5 17/22 20/23 21/19 22/12 24/12 25/1 27/4 27/6 27/10 29/2 29/3 29/22 31/10 33/25 34/1 34/6 34/11 34/19 34/20 34/22 35/13 35/17 36/14 36/17 38/14 39/5 39/25 40/8 43/17 43/25 44/6 45/15 52/24 53/3 54/17 55/1 55/9 55/18 56/17 60/4 60/13 62/8 62/14 62/22 64/25 65/5 65/25 66/17 67/1 68/4 70/11 71/9 71/10 72/11 72/24 75/17 76/25

78/5 78/25

what's **[5]** 18/13 23/2 35/11 43/16 59/25

whatever **[3]** 31/7 75/8 78/15

whatsoever **[2]** 32/22 54/13

when **[16]** 22/16 22/20 30/12 31/1 32/11 43/2 43/6 48/17 48/19 66/17 68/11 68/12 68/20 68/23 68/24 77/25

where **[15]** 5/21 11/9 17/24 18/15 25/24 37/4 37/22 45/19 51/18 55/17 64/1 64/24 64/25 70/20 77/3

whether **[24]** 5/19 7/14 7/19 7/23 7/25 9/24 15/11 15/17 19/13 21/16 30/7 31/14 33/3 33/4 39/3 39/20 51/4 52/21 55/13 56/11 57/1 64/4 69/15 70/4

which **[32]** 7/24 13/23 14/25 15/1 15/2 17/11 20/13 26/22 28/6 28/20 40/9 41/2 41/22 42/21 44/8 45/10 45/16 48/14 50/6 53/10 61/14 61/15 61/16 63/18 66/2 66/14 66/20 67/4 67/9 69/25 71/3 73/9

whichever **[2]** 58/6 77/19

while **[1]** 28/24

who **[21]** 11/14 15/21 19/8 24/21 24/22 32/9 34/10 38/1 40/18 43/22 45/1 45/3 46/21 58/17 62/5 62/7 65/11 67/5 69/5 76/20 77/7

who's **[1]** 32/20

## W

**whole [1]** 61/19
**whom [1]** 73/5
**why [12]** 4/10 4/11 4/12
15/19 20/13 21/12 21/21
24/6 41/21 63/5 74/12
78/7
**wield [2]** 42/11 76/20
**wielded [1]** 53/8
**wielding [5]** 42/19 44/14
44/22 59/12 59/14
**will [42]** 4/5 6/12 7/17
7/18 7/25 8/9 8/11 8/14
8/15 9/20 11/13 11/14 12/4
14/7 20/1 26/21 27/22
31/25 33/10 33/12 33/14
37/21 37/22 38/14 40/4
41/12 41/22 47/4 47/17
50/2 50/3 54/21 58/2
58/3 61/8 68/16 68/24
70/18 74/7 76/9 79/18
79/21
**WILLIAMS [3]** 81/4 81/17
81/17
**willing [2]** 19/7 54/14
**Willy [1]** 62/16
**wind [1]** 10/22
**wishes [6]** 4/18 45/21
45/22 45/22 51/11 69/20
**withdraw [2]** 28/3 28/4
**within [1]** 55/8
**without [12]** 30/16 34/18
44/16 48/25 53/4 59/14
59/16 73/6 74/1 74/2 75/9
76/12
**women [1]** 55/5
**won't [2]** 16/7 22/12
**wonder [1]** 22/21
**word [4]** 3/9 73/24 75/7
77/17
**words [5]** 17/19 19/25
33/17 70/13 73/13

**work [6]** 48/19 48/25
49/18 52/15 72/17 79/18
**worked [1]** 48/16
**working [1]** 72/2
**works [3]** 37/19 61/18
73/5
**world [1]** 24/3
**WORTH [5]** 1/3 1/7 1/20
81/19 81/20
**would [96]**
**wouldn't [1]** 30/18
**write [2]** 18/11 66/12
**writes [2]** 8/5 18/10
**written [1]** 61/1
**wrong [5]** 10/11 19/18 57/5
66/9 72/20

## X

**XAVIER [2]** 1/8 4/6

## Y

**Yeah [8]** 18/14 20/5 28/15
28/18 29/6 36/23 58/11
78/7
**year [1]** 72/2
**years [1]** 59/10
**yes [14]** 5/1 9/6 12/8 26/1
27/3 28/12 29/13 29/15
35/22 60/9 68/15 72/6
76/3 79/20
**yet [2]** 46/12 79/14
**yield [1]** 12/4
**you [96]**
**you're [6]** 17/2 20/3 22/12
57/5 76/22 80/6
**your [56]** 4/12 4/14 4/25
5/3 13/14 13/19 17/2 18/13
19/17 19/19 20/4 20/5
22/19 23/2 23/4 24/12
26/1 27/4 29/11 29/14
30/10 31/8 34/22 35/4
35/11 36/5 36/11 36/14
36/17 36/25 37/8 37/17

37/21 39/21 43/6 53/24
55/10 57/22 61/6 61/9
64/6 67/24 69/11 69/19
69/24 70/6 70/17 72/8
72/10 75/24 76/4 77/5
78/9 78/16 80/2 80/3

## Z

**Zach [1]** 30/4
**zero [1]** 13/13
**ZOIE [3]** 81/4 81/17 81/17
**zwilliams.rmr [1]** 81/21