UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Braidwood Management Inc.**, et al. | |
| Plaintiffs, | |
| v. | Case No. 4:20-cv-00283-O |
| **Xavier Becerra**, et al., | |
| Defendants. | |

## SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of contents ................................................................................................. i

Table of authorities ............................................................................................ ii

    I.  The Court should enter judgment for the defendants on the plaintiffs' claims related to the contraceptive mandate ................................................ 1

  II. Braidwood is entitled to a universal remedy ................................................ 2

      A.  The Declaratory Judgment Act ............................................................. 4

      B.  The Administrative Procedure Act ........................................................ 7

      C.  Injunctive relief .................................................................................... 9

  III. The standing of the remaining plaintiffs .................................................... 11

Conclusion ........................................................................................................ 17

Certificate of service ........................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Reno*, 31 F. Supp. 2d 473 (E.D. Pa. 1999) ................................................ 3

*Center for Auto Safety v. National Highway Traffic Safety Administration*, 793 F.2d 1322 (D.C. Cir. 1986) ............... 11

*Citizens United v. Federal Election Comm'n*, 558 U.S. 310 (2010) ......................... 9

*Community Nutrition Institute v. Block*, 698 F.2d 1239 (D.C. Cir. 1983) ............................................. 11

*Competitive Enterprise Institute v. National Highway Traffic Safety Administration*, 901 F.2d 107 (D.C. Cir. 1990) ............... 11

*Consumer Federation of America v. FCC*, 348 F.3d 1009 (D.C. Cir. 2003) .......................................... 11

*Data Marketing Partnership, LP v. United States Dep't of Labor*, 45 F.4th 846 (5th Cir. 2022) .................................... 7, 8, 10

*DeOtte v. Nevada*, 20 F.4th 1055 (5th Cir. 2021) ..................................... 1

*Department of Commerce v. New York*, 139 S. Ct. 2551 (2019) ........................... 13

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) ............................................. 9

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) .................................... 10

*Driggers v. Business Men's Assurance Co. of America*, 219 F.2d 292 (5th Cir. 1955) ........................................ 9

*Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022) ............... 7, 8, 10

*Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. 2016) ............................ 10

*Hansberry v. Lee*, 311 U.S. 32 (1940) ..................................... 9

*In re Abbott*, 954 F.3d 772 (5th Cir. 2020) ........................................ 3

*Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649 (5th Cir. 2019) ....................................... 14, 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................................. 13

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020) .................................... 3, 6, 11, 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................. 14

*March for Life v. Burwell*, 128 F. Supp. 3d 116 (D.D.C. 2015) ........................... 12

*National Ass'n of Radiation Survivors v. Walters,*
   589 F. Supp. 1302 (N.D. Cal. 1984) ............................................................. 3

*NetChoice, L.L.C. v. Paxton,* 49 F.4th 439 (5th Cir. 2022) ................................... 4

*Okpalobi v. Foster,* 244 F.3d 405 (5th Cir. 2001) (en banc) ................................. 7

*Orangeburg, South Carolina v. FERC,*
   862 F.3d 1071 (D.C. Cir. 2017) ................................................................. 11

*Pool v. City of Houston,* 978 F.3d 307 (5th Cir. 2020) ........................................ 4

*Sapp v. Renfroe,* 511 F.2d 172 (5th Cir. 1975) .................................................... 9

*Town of Chester v. Laroe Estates, Inc.,* 137 S. Ct. 1645 (2017) ....................... 6, 11

*Trump v. Hawaii,* 138 S. Ct. 2392 (2018) ........................................................... 3

*Weissman v. Nat'l R.R. Passenger Corp.,*
   21 F.4th 854 (D.C. Cir. 2021) ................................................................. 11

*Whole Woman's Health v. Hellerstedt,* 579 U.S. 582 (2016) ............................... 9

*Wieland v. United States Dep't of Health & Human Services,*
   196 F. Supp. 3d 1010 (E.D. Mo. 2016) .................................................. 12

**Statutes**

5 U.S.C. § 551(1) .................................................................................................. 8

5 U.S.C. § 706(2) ......................................................................................... 4, 7, 8, 9

28 U.S.C. § 2201 ...................................................................................... 4, 5, 6, 11

28 U.S.C. § 2201(a) ....................................................................................... 4, 6, 7

42 U.S.C. § 300gg-13(g)(1) .................................................................................. 8

42 U.S.C. § 300gg-13(g)(4) .................................................................................. 1

**Rules**

Fed. R. Civ. P. 54(c) ............................................................................................ 9

*Interim Final Rules for Group Health Plans and Health Insurance*
   *Issuers Relating to Coverage of Preventive Services Under the Patient*
   *Protection and Affordable Care Act,* 75 Fed. Reg. 41726 (July 19,
   2010) .......................................................................................................... 16

**Other Authorities**

Nicholas Bagley, *Remedial Restraint in Administrative Law,*
   117 Colum. L. Rev. 253 (2017) ................................................................. 7

David P. Currie, *Misunderstanding Standing,* 1981 Sup. Ct. Rev. 41 ................... 5

John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. On Reg. Bull. 37 (2020) ................................................................. 10

Thomas W. Merrill, *Article III, Agency Adjudication, and the Origins of the Appellate Review Model of Administrative Law*, 111 Colum. L. Rev. 939 (2011) ..................................................................... 8

Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121 (2020) .......................................................... 8, 10

The Court's order of September 28, 2022, requests supplemental briefing on each of the following three issues: (1) The standing of the non-Braidwood plaintiffs; (2) The proper disposition of the plaintiffs' claims regarding the Contraceptive Mandate; and (3) The scope of the remedy. *See* Order, ECF No. 97.

The plaintiffs will address these issues in a different order. We will begin with the claims surrounding the Contraceptive Mandate, as the resolution of those claims is simple and straightforward: The Court should enter judgment for the defendants based on its ruling of September 7, 2022. *See* Memorandum Opinion and Order, ECF No. 92, at 14–18; *id.* at 31–36. We will then discuss the scope-of-remedy issue before addressing the standing of the remaining plaintiffs, as their standing is affected by whether Braidwood can seek or obtain a universal remedy with respect to the challenged agency actions.

## I.  THE COURT SHOULD ENTER JUDGMENT FOR THE DEFENDANTS ON THE PLAINTIFFS' CLAIMS RELATED TO THE CONTRACEPTIVE MANDATE

Although the plaintiffs' challenge to the Contraceptive Mandate is no longer barred by res judicata,[1] it is foreclosed by this Court's ruling of September 7, 2022. *See* Memorandum Opinion and Order, ECF No. 92. The Court has already rejected the plaintiffs' claim that 42 U.S.C. § 300gg-13(g)(4) violates the Appointments Clause by empowering HRSA to determine the scope of compulsory preventive-care coverage for women. *See id.* at 14–18. The Court has also rejected the plaintiffs' non-delegation challenge to the HRSA regime. *See id.* at 14–18; *id.* at 31–36. The Court's rulings on these matters leave no room for the plaintiffs to continue pursuing their

---

1. *See DeOtte v. Nevada*, 20 F.4th 1055 (5th Cir. 2021); *see also* Notice of Supplemental Authority, ECF No. 91.

attack on the Contraceptive Mandate in this Court, although they do wish to preserve their Appointments Clause and non-delegation arguments for appeal.[2]

The Court should enter judgment for the defendants and against each of the plaintiffs on the contraception-related claims, rather than dismissing the plaintiffs' claims for lack of Article III standing, for the reasons provided in Sections II and III, *infra*.

## II.   BRAIDWOOD IS ENTITLED TO A UNIVERSAL REMEDY

The Court has already determined that Braidwood has Article III standing to challenge the legality of the defendants' preventive-care mandates. *See* Memorandum Opinion and Order, ECF No. 92, at 9–13. The Court has also held that the preventive-care mandates imposed by the U.S. Preventive Services Task Force are incompatible with the Appointments Clause, and that the PrEP mandate violates the Religious Freedom Restoration Act. *See id*. at 18–28 (Appointments Clause); *id*. at 36–41. But Braidwood has not sued as a class representative, so the Court must decide whether Braidwood can obtain a "universal" remedy that prevents the defendants from enforcing the disputed coverage mandates against *anyone* — or whether the Court must limit its relief to Braidwood and the other plaintiffs that can independently establish Article III standing.

The issue of universal remedies is one of the most contentious and unresolved issues in modern litigation. It is also an issue that is under-theorized, even though it often arises in litigation, because scope-of-remedy issues typically become moot after an appellate court resolves the legality or constitutionality of a disputed statute or

---

2.    The plaintiffs did not preserve a RFRA challenge to the Contraceptive Mandate, as their first amended complaint and subsequent representations to this Court clarified that the RFRA claims extend only to the PrEP coverage mandate. *See* First Amended Complaint, ECF No. 14, at ¶¶ 108–111; Memorandum Opinion and Order, ECF No. 92, at 36 n.10.

agency rule. *See, e.g.*, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020) (declining to rule on the propriety of a "nationwide injunction" after upholding the challenged agency rule); *id.* at 2412 n.28 (2020) (Ginsburg, J., dissenting); *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018) ("Our disposition of the case makes it unnecessary to consider the propriety of the nationwide scope of the injunction issued by the District Court.").

The problem is aggravated by the behavior of many district-court judges, who simply assume or act as though a judicial pronouncement of unconstitutionality or illegality formally revokes the underlying statute or agency rule in an act akin to an executive veto—and who issue "universal" remedies consistent with the idea that the judicially disapproved statute or regulation ceases to exist and can no longer be enforced against anyone. *See, e.g.*, *National Ass'n of Radiation Survivors v. Walters*, 589 F. Supp. 1302, 1329 (N.D. Cal. 1984) (issuing a preliminary injunction that prohibited the government from "enforcing or attempting to enforce *in any way* the provisions of 38 U.S.C. §§ 3404–3405," without limiting its relief to the named plaintiffs) (emphasis added), *rev'd by Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305 (1985); *ACLU v. Reno*, 31 F. Supp. 2d 473, 499 n.8 (E.D. Pa. 1999) (issuing preliminary injunction barring enforcement of a federal statute against anyone, rather than limiting relief to the named plaintiffs); *In re Abbott*, 954 F.3d 772, 786 n.19 (5th Cir. 2020) (rebuking a district court for "purport[ing] to enjoin GA-09 as to *all* abortion providers in Texas," when the plaintiffs in that case were "only a subset of Texas abortion providers and did not sue as class representatives."), *vacated on other grounds by Planned Parenthood Center for Choice v. Abbott*, 141 S. Ct. 1261 (2021). This is a manifestation of what some have called the "writ-of-erasure" mindset—the idea that judges wield the power to formally suspend a statute, a way of thinking has been reinforced by the sloppy and inaccurate nomenclature that is all too often used to describe the power of judicial review. *See, e.g.*, *Pool v. City of Houston*, 978 F.3d

307, 309 (5th Cir. 2020) ("It is often said that courts 'strike down' laws when ruling them unconstitutional. That's not quite right."); *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022) ("'[C]ourts have no authority to strike down statutory text'" (quoting *Borden v. United States*, 141 S. Ct. 1817, 1835–36 (2021) (Thomas, J., concurring in the judgment)).

In determining whether Braidwood can pursue a universal remedy, a court should carefully distinguish the three types of remedies available to Braidwood and other prevailing plaintiffs in this litigation: (1) Declaratory relief under 28 U.S.C. § 2201(a); (2) A remedy that "holds unlawful and sets aside" agency action under 5 U.S.C. § 706(2); and (3) Injunctive relief. Each of these remedies is governed by different sources of law that define the permissible scope of these remedies.

### A.    The Declaratory Judgment Act

A declaratory judgment is a creature of statute, and the permissible scope of a declaratory remedy is set forth in the statute that authorizes declaratory relief:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare *the rights and other legal relations of any interested party seeking such declaration*, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). Courts rarely quote or analyze the language of the Declaratory Judgment Act, but the statute makes clear that a court may declare only: (1) the "rights and other legal relations"; (2) of an "interested party" seeking this declaration. The statute does not authorize courts to make declarations of law in the abstract, and any declaration must comport with each of these statutory requirements.

Several implications follow. The first is that the Court's declaratory relief should be phrased in terms of the "rights and other legal relations" belonging to Braidwood

Management Inc., rather than an abstract pronouncement on the constitutionality of a statute or the legality of a defendant's conduct. A declaratory judgment announcing that "42 U.S.C. § 300gg-13(a)(1) violates the Appointments Clause" is too abstract to qualify as a statement of the "rights or "legal relations" of Braidwood, even though it could be read to imply that Braidwood has a "right" not to obey the preventive-care coverage recommendations of the U.S. Preventive Services Task Force. Better instead to phrase the declaratory judgment in terms of a litigant's "rights" and "legal relations," such as the following:

> Braidwood Management Inc. need not comply with the preventive-care coverage recommendations of the U.S. Preventive Services Task Force issued after March 23, 2010, because the members of the Task Force have not been appointed in a manner consistent with the Appointments Clause.

Other phrasings can be used, but the courts should always bear in mind that 28 U.S.C. § 2201 authorizes declarations only of a *litigant's* "rights and other legal relations," and declaratory judgments should describe those "rights" and "legal relations" rather than offer abstract pronouncements on the constitutionality of a statute or the legality of an agency rule.

The second implication is that courts may declare only the rights and legal relations of a "party" to the lawsuit. They cannot declare the rights of a non-party or a non-litigant under 28 U.S.C. § 2201. *See* David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 45 ("[The court is empowered to declare only the 'rights' of the 'party seeking such declaration,' and he must be 'interested'; these terms seem both to forbid litigation of third-party rights absolutely"). Of course, a declaration that Braidwood has a "right" not to comply with the preventive-care coverage recommendations of the U.S. Preventive Services Task Force will imply that others also enjoy that right. But a district court cannot formally pronounce the rights of non-

litigants in a declaratory judgment, even if its ruling indicates that others would qualify for similar declaratory relief if they were ever to request it from the courts. And any declaratory relief that a district court purports to award to non-parties or non-litigants cannot have "the force and effect of a final judgment or decree" within the meaning of 28 U.S.C. § 2201(a).

The third implication is that district courts may declare only the rights and legal relations of an "*interested* party" to the lawsuit. 28 U.S.C. § 2201(a) (emphasis added). This language suggests that a plaintiff must demonstrate Article III standing before obtaining a declaration of its rights—even if a co-plaintiff has already established Article III standing for itself—because otherwise the plaintiff would not qualify as an "interested" party. Interpreting the statute this way does not, in our view, contravene the Supreme Court's pronouncements that allow litigants who lack standing to remain in a case so long as one of their co-plaintiffs has established standing,[3] because a plaintiff can remain a party to a lawsuit even it is ineligible for a declaratory remedy under the terms of 28 U.S.C. § 2201(a). And in all events, the one-plaintiff rule applies only when co-plaintiffs are seeking the *same* relief. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("For all relief sought, there must be a litigant with standing. . . . [A litigant] must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."); *id.* ("In sum, [a litigant] must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."). Declaratory relief is necessarily litigant-specific, because 28 U.S.C. § 2201 allows an "interested party" to obtain a declaration of its *own* "rights" and "legal relations" but no one else's. Braidwood can seek a judicial declaration of Braidwood's rights (and no one else's), while the non-Braidwood plaintiffs can seek a declaration of their rights but not Braidwood's

---

3.  *See, e.g.*, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020).

(or anyone else's). Each plaintiff is therefore seeking different declaratory relief, so each plaintiff must independently demonstrate Article III standing before seeking or obtaining declaratory relief under 28 U.S.C. § 2201(a).

### B.     The Administrative Procedure Act

The Administrative Procedure Act, unlike the Declaratory Judgment Act, authorizes a court to "hold unlawful and set aside" agency action that it deems unlawful or unconstitutional. 5 U.S.C. § 706(2). Unlike judicial review of statutes, in which courts enter judgments and decrees only against litigants,[4] the APA goes further by empowering the judiciary to act directly on the challenged agency *action*. This statutory power to "set aside" agency action is a veto-like power that enables the judiciary to formally revoke an agency's rules, orders, findings, or conclusions—in the same way that an appellate court formally revokes and wipes away an erroneous trial-court judgment. *See Data Marketing Partnership, LP v. United States Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) ("The APA gives courts the power to 'hold unlawful and set aside agency action[s].' 5 U.S.C. § 706(2). Under prevailing precedent, § 706 'extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to "set aside"—*i.e.*, formally nullify and revoke—an unlawful agency action.'" (citation omitted)); *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation.").[5] The

---

4.   *See Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute.").

5.   *See also* Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253, 258 (2017) ("The APA instructs federal courts to 'hold unlawful and set aside' arbitrary or unlawful agency action. When the APA was enacted in 1946, that instruction reflected a consensus that judicial review of agency action should be modeled on appellate review of trial court judgments . . . . Just as a district court judgment infected with error should be invalidated and returned for reconsideration, so too with agency action."); Thomas W. Merrill, *Article III, Agency Adjudication, and the Origins of the Appellate Review*

APA gives the judiciary a unique power that it lacks when reviewing the constitution-ality of statutes: Reviewing courts may formally vacate an agency rule or order, rather than merely declaring the rights of litigants or enjoining government officials from enforcing the disputed law.

Braidwood is therefore entitled to vacatur of every "agency action" taken to im-plement the preventive-care coverage mandates recommended by the U.S. Preventive Services Task Force after March 23, 2010. *See* 5 U.S.C. § 706(2). This is a universal remedy because the agency actions themselves are vacated—*i.e.*, "set aside"—which allows Braidwood to obtain relief that benefits non-parties to the lawsuit, as well as its co-plaintiffs who may or may not be able to prove Article III standing on their own accord. *See Data Marketing*, 45 F.4th at 859; *Franciscan Alliance*, 47 F.4th at 374–75; authorities cited in note 5, *supra*.

The Court's remedy should also "set aside" actions taken by the Task Force to implement 42 U.S.C. § 300gg-13(g)(1), including Task Force recommendations with "A" or "B" ratings that were issued on or after March 23, 2010. The Task Force qualifies as an "agency" within the meaning of 5 U.S.C. § 551(1), as it was created by an Act of Congress and wields authority conferred by federal law. *See* 5 U.S.C. § 551(1) (defining "agency" as "each authority of the Government of the United States"); Memorandum Opinion and Order, ECF No. 92, at 21 ("PSTF members exercise significant authority pursuant to the laws of the United States."); *id.* at 23 ("PSTF's recommendations . . . have the force and effect of law."). The Task Force is also part of the "United States" and should be regarded as a party to this lawsuit, as

---

*Model of Administrative Law*, 111 Colum. L. Rev. 939, 940 (2011) (explaining how judicial review of agency action is "built on the appellate review model of the relationship between reviewing courts and agencies," which "was borrowed from the understandings that govern the relationship between appeals courts and trial courts in civil litigation"); Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1126 (2020) ("[T]he APA allows universal vacatur of rules.").

this Court has ruled that its members are "officers of the United States" and have "a continuing and formalized relationship of employment with the United States Government." *Id.* at 20 (quoting *Riley v. St. Luke's Episcopal Hospital*, 252 F.3d 749, 757 (5th Cir. 2001) (en banc)); *see also Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."). So Braidwood is entitled to a universal remedy under the APA that: (1) sets aside all Task Force recommendations with "A" or "B" ratings that were issued on or after March 23, 2010; and (2) sets aside all other agency action taken to implement those Task Force recommendations.[6]

## C.   Injunctive Relief

Braidwood is also entitled to an injunction that restrains the defendants from implementing the agency actions that this Court has vacated or set aside under 5 U.S.C. § 706(2). Because this injunction is concomitant to the APA remedy, which

---

6.   It does not matter that Braidwood did not explicitly request a remedy under 5 U.S.C. § 706(2) in its complaint. *See* First Amended Complaint, ECF No. 14, at ¶ 112. Courts must award the relief to which a party is entitled regardless of whether it asked for that relief in its pleadings. *See* Fed. R. Civ. P. 54(c) ("A . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Citizens United v. Federal Election Comm'n,* 558 U.S. 310, 333 (2010) (in "the exercise of its judicial responsibility" it may be "necessary . . . for the Court to consider the facial validity" of a statute, even though a facial challenge was not brought); *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 136 S. Ct. 2292, 2307 (2016) (a request in the complaint to issue "such other and further relief as the Court may deem just, proper, and equitable" is sufficient to preserve claims that go unmentioned in the pleadings), overruled on other grounds in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022); *Driggers v. Business Men's Assurance Co. of America*, 219 F.2d 292, 299 (5th Cir. 1955) ("[T]he final judgment should grant the relief to which plaintiff may prove himself entitled, even if he has not demanded such relief in his pleadings."); *Sapp v. Renfroe*, 511 F.2d 172, 176, n.3 (5th Cir. 1975) (allowing claim for damages raised for first time on appeal in light of Rule 54(c) and the catchall prayer for relief in plaintiff's complaint).

has formally revoked the contested agency actions, there is no need for angst over the issuance of a "nationwide" or universal injunction that halts the continued implementation of these now-vacated agency actions. *See Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016) ("A nationwide injunction is appropriate when a party brings a facial challenge to agency action under the APA." (citing authorities)). Braidwood would not be eligible for a nationwide injunction (or any type of universal remedy) if it were merely challenging the constitutionality of a statute or ordinance. *See, e.g.*, *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute."). But litigants who challenge unlawful agency action are statutorily entitled to a remedy that formally revokes and undoes the agency rule or order, and a universal remedy that restrains the further implementation of the vacated agency actions is necessary to implement this statutory command.

At least one commentator has criticized the widely held view that the APA's "set aside" language authorizes universal remedies such as vacatur and nationwide injunctions. *Compare* John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. On Reg. Bull. 37, 41 (2020), *with* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121 (2020) (defending universal remedies under the APA and responding to Harrison's criticisms). But the law of the Fifth Circuit is otherwise,[7] and until the Fifth Circuit repudiates its views this Court cannot deny Braidwood a universal remedy on account of these academic criticisms.

---

7.   *See Data Marketing*, 45 F.4th at 859; *Franciscan Alliance*, 47 F.4th at 374–75; authorities cited in note 5, *supra*.

## III.   The Standing Of The Remaining Plaintiffs

The remaining plaintiffs do not need to independently demonstrate Article III standing to pursue the universal remedies sought by Braidwood. *See Little Sisters*, 140 S. Ct. at 2379 n.6; *Town of Chester*, 137 S. Ct. at 1651. Yet the Court must nonetheless resolve the standing of the remaining plaintiffs to determine whether they can obtain declaratory relief under 28 U.S.C. § 2201, which is available only to "interested parties," and to determine whether this Court should resolve their unsuccessful claims by entering judgment against them or by dismissing their claims for lack of jurisdiction.

The non-Braidwood plaintiffs rely on the doctrine of purchaser standing, which allows litigants to sue whenever a statute or agency action deprives them of the opportunity to purchase a desired product. *See* Br. in Support of Pls.' Mot. for Sum. J., ECF No. 45, at 10 (citing *Center for Auto Safety v. National Highway Traffic Safety Administration*, 793 F.2d 1322, 1332–34 (D.C. Cir. 1986), and *Orangeburg, South Carolina v. FERC*, 862 F.3d 1071, 1078 (D.C. Cir. 2017)); *see also Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 857–58 (D.C. Cir. 2021); *Consumer Federation of America v. FCC*, 348 F.3d 1009, 1012 (D.C. Cir. 2003) ("[T]he inability of consumers to buy a desired product may constitute injury-in-fact 'even if they could ameliorate the injury by purchasing some alternative product.'"); *Competitive Enterprise Institute v. National Highway Traffic Safety Administration*, 901 F.2d 107, 112–13 (D.C. Cir. 1990) (conferring standing on a consumer group to challenge fuel-economy standards that reduced the number and variety of larger vehicles available for sale); *Community Nutrition Institute v. Block,* 698 F.2d 1239, 1246–47 (D.C. Cir. 1983) (conferring standing on consumers to challenge regulations that "deprived" them of "a lower priced alternative to whole milk"), *rev'd on other grounds*, 467 U.S. 340 (1984).

Each of the individual religious-objector plaintiffs (Kelley, Starnes, and Mr. and Mrs. Maxwell) has been injured by their inability to purchase health insurance that excludes or limits coverage of preventive care that violates their sincere religious beliefs.[8] This injury remains regardless of whether the elimination of preventive-care mandates causes premiums to go up or down, because the compulsory coverage of objectionable preventive care inflicts injury by making the religious-objector plaintiffs complicit in conduct that violates their religious beliefs as a condition of purchasing health insurance. *See Little Sisters*, 140 S. Ct. at 2383; *id*. at 2390–91 (Alito, J., concurring); *March for Life v. Burwell*, 128 F. Supp. 3d 116, 128–29 (D.D.C. 2015) ("[T]he employee plaintiffs have demonstrated that the [Contraceptive] Mandate substantially burdens their sincere exercise of religion . . . [because] [t]he Mandate, in its current form, makes it impossible for employee plaintiffs to purchase a health insurance plan that does not include coverage of contraceptives to which they object."); *Wieland v. United States Dep't of Health & Human Services*, 196 F. Supp. 3d 1010, 1017 (E.D. Mo. 2016) (federal contraceptive mandate substantially burdens the religious freedom of individual consumers of health insurance because "the ultimate impact is that Plaintiffs must either maintain a health insurance plan that includes contraceptive coverage, in violation of their sincerely-held religious beliefs, or they

---

8.    *See* Kelley Decl. ¶¶ 5–15 (ECF No. 46, at 33–37); *id*. at ¶ 20 (ECF No. 46, at 37) ("The defendants' enforcement of 42 U.S.C. § 300gg-13 has eliminated my option of obtaining the types of health-insurance policies described in paragraphs 56 and paragraphs 17–19."); Starnes Decl. ¶¶ 5–15 (ECF No. 46, at 39–43); *id*. at ¶ 16 (ECF No. 46, at 43) ("The defendants' enforcement of 42 U.S.C. § 300gg-13 has eliminated my option of obtaining the types of health-insurance policies described in paragraphs 5–6."); Zach Maxwell Decl. ¶¶ 5–15 (ECF No. 46, at 50–54); *id*. at ¶ 16 (ECF No. 46, at 54) ("The defendants' enforcement of 42 U.S.C. § 300gg-13 has eliminated my option of obtaining the types of health-insurance policies described in paragraphs 5–6."); Ashley Maxwell ¶¶ 5–15 (ECF No. 46, at 56–60); *id*. at ¶ 16 (ECF No. 46, at 60) ("The defendants' enforcement of 42 U.S.C. § 300gg-13 has eliminated my option of obtaining the types of health-insurance policies described in paragraphs 5–6.").

can forgo healthcare altogether"). That injury exists apart from any financial consequences that might accompany a ruling that enjoins the continued enforcement of the preventive-care mandates. The defendants do not deny this point, and they do not deny that the inability to purchase health insurance that excludes religiously or morally objectionable coverage constitutes injury in fact. *See* Defs.' Br. in Support of Mot. for Sum. J., ECF No. 64, at 20–24 (challenging only traceability and redressability with respect to the religious objectors).

Instead, the defendants try to defeat the religious objectors' standing by claiming that they have failed to establish traceability and redressability. In the defendants' view, the plaintiffs must produce "factual evidence showing that, but for the Preventive Services Provision, their insurance plans would omit" some or all of the objectionable coverage. *See* Defs.' Br. in Support of Mot. for Sum. J., ECF No. 64, at 22; *see also id.* at 20–24. But Article III does not require proof of but-for causation—or even proximate causation—between the defendants' conduct and the plaintiffs' injuries. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct."). It is enough for the plaintiffs to show that their alleged injuries are "likely attributable at least in part" to the defendants' enforcement of the ACA's preventive-care coverage mandates. *See Department of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). And the plaintiffs have done enough to satisfy this requirement by citing evidence from the market for "short-term, limited duration insurance" (STLDI), which Congress has exempted from the ACA's preventive-care coverage mandates, and which has led insurers to offer plans that "exclude coverage of basic preventive care" and exclude coverage of contraception. *See* App. to Pls.' Mot. for Sum. J., ECF No. 46, at 176.

The defendants are also wrong to suggest that Article III requires proof that the requested relief *will* redress the plaintiffs' injuries. *See* Defs.' Br. in Support of Mot. for Sum. J., ECF No. 64, at 22; *id.* at 23 ("Plaintiffs have provided no evidence showing that insurers will choose to offer plans without [objectionable] coverage if permitted"). The burden imposed by Article III is more modest. A plaintiff needs only to show that it is "likely" (as opposed to merely "speculative") that the requested relief will redress his injuries. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" (citation omitted)). And the evidence from the market for short-term, limited duration insurance (STLDI) shows that there is nothing "speculative" about the plaintiffs' claim that insurers will resume offering plans that exclude or limit coverage of preventive care if the ACA's preventive-care coverage mandates are declared unlawful or enjoined. The plaintiffs also do not need to show that insurers will respond to a favorable court ruling by excluding *all* objectionable coverage; it is enough if it is "likely" (*i.e.* non-speculative) that insurers will limit or exclude coverage of at least one type of preventive care that the plaintiffs do not want or need. *See Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) ("The relief sought needn't completely cure the injury, however; it's enough if the desired relief would lessen it.").

The remaining plaintiffs (Miller and Scheideman), as well as the religious-objector plaintiffs, are suffering a separate and distinct injury from their inability to purchase health insurance that excludes or limits coverage of preventive care that they do not want or need, as well as the option of choosing plans that charge copays or deductibles for preventive care in exchange for lower premiums.[9] This is independent of any of

---

9.   Miller Decl. ¶¶ 5–6  (ECF No. 46, at 62); Scheideman Decl. ¶¶ 6–8 (ECF No. 46, at 45–46).

the religious objections that some of the plaintiffs have to some of the preventive-care coverage mandates.

The defendants deny that the plaintiffs have shown that this injury exists and insist that the plaintiffs must demonstrate "economic harm." Defs.' Br. in Support of Mot. for Sum. J., ECF No. 64, at 10. But the plaintiffs' injury comes from the denial of choice, not from a pocketbook injury, and they have indisputably been deprived the opportunity to choose a health-insurance plan that limits or excludes coverage of unwanted preventive care, or that requires beneficiaries to pay for their preventive care with copays and deductibles rather than exclusively through premiums. Again, the market for short-term, limited duration insurance (STLDI) shows that the choices available to consumers will increase in the absence of the preventive-care mandates — and each of the plaintiffs is currently being denied these choices. *See* App. to Pls.' Mot. for Sum. J., ECF No. 46, at 176. Nor are the plaintiffs required to show that the preventive-care coverage mandates have caused their premiums to increase. *See* Defs.' Br. in Support of Mot. for Sum. J., ECF No. 64, at 12 (criticizing the plainitffs' declarations for failing to "show . . . that Plaintiffs' premiums have increased"). The plaintiffs are relying on purchaser standing, and their injury comes from the reduction in available choices on the health-insurance market. That has nothing to do with whether the plaintiffs' premiums have gone up or down in response to the defendants' conduct.

The defendants' objections to traceability and redressability fall flat for the same reasons. *See* Defs.' Br. in Support of Mot. for Sum. J., ECF No. 64, at 12–20. The plaintiffs' injury is a reduction of choices available to them on the health-insurance market, and it cannot be denied that this injury is traceable to the defendants' conduct. It is undisputed that before the Affordable Care Act, private insurers were offering policies that excluded or limited coverage of preventive care, or that charged copays or required deductibles for preventive care in exchange for lower premiums.

*See Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act*, 75 Fed. Reg. 41726, 41732–33 (July 19, 2010) (attached as App. to Pls.' Mot. for Sum. J., ECF No. 46, at 85–86). The elimination of these policies in response to the Affordable Care Act makes the injury "fairly traceable" to the defendants and their enforcement of the ACA's preventive-care mandates. It is also "likely" (*i.e.*, non-speculative) that at least one policy of this sort will reappear on the market if this Court declares the preventive-care coverage mandates unlawful or enjoins their enforcement, given their previous existence before the ACA and their reemergence in the market for short-term, limited duration insurance (STLDI). *See* App. to Pls.' Mot. for Sum. J., ECF No. 46, at 176. The plaintiffs want more options when choosing health insurance for themselves, their families, and their businesses, and they will have more options if this Court grants the requested relief. They do not need to prove that their premiums have gone up in response to the ACA or that their premiums will be lowered in response to relief from this Court.

Finally, the defendants argue that Kelley, Kelley Orthodontics, and Starnes lack Article III standing because they are currently participating in Christian bill-sharing rather than purchasing health insurance. *See* Defs.' Br. in Support of Mot. for Sum. J., ECF No. 64, at 24–26. That does not defeat their standing because each of these plaintiffs wants the option of purchasing conventional health insurance that excludes coverage of objectionable preventive care, and the defendants' conduct is depriving them of that option. *See* Kelley Decl. at ¶¶ 5–6, ECF No. 46, at p. 33 ("I want the option of purchasing health insurance that excludes or limits coverage of preventive care that I do not want or need, as well as preventive care that violates my sincere religious beliefs. . . . I also want the option of purchasing health insurance that limits coverage of preventive care or that imposes copays or deductibles for preventive care, with corresponding adjustments in the monthly premiums, so that I can choose a

policy that best suits my needs and the needs of my family."); Starnes Decl. at ¶¶ 5–6, ECF No. 46, at p. 39 (same); *see also* Kelley Decl. at ¶¶ 17–19, ECF No. 46, at p. 37. The defendants think that the plaintiffs must prove that they will re-enter the health-insurance market if this Court enjoins the enforcement of the preventive-care coverage mandates. *See* Defs.' Br. in Support of Mot. for Sum. J., ECF No. 64, at 25–26. But the plaintiffs' injuries will still be redressed if additional choices are made available on the health-insurance market, even if they ultimately decide, after considering the options available to them, that Christian bill-sharing (for now) better suits their needs. *See Inclusive Communities*, 946 F.3d at 655 ("The relief sought needn't completely cure the injury, however; it's enough if the desired relief would lessen it.").

## CONCLUSION

The Court should enter judgment for the defendants on the Contraceptive Mandate claims. The Court should enter a universal remedy that sets aside any past agency action taken to implement the preventive-care coverage mandates recommended by the U.S. Preventive Services Task Force on or after March 23, 2010, and that enjoins the defendants from taking any future action to implementing any such recommendation from the Preventive Services Task Force or any agency action that this Court has set aside.

Respectfully submitted.

 /s/ Jonathan F. Mitchell
GENE P. HAMILTON                        JONATHAN F. MITCHELL
Virginia Bar No. 80434                  Texas Bar No. 24075463
Vice-President and General Counsel      Mitchell Law PLLC
America First Legal Foundation          111 Congress Avenue, Suite 400
300 Independence Avenue SE              Austin, Texas 78701
Washington, DC 20003                    (512) 686-3940 (phone)
(202) 964-3721                          (512) 686-3941 (fax)
gene.hamilton@aflegal.org               jonathan@mitchell.law

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
201 Main Street, Suite 700
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Dated: October 24, 2022                *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on October 24, 2022, I served this document through CM/ECF

upon:

Christopher M. Lynch
Jordan L. Von Bokern
Trial Attorneys
U.S. Department of Justice
Civil Division
1100 L Street, NW
Washington, DC 20005
(202) 353-4537 (phone)
(202) 616-8460 (fax)
christopher.m.lynch@usdoj.gov
jordan.l.von.bokern2@usdoj.gov

Brian W. Stoltz
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
(214) 659-8626 (phone)
(214) 659-8807 (fax)
brian.stoltz@usdoj.gov

*Counsel for the Defendants*

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Plaintiffs*