IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

BRAIDWOOD MANAGEMENT, INC., *et al.*,

     Plaintiffs,

v.

XAVIER BECERRA, *et al.*,

     Defendants.

Civil Action No. 4:20-cv-00283-O


**DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL CROSS-MOTION FOR**
**<u>SUMMARY JUDGMENT</u>**

LEIGHA SIMONTON
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:    214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

CHRISTOPHER M. LYNCH
(D.C. Bar # 1049152)
Trial Attorney
U.S. Department of Justice
Civil Division
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 353-4537
Fax: (202) 616-8460
Email: Christopher.M.Lynch@usdoj.gov

Attorneys for Defendants Xavier Becerra,
Janet L. Yellen, Martin J. Walsh, and the United States

# **TABLE OF CONTENTS**

SUMMARY ..................................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.     PLAINTIFFS OTHER THAN BRAIDWOOD LACK STANDING TO
       CHALLENGE THE PREVENTIVE SERVICES PROVISION ....................................... 2

       A.     The Religious Objector Plaintiffs Lack Standing Because They Do Not
              Participate in the Market for Health Insurance and the Challenged
              Coverages Thus Do Not Apply to Them ................................................................. 2

       B.     Plaintiffs Lack Standing Under the "Purchaser Standing" Doctrine ..................... 7

II.    THE COURT SHOULD ENTER JUDGMENT FOR DEFENDANTS ON
       PLAINTIFFS' CONTRACEPTIVE COVERAGE CLAIMS ......................................... 10

III.   THE COURT SHOULD PROVIDE BRAIDWOOD TARGETED RELIEF
       TAILORED TO ITS CLAIMS ........................................................................................ 11

       A.     Supreme Court Precedent Requires This Court to Sever the Provision that
              Makes § 300gg-13(a)(1) Unconstitutional, Authorizing the Secretary to
              Review PSTF's Recommendations in the Future .................................................. 11

       B.     Plaintiffs Are Not Entitled to a "Universal Remedy" ......................................... 16

              1.     Plaintiffs Did Not Bring an APA Claim and Thus Are Not Entitled
                     to an APA Remedy ...................................................................................... 17

              2.     By Their Own Admission, Plaintiffs Are Not "Eligible" for "Any
                     Type of Universal Remedy" in This "Constitutional Challenge" to
                     the "Legislature's Action" ......................................................................... 19

              3.     The "Universal Remedy" Requested by Plaintiffs Would Be
                     Inappropriate Here Even if It Were Permissible......................................... 20

       C.     The Court Should Award Braidwood Targeted Relief Tailored to the
              Claims on Which It Prevailed ............................................................................... 24

CONCLUSION............................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*American Legion v. American Humanist Ass'n*,
  139 S. Ct. 2067 (2019) ............................................................................................ 9

*Arizona Christian Sch. Tuition Org. v. Winn*,
  563 U.S. 125 (2011) ................................................................................................ 9

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) .............................................................................................. 19

*Automated Bus. Companies v. WebEx Commc'ns, Inc.*,
  No. CV H-06-1032, 2010 WL 11643630 (S.D. Tex. Apr. 5, 2010) ......................... 3

*Ayotte v. Planned Parenthood of N. New Eng.*,
  546 U.S. 320 (2006) .............................................................................................. 14

*Bank of Hamilton v. Lessee of Dudley*,
  27 U.S. (2 Pet.) 492 (1829) .................................................................................. 14

*Barker v. Nestle Purina PetCare Co.*,
  No. 4:21-CV-01075-MTS, 2022 WL 1288355 (E.D. Mo. Apr. 29, 2022) .............. 5

*Brockett v. Spokane Arcades, Inc.*,
  472 U.S. 491 (1985) .............................................................................................. 14

*Carroll v. Safford*,
  44 U.S. (3 How.) 441 (1845) ................................................................................ 19

*Cent. & S. W. Servs., Inc. v. U.S. EPA*,
  220 F.3d 683 (5th Cir. 2000) ...................................................................... 16, 21, 22

*City of Los Angeles v. Barr*,
  929 F.3d 1163 (9th Cir. 2019) ................................................................................ 9

*Collins v. Mnuchin*,
  938 F.3d 553 (5th Cir. 2019) ................................................................................ 15

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) .......................................................................................... 15

*Competitive Enter. Inst. v Nat'l Highway Traffic Safety Admin*,
  901 F.2d 107 (D.C. Cir. 1990) ............................................................................... 5

*Consumer Fed'n of Am v. FCC*,
   348 F.3d 1009 (D.C. Cir. 2003)................................................................................ 5

*Crawford v. Marion County Election Board*,
   472 F.3d 949 (7th Cir. 2007) ................................................................................... 9

*Czyzewski v. Jevic Holding Corp.*,
   137 S. Ct. 973 (2017)............................................................................................... 9

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*,
   45 F.4th 846 (5th Cir. 2022) ................................................................................. 17

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................................... 5

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975) .............................................................................................. 20

*eBay v. MercExchange, LLC*,
   547 U.S. 388 (2006) .............................................................................................. 23

*Edmond v. United States*,
   520 U.S. 651 (1997) .............................................................................................. 12

*Flast v. Cohen*,
   392 U.S. 83 (1968) .................................................................................................. 9

*Guajardo v. Air Exp. Int'l, USA, Inc.*,
   No. 3:12-CV-815-L, 2012 WL 2886672 ............................................................... 11

*Jager v. Bos. Rd. Auto Mall, Inc.*,
   No. 14 CIV. 614 LLS, 2015 WL 235342 (S.D.N.Y. Jan. 16, 2015) ...................... 18

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................... 5, 6, 7, 8

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) ................................................................................................ 8

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) .............................................................................................. 14

*McNeil v. United States*,
   508 U.S. 106 (1993) .............................................................................................. 18

*New York Republican State Committee v. SEC*,
   927 F.3d 499 (D.C. Cir. 2019) ................................................................... 9

*Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*,
   636 A.2d 892 (Del. 1994) ........................................................................... 8

*Orangeberg v. FERC*,
   862 F.3d 1071 (D.C. Cir. 2017) ................................................................. 5

*Public Interest Research Group v. Powell Duffryn Terminals*,
   913 F.2d 64 (3d Cir. 1990) ........................................................................ 9

*Redeemed Christian Church of God v. U.S. Citizenship & Immigr. Servs.*,
   331 F. Supp. 3d 684 (S.D. Tex. 2018) .................................................... 17

*Rental Housing Ass'n of Greater Lynn, Inc. v. Hills*,
   548 F.2d 388 (1st Cir. 1977) ..................................................................... 9

*Sambrano v. United Airlines, Inc.*,
   No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ...................... 19

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ................................................................................... 15

*Tax Analysts & Advocates v. Blumenthal*,
   566 F.2d 130 (D.C. Cir. 1977) ................................................................. 9

*United Fed'n of Churches, LLC v. Johnson*,
   No. 20-CV-00509-RAJ, 2023 WL 121418 (W.D. Wash. Jan. 6, 2023) ... 18

*United States v. Arthrex, Inc.*,
   141 S. Ct. 1970 (2021) ................................................................. 12, 13, 14

*United States v. Students Challenging Regulatory Agency Procedures* ("SCRAP"),
   412 U.S. 669 (1973) ................................................................................... 8

*Weissman v. Nat'l R.R. Passenger Corp.*,
   21 F.4th 854 (D.C. Cir. 2021) .................................................... 5, 7, 9, 10

*Westfall v. Miller*,
   77 F.3d 868 (5th Cir. 1996) ..................................................................... 11

*Whitestar Distribs, Inc. v. Cuccinelli*,
   No. 3:20-CV-970-K-BN, 2020 WL 6120470 (N.D. Tex. Sept. 29, 2020), *report and recommendation adopted*, No. 3:20-CV-970-K-BN, 2020 WL 6064357 .............................. 17

*Whitman v. Am. Trucking. Ass'n*,
  531 U.S. 457 (2001) ................................................................................................ 17

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ................................................................................................ 8

**Statutes**

5 U.S.C. § 702 ..................................................................................................... 17, 18

5 U.S.C. § 703 ......................................................................................................... 17

5 U.S.C. § 704 ......................................................................................................... 17

5 U.S.C. § 705 ......................................................................................................... 17

5 U.S.C. § 706 .............................................................................................. 16, 17, 18

28 U.S.C. § 2401 ..................................................................................................... 18

28 U.S.C. § 2675 ..................................................................................................... 18

42 U.S.C. § 202 ....................................................................................................... 12

42 U.S.C. § 299b-4 ...................................................................................... 11, 12, 13

42 U.S.C. § 299b ....................................................................................................... 1

42 U.S.C. § 300gg-13 .................................................................................. 11, 13, 16

**Rules**

Fed. R. Civ. P. 26 ..................................................................................................... 3

Fed. R. Civ. P. 36 ................................................................................................. 2, 3

Fed. R. Civ. P. 54 .............................................................................................. 18, 19

## SUMMARY

Having received the Court's ruling that one of ten Plaintiffs to bring this case has standing and prevailed on two of its five claims (in the case of their Appointments Clause claim, only in part), Plaintiffs now seek a remedy vacating health insurance protections for millions of Americans. Plaintiffs do so despite the availability of a narrower, targeted remedy that would fully redress any injury of that Plaintiff resulting from the violations that the Court found. To reach their desired result—and to do an end run around the undisputed impropriety of a nationwide injunction in this case otherwise—Plaintiffs ask the court to vacate certain agency actions pursuant to Section 706(2) of the Administrative Procedure Act ("APA"), despite their failure to pursue or prevail on an APA claim. But Plaintiffs are not entitled to vacatur, which is at most available in circumstances that Plaintiffs concede are not present here: a challenge to agency action under the APA. And even if vacatur were an option available to the Court in this case (which it is not), it would not be appropriate here in light of the disruption it would cause to the health insurance of millions of Americans and in the absence of any demonstrated benefit it would provide to Plaintiffs.

Plaintiffs also contend that seven additional Plaintiffs have standing, even though five concededly do not purchase health insurance for reasons unrelated to the challenged requirements and are unwilling to say that they would purchase health insurance if they obtained their desired remedy. Those Plaintiffs are unwilling to say more than that they would "seriously consider" purchasing health insurance without the challenged requirements. That is insufficient for standing. Moreover, Plaintiffs' sole legal theory purporting to support any additional Plaintiff's standing, the so-called "purchaser standing" theory, has apparently never been recognized by any Court of Appeals outside the District of Columbia Circuit; but even those cases would not support standing here.

The Court should reject the sweeping and unjustified remedy Plaintiffs seek, which would disrupt the health insurance of millions of Americans without being necessary to remediate any violation of law established by any Plaintiff. Instead, the Court should provide the single Plaintiff

**Defendants' Reply in Support of Supplemental Cross-Motion for Summary Judgment – Page 1**

who has established standing a targeted remedy that would redress its injury from the violations found by the Court, while leaving intact the health insurance of the millions of Americans who have not sought to upend their coverage.

## ARGUMENT

## I.   PLAINTIFFS OTHER THAN BRAIDWOOD LACK STANDING TO CHALLENGE THE PREVENTIVE SERVICES PROVISION

In their previous brief, Defendants demonstrated that the Plaintiffs other than Braidwood lack standing to bring their claims. *See* Defs.' Resp. to Pls.' Suppl. Mot. for Summ. J. & Suppl. Cross-Mot. for Summ. J., ("Defs.' Suppl. Resp."), ECF No. 99 at 1-7. First, Defendants showed that the religious objector Plaintiffs have decided not to purchase or provide health insurance for reasons other than the challenged coverage requirements. As a result, they are neither subject to the challenged requirements nor at imminent risk of being harmed by them. Second, Defendants demonstrated that the "purchaser standing" theory—the exclusive legal basis for Plaintiffs' assertion of standing—does not apply here because Plaintiffs do not contend that a product, as defined by its "core features," has become unavailable to them, as the doctrine requires. In their response, Plaintiffs fail to refute either of these points.

### A.   The Religious Objector Plaintiffs Lack Standing Because They Do Not Participate in the Market for Health Insurance and the Challenged Coverages Thus Do Not Apply to Them

In their verified responses to requests for admission, religious objector Plaintiffs John Kelley, Kelley Orthodontics, and Joel Starnes conceded that they do not participate in the market for health insurance "because it was too expensive." App. to Defs.' Br. in Supp. of Resp. to Pls.' Mot. for Summ. J. & Cross-Mot. for Summ. J., ("APP"), 183-200, Nos. 1-56, ECF No. 65; *see* APP 206-220, Nos. 1-48 ("my health insurance premiums increased to a point where, in 2016 I stopped buying insurance and switched to Medi-Share"); APP 279-294, Nos. 1-48 ("my health insurance premiums increased to a point where, in 2016 I stopped buying insurance and switched to a Christian bill-sharing service"). Pursuant to Federal Rule of Civil Procedure 36, these admissions "conclusively establish[]" the basis for these parties' decision to stop buying health

insurance: an increase in cost that Plaintiffs do not and cannot attribute to the challenged coverage requirements. Fed. R. Civ. P. 36(b).

With their most recent brief, Plaintiffs Kelley, Starnes, and Zach Maxwell submitted new declarations, providing other reasons, in addition to cost, that they do not purchase or provide health insurance, including that they object to some coverage for religious reasons. *See* Decl. of Joel Starnes ("Starnes Decl."), ECF No 111-1 ¶ 5; Decl. of John Kelley ("Kelley Decl."), ECF No. 111-2 ¶ 6; Declaration of Zach Maxwell, ("Maxwell Decl."), ECF No. 111-3 ¶ 6. The Court should not consider these untimely declarations. They come more than a year after the close of discovery and after each party had already filed three summary judgment briefs addressing Plaintiffs' standing. Plaintiffs may not rely on information provided under these circumstances.[1] *See, e.g., Automated Bus. Companies v. WebEx Commc'ns, Inc.*, No. CV H-06-1032, 2010 WL 11643630, at *2 (S.D. Tex. Apr. 5, 2010) ("[A] party that fails to supplement disclosures 'in a timely manner' as required by Rule 26(e)(1) will not be allowed to use the information in the untimely disclosure, unless the party can show that the failure was substantially justified or harmless.").

In any event, given Plaintiffs Kelley and Starnes' prior verified responses to requests for admission, the Court must accept as established that increased cost was a complete and sufficient basis for their decision to stop purchasing health insurance. Fed. R. Civ. P. 36(b). In addition, Plaintiffs do not identify what, if any, coverages "violated [their] religious beliefs" or indicate whether any such coverages were required by the Preventive Services Provision. As a result, Plaintiffs' declarations do not establish that the Preventive Services Provision was *the*, or even *a*, reason they stopped purchasing health insurance. Plaintiffs' untimely declarations thus are insufficient to establish that these Plaintiffs have Article III standing.

---

[1] Plaintiffs' attempt to supplement with regard to the Zach and Ashley Maxwell is particularly improper, as Defendants had requested that Plaintiffs supplement their interrogatory responses about the very issues addressed in Mr. Maxwell's declaration prior to the deadline for Defendants' opening remedies brief so that Defendants could address any new information in that brief. Plaintiffs failed to do so. *See* SUPP APP 001, ECF No. 100; *see also* Defs.' Suppl. Resp. at 4.

**Defendants' Reply in Support of Supplemental Cross-Motion for Summary Judgment – Page 3**

Defendants also previously showed that Plaintiffs Zach and Ashley Maxwell had not submitted evidence that they participate in the health insurance market or that they were imminently likely to do so. *See* Defs.' Suppl. Resp. at 4. Plaintiffs have now submitted a new declaration, stating that they still "currently do not have [health insurance] because the available plans are either too expensive or require us to pay for compulsory coverage mandates that violate our religious beliefs (or both)." Maxwell Decl. ¶ 6. As explained above, the Court should not consider this declaration because it is untimely, coming more than a year after the close of discovery. But even if the Court considered the declaration, it is not sufficient to establish standing. First, the declaration fails to establish that the Maxwells have chosen not to purchase health insurance because of the objected-to coverage requirements; it states that they "currently do not have [health insurance] . . . because [inter alia] the available plans are too expensive." Maxwell Decl. ¶ 6. Second their declaration also does not even suggest that health insurance plans would be available and affordable to them if the Court invalidated the challenged coverage requirements. In sum, because none of the religious objector Plaintiffs participates in the health insurance market and none has established that he or she would do so in the absence of the Preventative Services Provision, these Plaintiffs have failed to meet their burden to establish standing.

The religious objector Plaintiffs' new and untimely declarations provide further proof that they lack standing. In each of these declarations, *see* ECF Nos. 111-1 to 111-3, the declarant admits that he "cannot guarantee that [he] would once again purchase health insurance in the absence of the preventive-care coverage mandates," averring only that he would "seriously consider" doing so after "carefully weigh[ing] the pros and cons before deciding." Starnes Decl. ¶ 7; Kelley Decl. ¶ 8; Maxwell Decl. ¶ 7. But merely wanting an "option" to purchase a product or service is not sufficient to establish Article III standing. Starnes Decl. ¶ 8; Kelley Decl. ¶ 9.

Plaintiffs suggest that mere loss of the option to purchase a product that they do not want establishes standing under the D.C. Circuit's "purchaser standing" doctrine. In their view, this doctrine affords any consumer standing to challenge a government regulation if they lose the "opportunity" to buy a product or service. But this misstates the D.C. Circuit's case law. Under

those decisions, a lost "opportunity" may be a necessary condition for a consumer to establish purchaser standing, but it is not a sufficient one. To establish purchaser standing, at a minimum, the lost opportunity must be to purchase a *desired* product, i.e., a product that, but for the regulation at issue, the plaintiff *intends to buy*. *See, e.g.*, *Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 857 (D.C. Cir. 2021) (explaining that "consumers have standing to challenge government action that prevented the consumers from purchasing a *desired* product") (emphasis added) (internal quotations marks omitted). Loss of the option to purchase an *unwanted* product, or of the option to simply *consider* purchasing a product, cannot be an injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted); *cf. Orangeberg v. FERC*, 862 F.3d 1071, 1078 (D.C. Cir. 2017) (explaining that challenged lost opportunity had previously been "projected to save the city's retail customers approximately $10 million per year"); *Consumer Fed'n of Am v. FCC*, 348 F.3d 1009, 1012 (D.C. Cir. 2003) ("Cooper's affidavit also states that although *he would like to subscribe* to Comcast's high speed internet service, he is deterred . . . .") (emphasis added); *Competitive Enter. Inst. v Nat'l Highway Traffic Safety Admin*, 901 F.2d 107, 112-13 (D.C. Cir. 1990) ("In affidavits, Consumer Alert's members state that *they have looked for, but have been unable to find* new cars of large size . . . in a price range they could afford.") (emphasis added).

Consumer cases outside the context of challenges to government regulation also make clear that a plaintiff must have an actual plan to purchase the product in question to establish standing and that the mere desire for an additional option to "consider" is not enough. *See, e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.5 (9th Cir. 2018) ("Several other circuits have considered whether a previously deceived consumer has standing to seek injunctive relief and have held they do not. . . . In none of these cases did the plaintiffs sufficiently allege their intention to repurchase the product at issue as Davidson does here.") (citations omitted); *Barker v. Nestle Purina PetCare Co.*, No. 4:21-CV-01075-MTS, 2022 WL 1288355, at *3 (E.D. Mo. Apr. 29, 2022) ("Plaintiff is the master of her complaint, yet she did not allege she would buy or even that she desired to buy the product again, which is, if anything, the bare minimum. Instead, Plaintiff

alleged only that she would *consider* buying the item in the future. . . . [T]he Court concludes that her 'some day' intention to 'consider buying' again the products at issue is not enough.").

Indeed, the lack of a sufficiently concrete and imminent plan connecting plaintiffs to the government action that they challenged was precisely the issue the Supreme Court considered in *Lujan* when it established modern standing doctrine. There, the Court determined that plaintiffs who had previously traveled to areas where they claimed government action would harm the environment could not demonstrate Article III standing because they had not put forth evidence of a concrete plan to visit those areas in the future. The Court explained that:

> We shall assume for the sake of argument that these affidavits contain facts showing that certain agency-funded projects threaten listed species— though that is questionable. They plainly contain no facts, however, showing how damage to the species will produce "imminent" injury to Mses. Kelly and Skilbred. That the women "had visited" the areas of the projects before the projects commenced proves nothing. As we have said in a related context, "'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" And the affiants' profession of an "inten[t]" to return to the places they had visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species—is simply not enough. Such "some day" intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the "actual or imminent" injury that our cases require.

*Lujan*, 504 U.S. at 564 (citations omitted).

Plaintiffs attempt to distinguish *Lujan* by arguing that they are currently injured because they cannot purchase health insurance that excludes objectionable coverage. But that would only be the case if Plaintiffs could show that the objectionable coverage (and not some other factor like cost) was what prevented them from obtaining health insurance *and* that they would otherwise purchase it (or that they have the concrete intent to do so if the challenged coverage requirements no longer applied). Plaintiffs are the masters of their declarations, which could have easily established those facts and provided details to substantiate them if they were true. But as demonstrated above, Plaintiffs have not established either of these necessary criteria. They have

chosen to forgo health insurance for reasons other than the challenged coverage requirements, and they have not expressed an intent to obtain health insurance if the coverage requirements to which they object no longer apply to them. This leaves the religious objector Plaintiffs with an even weaker claim to standing than the plaintiffs in *Lujan*, who professed a clear intent to revisit the relevant areas, but had no scheduled, specific concrete plans to do so. Just as the *Lujan* plaintiffs could not establish standing with these "some day intentions" to take an action that might have afforded them standing, so too Plaintiffs here cannot do so with *no* concrete intentions to do anything more than "consider" purchasing insurance. *Compare Lujan*, 504 U.S. at 564 *with* Pls.' Reply Br. in Supp. of Suppl. Mot. for Summ. J. & Resp. to Pls.' Suppl. Cross-Mot. for Summ J., ("Pls.' Reply"), ECF No. 111 at 3.

### B.    Plaintiffs Lack Standing Under the "Purchaser Standing" Doctrine

Plaintiffs do not dispute that the only legal theory they claim affords them standing is the D.C. Circuit's so-called "purchaser standing" doctrine, under which "consumers have standing to challenge government action that prevented the consumers from purchasing a desired product." *Weissman*, 21 F.4th at 857 (internal quotations marks omitted). Plaintiffs do not cite any decision outside the District of Columbia Circuit recognizing this theory, or any case recognizing this type of standing outside the context of an APA (or equivalent) claim, nor have Defendants located any. Plaintiffs would have this Court be the first to do both.

But even assuming *arguendo* that this doctrine applied, the leading D.C. Circuit case addressing the doctrine makes clear that it would not support standing here. *See* Defs.' Suppl. Resp. at 5-7; Defs.' Reply in Supp. of Cross-Mot. for Summ. J., ("Defs.' Reply"), ECF No. 83 at 2-5. To have standing to challenge a government action under the "purchaser standing" doctrine, a plaintiff must show either that "the challenged action made a consumer's desired product, as defined by its core features, 'not readily available'" or that "it rendered the product 'unreasonably priced.'" *Weissman*, 21 F.4th at 858 (citations omitted). Plaintiffs have failed to make either showing.

**Defendants' Reply in Support of Supplemental Cross-Motion for Summary Judgment – Page 7**

Plaintiffs do not dispute that they have failed to make any showing that the challenged coverages have rendered health insurance "unreasonably priced." They have also failed to demonstrate that health insurance "as defined by its core features" is unavailable.

In attempting to avoid the straightforward consequences of *Weissman*, Plaintiffs make several arguments, all without merit. They first claim that demonstrating an "identifiable trifle" is enough to satisfy the requirements of Article III standing, citing a footnote from a 1973 Supreme Court case, *United States v. Students Challenging Regulatory Agency Procedures ("SCRAP")*, 412 U.S. 669, 689 n.14 (1973). But the Supreme Court has since made clear that, to satisfy Article III, a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (1992); *see also Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 904 n.16 (Del. 1994) (SCRAP "ha[s] long been called into question, and narrowed to the point of invalidation") (citing *Whitmore v. Arkansas*, 495 U.S. 149 (1990); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990); *Lujan*, 504 U.S. 555)).

Analyzed under the governing constitutional standard of *Lujan*, none of Plaintiffs' arguments hold water. For their leading argument, Plaintiffs request that this Court be the first outside the D.C. Circuit to adopt the D.C. Circuit's purchaser standing doctrine but, in doing so, reject the D.C. Circuit's considered limitations on that doctrine developed after years of experience with it. Plaintiffs' proposal has no merit. Under Plaintiffs' rewritten version of the doctrine, any limitation whatsoever on any product in the marketplace would confer Article III standing on consumers. This is contrary to *Lujan*'s fundamental requirement that a plaintiff must have a real interest at stake to have standing to sue—not just a preference for a slightly different commercial product than those available to him.

Plaintiffs are correct that an injury need not be great to afford standing, but it must still be concrete, particularized, actual, and imminent. *Lujan*, 504 U.S. at 560.[2] A standing theory that

---

[2] Plaintiffs cite a string of cases to suggest that any putative injury, no matter how small, can afford a plaintiff standing. *See* Pls.' Reply at 7-8. But the cases that they cite do not help them here, as

would permit a plaintiff to challenge any regulation that has some effect on the ancillary features of a product would not satisfy that standard. *See Weissman*, 21 F.4th at 858 (explaining that in purchaser standing cases, "the court analyzed the injury-in-fact requirement by considering *whether government action had meaningfully abridged a concrete interest of the plaintiff in accessing the desired product* . . . [i.e.,] whether the challenged action made a consumer's desired product, as defined by its core features, 'not readily available'") (emphasis added); *id.* at 859 ("Consumers proceeding on a desired-products theory must still allege a concrete invasion of a cognizable interest, and appellants here have failed to do so. Appellants' allegations do not demonstrate how any harm from the mere existence of this ancillary term of service is 'actual or imminent, not 'conjectural or 'hypothetical'") (citation omitted).

---

none displaces *Lujan*'s test. Nearly all cases cited by plaintiffs address circumstances where a plaintiff alleged economic harm. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Tax Analysts & Advocates v. Blumenthal*, 566 F.2d 130, 138 (D.C. Cir. 1977) ("Although appellant's economic injury is relatively small in magnitude, this does not negate our finding of injury in fact."); *see also New York Republican State Committee v. SEC*, 927 F.3d 499, 504 (D.C. Cir. 2019); *Rental Housing Ass'n of Greater Lynn, Inc. v. Hills*, 548 F.2d 388, 390 (1st Cir. 1977); *Crawford v. Marion County Election Board*, 472 F.3d 949, 951 (7th Cir. 2007); *City of Los Angeles v. Barr*, 929 F.3d 1163, 1173–74 (9th Cir. 2019). But these cases have no bearing on the instant case: As noted above, Plaintiffs have not demonstrated, or even contended at the summary judgment stage, that they have suffered an economic injury as a result of the coverage requirements at issue. Several of these cases also pre-date *Lujan*'s modern articulation of the requirements for Article III standing. *See, e.g.*, *Public Interest Research Group v. Powell Duffryn Terminals*, 913 F.2d 64, 72 n.8 (3d Cir. 1990); *Rental Housing Ass'n*, 548 F.2d at 390. In the only case Plaintiffs cite that post-dates *Lujan* and does not involve an economic injury, *American Legion v. American Humanist Ass'n*, 139 S. Ct. 2067 (2019), the Supreme Court's majority did not address the question of standing at all, and so the case cannot be said to endorse the theory of standing Plaintiffs claim. And in any event, *American Legion* turns on the Establishment Clause, which has long involved unique standing considerations not relevant to other types of claims. *See, e.g., Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 138, 139-40 (2011) (discussing the "narrow exception" to "the general rule against taxpayer standing" established by *Flast v. Cohen*, 392 U.S. 83 (1968), under which "individuals suffer a particular injury for standing purposes when, in violation of the Establishment Clause and by means of the taxing and spending power, their property is transferred through the Government's Treasury to a sectarian entity") (internal quotation marks and citations omitted). Neither the Establishment Clause, nor what may constitute Article III injury in that unique context, has any bearing on the claims in this case.

Finally, Plaintiffs fall back on the argument that the challenged coverages are core features of health insurance. Pls.' Reply at 9. But that contradicts Plaintiffs' own position, at the heart of this case, that they do not "need or want" the challenged coverages because they would never use the covered medical services in the first place. *See, e.g.*, FAC ¶ 34, ECF No. 14 ("The preventive-care coverage mandates, however, make it impossible for these plaintiffs to purchase health insurance unless they agree to pay for preventive care coverage that they do not want and do not need."). Indeed, in Plaintiffs' telling, the challenged coverages should be excluded from health insurance entirely. That is the very reason Plaintiffs brought this litigation: to obtain health insurance without the challenged coverages. By contrast, Plaintiffs have not suggested that if they were to obtain health insurance under the current rules, they would lack access to *any* coverages they would want or make use of.[3] In other words, whatever precise features of health insurance may be "core" to Plaintiffs, they continue to have access to health insurance that includes those features, and thus do not have standing under the "purchaser standing" theory.

## II. THE COURT SHOULD ENTER JUDGMENT FOR DEFENDANTS ON PLAINTIFFS' CONTRACEPTIVE COVERAGE CLAIMS

The Parties agree that judgment should be entered for Defendants on all Plaintiffs' contraceptive coverage claims. And they agree that, in light of the Court's Memorandum Opinion and Order of September 7, 2022 (ECF No. 92), the Court should enter judgment on the merits in favor of Defendants with respect to Braidwood's contraceptive coverage claims. Where they disagree is whether, for the remaining Plaintiffs who asserted contraceptive coverage claims, judgment should be entered in favor of Defendants on the merits or for lack of jurisdiction. Because Plaintiffs other than Braidwood lack Article III standing to bring their contraceptive coverage

---

[3] Plaintiffs also argue that *Weissman* does not prevent the religious objector Plaintiffs from establishing standing based on the alleged injury to their religious exercise. But as demonstrated above, the religious objector Plaintiffs lack standing regardless of *Weissman*—they are not injured by the challenged action because they have chosen for reasons other than the coverage requirements not to purchase health insurance, and they admittedly have no imminent intent to purchase health insurance even if the coverage requirements are no longer in effect. *See supra* Part I.A.

claims, Defendants respectfully submit those claims should be dismissed for lack of jurisdiction. *See supra* Part I.A; Defs.' Suppl. Resp. at 1-9; *see also* Defs.' Br. in Supp. of Resp. to Pls.' Mot. for Summ. J. & Cross-Mot. for Summ. J., at 9-26, ECF No. 64; Defs.' Reply at 2-10, ECF No. 83. However, if the Court should disagree and conclude that any such Plaintiff has standing to assert a contraceptive coverage claim, then judgment for any such claim must be entered for Defendants on the merits.[4]

## III.   THE COURT SHOULD PROVIDE BRAIDWOOD TARGETED RELIEF TAILORED TO ITS CLAIMS

### A. Supreme Court Precedent Requires This Court to Sever the Provision that Makes § 300gg-13(a)(1) Unconstitutional, Authorizing the Secretary to Review PSTF's Recommendations in the Future

In their prior brief, Defendants demonstrated that Supreme Court precedent compels a specific, narrow remedy for Plaintiffs' Appointments Clause claim:

(1) disregarding 42 U.S.C. § 299b-4(a)(6) to the extent it precludes the Secretary's review and approval of PSTF's recommendations for purposes of the Preventive Services Provision; and

(2) issuing a declaration and injunction preventing enforcement of the coverage requirements imposed by 42 U.S.C. § 300gg-13(a)(1) against Braidwood and making clear Braidwood need not comply with those coverage requirements unless and until they are issued or ratified in conformity with the Appointments Clause.

---

[4] Plaintiffs also contend that a judgment on the ground that a plaintiff lacks standing should be without prejudice, while one on the merits should be with prejudice. But "[t]here are instances, . . . where a dismissal for lack of standing is with prejudice." *Guajardo v. Air Exp. Int'l, USA, Inc.*, No. 3:12-CV-815-L, 2012 WL 2886672, at *3 n.* (N.D. Tex. July 16, 2012); *see, e.g., Westfall v. Miller*, 77 F.3d 868, 873 (5th Cir. 1996) (affirming "the district court's judgment dismissing Westfall's complaint with prejudice" where he "has failed to establish that he has suffered an injury in fact which is fairly traceable to actions taken by the ATF" based on his failure to exhaust available option to obtain required affidavit before challenging affidavit requirement). Here, in light of the extensive record and numerous opportunities for the Plaintiffs to support multiple theories of standing in their briefing, they should not be afforded additional opportunities to bring these claims. Accordingly, judgment on these claims should be entered in Defendants' favor with prejudice, regardless of the ground on which judgment is entered.

Plaintiffs make three arguments in opposing this remedy, but none enables them to escape the straightforward application of the Supreme Court's governing decision in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021).

First, Plaintiffs claim that the remedy proposed by Defendants would not cure the Appointments Clause violation found by the Court. Plaintiffs argue that, if the Court were to sever 42 U.S.C. § 299b-4(a)(6), the PSTF would "remain empowered to impose preventive-care mandates on its own initiative," and the Secretary would have no "authority to adopt or impose a preventive-care coverage mandate unless the [PSTF] first recommends it." Pls.' Reply at 10-11. But Plaintiffs are wrong about the consequences of Defendants' proposed remedy. Defendants' proposed remedy would simply place the PSTF on the identical footing as HRSA and ACIP, which entities' structures the Court has already ruled are consistent with the Appointments Clause. *See* Mem. Op. & Order of Sept. 7, 2022, at 41, ECF No. 92; *see also* Defs.' Suppl. Filings ECF Nos. 86 & 88.

Section 299b-4(a)(6) provides that "any recommendations made by [the PSTF], shall be independent and, to the extent practicable, not subject to political pressure." If the Court were to sever that provision, the PSTF would become subject to the "supervision and direction" of the Secretary pursuant to 42 U.S.C. § 202, like HRSA and ACIP. *See* 42 U.S.C § 202 ("The Public Health Service in the Department of Health and Human Services shall be . . . under the supervision and direction of the Secretary"). This "supervision and direction" is exactly what the Appointments Clause requires of a principal officer. *See, e.g.*, *Edmond v. United States*, 520 U.S. 651, 662–63 (1997) ("'[I]nferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."); *Arthrex, Inc.*, 141 S. Ct. at 1980 (same). The Secretary could thus direct the PSTF to consider specific services for recommendation and could overrule the PSTF's recommendations (or lack thereof) for purposes of their taking effect under the Preventive Services Provision. And the PSTF would be unable to "impose preventive-care mandates" without the Secretary's oversight. Pls.' Reply at 10; *cf.* Mem. Op. & Order of Sept. 7, 2022, at 16 ("Because he has

authority to require, reject, or alter ACIP's recommendations, the Secretary's ratification of the challenged ACIP provisions remedies any appointment defects of ACIP regarding those recommendations."); *id.* ("HRSA is directed by an Administrator who, like the CDC Director, is answerable to the Secretary. The Secretary is thus empowered to direct HRSA to include particular care and screenings in the guidelines they support under 42 U.S.C. § 300gg-13(a)(3) and (a)(4).") (internal quotation marks and citations omitted).

Plaintiffs attempt to distinguish the Secretary's authority if Section 299b-4(a)(6) were severed from the situation addressed by the Supreme Court in *Arthrex*, by contending that "the court-imposed remedy [in *Arthrex*] made every decision by the Administrative Patent Judges reviewable by the Director of the Patent and Trademark Office." Pls.' Reply at 11 (citing *Arthrex*, 141 S. Ct. at 1986). But that is identical to the Secretary's authority over the PSTF under Defendants' proposed remedy. The Supreme Court's remedial holding in *Arthrex* permits a principal officer to choose to review decisions of the Administrative Patent Judges in every instance or to allow their decisions to stand. So too here: The Secretary would be empowered to direct the PSTF to undertake a review of any preventive service in order to issue a recommendation about it and would have final say over whether those recommendations qualify for coverage under the Preventive Services Provision—i.e., to "direct and supervise" the PSTF.

Second, Plaintiffs claim that Defendants' proposed remedy is improper because, even though the Supreme Court prescribed a materially identical remedy in *Arthrex*, only the Supreme Court is permitted to prescribe such a remedy. Plaintiffs cite nothing to support contention, which requires accepting that, absent a statute limiting their jurisdiction, there are categories of cases that lower courts have jurisdiction to hear and decide but for which they have no authority to order the proper remedy. Indeed, Plaintiffs' contention, if accepted, would have the startling and counterintuitive effect of requiring lower courts to order a *broader and more disruptive* remedy (i.e., vacating all past, and enjoining all future, agency action taken to implement an unconstitutional statutory provision) than the Supreme Court would impose. This contention—that federal District Courts and Courts of Appeals *must* in certain cases issue sweeping remedies that

can only be corrected if and when the Supreme Court properly narrows the remedy upon discretionary review—is contrary to fundamental principles on which the American judicial system operates.

Nor does *Arthrex* itself support Plaintiffs' contention that the Supreme Court there applied a special remedial rule of decision that applies exclusively to the Supreme Court and that other courts are not empowered to implement. To the contrary, the Court makes clear in *Arthrex* that its remedial "approach," which must be followed in this directly analogous case, "derives from *the Judiciary's* 'negative power to disregard an unconstitutional enactment' in resolving a legal dispute." *Arthrex*, 141 S. Ct. at 1986 (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488, (1923)) (emphasis added). Thus, the Court explained it was following the "*normal rule* that partial, rather than facial, invalidation is the required course"—not a special rule reserved only for the Supreme Court itself. *Id.* (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985)) (emphasis added). The Court described how courts must proceed "*[i]n general*, 'when confronting a constitutional flaw in a statute.'" *Id.* (quoting *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328–329 (2006)) (emphasis added). In short, neither *Arthrex*, nor any of the cases the Supreme Court cited in *Arthrex* in support of its remedial approach, which span from Chief Justice Marshall to the Twenty-First Century, suggests that this remedial power is limited to the Supreme Court; the opposite is true. *See, e.g.*, *Bank of Hamilton v. Lessee of Dudley*, 27 U.S. (2 Pet.) 492, 526 (1829) (Marshall, C. J.) (explaining that "the *courts* of the United States" in considering a law in which "part . . . [is] unconstitutional," "may . . . disregard[]" "the provisions of that part," "while [giving] full effect . . . to such [parts] as are not repugnant to the constitution of the United States") (emphasis added); *Brockett*, 472 U.S. at 504 ("The cases before us are ones governed by *the normal rule* that partial, rather than facial, invalidation is the required course.") (emphasis added).

Third, Plaintiffs claim that Defendants' proposed remedy will not redress their injuries, which they claim are "caused by the Secretary's *enforcement* of the preventive care mandates." Pls.' Reply at 15. But Plaintiffs only reach this conclusion by selectively ignoring portions of Defendants' proposed remedy and disregarding the most important condition for a court to issue a

remedy in the first place.

To begin, Plaintiffs' argument misstates the conditions required for the Court to award them a remedy in the first place. The appropriate remedy is not just a question of the Plaintiffs' putative injury, but also the proven *violation*: There can be no dispute that, without demonstrating a violation of law, plaintiffs are entitled to *no* remedy, regardless of whether or not their alleged injury affords them Article III standing. Thus, Plaintiffs are not entitled to relief that remediates putative injuries that are caused by lawful conduct. In this case, the violation at issue is the ostensible enforcement of preventive care mandates issued *in violation of the Appointments Clause*. Plaintiffs are thus not entitled to a remedy that excuses them from *any* coverage requirement that burdens them in a manner cognizable under Article III; they are at most entitled to a remedy that excuses them from coverage requirements that burden them in a manner cognizable under Article III *that were issued in a manner inconsistent with the Appointments Clause.* Accordingly, just as Plaintiffs are not entitled to invalidation of the coverage requirements that they claim injured them pursuant to subsections (a)(2) to (a)(4) of the Preventive Services Provision, which the Court found do not violate the Appointments Clause, Plaintiffs are also not entitled to preemptive invalidation of future coverage requirements pursuant to subsection (a)(1) of that provision if those requirements can be issued consistent with the Appointments Clause going forward.[5]

In addition, the core premise of Plaintiffs' argument requires ignoring a significant portion of Defendants' proposed remedy. Correctly understood, Defendants' proposed remedy *would* redress the Plaintiffs' Article III injuries; it would simply be limited to addressing those injuries

---

[5] Nor do Plaintiffs' cited cases support their claim that a Court cannot award a remedy that does not specifically redress a plaintiff's putative injury asserted for standing purposes. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), does not address the scope of a remedy a Court can award, but rather the allegations necessary to satisfy redressability requirement to afford a plaintiff Article III standing. And the remedial position proffered in the partially dissenting opinion cited by Plaintiffs in *Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019), was rejected first by the *en banc* Fifth Circuit and subsequently by the Supreme Court as "neither logical nor supported by precedent." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021).

*within the scope of the violation the Court found* and no broader. Specifically, Defendants proposed that the Court issue both

> a declaration that Braidwood need not comply with the coverage requirements imposed by 42 U.S.C. § 300gg-13(a)(1) resulting from any "A" or "B" recommendation of the PSTF issued on or after March 23, 2010, unless and until any past recommendations are ratified by the Secretary or any future recommendations are issued under the Secretary's direction and supervision *and* . . . an injunction preventing Defendants from enforcing the same coverage requirements against Braidwood unless and until any past PSTF recommendations are ratified by the Secretary or any future recommendations are issued under the Secretary's direction and supervision.

Defs.' Suppl. Resp. at 22-23 (emphasis added). This provides Braidwood exactly that to which it is entitled: a remedy that redresses the Article III injury that was caused by the violation of law the Court found.

### B. Plaintiffs Are Not Entitled to a "Universal Remedy"

In their opening remedies brief, Plaintiffs requested that the Court issue a "universal remedy" doing two things: "(1) set[ting] aside all [PSTF] recommendations with 'A' or 'B' ratings that were issued on or after March 23, 2010; and (2) set[ting] aside all other agency action taken to implement those [PSTF] recommendations." Pls.' Suppl. Br. in Supp of Pls.' Mot. for Summ. J., (Pls.' Suppl. Br.), ECF No. 98 at 9. In their reply, however, Plaintiffs withdraw the first of these two requests, recognizing that "there is nothing inherently wrong with the [PSTF] making recommendations," as authorized by statute. Pls.' Reply at 22.

Plaintiffs continue to press for a "universal remedy," however. But this request, too, is neither authorized by law nor appropriate in the circumstances here.[6] *Id.* at 24-25.

---

[6] As noted in Defendants' prior brief, *see* Defs.' Suppl. Resp. at 18, they recognize that Fifth Circuit authority currently *permits* vacatur of agency action in some cases pursuant to 5 U.S.C. § 706(2); Defendants reassert for preservation purposes their arguments that this is an incorrect understanding of the law. As discussed further below, however, Defendants dispute Plaintiffs' characterization that Fifth Circuit authority "require[s]" vacatur pursuant to 5 U.S.C. § 706(2) even in APA cases. Pls.' Reply at 23; *cf. infra* Part. III.B.3. That characterization is incorrect. *See, e.g.*, *Cent. & S. W. Servs., Inc. v. U.S. EPA*, 220 F.3d 683, 692 (5th Cir. 2000) (declining vacatur in APA case in favor of remand).

       1.        **Plaintiffs Did Not Bring an APA Claim and Thus Are Not Entitled to an APA Remedy**

Plaintiffs claim that they are entitled to a "universal remedy" pursuant to section 706 of the APA. They are not, for the simple reason that they have not pursued or prevailed on an APA claim.

The APA establishes a comprehensive statutory scheme for litigating certain types of challenges to agency action. That scheme establishes certain claims (*see, e.g.*, 5 U.S.C. §§ 702, 706) and prerequisites to bringing them (*see, e.g.*, 5 U.S.C. § 704), and then authorizes the Court to take certain actions to remediate them (*see, e.g.*, 5 U.S.C. §§ 703, 705). Claims under the APA have special procedural requirements and rules of decision. *See, e.g.*, *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 855 (5th Cir. 2022) ("The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained. We must not substitute our own policy judgment for that of the agency. Still, we must ensure that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.") (internal quotation marks and citations omitted); *Whitestar Distribs, Inc. v. Cuccinelli*, No. 3:20-CV-970-K-BN, 2020 WL 6120470, at *4 (N.D. Tex. Sept. 29, 2020), *report and recommendation adopted*, No. 3:20-CV-970-K-BN, 2020 WL 6064357 (N.D. Tex. Oct. 14, 2020) ("'Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'") (quoting *Redeemed Christian Church of God v. U.S. Citizenship & Immigr. Servs.*, 331 F. Supp. 3d 684, 694 (S.D. Tex. 2018)).

The APA's statutory remedies are available only if the statutory claims are brought, the statutory procedures are followed, and the statutory claims are adjudicated in the plaintiff's favor. Under Plaintiffs' theory, by contrast, the APA dramatically transforms the power of courts to issue new forms of relief in any case in which the government is a party, no matter what claims are brought, what procedures are followed, or what rules of decision are applied. But "Congress . . . does not hide . . . elephants in mouseholes," *Whitman v. Am. Trucking. Ass'n*, 531 U.S. 457, 468 (2001), and the APA does not grant courts new remedial powers that they can use in adjudicating

claims outside the context of that statute—just as a plaintiff would not be eligible to receive statutory damages if that plaintiff did not prevail on a claim under the relevant statute.[7] *See, e.g.*, *United Fed'n of Churches, LLC v. Johnson*, No. 20-CV-00509-RAJ, 2023 WL 121418, at *2 (W.D. Wash. Jan. 6, 2023) ("Nor do any other peripheral allegations nudge the complaint's stated amount-in-controversy into the realm of plausibility. Although the complaint seeks $100,000 in statutory damages, Plaintiff's statutory claims have already been dismissed."); *Jager v. Bos. Rd. Auto Mall, Inc.*, No. 14 CIV. 614 LLS, 2015 WL 235342, at *3 (S.D.N.Y. Jan. 16, 2015) ("However not all, but only certain, TILA violations give rise to statutory damages. For those disclosures required by Section 1638(a) (as in this case[]) statutory damages are only given for violations of paragraphs (2) . . . (3)-(6), and (9)."). When a plaintiff eligible to sue under the conditions provided for in 5 U.S.C. § 702 brings a claim under 5 U.S.C. § 706 and prevails on that claim, a court may potentially order vacatur. *But see supra* note 6; Defs.' Suppl. Resp. at 18. But a court cannot award such relief if a plaintiff, like Plaintiffs here, does *not bring* any APA claim.

Plaintiffs cite no case to the contrary. Instead, they repeat the contention from their opening remedies brief that Rule 54(c) permits an award of relief to which they are "entitled, even if [they

---

[7] This limitation makes sense. Statutory schemes often provide particular procedural requirements and time limits for a plaintiff to prevail and be eligible for the particular remedies set forth in the statute. For example, the Federal Tort Claims Act requires potential plaintiffs to first present their claim to the appropriate federal agency; if the claimant fails to do so, their claim is barred. *See, e.g.,* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."); 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). A plaintiff who fails to satisfy these prerequisites cannot claim those statutory remedies, even if that plaintiff may be able to demonstrate his or her entitlement to different relief for the same conduct through other claims.

have] not demanded that relief in [their] pleadings." Fed. R. Civ. P. 54(c). But Rule 54(c) provides them no help, for as Defendants have already demonstrated, Plaintiffs are not *entitled* to relief that is available only for APA claims, *i.e.*, different claims than those Plaintiffs have brought here. *See* Defs.' Suppl. Resp. at 14.

Plaintiffs contend that their failure to raise Section 706(2) at an earlier stage of the proceedings "is no different from the plaintiffs requesting a damages remedy after the court grants a motion for summary judgment." Pls.' Reply at 18. They are wrong. Damages is a traditional remedy at law, not a power granted to courts by a specific statutory scheme in the limited context of that statute. *See, e.g.*, *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *16 (5th Cir. Feb. 17, 2022) (Smith, J., dissenting) ("As every judge should know, the classic remedy at law is an award of damages. That has been the law for centuries."). There is no question that courts retain their traditional remedial powers in the absence of any applicable statute limiting them—hence Defendants' agreement that the Court can issue an appropriately narrow injunction here in light of its finding of an Appointments Clause violation. *See* Defs.' Suppl. Resp. at 20-22; *see, e.g., Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("What our cases demonstrate is that, 'in a proper case, [injunctive] relief may be given in a court of equity . . . to prevent an injurious act by a public officer.'" (quoting *Carroll v. Safford*, 44 U.S. (3 How.) 441, 463 (1845))). But Plaintiffs are not asking for a traditional remedy within the inherent power of the Court; they are asking for a specific *statutory remedy* provided under a statute that Plaintiffs did not claim or prove has been violated. This is not permitted.

2.      **By Their Own Admission, Plaintiffs Are Not "Eligible" for "Any Type of Universal Remedy" in This "Constitutional Challenge" to the "Legislature's Action"**

In their opening remedial brief, Plaintiffs conceded that they "would not be eligible for . . . any type of universal remedy[] if [they] were merely challenging the constitutionality of a statute" because such a remedy is available only in a challenge to "unlawful agency action." Pls.' Suppl. Br. at 10. But as Defendants previously demonstrated, challenging the constitutionality of a statute

and *not* challenging purportedly unlawful agency action is precisely the way Plaintiffs have characterized their claims throughout this case. *See, e.g.*, Br. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 24 at 13-14 (explaining that "[t]he constitutional challenge [in this case] alleges that *Congress* violated the Constitution by enacting this statute. It challenges the *legislature's* action in enacting a law that confers authority on individuals who are not appointed in conformity with Article II . . . . There is no concern with how [the executive branch] decides to use its powers under the statute; that is irrelevant to the Appointments Clause."); Defs.' Suppl. Resp. at 14 (quoting same).

Plaintiffs respond by characterizing their case as a "facial challenge" and asserting that they can "seek a remedy against the executive branch or agency officials who implement this facially unconstitutional statute—even if Congress is ultimately to blame for enacting the unconstitutional law." Pls.' Reply at 21. This contention misses the point. The debate between the parties is not whether the Court can enjoin executive branch officials, but the appropriate scope of any such injunction. Plaintiffs have argued for a "universal remedy" despite conceding that such remedy is inappropriate in the context of their very claims. Defendants maintain the position that Plaintiffs' concession is correct and that the appropriate relief here is not "universal," but limited only to Braidwood (and any other Plaintiff that the Court determines has standing). Indeed, Plaintiffs aptly quote in their own brief the Supreme Court's observation in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975), that "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute." *See* Pls.' Suppl. Br. at 10.

### 3.    The "Universal Remedy" Requested by Plaintiffs Would Be Inappropriate Here Even if It Were Permissible

Ultimately, Plaintiffs' remedial contention is that the Court is "obligated" to vacate the requested agency actions under Section 706(2) of the APA and that Plaintiffs are "entitled" to that vacatur. Pls.' Reply at 17; Pls.' Suppl. Br. at 8. Defendants have shown elsewhere that vacatur under Section 706(2) is not available here under any circumstances. *See, e.g.*, *supra* Part III.B.1-

2. But even if vacatur under Section 706(2) were an *available* remedy here, it would not be an appropriate one for the Court to award in its *discretion*.

Plaintiffs do not explain or support their claim of "entitle[ment]" to vacatur under Section 706(2) in their briefing. And they cannot: Even in the context of APA claims, vacatur remains discretionary. *See, e.g.*, *Cent. & S. W. Servs., Inc. v. U.S. EPA,* 220 F.3d 683, 692 (5th Cir. 2000).[8] In short, nothing compels the Court to vacate the agency actions under Section 706(2) even if such an option were available here (which it is not).

Nor would vacatur be appropriate under the circumstances here. Plaintiffs have not offered any evidence that a targeted remedy limited only to them would be insufficient to enable them to obtain (or provide for their employees) health insurance that does not include the required coverages. Plaintiffs' argument that a broader remedy is appropriate is limited to a single sentence in which Plaintiffs claim without elaboration or support that it is "hard to imagine how anything short of a universal remedy will redress" the purported injuries of Plaintiffs other than Braidwood. Pls.' Reply at 25. Of course, Plaintiffs other than Braidwood do not have standing. *See infra* Part I. But even if they did, Plaintiffs are wrong. Contrary to what Plaintiffs claim to be able to "imagine," there is no reason to believe that the market would not make more limited insurance without the coverages at issue available to them once they were in possession of a court order empowering them to legally obtain such insurance. Insurers may well be happy to offer products to Plaintiffs that are otherwise identical to their current offerings except for the lack of an obligation on the insurers' part to pay for certain specific services; Plaintiffs certainly do not support their contrary suggestion. And even if Plaintiffs were not able to obtain health insurance

---

[8] *Central and South West Services* also demonstrates why the court's authority under Section 706(2) does not apply outside the context of APA claims. In the APA context, a reviewing court may have other options in addition to vacatur provided for under the APA, such as remanding to the agency for further consideration. *See* 220 F.3d at 692 ("Accordingly, we remand, without vacatur, Final Rule § 761.35 for EPA to provide a reasoned statement of why it did not grant a national variance for the electric utility industry."). It does not make sense that Section 706 could be the blunt instrument Plaintiffs have claimed outside of the core context in which it was intended to apply, when even in its context it is part of a menu of nuanced options.

with these limits despite having such a court order, that situation would not be attributable to Defendants or the Preventive Services Provision. It would be attributable to insurers that, for whatever reason, made the independent decision not to provide this more limited product to Plaintiffs despite no legal requirement that they do so.

While Plaintiffs offer only a single (unpersuasive) sentence with respect to the other Plaintiffs, they offer no justification whatsoever for awarding a universal remedy to Braidwood. Nor is any such justification apparent. As a self-insured organization, Braidwood would be able to independently offer the coverage it wants to its employees once the Court issues Defendants' proposed remedy.

In contrast, there are numerous and powerful reasons why a universal remedy is inappropriate here. As Defendants have previously explained, in contrast to the handful of Plaintiffs here (only one of whom has been found to have standing), the coverage requirements at issue provide benefits to millions of Americans and stability and predictability to those who provide health insurance or who self-insure. *See* Defs.' Suppl. Resp. at 20. Amici provide further detail of the benefits these coverage requirements provide, supported by numerous scientific studies. *See, e.g.*, Amicus Curiae Brief of Am. Cancer Soc'y at 4-19, ECF No. 107; Amicus Curiae Brief of Am. Med. Ass'n at 4-17, ECF No. 108. Removing these coverage requirements for everyone—and not just any Plaintiff who can establish standing—would thus be extraordinarily disruptive to the healthcare system, and particularly inappropriate in light of the minimal (if any) benefit to Plaintiffs from doing so.[9] *See Cent. & S. W. Servs.,* 220 F.3d at 692; *see also* Amicus

---

[9] Plaintiffs claim that "setting aside" an agency action under Section 706(2) is "inherently a universal remedy—at least under the existing law of the Fifth Circuit," but Plaintiffs do not cite any case interpreting that provision (or even authorizing its application) outside the context where Plaintiffs prevailed on a statutory claim brought under the APA. Pls.' Reply at 25. Assuming *arguendo* that the provision applies in such a case (although it does not, *see supra* Part III.B.1), nothing requires the understanding, outside the context of a claim brought under the APA, that "setting aside" a regulation necessarily involves universally invalidating it rather than declining to enforce it. In any event, even if Plaintiffs were correct that vacatur under Section 706(2) is "inherently a universal remedy," that would be reason enough for the Court to decline to provide relief under that provision here as a matter of discretion in light of the overbreadth of the remedy

Curiae Brief of Am. Cancer Soc'y at 19-21. Indeed, principles of equity require consideration of these interests in tailoring any equitable remedy. *See, e.g.*, *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief[, including demonstrating] . . . that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and . . . that the public interest would not be disserved by [the remedy].")

Nor would it be appropriate to extend relief from the coverage requirements to non-parties if Section 706(2) of the APA is not applied here, as Plaintiffs appear to concede. *See, e.g.*, Pls.' Suppl. Br. at 9 (requesting an injunction only "concomitant to the APA remedy"); *id.* at 10 ("Braidwood would not be eligible for a nationwide injunction (or any type of universal remedy) if it were merely challenging the constitutionality of a statute or ordinance."); Pls.' Reply at 24 ("The defendants recite many criticisms that have been made of 'nationwide injunctions.' But none of those criticisms arose in cases where a litigant sought and obtained vacatur of agency action under section 706 of the APA.") (citation omitted). Indeed, Plaintiffs offer no argument that an injunction preventing enforcement of the coverage requirements against anyone besides Braidwood (or any other Plaintiff that establishes standing) is justified under the traditional equitable factors governing injunctions, and they have thus waived any such argument. *See, e.g.*, *eBay Inc.*, 547 U.S. at 391 (setting forth factors plaintiffs must satisfy to establish entitlement to a permanent injunction). But as Defendants demonstrated previously (and as amici further explain) such relief would also be inappropriate here. *See* Defs.' Suppl. Resp. at 18-20; Amicus Curiae Brief of Am. Med. Ass'n at 17-23.

---

with respect to Plaintiffs' claims discussed above and the harm such a remedy would impose on non-Plaintiffs explained in depth by amici.

### C.  The Court Should Award Braidwood Targeted Relief Tailored to the Claims on Which It Prevailed

As set forth above and in Defendants' prior remedies brief (Defs.' Suppl. Resp., ECF No. 99), a tailored remedy exists that is compelled by Supreme Court precedent and would afford any Plaintiff with standing complete redress of any injury it can demonstrate is caused by the Appointments Clause and RFRA violations found by the Court. Plaintiffs are entitled to no more, and their requests are not supported by law.

## CONCLUSION

For the reasons set forth above, the Court should enter judgment for Defendants against all Plaintiffs except Braidwood on all claims, because they lack standing. With respect to Braidwood, the Court should order the relief set forth in detail on pp. 22-23 of Defendants' Response to Plaintiffs' Supplemental Motion for Summary Judgment and Supplemental Cross-Motion for Summary Judgment (ECF No. 99) and enter judgment for Defendants on all remaining claims.

LEIGHA SIMONTON
United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:     214-659-8626
Facsimile:     214-659-8807
brian.stoltz@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

/s/ Christopher M. Lynch
CHRISTOPHER M. LYNCH
(D.C. Bar # 1049152)
Trial Attorney
U.S. Department of Justice
Civil Division
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 353-4537
Fax: (202) 616-8470
Email: Christopher.M.Lynch@usdoj.gov

Attorneys for Defendants Xavier Becerra,
Janet L. Yellen, Martin J. Walsh, and the United States

**<u>Certificate of Service</u>**

On January 27, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties who have appeared in the case electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

<div align="center" style="margin-left:auto">

*/s/ Christopher M. Lynch*
Christopher M. Lynch

</div>