UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**Braidwood Management Inc.**, et al.

                    Plaintiffs,

v.

**Xavier Becerra**, et al.,

                    Defendants.

Case No. 4:20-cv-00283-O

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
PARTIAL STAY OF JUDGMENT PENDING APPEAL**

The government claims that the Court's universal remedy is unlikely to survive appellate review, and it argues that balance of equities favors a partial stay because the scope of relief in the Court's judgment could endanger public health by causing people to forgo needed preventive care. Neither argument warrants a stay pending appeal.

## I.   THE PRECEDENT OF THE FIFTH CIRCUIT COMPELS UNIVERSAL VACATUR OF UNLAWFUL AGENCY ACTIONS UNDER SECTION 706 OF THE APA

The Court's opinion and order of March 30, 2023, and its final judgment correctly hold that section 706 of the APA requires universal vacatur of agency actions that are "not in accordance with law" or "contrary to constitutional [ ] power"—and that remains the case regardless of whether litigant sues as an individual or class representative. *See* Opinion and Order, ECF No. 113, at 20–21; *see also Data Marketing Partnership, LP v. United States Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) ("The APA gives courts the power to 'hold unlawful and set aside agency action[s].' 5 U.S.C. § 706(2). Under prevailing precedent, § 706 'extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to "set aside"—*i.e.*, formally nullify and revoke— an unlawful agency action.'" (citation omitted)); *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation.").

The government argues that the meaning of "set aside" in section 706 need not be interpreted to compel universal vacatur of unlawful agency actions, and that it might be possible to construe the phrase "set aside" to mean only that the Court should temporarily ignore the unlawful agency action when awarding relief, and limit its remedy to that which is strictly necessary to redress the injuries of the named

plaintiffs. *See* Mot. for Stay, ECF No. 121, at 6.[1] But the government cannot show that the Fifth Circuit is "likely" to adopt that interpretation of section 706 on appeal, for two reasons. First, the precedent of the Fifth Circuit rejects the government's proposed interpretation of "set aside," and holds that courts are not only permitted but required to issue a universal remedies under section 706 by vacating unlawful agency actions across the board. *See Data Marketing*, 45 F.4th at 859; *Franciscan Alliance*, 47 F.4th at 374–75. The government does not address *Data Marketing* or *Franciscan Alliance* in its motion, and it does not explain how its stance on section 706 is "likely" to prevail on appeal given these binding appellate-court pronouncements. *See Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999) ("[T]he rule of orderliness forbids one of our panels from overruling a prior panel . . . ."); *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999) ("[T]his panel is bound by the precedent of previous panels absent an intervening Supreme Court case explicitly or implicitly overruling that prior precedent").

Second, the better reading of "set aside" in section 706 is one that requires a universal vacatur rather than a temporary disregard of the disputed agency action. Statutes that authorize reviewing courts to "set aside" unlawful agency actions go as far back as the Hepburn Act of 1906. *See* Act of Jun. 29, 1906, Pub. L. No. 337, ch. 3591, § 4, 34 Stat. 584, 589. Section 4 of the Hepburn Act provided the orders of the Interstate Commerce Commission would be self-executing "unless the same shall be suspended or modified or set aside by the Commission or be suspended or set aside by a court of competent jurisdiction." *Id.* (emphasis added). This gave reviewing courts the same powers that the Commission enjoyed to formally "suspend[]" or "set

---

1.   Professor Harrison makes a similar argument in John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. On Reg. Bull. 37, 37 (2020). Judge Sutton also gestures toward this idea in *Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring).

aside" its orders. Another provision of the Hepburn Act empowered reviewing courts to "enjoin, set aside, annul, or suspend" an order or requirement of the Commission, which clearly indicates a power to formally revoke the Commission's work. *See id*. at 592.

The Federal Trade Commission Act of 1914 also empowered reviewing courts to "set aside" an agency order, and it allowed them to "affirm" or "modify" those orders as well. *See* Act of Sep. 26, 1914, ch. 311, § 5, 38 Stat. 717, 720 ("[T]he court . . . shall have power to make and enter upon the pleadings, testimony, and proceedings set forth in such transcript a decree affirming, modifying, or setting aside the order of the commission."). This language mirrors the powers of an appellate court when it reviews a district court's judgment or factual findings, and it comprises the same power to formally cancel or nullify the underlying decree. *See also* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous . . . ." (emphasis added)). The "set aside" language in section 706—which applies to both agency rules and agency adjudicatory decisions—confers a judicial power to directly act upon and revoke the disputed agency action, in the same way that an appellate court cancels and annuls erroneous district-court judgments or findings of fact when conducting appellate review. *See* Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253, 258 (2017) ("The APA instructs federal courts to 'hold unlawful and set aside' arbitrary or unlawful agency action. When the APA was enacted in 1946, that instruction reflected a consensus that judicial review of agency action should be modeled on appellate review of trial court judgments . . . . Just as a district court judgment infected with error should be invalidated and returned for reconsideration, so too with agency action."); Thomas W. Merrill, *Article III, Agency Adjudication, and the Origins of the Appellate Review Model of Administrative Law*, 111 Colum. L. Rev. 939, 940 (2011) (explaining how judicial review of agency action is "built on

the appellate review model of the relationship between reviewing courts and agencies," which "was borrowed from the understandings that govern the relationship between appeals courts and trial courts in civil litigation"); *see also* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121 (2020) (defending universal remedies under the APA and responding to Harrison's criticisms); Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1012–13 (2018). So while the government has made a respectable argument regarding the meaning of "set aside" in section 706 of the APA, and while its argument has at least some scholarly support,[2] it is not an argument that is "likely" to prevail on appeal.

The government also critiques the isssuance of "nationwide injunctions" and relies on opinions from Justices Thomas and Gorsuch, as well as Chief Judge Sutton, all of whom have penned thoughtful and scholarly criticisms of the practice. *See* Motion for Stay, ECF No. 121, at 4–8 (citing *Trump v. Hawaii*, 138 S. Ct. 2392, 2424–29 (2018) (Thomas, J., concurring); *Dep't of Homeland Security v. New York*, 140 S. Ct. 599, 599–601 (2020) (Gorsuch, J., concurring); *Arizona v. Biden*, 40 F.4th 375, 394–98 (6th Cir. 2022). We agree with the government that district courts have been far too careless in issuing universal remedies such as nationwide injunctions, which are appropriate only when authorized or required by statute, or when a remedy of that scope is needed to fully redress the injuries to the named litigants or a certified class represented by those litigants. But neither Justice Thomas nor Justice Gorsuch addresses whether the "set aside" language in section 706 authorizes or requires universal vacatur of unlawful agency actions, as this Court and the Fifth Circuit have held, and Chief Judge Sutton's concurrence in *Arizona* claims only that the "set aside" language, standing alone, is inconclusive on the issue. *See Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring) ("Use of the 'setting aside'

---

2.   *See* Harrison, *supra* note 1.

language does not seem to tell us one way or another whether to nullify illegal administrative action or not to enforce it in the case with the named litigants."). None of the stock arguments that have been raised against nationwide injunctions can defeat this Court's reliance on the "set aside" language in section 706 of the APA, or the Fifth Circuit precedents that compel that construction of the statute. Indeed, the government's argument seems to imply that an agency rule can *never* be vacated under the APA, and that stance is exceedingly unlikely to prevail on appeal given the longstanding practice of vacatur under section 706. *See Franciscan Alliance*, 47 F.4th at 375 n.29 ("'The ordinary practice is to vacate unlawful agency action.").

The government is wrong to claim that we brought this lawsuit to "challenge" a "federal statute." *See* Motion for Stay, ECF No. 121, at 6. Litigants cannot "challenge" statutes, as courts lack authority to alter or annul statutes in any way. *See Mitchell*, supra at 4. A litigant can challenge only the *behavior* of the *named defendants* that he has sued. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves." (citing *California* v. *Texas*, 141 S. Ct. 2104, 2115–16 (2021)). Even when a litigant attacks the constitutionality of a federal statute, as the plaintiffs have done here, they can "challenge" only the conduct of the government officials who act pursuant to that allegedly unconstitutional law. *See California v. Texas*, 141 S. Ct. 2104, 2115 (2021) ("Here, there is no action—actual or threatened—whatsoever. There is only the statute's textually unenforceable language."); *id.* at 2120 (2021) (Thomas, J., concurring) ("[T]here is a fundamental problem with the arguments advanced by the plaintiffs in attacking the Act—they have not identified any unlawful action that has injured them."). When there is no defendant who implements or enforces the statute, then no constitutional attack on the statute can be entertained. *See California*, 141 S. Ct. at 2115; *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021); *see also Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th

Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute."). And it does not matter whether the APA was mentioned in the pleadings. At the remedial stage of the litigation, the pleadings melt away and the Court must award the relief to which the plaintiff is entitled, regardless of whether a particular remedy or theory of liability was mentioned or requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("[A] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016), overruled on other grounds in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022).

Finally, the government's statute-of-limitations objections are unlikely to prevail on appeal because they were not raised in the remedial briefing, and the statute of limitations does not in any way curtail the plaintiffs' requests for prospective relief against the continued enforcement of the preventive-care coverage mandates. *See Leal v. Azar*, No. 2:20-CV-185-Z, 2020 WL 7672177, at *6–*7 (N.D. Tex. Dec. 23, 2020) ("Statutes of limitations are simply inapplicable" to "suits seeking *prospective* relief for *ongoing* injuries").

## II.   THE GOVERNMENT HAS NOT SHOWN THAT THE BALANCE OF EQUITIES FAVOR A STAY PENDING APPEAL

The government claims that the final judgment will endanger people's lives and health unless it is stayed pending appeal, but there many problems with the government's arguments and evidence.

First. The government itself acknowledges that in many cases, the preventive-care mandates imposed by the ACA did *not* lead to increased consumption of the relevant services. The Department of Health and Human Services claims on its website that:

> Studies examining changes in cancer screening among privately insured individuals after the ACA eliminated cost-sharing show an overall increase in colorectal cancer screening tests, while breast cancer screening rates were stable; rates of Pap testing decreased, though this

> time period coincided with revised cervical cancer screening recommendations that include less frequent testing for many patients. An analysis of 2013–2016 national survey data indicated utilization rates among newly insured immigrants increased for colon cancer screenings but did not change for Pap testing or mammography.

Office of Health Policy, *Access to Preventive Services without Cost-Sharing: Evidence from the Affordable Care Act*, Issue Brief (January 11, 2022), available at bit.ly/40ln3ay (last visited on April 18, 2023). So there is no reason to believe or assume a causal relationship between the increases in colorectal screening tests that the government touts and the preventive-care coverage mandates imposed by the ACA. *See Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) ("Correlation is not causation."). It could be that other factors caused the increase in screening tests for colorectal cancer and the declines in Pap testing and mammography—indeed, that seems quite plausible given the otherwise unexplained declines Pap testing and mammography despite the mandates to cover these services at zero marginal cost. *See also* Kieran Allsop, et al., *Use of Preventive Care Services Declined Despite Expanded Coverage*, available at bit.ly/3KMrntU (last visited April 18, 2023).

Second, even if one were to assume that the preventive-care coverage mandates increase *consumption* of the relevant services, there is evidence suggesting that there may be no *benefit*. The evidence most devastating to the government's arguments comes from a large randomized, controlled study of colorectal cancer screening promotion that the *New England Journal of Medicine* published in October 2022. *See* Michael Bretthauer, et al., *Effect of Colonoscopy Screening on Risks of Colorectal Cancer and Related Death*, 387 N. Engl. J. Med. 1547–1556 (2022), available at bit.ly/41AtlnS (last visited on April 18, 2023). The study followed "84,585 participants in Poland, Norway, and Sweden," and investigators randomized one-third of participants to receive an invitation to receive a colonoscopy. The median follow-up was 10 years. The study found *no* statistically discernible impact of colonoscopy

promotion on mortality: "[R]isk of death from any cause was 11.03% in the invited group and 11.04% in the usual-care group (risk ratio, 0.99; 95% CI, 0.96 to 1.04)." *Id.* To be sure, this study examined a public-education campaign rather than a coverage mandate, so it does not provide direct evidence of the impact of the preventive-care mandates in the ACA. But it certainly calls into question whether efforts to encourage people to consume preventive services actually confer any benefit at all. The government has no idea—and it certainly cannot prove—whether patients are actually benefiting from these coverage mandates until it runs a large, reliable trial like this. And the only large-scale trial of this sort that has been done showed no benefit.

Third. Mandatory coverage of preventive-care services without cost-sharing can *reduce* access to those services by increasing prices, making it more difficult for the uninsured (or those with grandfathered plans or short-term, limited duration plan exempt for the ACA's coverage mandates) to obtain that care. Mandatory coverage for contraceptives, for example, coincided with large increases in the prices for those items. *See, e.g.*, Jeffrey A. Singer and Michael F. Cannon, *Drug Reformation: End Government's Power to Require Prescriptions* (October 20, 2022), available at bit.ly/3mGxvvN (last visited on April 18, 2023). The government does not even account for this possibility, and assumes that everyone in America carries health insurance subject to the ACA coverage mandates. Many Americans, however, have foregone insurance or repaired to Christian bill-sharing arrangements exempt for the ACA. *See* Jennifer Tolbert, et al., *Key Facts about the Uninsured Population*, Kaiser Family Foundation (December 19, 2022), available at bit.ly/3UNXqyj (last visited on April 18, 2023). Their interests must be included in the balance of equities as well.

Fourth. There is considerable tension between the government's insistence that these preventive-care services are valuable and its simultaneous assumption that people will lose coverage for those services or decline to pay for them if co-pays are

added. It presumes that rational people will decline to purchase valuable items or decline to seek them, and it presumes that the market will fail to provide valuable coverage to consumers of health insurance. Many insurers covered colonoscopy screening and polyp removal, to varying degrees, before the ACA made screening coverage mandatory, suggesting many insurers will continue to do so in the absence of a mandate. *See* Karen Pollitz, et al., *Coverage of Colonoscopies Under the Affordable Care Act's Prevention Benefit*, Kaiser Family Foundation (August 31, 2022), available at bit.ly/40dNwHe (last visited on April 18, 2023).

Fifth. Neither Congress nor the executive branch acts as if these mandates are as critical as the government now maintains. Congress created exemptions from these mandates for grandfathered plans (which consist of 12 percent of the individual market) as well as so-called short-term, limited duration plans. The executive branch has expanded both exemptions. The executive branch has also unilaterally exempted health insurance in U.S. territories from these coverage mandates, and the government has given no indication that it believes the lack of these mandates is causing any problems in U.S. territories.

In sum, the government's predictions of harm are speculative and unsupported, and in many cases undercut by available evidence. They do not warrant a stay pending appeal.

## CONCLUSION

The defendants' motion for partial stay of the judgment pending appeal should be denied.

Respectfully submitted.

_/s/ Jonathan F. Mitchell_

GENE P. HAMILTON
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE, #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

H. DUSTIN FILLMORE III
Texas Bar No. 06996010
CHARLES W. FILLMORE
Texas Bar No. 00785861
The Fillmore Law Firm, LLP
201 Main Street, Suite 700
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Dated: April 18, 2023

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on April 18, 2023, I served this document through CM/ECF upon:

CHRISTOPHER M. LYNCH
JORDAN L. VON BOKERN
Trial Attorneys
U.S. Department of Justice
Civil Division
1100 L Street, NW
Washington, DC 20005
(202) 353-4537 (phone)
(202) 616-8460 (fax)
christopher.m.lynch@usdoj.gov
jordan.l.von.bokern2@usdoj.gov

BRIAN W. STOLTZ
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
(214) 659-8626 (phone)
(214) 659-8807 (fax)
brian.stoltz@usdoj.gov

*Counsel for the Defendants*

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*