IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

BRAIDWOOD MANAGEMENT, INC., *et al.*,

     Plaintiffs,

v.

XAVIER BECERRA, *et al.*,

     Defendants.

Civil Action No. 4:20-cv-00283-O

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL STAY OF JUDGMENT PENDING APPEAL

Plaintiffs' opposition offers no plausible basis to deny the partial stay that the government has requested. As set forth in the government's motion—and uncontested in Plaintiffs' opposition—the prevailing Plaintiffs face *no* harm from Defendants' requested stay. Thus, *any* demonstrated harm to Defendants and the public is sufficient to tip the balance of the equities in Defendants' favor. And the harm Defendants have demonstrated from the absence of a stay is great. Protections that apply to more than 150 million Americans, requiring that lifesaving and other important medical coverage be provided without cost-sharing, will be disrupted, leading some Americans to needlessly suffer from severe illness or die because they did not receive preventive care, or a disease was detected too late. This demonstration of harm is overwhelmingly supported by scientific studies and largely uncontested by Plaintiffs.

Plaintiffs' opposition makes no effort to defend this Court's nationwide injunction. On the contrary, Plaintiffs "agree with the government that district courts have been far too careless in issuing universal remedies such as nationwide injunctions," Pls.' Response to Defs.' Mot. for Partial Stay of J. Pending Appeal ("Response") at 4, ECF No. 127, and do not argue the nationwide

**Defendants' Reply in Support of Motion for Partial Stay of Judgment Pending Appeal** - 1

injunction issued here is any exception. Instead, Plaintiffs insist that the Fifth Circuit's precedents interpreting the APA "compel universal vacatur" of agency actions that a district court rules to be unlawful. *Id*. at 1. That assertion is baseless. Universal vacatur has the same well-catalogued vices as a nationwide injunction. The Fifth Circuit cases that Plaintiffs cite indicate only that vacatur is a permissible remedy, not that it is required. And it is difficult to imagine a weaker case for universal vacatur than this one, where universal vacatur would disrupt coverage requirements that have been in effect for more than a decade and that provide crucial protections for Americans nationwide—and where Plaintiffs never pled nor prevailed upon an APA claim.

## ARGUMENT

***Defendants Are Likely to Succeed on Appeal of the Universal Relief Ordered by the Court.*** Plaintiffs conspicuously decline to defend this Court's final judgment insofar as the Court issued a nationwide injunction. *Compare* Final Judgment, ECF No. 114 ("Defendants and their officers, agents, servants, and employees are **ENJOINED** from implementing or enforcing 42 U.S.C. § 300gg-13(a)(1)'s compulsory coverage requirements in response to an "A" or "B" rating from PSTF in the future.") *with* Response, at 4 (conceding that Plaintiffs "agree with the government that district courts have been far too careless in issuing universal remedies such as nationwide injunctions, which are appropriate only when authorized or required by statute, or when a remedy of that scope is needed to fully redress the injuries to the named litigants or a certified class represented by those litigants").

Plaintiffs also do not dispute that the litany of problems that nationwide injunctions cause—which have been catalogued by Justices and judges across the ideological spectrum, *see* Defs.' Mot. for Partial Stay of J. Pending Appeal ("Mot."), at ECF No. 121 at 4-7—apply equally to universal vacatur. They nonetheless insist that under Fifth Circuit precedent, "courts are not

only permitted but *required* to issue a universal remed[y] under section 706 by vacating unlawful agency actions across the board." Response at 2.

That assertion is baseless. The Fifth Circuit cases on which Plaintiffs principally rely, *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846 (5th Cir. 2022), and *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374 (5th Cir. 2022), stand only for the proposition that vacatur is a permitted remedy under the APA. *See Data Marketing*, 45 F.4th at 859-60 (stating only that vacatur is the "default rule" and suggesting that the district court had "discretion" not to "follow[] the default rule"); *Franciscan Alliance*, 47 F.4th at 374-375 & n.29 (stating that "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation," without suggesting that vacatur is mandatory, and citing a case that acknowledges circumstances where courts "do not vacate the action"). In fact, Fifth Circuit precedent makes clear that a finding of unlawful agency action "does *not* require vacatur," particularly where "it would be disruptive to vacate [an action] that applies to other" nonparties. *Cent. & S. W. Servs., Inc. v. U.S. EPA,* 220 F.3d 683, 692 (5th Cir. 2000) (emphasis added).[1]

Nor do the articles on which Plaintiffs rely support their position. Indeed, in one, *see* Response at 4, their own counsel conceded that "[t]he authority to 'set aside' an agency's action also does not resolve whether courts should extend relief beyond the named litigants or issue 'nationwide injunctions' that extend beyond the court's territorial boundaries." Jonathan F.

---

[1] Defendants recognize that Fifth Circuit precedent *authorizes* universal, non-party vacatur under the APA. Although Defendants disagree with the Fifth Circuit's interpretation, they need not prevail on that ground to succeed on appeal as to the scope of remedy because Fifth Circuit precedent does not *require* vacatur.

Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 1014 (2018); *see also, e.g.*, Nicholas

Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253, 309 (2017).[2]

Assuming *arguendo* that vacatur is available under the APA in some circumstances, it must

be applied pursuant to traditional equitable principles. Indeed, the APA makes explicit that its

authorization of judicial review does not affect "the power or duty of the court to … deny relief on

any … equitable ground[.]" *Id.* § 702(1); *see also* 5 U.S.C. § 703.

When properly understood as (at most) a discretionary equitable remedy, universal vacatur

under the APA is plainly inappropriate here, for three reasons.

First, this Court separately granted equitable relief to Plaintiffs. The final judgment's

universal vacatur of agency actions thus contravenes the bedrock principle that equitable relief

may not go beyond what is necessary "to redress the injuries sustained by [the] particular

plaintiff[s] in [this] particular lawsuit." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600

(2020) (mem.) (Gorsuch, J., concurring). Here, that would be only declaratory (and if necessary,

injunctive) relief barring Defendants from enforcing the relevant preventive care coverage

requirements against Plaintiffs. Indeed, Plaintiffs' opposition makes no claim that they will be

harmed by a stay pending appeal of either the universal vacatur or nationwide injunction. But the

nationwide remedy ordered by the Court not only undisputedly goes far beyond what would be

required to redress Plaintiffs' alleged injuries; it simultaneously contravenes "the public interest"

---

[2] Other statutes that Plaintiffs cite, the Hepburn Act and the Federal Trade Commission Act (to the extent either provides a relevant analogy), simply authorized courts to "set aside" agency orders, without speaking to whether vacatur was discretionary or mandatory. *See* Act of Jun. 29, 1906, Pub. L. No. 337, ch. 3591, § 4, 34 Stat. 584, 589; Act of Sep. 26, 1914, ch. 311, § 5, 38 Stat. 717, 720.

in maintaining longstanding statutory healthcare protections for millions of Americans. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008).[3]

Second, the universal vacatur is inconsistent with the well-established remedial rule that retrospective relief for appointments defects is inappropriate where (as here) such relief would lead to mass invalidation of past "administrative actions." *Buckley* v. *Valeo*, 424 U.S. 1, 142 (1976).

Third, Plaintiffs' claims attacked the constitutionality of an Act of Congress; they never challenged agency actions under the APA.[4] This is no mere formality. By obtaining an APA remedy without raising an APA claim, Plaintiffs were allowed to evade the APA's procedural strictures, *e.g.*, 5 U.S.C. §§ 702, 704, and the six-year statute of limitations for civil actions against the government, 28 U.S.C. § 2401(a). That statute of limitations problem became manifest only when this Court vacated agency actions dating back to 2010, even though Plaintiffs had no right to challenge actions taken before March 29, 2014. So Plaintiffs' suggestion, Response at 6, that Defendants should have raised that problem earlier lacks merit. Having failed to plead and prevail

---

[3] Plaintiffs fail to provide a principled basis for distinguishing the "universal remedies such as nationwide injunctions" that they claim "district courts have been far too careless in issuing" from the universal vacatur they claim is justified here. Response at 4. Nor is there any sound reason to conclude that Congress "meant to upset the bedrock practice of case-by-case judgments with respect to the parties in each case" by adopting the "unremarkable" "set aside" language in Section 706. *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring). The extraordinary consequences of the claimed judicial authority strongly counsel against interpreting the APA's delegation so expansively. *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

[4] Presumably because the complaint did not challenge any agency action, this Court's final judgment likewise fails to identify with specificity which particular agency actions have been vacated or enjoined. *See* Final Judgment (stating that the relief applies to "any and all" agency actions taken to implement or enforce the preventive services coverage requirement in response to an "A" or "B" Task Force recommendation, without specifically identifying those agency actions).

**Defendants' Reply in Support of Motion for Partial Stay of Judgment Pending Appeal** - 5

upon an APA claim, Plaintiffs are not entitled to a remedy they claim to be authorized only by the APA.[5]

*The Balance of the Equities Overwhelmingly Favors the Requested Stay:* Plaintiffs do not dispute that the universal relief ordered by the Court—the only portion of the judgment at issue in Defendants' motion—is unnecessary to redress their injuries, and they do not dispute that they would face no harm if Defendants' requested stay were granted. Nor could they: With party-specific declaratory and injunctive relief, the preventive care coverage requirements could not be enforced against Plaintiffs, thereby fully remedying Plaintiffs' injuries. Plaintiffs' failure to contest this point necessarily means that the balance of the equities tips in Defendants' favor if Defendants can establish *any* harm on the other side of the ledger. Defendants easily satisfy that burden.

Defendants have demonstrated that over 150 million Americans are entitled to receive coverage of certain potentially life-saving medical care without cost-sharing because of the provision at issue in the Court's judgment. If the Court's universal remedy were to remain in effect, that protection would be lost, and many Americans would likely lose coverage of those services altogether or be required to share in their cost. *See, e.g.*, Declaration of Jeff Wu ("Wu Decl.") ¶¶ 3-6, 8, ECF No. 121-1. Defendants have further demonstrated that these services save lives, and that cost is a barrier to their utilization that can result in greater and more serious illness, and loss

---

[5] Indeed, Plaintiffs expressly *disclaimed* that they were challenging agency action in their opposition to Defendants' motion to dismiss. *See* Br. in Opp'n to Defs.' MTD at 13-14, ECF No. 24 ("The constitutional challenge . . . alleges that Congress violated the Constitution by enacting this statute. It challenges the legislature's action in enacting a law that confers authority on individuals who are not appointed in conformity with Article II," in contrast to a prior action brought by some Plaintiffs and their same counsel which "[c]halleng[ed] only the behavior of executive branch officials . . . . The relevant facts concerned . . . the conduct of the executive branch, which ha[s] nothing to do with any of facts surrounding the plaintiffs' constitutional challenges [in this case]. There is no overlap at all with these factual nuclei . . . .").

of life. *See, e.g.*, *id*. ¶¶ 9-15. Plaintiffs have failed to rebut these showings or otherwise demonstrate that the balance of the equities does not overwhelmingly favor Defendants.

Plaintiffs' position reduces to the claim that Congress had no sound reason to require coverage without cost-sharing of items that receive an "A" or "B" Task Force recommendation. But that determination was the province of Congress to make. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland* v. *King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). A fortiori that must be true for the federal government, which is responsible for implementing Acts of Congress that serve and protect the people of all the States. By arguing that coverage without cost sharing is in fact counter to the public interest, *see* Response at 8, Plaintiffs simply invite the Court to substitute its judgment for that of the People's representatives.[6]

Further, Plaintiffs fail to dispute any of the specific showings Defendants made about the benefits of the requirement for lung cancer screenings, the requirement that statins be covered for individuals with a high risk of cardiovascular disease, and the PrEP coverage requirement. *See* Mot. at 10-11; Wu Decl. ¶¶ 12, 13-15; Declaration of Assistant Secretary Lisa M. Gomez ("Gomez

---

[6] Nor do Plaintiffs support their speculative claim that some unspecified number of Americans may be harmed by the coverage requirements at issue. They point to an article that they claim shows a correlation between mandatory coverage for contraception and an increase in the price of contraceptives; but even if the article proved a connection between the two (which Plaintiffs do not assert it does), contraceptive coverage, which is required by HRSA's guidelines through a provision whose constitutionality the Court upheld, 42 U.S.C. § 300gg-13(a)(4), is not at issue in the instant motion. *See* Mem. Op & Order at 41-42, ECF No. 92; *cf.* Response at 8. Nor do Plaintiffs argue, let alone support, the proposition that any (undemonstrated) benefit to this unspecified number of Americans from the universal relief ordered by the Court outweighs the harm to the potentially large number of Americans who could lose their coverage protections if this portion of the judgment remains in effect. In any event, Congress, whose role it was to make the calculation, determined this required coverage of preventive services without cost-sharing is in the public interest.

Defendants' Reply in Support of Motion for Partial Stay of Judgment Pending Appeal - 7

Decl.") ¶6, ECF No. 121-2; APP 379-384 (Declaration of Demetre C. Daskalakis, M.D., M.P.H.), ECF No. 65.

And while Plaintiffs attempt to dispute Defendants' showing about the benefits of colon cancer screenings, they fail to support the claims in their brief. Although Plaintiffs point to a purportedly "devastating" study regarding colon cancer screenings, they concede that study involved "a public-education campaign" (in countries that already had universal health coverage before and after the campaign), rather than "a coverage mandate." Response at 7-8. It thus fails to rebut Defendants' evidence on the benefits of the coverage requirement for colon cancer screening. *See* Mot. at 12 and Wu Decl. ¶ 13. And Plaintiffs mischaracterize the study discussed on HHS's website, which likewise does not support the conclusion Plaintiffs draw. That conclusion—that "there is no reason to believe or assume a causal relationship between the increases in colorectal screening tests that the government touts and the preventive-care coverage mandates imposed by the ACA," Response at 7—is actually contradicted by the relevant study, which concludes that "[a]n analysis of data from 2009 and 2014 suggests that the elimination of cost-sharing under the ACA positively affected colorectal cancer screening among men and women with private health coverage . . . ." Office of Health Policy, *Access to Preventive Services without Cost-Sharing: Evidence from the Affordable Care Act*, Issue Brief (January 11, 2022), at 8.[7] Although Plaintiffs cite a handful of studies questioning the benefits of certain preventive services, numerous other studies have shown both the benefits of preventive care and the increased utilization of preventive services resulting from the ACA.[8]

---

[7]https://aspe.hhs.gov/sites/default/files/documents/786fa55a84e7e3833961933124d70dd2/preventive-services-ib-2022.pdf.

[8] *See, e.g.*, Lee, Catherine; Kushi, Lawrence H.; Reed, Mary E.; Eldridge, Elizabeth H.; Lee, Jeffrey K.; Zhang, Jie; Spiegelman, Donna, "Impact of the Affordable Care Act on Colorectal Cancer Incidence and Mortality," *American Journal of Preventive Medicine*, 62(3): 387-394

**Defendants' Reply in Support of Motion for Partial Stay of Judgment Pending Appeal** - 8

Finally, Plaintiffs fail to dispute that the portion of the judgment Defendants seek to stay will disrupt the insurance markets and create uncertainty for Defendants, patients, providers, and insurers. *See* Mot. at 13-14; Wu Decl. ¶ 15; Gomez Decl. ¶ 8. This uncontested concern is yet another sufficient basis for staying the universal remedy here. *See INS* v. *Legalization Assistance Project of L.A. Cty. Fed'n of Labor*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (granting stay based on the "considerable administrative burden on the [agency]" and disruption of "the workings of a coordinate branch of the Government"). Accordingly, because the government's requested stay would not harm Plaintiffs—but would forestall the risk of lost healthcare protections for millions of Americans—the equities and public interest overwhelmingly favor a stay.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion for Partial Stay of Judgment Pending Appeal (ECF No. 121) and stay the first paragraph of item 3 in its March 30, 2023 Final Judgment (ECF No. 114) for the duration of appellate proceedings.

---

(2022), *available at* https://doi.org/10.1016/j.amepre.2021.08.025 (finding decrease in colorectal cancer incidence and colorectal cancer-related mortality following implementation of the ACA among individuals aged 50 and above enrolled in a private insurance plan); Norris, Hope C.; Richardson Haley M.; Benoit, Marie-Anais C.; Shrosbree, Beth; Smith, Judith E.; Fendrick, A, Mark, "Utilization Impact of Cost-Sharing Elimination for Preventive Care Services: A Rapid Review," *Med Care Res Rev* 2022 Apr;79(2):175-197, (June 22, 2021), *available at* https://pubmed.ncbi.nlm.nih.gov/34157906/; *see also* Gan, Tong; Sinner, Heather F.; Walling, Samuel C.; Chen, Quan; Huang, Bin; Tucker, Tom C.; Patel, Jitesh A.; Evers, Mark B.; Bhakta, Avinash S., *Impact of the Affordable Care Act on Colorectal Cancer Screening, Incidence, and Survival in Kentucky.*, Journal of the American College of Surgeons 228(4):p 342-353e1, April 2019, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6537585/ (finding that Medicaid expansion in Kentucky following implementation of the ACA led to significant increases in colorectal cancer screening, diagnoses, and survival among Medicaid patients). *Amici* have also pointed to numerous studies showing the benefits of the preventive services at issue and of providing coverage for these services without cost-sharing. *See* ECF No. 107 at 5-19 and sources cited; ECF No. 108 at 5-17 and sources cited; *see also* ECF No. 61 at 2-6 and sources cited; ECF No. 68 at 7-9 and sources cited.

LEIGHA SIMONTON
United States Attorney

*/s/ Brian W. Stoltz*
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:     214-659-8626
Facsimile:     214-659-8807
brian.stoltz@usdoj.gov

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Christopher M. Lynch*
CHRISTOPHER M. LYNCH
(D.C. Bar # 1049152)
Trial Attorney
U.S. Department of Justice
Civil Division
1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 353-4537
Fax: (202) 616-8470
Email: Christopher.M.Lynch@usdoj.gov

Attorneys for Defendants Xavier Becerra,
Janet L. Yellen, Julie A. Su, and the United States

### Certificate of Service

On April 19, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties who have appeared in the case electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Christopher M. Lynch*
Christopher M. Lynch

**Defendants' Reply in Support of Motion for Partial Stay of Judgment Pending Appeal** - 10