IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BRAIDWOOD MANAGEMENT, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> XAVIER BECERRA, *et al.*, <br><br> Defendants. | Civil Action No. 4:20-cv-00283-O |

### DEFENDANTS' RESPONSE TO ORDER OF APRIL 20, 2023

Defendants respectfully submit the following response to the Court's Order of April 20, 2023 (ECF No. 129):

1. As Defendants stated in their Motion for Partial Stay Pending Appeal (ECF No. 121), "[a]bsent the requested stay, millions of people will lose the protection of the requirements to include . . . coverage [for certain preventive services recommended by the U.S. Preventive Services Task Force]—or the ability to access them without cost-sharing—during the pendency of the appeals in this case." *Id.* at 12 (emphasis added). This is certain: It is uncontroverted that "[m]ore than 150 million people with private insurance currently can receive preventive services without cost-sharing under the ACA,"[1] Declaration of Jeff Wu ¶ 3, ECF No. 121-1, and the Court's Final Judgment removes that protection—the federal statutory requirements that insurers and health plans include coverage for the services at issue and the corresponding federal statutory right

---

[1] *See also* April 19, 2023 Letter to Ron Wyden, Richard Neal, Robert C. Scott, Bernie Sanders, & Frank Pallone (attached hereto as Exhibit A) at 1 ("More than 150 million Americans benefited from no-cost preventive care in 2020 alone.").

**Defendants' Response to Order of April 20, 2023**- 1

that participants in covered plans and policies have to receive coverage of the preventive services without cost sharing. *See* ECF No. 114 (ordering that "any and all agency actions taken to implement or enforce the preventive care coverage requirements in response to an 'A' or 'B' recommendation by the PSTF on or after March 23, 2010 are VACATED and Defendants and their officers, agents, servants, and employees are ENJOINED from implementing or enforcing 42 U.S.C. § 300gg-13(a)(1)'s compulsory coverage requirements in response to an 'A' or 'B' rating from PSTF in the future").

2. There is a separate question about whether, in practice, those offering covered health plans will *choose* to stop covering the affected preventive services or impose cost-sharing requirements in the absence of the protection described above. The declarations submitted in support of Defendants' motion demonstrate that an unpredictable number of insurers, employers and other plan sponsors will do so, negatively affecting the health of many Americans.

    a. As explained in the Declaration of Jeff Wu, Deputy Director for Consumer Information & Insurance Oversight at the Centers for Medicare & Medicaid Services:

- "The *Braidwood* decision will likely lead to individuals losing access to services, either because their plans or issuers drop coverage of certain preventive services or because the plans or issuers impose cost sharing on such services." ECF No. 121-1, ¶ 4.

- Although "[p]lans and issuers do not typically make changes to coverage or cost sharing mid-year," "not all plans and policies operate on the calendar year cycle" and "certain mid-year changes might be permissible," meaning that "some . . . expected coverage loss could occur in the near future." *Id.* ¶ 6.

- "CMS expects some employers will drop some of the more costly preventive services or impose cost sharing on such services," which will lead to Americans foregoing important and potentially life-saving preventive care. *Id.* ¶ 8; *see id.* ¶¶ 9-15.

**Defendants' Response to Order of April 20, 2023**- 2

  b. The Declaration of Lisa M. Gomez, Assistant Secretary for Employee Benefits Security at the Department of Labor, further explains that:

- "As a result of the court's judgment, plans are now generally free, subject to any state laws that may apply to the underlying insurance coverage or contractual provisions, to add cost-sharing requirements for or drop coverage altogether for preventive care recommended by the USPSTF on or after March 23, 2010," potentially either in the middle of a plan year or at the start of the next one. The declaration also provides data on the immediacy of the timing for those events and suggests the number of individuals whose coverage could be affected at those times. ECF No. 121-2, ¶¶ 4-5.

- "As the Departments' 2015 Final Rules on preventive services explained, historically, health insurance issuers have had little incentive to cover preventive services, the benefits of which may only be realized in the future when an individual may no longer be enrolled with that issuer. We expect that such is also often the case with group health plans. This has been borne out by the implementation of preventive care mandates based on USPSTF recommendations. For example, according to a report by the American College of Radiology, a large number of plans adopted cost-free coverage for lung-cancer screenings only after the USPSTF gave such screenings a B rating in March of 2021. The Department therefore expects that many plans would not provide cost-free coverage in the absence of a requirement." *Id.* ¶ 6 (citations omitted).

These predictive judgments by agency experts in the relevant field, which are also uncontroverted in the record, are entitled to deference. *See, e.g., Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 377 (1989) (when the agency's analysis "requires a high level of technical expertise," courts "must defer to the informed discretion of the responsible federal agencies" (citation and quotation marks omitted)).[2]

---

[2] Further, imposing cost-sharing would be consistent with companies' actions regarding non-mandatory cost-free coverage. Under IRS regulations, companies may allow health savings account (HSA)-eligible plans to cover the cost of specified services that prevent exacerbation of chronic conditions even if the insured has not satisfied her deductible—but a recent study shows that only 8% of companies covered all of the services. *See* Employee Benefit Res. Inst., Employer Uptake of Pre-Deductible Coverage for Preventive Services in HSA-Eligible Health Plans (Oct. 14, 2021), *available at* https://www.ebri.org/content/employer-uptake-of-pre-deductible-coverage-for-preventive-services-in-hsa-eligible-health-plans.

**Defendants' Response to Order of April 20, 2023**- 3

3.      The statement quoted in the Court's order from a letter from certain trade groups reported in a recent newspaper article supports Defendants' position. *See* ECF No. 129 (quoting portion of letter from certain trade groups in Stephanie Armour, *Most Major Insurers to Continue Preventive Care Services*, THE WALL STREET JOURNAL, Apr. 20, 2023)). The full letter reported in the article is attached hereto as Exhibit A. The sentence quoted by the Court notes that it is the trade groups' "*sense*" that the overwhelming majority of their members "do not *anticipate* making changes to no-cost share preventive services, . . .while the case proceeds through the courts." Ex. A at 1-2 (emphasis added). The letter does not explain how the trade groups developed their "sense" of their members' views or describe any scientifically sound surveys they may have conducted. In any event, the fact that the groups anticipate the majority of their members will not make changes suggests that they anticipate some of their members *will* make changes to their coverage of preventive services. *Id.* And even the members that do not anticipate making such changes recognize that they can do so now if they choose. *Id.* Nothing in the letter binds the members to continue with the status quo or provides certainty to those enrolled in covered plans and their beneficiaries—only a stay order from this Court can do that.

4.      Nor do the trade groups whose letter was quoted in the article speak for all those who are subject to the requirements of 42 U.S.C. § 300gg-13. For example, UnitedHealthcare, the nation's largest for-profit health insurer, is not represented by the six trade groups that signed the letter. The congressional inquiry to which the trade groups' letter responds was sent to twelve entities, six trade groups and six insurers, but the letter discussed in the article was signed by only the six trade groups.[3] Notably, the letter was not signed by the six insurers, or any of the six trade

---

[3] *See* Press Release, Energy and Commerce Committee Democrats, Democratic Committee Leaders Write to Health Insurers Regarding Coverage of Preventive Care (April 13, 2023),

**Defendants' Response to Order of April 20, 2023**- 4

groups' members, who, the letter notes are the ones who "ultimately make the coverage decisions." Ex. A at 1-2. Neither the article nor the letter indicates whether the six insurers—who, like the members of the responding trade groups, "ultimately make the coverage decisions"—responded. Moreover, these trade groups do not represent all insurers, employers, and other plan sponsors that are subject to the ACA's preventive services coverage requirements. Other insurers and health plans/sponsors that are not represented by the six trade groups that signed the letter may "anticipate" making different decisions, negatively affecting their many insureds and beneficiaries.

5.  In addition, the letter further demonstrates the importance of preventive care. Consistent with Defendants' statements in their motion for partial stay, the letter states that "[t]he employer and health insurance provider members of our associations promote preventive health care because it is good for patients, our health care system, and our economy. Preventive care saves lives, saves money, improves health outcomes, and enables healthier lifestyles. Preventive care also promotes the peace of mind that consumers deserve." Ex. A at 1; *cf.* ECF No. 121 at 13 ("In sum, the coverage requirements eliminated by the Court's judgment have saved lives and have broadly benefitted the healthcare system. Without a stay, these vital protections will be at risk."); *see generally id.* at 8-13; ECF No. 128 at 6-8.

6.  Finally, Defendants reiterate that, in light of Plaintiffs' failure to dispute that *they* will suffer *no* harm from the requested stay, *see* ECF No. 127; ECF Nos. 121 at 2, 8-9 & 128 at 1, 6, the showing Defendants have made of harm to the public absent a stay is more than sufficient to justify the partial stay requested by Defendants. *See, e.g., Nken v. Holder*, 556 U.S. 418, 434-35 (2009) (setting forth standard governing stays pending appeal).

---

*available at* https://democrats-energycommerce.house.gov/newsroom/press-releases/democratic-committee-leaders-write-to-health-insurers-regarding-coverage-of.

**Defendants' Response to Order of April 20, 2023**- 5

| | |
|---|---|
| LEIGHA SIMONTON<br>United States Attorney | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
| */s/ Brian W. Stoltz*<br>Brian W. Stoltz<br>Assistant United States Attorney<br>Texas Bar No. 24060668<br>1100 Commerce Street, Third Floor<br>Dallas, Texas 75242-1699<br>Telephone:   214-659-8626<br>Facsimile:   214-659-8807<br>brian.stoltz@usdoj.gov | MICHELLE R. BENNETT<br>Assistant Branch Director<br><br> */s/ Christopher M. Lynch*<br>CHRISTOPHER M. LYNCH<br>(D.C. Bar # 1049152)<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>1100 L Street, NW<br>Washington, D.C. 20005<br>Telephone: (202) 353-4537<br>Fax: (202) 616-8470<br>Email: Christopher.M.Lynch@usdoj.gov |

Attorneys for Defendants Xavier Becerra,
Janet L. Yellen, Julie A. Su, and the United States

**Certificate of Service**

On April 21, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties who have appeared in the case electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                                           */s/ Christopher M. Lynch*
                                                                           Christopher M. Lynch